## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HE DEPU
Apt. 5, Door 1, #9 Building, Chaoyang An,
Xicheng District, Beijing, China,

YANG ZILI
#55 Haidian Nan Road, Haidian District, Beijing,
China,

LI DAWEI
#42 Gongyuan Road, Qincheng District, Tianshui
City, Gansu Province, China,

WANG JINBO
#317 Tongda Road, Lanshan District, Linyi City,
Shandong Province, China,

OUYANG YI
Unit 2, Apt. 9, Guangdian University Faculty
Dormitory, Yanguan Street, Suining City, Sichuan
Province, China,

XU YONGHAI
Apt. 501, Door 6, #10 Building, Xinfeng Nan Li,
Deshengmen Wai, Xicheng District, Beijing, China,

XU WANPING
Apt. 3, Floor 3, #3 Building, 98 Cuibai Road,
Dadukou District, Chongqing, China,

YU LING
30 Shen Qu, Baiwan Zhuang, Xicheng Qu, Beijing,
China,

                    Plaintiffs,

            v.

YAHOO! INC.
701 1st Ave., Sunnyvale, CA 94089,

No. 1:17-635

**COMPLAINT**

**JURY TRIAL DEMANDED**

*caption continued on next page*

MICHAEL CALLAHAN
341 Claire Place, Menlo Park, CA 94025,

RONALD BELL
1529 Laurel Place, Menlo Park, CA 94025,

ESTATE OF HARRY WU,
1708 Broadfield Lane, Vienna, VA 22182,

LAOGAI RESEARCH FOUNDATION
1901 18th St. NW, Washington, DC 20009,

LAOGAI HUMAN RIGHTS ORGANIZATION
1901 18th St. NW, Washington, DC 20009,

YAHOO HUMAN RIGHTS FUND TRUST
1901 18th St. NW, Washington, DC 20009,

and DOES 1-20,

                    Defendants.

# TABLE OF CONTENTS

NATURE OF THE ACTION ................................................................................................ 1

JURISDICTION AND VENUE ......................................................................................... 2

PARTIES ........................................................................................................................... 3

    A.    Plaintiffs ................................................................................................ 3

    B.    Defendants ............................................................................................ 7

        1.    The Yahoo Defendants ............................................................ 7

        2.    Estate of Harry Wu ................................................................. 8

        3.    Laogai Research Foundation .................................................. 8

        4.    Laogai Human Rights Organization ...................................... 8

        5.    Yahoo Human Rights Fund Trust ........................................... 9

        6.    Doe Defendants ....................................................................... 9

STATEMENT OF FACTS ................................................................................................. 9

    A.    Yahoo Was Sued in 2007 for Providing Information about Dissidents to Chinese Government, Leading to Their Imprisonment ........................................................ 9

    B.    The Yahoo Human Rights Fund Is Established as a Condition of the Settlement of the 2007 Lawsuit ................................................................................................ 11

    C.    Yahoo Touts the Yahoo Trust to Rehabilitate and Burnish Its Reputation .......... 14

    D.    The Yahoo Defendants' Authority Over the Yahoo Trust and Their Fiduciary Duties to Administer the Yahoo Trust .................................................................. 15

    E.    The Yahoo Defendants Abdicate Their Fiduciary Responsibilities ..................... 16

    F.    The Yahoo Trust Assets Are Systematically and Unlawfully Depleted by Wu and the LRF in Contravention of the Yahoo Trust's Purpose, while the Yahoo Defendants Willfully Ignore Red Flags .............................................................. 16

    G.    Defendants' Failure to Administer the Yahoo Trust for the Benefit of Imprisoned Chinese Dissidents ............................................................................................. 26

    H.    The Fundamental Character, Object, and Purpose of the Yahoo Trust Has Been Substantially Altered as a Result of Defendants' Breaches of Trust and Fiduciary Duty ...................................................................................................................... 28

ALTER EGO ALLEGATIONS ....................................................................................... 29

FIRST CLAIM FOR RELIEF .......................................................................................... 30

SECOND CLAIM FOR RELIEF ..................................................................................... 31

THIRD CLAIM FOR RELIEF ......................................................................................... 32

FOURTH CLAIM FOR RELIEF ................................................................................................. 32

FIFTH CLAIM FOR RELIEF ..................................................................................................... 33

SIXTH CLAIM FOR RELIEF...................................................................................................... 33

SEVENTH CLAIM FOR RELIEF ............................................................................................... 33

PRAYER FOR RELIEF ............................................................................................................... 34

Plaintiffs He Depu, Yang Zili, Li Dawei, Wang Jinbo, Ouyang Yi, Xu Yonghai, Xu Wanping, and Yu Ling bring this action based upon knowledge as to themselves and their own acts, and upon information and belief as to all other matters, against Defendants Yahoo! Inc., Michael Callahan, Ron Bell, the Estate of Harry Wu, the Laogai Human Rights Organization, the Laogai Research Foundation, the Yahoo Human Rights Fund, a/k/a/ the Yahoo! Irrevocable Human Rights Trust 2009, and other Doe defendants that are currently unknown to Plaintiffs, as follows:

## NATURE OF THE ACTION

1.      This action arises from Defendants' breaches of trust and fiduciary duty in connection with their operation of the Yahoo Human Rights Fund Trust ("Yahoo Trust"), and the systematic depletion of Trust assets for unlawful purposes.

2.      The Yahoo Trust was established in 2007 as part of the Settlement (defined below) of the 2007 Lawsuit (defined below) against Yahoo arising from Yahoo's role in providing information about Chinese political dissidents who were also Yahoo users to the Chinese Communist Party ("CCP"). Certain such dissidents had used Yahoo services to voice and spread dissenting opinions that challenged various aspects of CCP rule. The CCP sought information about those dissidents from Yahoo, and Yahoo willingly complied, resulting in those dissidents being brutally imprisoned for long prison sentences. Certain of those dissidents and their family members then sued Yahoo.

3.      In exchange for the dismissal of the 2007 Lawsuit, and as a term of the Settlement, Yahoo paid $17.3 million to establish the Yahoo Trust to provide humanitarian assistance to Chinese political dissidents imprisoned for exercising their freedom of expression.

4.      In addition to obtaining the dismissal of the 2007 Lawsuit, Yahoo also benefited from the Yahoo Trust by repeatedly touting it as an example of Yahoo's commitment to human

rights, and by relying on it to repeatedly defeat shareholder proposals calling on Yahoo to increase its efforts to defend and promote human rights. Yahoo appointed itself, its agents Callahan and Bell, as well as certain other Defendants (primarily Defendant Wu) to oversee and administer the Yahoo Trust. As a result, Yahoo, Callahan, Bell, Wu, and others took on important fiduciary responsibilities to the beneficiaries of the Yahoo Trust, namely imprisoned Chinese dissidents.

5.      Unfortunately, because Yahoo, Callahan, Bell, Wu, and others were primarily concerned with using the Yahoo Trust to further their own interests, as opposed to the best interest of Trust beneficiaries, they totally abdicated their fiduciary responsibilities to those beneficiaries, including by willfully turning a blind eye to rampant self-dealing and by engaging in such self-dealing. As a result, a breathtaking majority of the Yahoo Trust corpus—upwards of *$13 million*—has been systematically and unlawfully depleted in less than 10 years on expenditures having nothing to do with providing humanitarian assistance to imprisoned Chinese dissidents.

6.      Defendants' actions constitute breaches of trust and fiduciary duty owed to Plaintiffs, and violate their obligations under the Settlement of the 2007 Lawsuit.

7.      Given the lack of transparency and the secretive nature of the operation of the Yahoo Trust, Plaintiffs believe that further evidentiary support for the allegations in this Complaint will be unearthed after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

8.      This action arises under the laws of the District of Columbia, including the common law of the District of Columbia, and the District of Columbia Uniform Trust Code.

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), because it is an action between citizens of a State and citizens of a foreign state, and the amount in controversy exceeds $75,000.

10.      Venue is proper in the District Court for the District of Columbia, pursuant to 28 U.S.C. § 1391(b)-(d), because a substantial part of the unlawful conduct occurred in the District of Columbia, and because a substantial part of the property that is the subject of this action is located in the District of Columbia.

## PARTIES

### A.      Plaintiffs

11.      Plaintiff He Depu ("Mr. He") is a citizen and resident of China, domiciled in Beijing. He was detained on November 4, 2002 and was eventually charged and convicted of "inciting subversion of state power."[1] The evidence at trial consisted largely of his email communications and "provocative" articles published online or with his signature. The verdict repeatedly quoted from evidence obtained by the Beijing Municipal Public Security Bureau's "Public Information Cyberspace Security Division." On November 6, 2003, Mr. He was sentenced to eight years' imprisonment by the Beijing Municipal First Intermediate People's Court. Mr. He was released in 2011. Mr. He is a past and potential future beneficiary of the Yahoo Trust, and was injured by Defendants' failure to faithfully administer the Yahoo Trust for the benefit of imprisoned Chinese dissidents, and by their breaches of trust and fiduciary duty, because Mr. He received less in humanitarian assistance than he would have but for Defendants' misconduct. Mr. He has also been injured by Defendants' misconduct and the depletion of

---

[1] Quotations from Chinese proceedings have been translated from the original Chinese.

Yahoo Trust assets because he continues to voice dissenting opinions in China but is significantly less likely to receive funding if he is imprisoned given the depletion of Trust assets.

12.    Plaintiff Yang Zili ("Yang") is a citizen and resident of China, domiciled in Beijing. On March 13, 2001, Yang was detained by Chinese authorities on suspicion of "subversion of state power," and was eventually convicted. The verdict against Yang accused him of "using the Internet to publicize essays, and preparing to organize a website and online publication," as well as "using the Internet to publicize" political commentary. On May 28, 2003, Yang was sentenced to 8 years' imprisonment by the Beijing Municipal Intermediate People's Court. The Beijing Supreme People's Court upheld the sentence after appeal on November 6, 2003. Yang was released in March 2009. Yang is a past and potential future beneficiary of the Yahoo Trust, and was injured by Defendants' failure to faithfully administer the Yahoo Trust for the benefit of imprisoned Chinese dissidents, and by their breaches of trust and fiduciary duty, because Yang received less in humanitarian assistance than he would have but for Defendants' misconduct. Yang has also been injured by Defendants' misconduct and the depletion of Yahoo Trust assets because he continues to voice dissenting opinions in China but is significantly less likely to receive funding if he is imprisoned given the depletion of Trust assets.

13.    Plaintiff Li Dawei ("Li") is a citizen and resident of China, domiciled in Tianshui city, Gansu province. Li was detained on April 15, 2001, on charges of "subversion of state power," and was eventually convicted. The verdict against him said that his "criminal" activities included using the Internet to publicize an open letter, and "using the Internet" to send letters to activists outside of China, as well as using the Internet to collect information. The Tianshui Municipal Intermediate People's Court in Gansu Province sentenced Li to 11 years' imprisonment on July 17, 2003. Li was released in 2012. Li is a past and future potential

beneficiary of the Yahoo Trust, and was injured by Defendants' failure to faithfully administer the Yahoo Trust for the benefit of imprisoned Chinese dissidents, and by their breaches of trust and fiduciary duty, because Li received less in humanitarian assistance than he would have but for Defendants' misconduct. Li has also been injured by Defendants' misconduct and the depletion of Yahoo Trust assets because he continues to voice dissenting opinions in China but is significantly less likely to receive funding if he is imprisoned given the depletion of Trust assets.

14.     Plaintiff Wang Jinbo ("Wang") is a citizen and resident of China, domiciled in Linyi city, Shandong province. Wang was detained on May 24, 2001, for "inciting subversion of state power," was eventually convicted on December 4, 2001, and sentenced to four years' imprisonment by the Linyi Municipal Intermediate People's Court in Shandong Province. The verdict was based in part on Wang's exercise of his freedom of expression. Wang was released in 2005. Wang is a past and potential future beneficiary of the Yahoo Trust, and was injured by Defendants' failure to faithfully administer the Yahoo Trust for the benefit of imprisoned Chinese dissidents, and by their breaches of trust and fiduciary duty, because Wang received less in humanitarian assistance than he would have but for Defendants' misconduct. Wang has also been injured by Defendants' misconduct and the depletion of Yahoo Trust assets because he continues to voice dissenting opinions in China but is significantly less likely to receive funding if he is imprisoned given the depletion of Trust assets.

15.     Plaintiff Ouyang Yi ("Ouyang") is a citizen and resident of China, domiciled in Suining city, Sichuan province. Ouyang was detained by the Chengdu Municipal Public Security Bureau on December 5, 2002 and was eventually convicted on charges of "incitement of subversion of state power." The verdict against him cited email evidence, including an open letter to the Chinese Communist Party distributed via email, and "sent using email to overseas

websites and propagated online." On March 1, 2004, the Chengdu Municipal Intermediate People's Court in Sichuan Province sentenced Ouyang to two years' imprisonment. Ouyang was released in 2006. Ouyang is a potential future beneficiary of the Yahoo Trust, and was injured by Defendants' failure to faithfully administer the Yahoo Trust for the benefit of imprisoned Chinese dissidents, and by their breaches of trust and fiduciary duty, because he continues to voice dissenting opinions in China but is significantly less likely to receive funding if he is imprisoned given the depletion of Trust assets.

16.     Plaintiff Xu Yonghai ("Xu") is a citizen and resident of China, domiciled in Beijing. On October 13, 2003, Xu was arrested in Hangzhou and charged with "suspicion of illegally providing state secrets and information" outside of China. The charges related to an investigative report Xu and others had compiled on the persecution of Christian "house churches" in China. The verdict against Xu cited evidence that this report had "been provided to foreign personnel through email." On August 6, 2004, Xu was sentenced to two years' imprisonment. Xu was released in 2006. Xu is a potential future beneficiary of the Yahoo Trust, and was injured by Defendants' failure to faithfully administer the Yahoo Trust for the benefit of imprisoned Chinese dissidents, and by their breaches of trust and fiduciary duty, because he continues to voice dissenting opinions in China but is significantly less likely to receive funding if he is imprisoned given the depletion of Trust assets.

17.     Plaintiff Xu Wanping ("Xu W.") is a citizen and resident of China, domiciled in Chongqing. Xu W. has served a total of 20 years in prison for political dissent, most recently from 2005 to 2014. Xu W. is still and active political dissident and activist. In early 2016, Xu W. applied for funding from the Yahoo Trust. Defendant Harry Wu responded in March 2016, informing Xu W. that Wu and the LRF (defined below) had decided to stop providing

humanitarian assistance to imprisoned Chinese dissidents, ending the purpose of the Yahoo Trust altogether. Xu W. is a potential past and future beneficiary of the Yahoo Trust, and was injured by Defendants' failure to faithfully administer the Yahoo Trust for the benefit of imprisoned Chinese dissidents, and by their breaches of trust and fiduciary duty, because he was denied funding as a result of those breaches, and because he continues to voice dissenting opinions in China but is significantly less likely to receive funding if he is imprisoned given the depletion of Trust assets.

18.     Plaintiffs He, Yang, Li, Wang, Ouyang, Xu, and Xu W. are sometimes referred to as the "Beneficiary Plaintiffs."

19.     Plaintiff Yu Ling ("Yu") is a citizen and resident of China, domiciled in Beijing. Yu is a party to the Settlement (defined below) between Yahoo (defined below) and plaintiffs in the 2007 Lawsuit (defined below).

**B.     Defendants**

**1.     The Yahoo Defendants**

20.     Defendant Yahoo! Inc. ("Yahoo") is headquartered Sunnyvale, California. Yahoo was a defendant in the 2007 Lawsuit (defined below), the settlement of which resulted in the creation of the Yahoo Trust. Yahoo was a trustee of the Yahoo Trust at all relevant times and owed and continue to owe fiduciary duties to the Beneficiary Plaintiffs.

21.     Defendant Michael Callahan ("Callahan") was Executive Vice President, General Counsel, and Corporate Secretary at Yahoo from December 1999 to July 2012. Callahan was a trustee of the Yahoo Trust, and a member of the board of directors of LHRO (defined below), until his departure from Yahoo. As trustee and director, Callahan owed fiduciary duties to the Beneficiary Plaintiffs at all relevant times. Callahan is a resident of California. At all relevant

times, Callahan was compensated for his services as trustee and director, including by Yahoo and the LHRO.

22.     Defendant Ronald Bell ("Bell") was General Counsel and Corporate Secretary at Yahoo. Callahan was a trustee of the Yahoo Trust and was a member of the board of directors of LHRO until 2016. As trustee and director, Bell owed fiduciary duties to the Beneficiary Plaintiffs at all relevant times. Bell is a resident of California. At all relevant times, Bell was compensated for his services as trustee and director, including by Yahoo and the LRHO.

23.     Defendants Yahoo, Callahan, and Bell are collectively referred to as the "Yahoo Defendants."

## 2.     Estate of Harry Wu

24.     Defendant Estate of Harry Wu is the estate of Harry Wu ("Wu"), who was a trustee of the Yahoo Trust, and Executive Director of LHRO and LRF. As trustee and director, Wu owed fiduciary duties to the Beneficiary Plaintiffs at all relevant times. Wu was a resident of Virginia. Wu passed away on April 26, 2016. At all relevant times, Wu was compensated for his services as trustee and director, including by Yahoo, the LRF, and the LHRO.

## 3.     Laogai Research Foundation

25.     Defendant Laogai Research Foundation ("LRF") is 501(c)(3) non-profit corporation organized under the laws of the Commonwealth of Virginia. LRF's principal place of business is 1901 18th St. NW, Washington, DC, 20009. At all relevant times, LRF was Wu's *alter ego*, as Wu dominated and controlled all aspects of LRF operations.

## 4.     Laogai Human Rights Organization

26.     Defendant Laogai Human Rights Organization ("LHRO") is a 501(c)(3) non-profit corporation organized under the laws of the District of Columbia. LHRO's principal place of business is 1901 18th St. NW, Washington, DC, 20009. LHRO was established to administer

Yahoo Trust assets. As such, LHRO, and the members of its board of directors, owed fiduciary duties to the Beneficiary Plaintiffs at all relevant times.

### 5. Yahoo Human Rights Fund Trust

27.     Defendant Yahoo Human Rights Fund Trust ("Yahoo Trust") is a trust organized under the laws of the District of Columbia. The Yahoo Trust's principal place of business is 1901 18th St. NW, Washington, DC, 20009.

### 6. Doe Defendants

28.     Defendants Does 1-20 are current and former employees and directors of Defendants Yahoo, LRF, and LHRO. Does 1-20 directly or indirectly caused the unlawful depletion of the Yahoo Trust assets, including by breaching fiduciary duties owed to the Beneficiary Plaintiffs. They will be identified and named after discovery.

## STATEMENT OF FACTS

**A.     Yahoo Was Sued in 2007 for Providing Information about Dissidents to Chinese Government, Leading to Their Imprisonment**

29.     Yahoo was one of the first international internet companies to operate in China, and in the early 2000s, many Chinese dissidents used Yahoo's email services to communicate and disseminate information, including information that the Chinese Communist Party ("CCP") considered subversive. These users believed that, as an American company ostensibly respectful of First Amendment ideals such as freedom of expression, Yahoo would resist inevitable CCP efforts to obtain their private information, which the CCP would use to punish them and to eliminate dissent. Unfortunately, Yahoo failed to live up to these ideals, and instead readily turned over user information to the CCP, fully aware of the likely consequences. As a result, many Yahoo users were imprisoned based on evidence provided by Yahoo.

30.     In 2007, two such imprisoned Yahoo users, Wang Xiaoning ("Wang X.") and Shi Tao ("Shi"), along with Wang X.'s wife, Plaintiff Yu here, brought a lawsuit against Yahoo ("2007 Lawsuit") in the U.S. District Court for the Northern District of California. *See Wang Xiaoning, Shi Tao, Yu Ling et al. v. Yahoo!, Inc. et al.*, ECF No. 51, No. 07-02151-CW (N.D. Cal., filed July 30, 2007) (amended complaint). The lawsuit alleged, among other things, that Yahoo was liable under the Alien Tort Statute, 28 U.S.C. § 1350, the Torture Victim Protection Act, 28 U.S.C. § 1350, the Electronic Communications Privacy Act, 18 U.S.C. § 2701, and the common law of California. *See id.*

31.     The Shi Tao case in particular had by then attracted significant public attention. Shi was a journalist and editor at a business newspaper who was imprisoned for attempting to shed light on CCP efforts to control and suppress dissent in advance of the 15th anniversary of the 1989 Tiananmen Square massacre. Specifically, he sent his notes from a staff meeting about those efforts to a New York-based website, using his Yahoo email account. His eventual conviction and ten-year prison sentence relied on detailed evidence about that account provided by Yahoo.

32.     In a 2006 Congressional hearing that touched on Shi's case, Yahoo's then general counsel, Callahan, defended Yahoo by claiming that when Yahoo complied with the Chinese government's request, it had "no information about the nature of the investigation." In 2007, however, evidence came to light showing that was not true, as the subpoena-like documents issued by Chinese authorities to Yahoo specifically stated that the investigation related to "provision of state secrets," a well-known euphemism employed by the CCP to suppress dissent.

33.     Yahoo's dishonesty amplified already intense criticism, and led to an additional Congressional hearing on November 7, 2007. That hearing was attended by Plaintiff Yu, a

plaintiff in the 2007 Lawsuit, and wife of the imprisoned plaintiff Wang X. Accompanying

Plaintiff Yu was Wu, who served as Plaintiff Yu's translator. Present for Yahoo were Callahan

and Yahoo's then CEO, Jerry Yang ("Yang").

**B.     The Yahoo Human Rights Fund Is Established as a Condition of the Settlement of the 2007 Lawsuit**

34.     Immediately after the hearing, in an anteroom at the Capitol, Yang met with

Plaintiff Yu, Wu, and others, and discussed three conditions for settling the 2007 Lawsuit: (1)

Yahoo would pay compensation to the plaintiffs; (2) Yahoo would establish a human rights fund

to provide financial assistance to imprisoned Chinese dissidents; and (3) Yang would directly

advocate to the Chinese government for Wang's release.

35.     Attorneys for plaintiffs in the 2007 Lawsuit were not present at this meeting.

Indeed, Wu insisted that the attorneys be terminated, and that he would lead the negotiations on

the plaintiffs' behalf. Following the November 7, 2007 meeting, Wu continued to discuss a

settlement with Yahoo on the plaintiffs' behalf.

36.     On November 9, 2007, a settlement agreement ("Settlement") was reached.

However, Wu did not consult with plaintiffs on the specific terms and conditions of the

Settlement. Indeed, Wu instructed Liao Tienchi ("Liao"), then an employee and board member

of LRF, not to disclose the amounts contained in the Settlement to plaintiffs. No Chinese

translation of the Settlement was provided to plaintiffs (none of whom could read English).

37.     Nevertheless, Wu signed the Settlement on behalf of the plaintiffs, and Yang

signed on behalf of Yahoo. The terms included the dismissal of the 2007 Lawsuit, in exchange

for a payment by Yahoo of $3.2 million to each of the two imprisoned users' families, as well as

the establishment of a $17.3 million trust fund for the benefit of other imprisoned Chinese

dissidents, such as the Beneficiary Plaintiffs here, which was to be called the Yahoo Human Rights Fund ("Yahoo Trust").[2]

38.     With respect to the payments to the plaintiffs, not only did Wu deliberately conceal the terms and amounts from the plaintiffs, he attempted to extort the plaintiffs into handing over to Wu and the LRF parts of the Settlement belonging to them. For instance, when Shi's mother arrived in Washington, D.C. to collect her son's portion, Wu demanded that she "donate" $1 million of her son's $3.2 million share to Wu and the LRF. Having no legal representation, and under intense pressure from Wu, she asked whether $500,000 would be sufficient. Wu responded in a fury, berating her, and causing her great distress. At this point, Liao intervened, telling Wu his behavior was inappropriate. Liao then reached out to a contact at the U.S. Department of State, Eric N. Richardson ("Richardson"), for help. Richardson agreed to help, told Wu to stop demanding money from Shi's mother, and escorted both Wu and Shi's mother to the bank, making sure that all funds belonging to Shi were transferred to a separate account.

39.     Similarly, Wang X. and Plaintiff Yu were forced to file a lawsuit ("2011 Lawsuit") to recover $1 million belonging to them, and misappropriated by Wu. *See Yu et al. v. Wu et al.*, ECF No. 1, No. 1:11-cv-92-JCC (E.D. Va., filed Jan. 28, 2011). The 2011 Lawsuit included an exhibit showing that Wu purchased a $1 million annuity for his own benefit, falsely claiming that Yu was his cousin on the annuity application. *See id.*, Exhibit 1.

---

[2] Payments establishing the Yahoo Trust were made in trust to the LRF in four installments, with the final installment paid in July 2008. The Settlement also required that Yahoo Trust assets be maintained separately from LRF's funds.

40.     As for the Yahoo Trust, the Settlement contemplated that Wu and the LRF would be responsible for its day-to-day administration, but that Yahoo would maintain oversight to ensure Yahoo Trust assets were being spent in accordance with its purpose: providing humanitarian and legal aid to Chinese dissidents imprisoned for exercising their freedom of expression.

41.     In a November 13, 2007 press release announcing the Settlement, Yahoo emphasized this purpose:

> Yahoo! is working to provide financial, humanitarian and legal support to the families of Shi Tao and Wang Xiaoning. After working with the families to reach a private agreement, the parties are withdrawing their lawsuit against Yahoo!. **Yahoo! is also working to create a separate human rights fund to provide humanitarian and legal support to political dissidents who have been imprisoned for expressing their views online, as well as their families.**
>
> . . .
>
> "We are committed to making sure our actions match our values around the world. **That's why we are also working to establish a Human Rights Fund to provide humanitarian and legal aid to dissidents who have been imprisoned for expressing their views online.**"

42.     Thus, from the outset, Yahoo touted the establishment of the Yahoo Trust as an example of Yahoo's commitment to human rights, and sought to benefit reputationally from it.

43.     The purpose of the Yahoo Trust was reiterated in July 2008 by Michael Samway ("Samway"), then Yahoo's Vice President and Deputy General Counsel. Before wiring the final portion of Yahoo Trust assets to the LRF, Samway emphasized to Liao that "[a]s a general principle, we need to use the Fund for its intended principles regarding online dissent," and that

although "limited exceptions" had been made, "[w]e should be sure to keep focused on the Fund's purpose though."[3]

### C.    Yahoo Touts the Yahoo Trust to Rehabilitate and Burnish Its Reputation

44.     In the years following the creation of the Yahoo Trust, Yahoo portrayed it as a voluntary endeavor that exemplified Yahoo's professed commitment to human rights and to freedom of expression, downplaying or omitting its origins in the 2007 Lawsuit. This narrative served Yahoo's purposes well, which was to repair damage to its reputation caused by Yahoo's role in the imprisonment of Chinese dissidents.

45.     Indeed, Yahoo relied on this narrative to repeatedly defeat multiple shareholder proposals to increase Yahoo's human rights promotion efforts, arguing that Yahoo was already adequately promoting human rights, citing the establishment of the Yahoo Trust in support of that argument. And, more generally, Yahoo for years cited the Yahoo Trust as a centerpiece of the Yahoo "Business and Human Rights Program."

46.     Of course, the reality was that Yahoo only established the Yahoo Trust in return for the dismissal of the 2007 Lawsuit.

---

[3] The "limited exception" to which Samway referred was a provision that stated that the Yahoo Trust funds could also be used for the operating expenses and educational efforts of Wu's foundation, the LRF. LRF would then be required to provide information to Yahoo about how it planned to use Yahoo Trust funds. There was no obligation that a minimum amount be provided to the LRF per year, but a maximum amount of $1 million per year was imposed. To the extent the Settlement includes this "limited exception," it is unconscionable and unenforceable, as it was included without the knowledge, review, or approval of the 2007 Lawsuit plaintiffs or their attorneys, to the detriment of the 2007 Lawsuit plaintiffs, solely for the benefit of Wu and the LRF, who were not parties to the 2007 Lawsuit or to the Settlement, and constituted self-dealing on the part of Wu and the LRF.

### D. The Yahoo Defendants' Authority Over the Yahoo Trust and Their Fiduciary Duties to Administer the Yahoo Trust

47.     To formalize the Yahoo Trust, a Declaration of Trust was executed under the District of Columbia Uniform Trust Code in 2009. Yahoo selected Callahan to serve as trustee. When Callahan left Yahoo, he was replaced by Bell.

48.     Around the same time, a non-profit entity entitled the Laogai Human Rights Organization ("LHRO") was incorporated, and a portion of the Yahoo Trust's assets was transferred to it. Callahan, and then Bell after him, served on LHRO's board of directors. Wu was also made a director, as well as President.

49.     According to tax filings, before the LHRO disbursed Yahoo Trust assets to LRF, "LRF must present to the corporation's Board of Directors an overview of LRF's budget and programs for the pending disbursement and a report on the use of funds previously disbursed." With respect to the Yahoo Trust's purpose of providing humanitarian assistance, the LHRO's "Board of Directors, or a committee thereof, in conjunction with the LRF staff," was to review applications for such assistance. A recommendation was then supposed to be made to the full LHRO board, which would "make the final decision on what, if any, funds will be distributed." Those decisions were to be "recorded in the corporation's corporate records book."

50.     In addition, each disbursement of Yahoo Trust assets required Yahoo's authorization, and disbursement checks required the signature of Callahan or Bell.[4]

---

[4] LHRO's tax filings claim that Callahan, and then Bell, devoted 25 hours per week to the LHRO on average.

51.     Callahan and Bell served as trustees, and as directors of the LHRO, as a condition of their employment at Yahoo. As a result of these positions, the Yahoo Defendants owed fiduciary duties to the Yahoo Trust, and to Plaintiffs.

**E.      The Yahoo Defendants Abdicate Their Fiduciary Responsibilities**

52.     From the beginning, the Yahoo Defendants' management of the Yahoo Trust highlighted the cynical reality that Yahoo used the Yahoo Trust as window-dressing: it wanted to benefit from the creation of the Yahoo Trust, but had no interest in fulfilling its actual mission or complying with its terms and the obligations that came with it. And Yahoo did benefit, enormously. Most immediately, Yahoo used the Yahoo Trust to obtain the dismissal of the 2007 Lawsuit. Subsequently, at least two additional potential lawsuits against Yahoo were resolved using Yahoo Trust assets. More fundamentally, Yahoo relied on the Yahoo Trust to stem the immense criticism over Yahoo's complicity in egregious human rights violations.

53.     These benefits came with fiduciary responsibilities that the Yahoo Defendants assumed as trustees and directors of the Yahoo Trust and the LHRO. However, from the outset, the Yahoo Defendants failed to take these fiduciary responsibilities seriously. Instead, the Yahoo Defendants abdicated their fiduciary responsibilities, and placed Yahoo Trust assets almost entirely in the hands of Wu and the LRF. The Yahoo Defendants did this despite numerous red flags that should have been apparent to the Yahoo Defendants from the very outset and that piled on as the years went by.

**F.      The Yahoo Trust Assets Are Systematically and Unlawfully Depleted by Wu and the LRF in Contravention of the Yahoo Trust's Purpose, while the Yahoo Defendants Willfully Ignore Red Flags**

54.     The folly of entrusting Yahoo Trust assets to Wu and the LRF should have been apparent to the Yahoo Defendants from the beginning. Indeed, in negotiating the Settlement of the 2007 Lawsuit with Wu, Yahoo was well aware that Wu was not an attorney, much less the

attorney for plaintiffs in that action, which attorneys had been inexplicably excluded from the negotiations. Despite these irregularities, Yahoo chose to negotiate directly with Wu. Then, during those negotiations, Wu demanded a provision that had the potential of benefiting Wu personally by up to *$1 million per year*—another red flag that Yahoo failed to question or scrutinize. To make matters even worse, Yahoo not only executed the Settlement with Wu as the only signatory for plaintiffs, but *also gave Wu and the LRF virtually unfettered control over the settlement money—including the entirety of the Yahoo Trust's assets*.

55.     This decision was disastrous for the Yahoo Trust, and for its stated mission of providing humanitarian aid to imprisoned Chinese dissidents. Indeed, in the years since the Yahoo Trust was established, only approximately $700,000—or a mere *4%* of the $17.3 million corpus—has been spent on that mission.[5] Instead, the vast bulk of the Yahoo Trust's assets— likely *more than $13 million*—has been unlawfully spent on personally enriching Wu and the LRF.

56.     For example, between 2008 and 2015, the LRF reported expenditures of more than *$11 million*. Further, in 2015, the LRF purchased a *$2.55 million* townhouse in Washington, D.C. The source of the vast bulk of these expenditures was Yahoo Trust assets. Indeed, during this time, LRF's only other revenue sources were three National Endowment for Democracy grants from 2008-2010, totaling approximately $600,000, and a donation of Google stock valued at approximately $316,000.

---

[5] An additional $550,000 appears to have been used to resolve legal claims against Yahoo by two individuals, Li Zhi and Jiang Lijun, about whom Yahoo had provided information to the Chinese government.

57.     The systematic and unlawful depletion began immediately. For example, in 2007, Wu's salary as "Executive Director" was $48,000, while his wife's salary as "Secretary/Treasurer" was $24,000. In 2008, following an enormous cash infusion of more than $18 million in connection with the Settlement—*i.e.*, the Yahoo Trust assets, which was supposed to be held in trust by Wu and the LRF—Wu gave himself a ***$60,000 raise***, ***more than doubling*** his compensation to over $108,000 per year. He also gave his wife a large raise, increasing her compensation to $42,000 (despite the fact that as of 2010, she had not worked in the LRF office even once in the preceding ten years, and did little discernable work for the LRF, such that hers was apparently a "no-show" job). In 2009, Wu increased his compensation to $110,000, and his wife's to $50,000. In 2010, Wu paid himself $108,000, and his wife $48,000. Thereafter, Wu's wife "retired" and was not replaced. Over the next five years, Wu paid himself $108,600, $113,700, $120,400, $131,200, and $122,907 per year respectively. All told, after the establishment of the Yahoo Trust, Wu paid himself and his wife more than ***$1 million***. Most, if not all, of this amount was paid using Yahoo Trust assets. The Yahoo Defendants did nothing to scrutinize these unlawful expenditures.

58.     As another example, the LRF incurred enormous legal fees, most if not all of which were funded with Yahoo Trust assets, and spent for the benefit of Wu personally. For instance, in 2011, the LRF recorded $322,596 in legal fee expenditures. A substantial portion, if not all, of this amount was spent in connection with the 2011 Lawsuit filed by Yu to recover the portion of the Settlement wrongfully withheld from her by Wu. From 2013 to 2015, the LRF reported an additional $515,000 in legal fees. During this time, Wu faced a number of additional lawsuits, including a lawsuit accusing Wu of sexual harassment, *see Jing v. Wu*, Docket No. 2015-011903 (Va. Cir. Ct. Sept. 8, 2015), and a *qui tam* and employment retaliation lawsuit

accusing Wu and the LRF of defrauding the federal government by misusing federal grants, and of firing the plaintiff in retaliation for raising concerns about that alleged fraud. *See Pencheng Si v. Laogai Research Found.*, 71 F. Supp. 3d 73 (D.D.C. 2014) (holding that retaliation claims were adequately alleged). Yahoo Trust assets were unlawfully used to defend Wu and the LRF in these lawsuits. At no time did the Yahoo Defendants take any meaningful steps to ensure Yahoo Trust assets were not improperly used to defend Wu in these lawsuits.

59.     Wu and the LRF also used Yahoo Trust assets to purchase expensive real estate for Wu and the LRF's benefit. In January 2008—just two months after the Settlement—Wu and LRF purchased a *$1.45 million* property, located at 1109 M Street NW, in Washington, D.C. In July 2015, Wu and LRF purchased a *$2.55 million* townhouse at 1901 18th Street NW, Washington, D.C. These purchases were unlawfully made using Yahoo Trust assets. Yet again, the Yahoo Defendants willfully ignored these unlawful expenditures, and took no steps to prevent them.

60.     Wu and the LRF also transferred Yahoo Trust assets to recipients whose identities are currently unknown. For instance, in 2009 and 2010, Wu and the LRF reported transfers of $65,000 and $100,000, respectively, to another non-profit organization headed by Wu, the China Information Center ("CIC"). However, these transfers were *not* reported on CIC's tax filings, and the actual recipients of these transfers are unknown.

61.     More generally, each year the LRF used hundreds of thousands, if not millions, of dollars in Yahoo Trust assets, with little to no accountability, transparency, or oversight. Indeed,

Wu made all spending decisions unilaterally, viewing the assets as "his alone," as former LRF director Jeff Fiedler told the New York Times.[6,7]

62.     None of these expenditures in any way furthered the Yahoo Trust's mission of providing humanitarian assistance to imprisoned Chinese dissidents. To the contrary, each expenditure directly undermined that purpose, by depleting the amount of money available to accomplish that purpose.

63.     The complete abandonment of the Yahoo Trust's mission was confirmed in 2016. In early 2016, Plaintiff Xu W., a Chinese dissident who was imprisoned for approximately nine years, from 2005 to 2014 (and who had served two previous sentences, from 1989 to 1997, and from 1998 to 2001, for a total of 20 years), emailed Wu and the LRF seeking assistance from the Yahoo Trust. Wu responded in March 2016, informing Plaintiff Xu W. that Wu and the LRF had decided to *stop providing humanitarian assistance to imprisoned Chinese dissidents altogether*.

64.     An equally egregious case is that of Gou Zhongshan ("Gou"). Wu recruited Gou in February 2005 to collect information about and take photographs of prison labor camps and execution grounds. On April 9, 2006, Gou was arrested for "illegally providing information for an overseas entity." On December 1, 2006, Gou was sentenced to 13 years in prison.

---

[6] In May 2009, Fiedler wrote an email stating that he was resigning from the LRF board in part because Wu was managing the LRF as his "personal fiefdom." Liao tried to persuade him to reconsider, urging that his resignation would have "no shocking effect" on Wu, that Wu "will not and can not [*sic*] change his character," and that Fiedler would "very likely be replaced by a yesman or woman, which can only deteriorate the situation." The Yahoo Defendants were aware or should have been aware of this email.

[7] *See* Andrew Jacobs, *Champion of Human Rights in China Leaves a Tarnished Legacy*, NEW YORK TIMES (Aug. 13, 2016). The article also reported that in 2015, the Internal Revenue Service ("IRS") fined Wu and the LRF "$40,000 for financial irregularities." The IRS also found that Wu paid personal income taxes using LRF assets.

65.     Wu and the LRF took no action whatsoever to publicize Gou's arrest and sentence, or to advocate for Gou's release. Gou was eventually released in April 2016, and immediately contacted the LRF for assistance. However, he was told that Wu had passed away, and that the LRF had no record of Gou working for them.

66.     Throughout this entire time, the Yahoo Defendants—whose authorization was needed to make disbursements from the Yahoo Trust—stood idly by, willfully ignoring the mountain of evidence that these expenditures were improper, doing nothing to prevent the systematic unlawful depletion of Yahoo Trust assets, all the while advertising the Yahoo Trust as evidence of its commitment to human rights.

67.     For example, in 2008, the City of New York Office of the Comptroller, on behalf of several New York City public pension funds who were Yahoo shareholders, made a shareholder proposal relating to internet censorship, urging Yahoo to "institute policies to help protect freedom of access to the Internet." Yahoo opposed the proposal, arguing, among other things, that it was "unnecessary" in light of "initiatives already in place at the Company," including the "establish[ment] of a Human Rights Fund, in partnership with a noted Chinese human rights activist, to provide humanitarian relief and legal support for dissidents imprisoned for expressing their views online." The proposal was defeated.

68.     In 2011, Yahoo shareholder Jing Zhao ("Zhao") made a shareholder proposal urging that Yahoo take various measures to protect human rights, including adopting principles protective of human rights, and specifically calling for Yahoo to "supervis[e] the abused Yahoo! Human Rights Fund" in light of information that it was being mismanaged.

69.     In opposing Zhao's proposal, Yahoo noted that it was already committed to human rights issues, citing as evidence "a number of core initiatives, including . . . [c]reating the

Yahoo! Human Rights Fund," which Yahoo again described as having been "established to provide humanitarian and legal support to political dissidents who have been imprisoned for expressing their views online, as well as assistance for their families."

70.     As for Zhao's claim that Yahoo Trust assets were being abused, and his proposal that Yahoo take steps to properly supervise those assets, Yahoo's opposition did not actually deny that Trust assets were being improperly spent. (In a failed attempt to obtain permission from the U.S. Securities and Exchange Commission ["SEC"] to exclude the proposal from its 2011 proxy statement, Yahoo instead focused on alleged procedural defects with the proposal, but did not deny there was misuse of Trust assets.) The proposal was defeated.

71.     In 2014, Yahoo shareholder John Harrington ("Harrington") made a shareholder proposal that Yahoo create a committee "to oversee the Company's responses to domestic and international developments in human rights that affect our company." Again, Yahoo opposed this proposal on the ground that "Yahoo already has extensive policies and practices in place" with respect to human rights, including "a number of core initiatives, including . . . [c]reating the Yahoo Human Rights Fund, which Yahoo established to provide humanitarian and legal support to political dissidents who have been imprisoned for expressing their views online, as well as assistance to their families." This proposal was defeated as well.

72.     In 2015, Harrington made a similar proposal, which Yahoo again opposed, based in part on the Yahoo Trust. This proposal was also defeated.

73.     Meanwhile, as Yahoo was touting the Yahoo Trust and relying on it to defeat multiple shareholder proposals, the Yahoo Defendants were well aware that the Yahoo Trust assets were being unlawfully depleted by Wu and the LRF, to the detriment of the Yahoo Trust's beneficiaries. As trustees, and as members of the LHRO board, they received regular reports

from the LRF on how Yahoo Trust assets were being spent. They also knew that Wang X. and Yu, two of the plaintiffs in the 2007 Lawsuit, were forced to sue Wu in 2011 just to get their rightful share of the Settlement. They also knew of the 2011 Lawsuit's allegations with respect to the alarming circumstances surrounding the Settlement—namely, that Wu had orchestrated the termination of the plaintiffs' attorneys, usurped the role of negotiating a settlement for himself, deliberately concealed the Settlement's terms from the plaintiffs, misrepresented how attorneys' fees had been paid, stolen $1 million belonging to Wang and Yu for himself, and misrepresented on an annuity application that Yu was his cousin.

74.     The Yahoo Defendants were also ***repeatedly and directly*** warned of Wu's wrongful conduct, including by LRF employee Liao, who wrote emails and letters to the Yahoo Defendants sounding the alarm. Liao also repeatedly voiced concerns about Wu's wrongful conduct during LRF board meetings.

75.     For example, in December 2010, Liao wrote a detailed letter to the boards of the Yahoo Trust, which included at least Callahan, and the LRF, detailing numerous red flags raised by Wu and the LRF's handling of the Yahoo Trust. For instance, Liao warned that Wu "decides and raises his own salary," yet failed to regularly hold board meetings. When meetings happened to be held, Wu "provides no agenda, minutes, financial reports and related documents (fund application). If he does provide some documents it is not in a timely manner and it is not well prepared," and includes "wrong financial information." He also "makes important financial decisions (e.g. new lease in Dupont Circle) alone without first get[ting] the opinion and approval from the board. Not to mention that the move to a new space is not justified."

76.     Liao also warned that Wu was "[o]ffend[ing] the basic agreement with Yahoo, provide not sufficient humanitarian support to the victims in or from China (only 8% from the budget, according to the financial report I have), no qualified office staff is working on this issue."

77.     Liao also warned that "[t]he financial situation of the organization is not transparent. With the Yahoo Fund, Harry [Wu] bought the building at the [*sic*] M Street, 1,45 mi[llion dollars,] and signed with his own name. Now, does this property belong to Harry Wu or the organization?"

78.     Liao also warned that there is "[n]o effective and ethical management," that the organization was "overload[ed] with staff, but the output is poor. There exists not even a website about the Yahoo HR Fund. People do not know how to apply."

79.     Liao specifically requested that there should be "an investigation about all the wrong-doings of Harry Wu," and that the investigation should "make clear that the property belongs to the [Yahoo] Trust." Unless the Yahoo Defendants ensured that such an investigation took place, Liao warned that "[t]here will be a miserable or even catastrophic failure for LRF and [the] Yahoo HR Trust," that "Wu will harm the organization and damage the image of Yahoo," and that "scandals will be exposed and it would be a heavy blow to the human rights issue in China."

80.     However, because the Yahoo Defendants did not truly care about the "human rights issue in China," the Yahoo Defendants did nothing to investigate, despite receiving the letter and being well aware of the issues raised therein.[8]

---

[8] In 2014, Defendant Bell travelled to Washington, D.C. to discuss the issue of spending on humanitarian assistance with Wu. However, no meaningful change resulted from that lone, inadequate attempt.

81.     Additionally, in 2012, Zhao made a shareholder proposal **specifically urging** Yahoo's board of directors to investigate "the appropriateness of Yahoo's handling of the unethical and potentially unlawful activities of the Yahoo! Human Rights Fund," based on information disclosed in the 2011 Lawsuit, and on internet postings, about Wu's misconduct.[9] Zhao also filed a books and record action ("Zhao Lawsuit") in Delaware Chancery Court against Yahoo demanding that Yahoo provide records regarding the Yahoo Trust, based on concerns that Wu, whom Yahoo had selected to administer the Trust, misappropriated Trust assets for his personal use, undermining the Trust's purpose. *See Zhao v. Yahoo! Inc.*, C.A. No. 7203 (Del. Ch. Feb. 1, 2012).

82.     Yet another lawsuit against Wu and the LRF alleging unlawful spending for Wu's personal benefit came to light in 2012, when a *qui tam* action under the False Claims Act (*Qui Tam* Lawsuit") was unsealed. *See Pencheng Si v. Laogai Research Found.*, 1:09-cv-02388-KBJ-SI, ECF No. 15 (D.D.C. Mar. 15, 2012) (unsealing complaint). The *Qui Tam* Lawsuit made a series of allegations that Wu and the LRF defrauded the federal government, including by unlawfully spending federal grants, and that Wu and the LRF's "core mission was to lobby [the

---

[9] In a letter to the SEC seeking the SEC's commitment that it would not take action if Yahoo declined to include Zhao's proposal in its proxy materials, Yahoo again reiterated that Yahoo established the Yahoo Trust "to provide humanitarian and legal support to political dissidents who have been imprisoned for expressing their views online, as well as assistance for their families." Yahoo further represented that the Yahoo Trust "is administered by Harry Wu . . . with the help of a board of directors." However, Yahoo failed to disclose to the SEC that Yahoo Trust assets were in fact *not* being spent on "humanitarian and legal support to political dissidents," but instead were being spent by Wu and the LRF for other purposes.

Yahoo also acknowledged that the potential illegal operation of the Yahoo Trust was within its ordinary business responsibilities, including its "litigation strategies and general legal compliance," and even argued that that Zhao's proposal did not need to be included under Rule 14a-8(i)(7) on that basis, as that rule permits exclusion of shareholder proposals that merely relate to "ordinary business operations." Thus, Yahoo admitted that it was Yahoo's duty and responsibility to ensure the Yahoo Trust was being lawfully administered.

federal government] and, thereby, ensure their continued funding and Defendant Wu's comfortable lifestyle." Defendants, including the Yahoo Defendants, knew or should have known about the *Qui Tam* Lawsuit, as it was a public lawsuit making serious allegations against Wu and the LRF.

83.     Yet another lawsuit was filed against Wu and the LRF in 2015 ("2015 Lawsuit"), this time in Virginia state court, by plaintiff Wang Jing, the wife of a Chinese dissident who had previously been imprisoned, and who was not permitted to leave China. *See Jing v. Wu*, Docket No. 2015-011903 (Va. Cir. Ct. Sept. 8, 2015). The 2015 Lawsuit alleged that Wu sexually assaulted Wang Jing after luring her from California to the Washington, D.C. area on the promise of financial assistance drawn from the Yahoo Trust. Defendants, including the Yahoo Defendants, knew or should have known about the 2015 Lawsuit, as it was a public lawsuit making serious allegations against Wu, and named the Yahoo Trust as a defendant.

**G.     Defendants' Failure to Administer the Yahoo Trust for the Benefit of Imprisoned Chinese Dissidents**

84.     In contrast to the $13 million spent on Wu and the LRF, a relative pittance—less than $700,000—has been spent on the Yahoo Trust's purpose of providing humanitarian aid to Chinese dissidents imprisoned for expressing their views online, a purpose that the Yahoo Defendants repeatedly and publicly reiterated.

85.     For instance, since the establishment of the Yahoo Trust, the LRF's reported expenditures on humanitarian aid have been as follows:

| Year | Humanitarian Aid Expenditures | Total Reported LRF Expenditures | Humanitarian Aid as Percentage of LRF Expenditures | Humanitarian Aid as Percentage of Yahoo Trust Assets |
|------|------|------|------|------|
| 2008 | $135,987 | $1,075,604 | 12.64% | 0.79% |

| Year | Humanitarian Aid Expenditures | Total Reported LRF Expenditures | Humanitarian Aid as Percentage of LRF Expenditures | Humanitarian Aid as Percentage of Yahoo Trust Assets |
|---|---|---|---|---|
| 2009 | $177,540[10] | $2,026,872 | 8.76% | 1.03% |
| 2010 | $248,495 | $1,521,187 | 16.34% | 1.44% |
| 2011 | $54,910 | $1,548,213 | 3.55% | 0.32% |
| 2012 | $28,424 | $1,298,730 | 2.19% | 0.16% |
| 2013 | $20,852 | $1,343,932 | 1.55% | 0.12% |
| 2014 | $22,496 | $1,259,247 | 1.79% | 0.13% |
| 2015 | $19,841 | $1,321,593 | 1.50% | 0.11% |

86.     Moreover, even these small amounts may be inflated. For instance, including the $550,000 payment made to settle two lawsuits against Yahoo, the LRF's 2009 Form 990 claims $727,540 in humanitarian aid. However, only $677,540 is reported on the Schedule F, which lists LRF payments to recipients outside of the United States. Thus, $50,000 in claimed humanitarian aid is unaccounted for.

87.     As another example, in 2010, LRF claimed $248,495 was distributed in humanitarian aid to "40 qualified individuals," and that "payments ranged from $1,000 to $20,250." However, on its Schedule F, only $108,495 in payments to 20 individuals in China are reported, leaving a shortfall of $140,000 apparently distributed to 20 other individuals.

88.     As another example, in 2014, LRF claimed $22,496 was distributed to "6 qualified individuals," and that "payments ranged from $500 to $3,000." However, even if all six received the maximum $3,000 amount, the total would only be $18,000.

89.     Given these discrepancies, and given the extent of the misconduct described herein, no faith can be placed in even these reported figures.

---

[10] The reported amount was $727,540, but $550,000 was used to settle two lawsuits against Yahoo, which does not qualify as humanitarian aid.

90.     Additionally, numerous facts surrounding the irregular nature of how Wu and the LRF handled what little humanitarian aid they did disburse, raise further doubts about the accuracy of these figures. For example, in May 2010, Wu drafted a financial report claiming that a payment to 2010 Nobel Peace Prize recipient Liu Xiaobo ("Liu") qualified as humanitarian assistance. However, Liao objected, saying that the payment was in fact funded by a National Endowment for Democracy grant, and was not humanitarian assistance, but was in fact payment for certain of Liu's written work.[11] The Yahoo Defendants were or should have been aware of these facts.

91.     As other additional examples, Wu and the LRF: (1) failed to provide a Chinese version of the website announcing the humanitarian aid program; (2) failed to make a Chinese version of the application form available; (3) failed to respond to numerous inquiries and applications; (4) rejected applications on the basis of personal vendettas; (5) routinely asked applicants to sign blank application forms without filling them out; (6) sent recipients small amounts of cash without asking for an application or providing receipts; and (7) sent recipients payments in amounts that were less than the amounts LRF had previously indicated had been approved, with no explanation. The Yahoo Defendants were or should have been aware of these facts.

**H.     The Fundamental Character, Object, and Purpose of the Yahoo Trust Has Been Substantially Altered as a Result of Defendants' Breaches of Trust and Fiduciary Duty**

92.     The character, object, and purpose of the Yahoo Trust was to provide humanitarian assistance to Chinese dissidents imprisoned as a result of exercising their freedom

---

[11] As a result of Liao's objections, Wu directed that Liao be removed from LRF's board, and Liao was voted off the board.

of expression. That character, object, and purpose has been substantially altered as a result of the misconduct alleged herein. Instead, the Yahoo Trust was used as, and has become, nothing more than a source of funds for Wu and the LRF to spend as they pleased and for their own enrichment. This fundamental transformation of the Yahoo Trust substantially affects the interests of all potential beneficiaries, including Plaintiffs, because Yahoo Trust assets that were intended to benefit imprisoned Chinese dissidents were diverted from that purpose, depriving them of the benefits of the Yahoo Trust in the past, and because Yahoo Trust assets have been so depleted that imprisoned Chinese dissidents who wish to apply for funding in the future are substantially less likely to receive funding, if any Yahoo Trust assets even remain by that time.

93.     The unlawful activity alleged herein was continuing in nature, and could not reasonably have been expected to be the subject of a lawsuit until recently, because their character as a violation did not become evident until it was repeated over the course of several years. Only over time did the cumulative impact of the repeated failures to administer Yahoo Trust assets in good faith substantially alter the character of the Yahoo Trust and cause harm to Plaintiffs. Moreover, because Defendants repeatedly refused to answer questions put to them about the administration of the Yahoo Trust by Plaintiffs, Plaintiffs' representatives, and various third parties, and because Defendants administered Yahoo Trust assets in a deliberately non-transparent and obfuscating manner, Defendants concealed and prolonged the misconduct and violations herein.

### *ALTER EGO* ALLEGATIONS

94.     At all times relevant to this complaint, Wu and the LRF were *alter egos* of each other. Wu dominated the operation of the LRF, had *de facto* control over the LRF, unilaterally made all spending decisions, failed to hold formal board meetings, and failed to keep written minutes of board meetings. Wu also ignored the input and advice of other LRF board members,

and included them in public documents largely for appearance's sake. Wu also identified individuals as directors even though they had not agreed to be directors. For instance, Wu listed Professor Yu Ying-Shih ("Professor Yu"), a distinguished professor and recipient of a prestigious award from the Library of Congress, as a director on certain documents, despite the fact that Professor Yu had only agreed to be an advisor to the board. Wu was also described as "the only driving force" of the LRF by Yang Fengshi ("Yang"), an associate of Wu's, who also stated that the LRF had an "operating model of 'one-man-driving-all.'" Following Wu's death, Yang recommended that the LRF no longer be "directed by a single person," and that the "LRF should now be led by a real board of directors." As such, Wu and the LRF were at all relevant times *alter egos* of each other. *See Pencheng Si v. Laogai Research Found.*, 71 F. Supp. 3d 73, 104 (D.D.C. 2014) (finding plaintiff adequately alleged Wu was *alter ego* of LRF). Moreover, because the Yahoo Defendants received regular reports from Wu and the LRF in their role as trustees and as directors of the LHRO, the Yahoo Defendants knew of Wu's dominance and control of the LRF at all relevant times.

## FIRST CLAIM FOR RELIEF
### (Breach of Trust under the Common Law, and in Violation of the District of Columbia Uniform Trust Code D.C. Code § 19-1301.01, *et seq.*)
### Against the Yahoo Defendants and Does 1-20

95.     Plaintiffs re-allege and incorporate all allegations with the same force and effect as if fully restated herein.

96.     The Yahoo Defendants and Does 1-20 were trustees of the Yahoo Trust at all relevant times. As alleged herein, the Yahoo Defendants and Does 1-20 breached their duties as trustees by failing to administer the Trust in good faith, by willfully ignoring the systematic and unlawful depletion of Trust assets of which the Yahoo Defendants were aware, while benefiting

from the Trust, including by enjoying the Trust's reputation-enhancing effects, and by relying on the existence of the Trust to defeat shareholder proposals relating to human rights.

97.     The Yahoo Defendants and Does 1-20 were motivated by a desire to escape liability in connection with the 2007 Lawsuit and related liability, by their desire to repair and burnish their reputation, and by their fundamental lack of interest in the Yahoo Trust's mission of providing assistance to imprisoned Chinese dissidents, and by their lack of interest in putting in the effort required to faithfully discharge their duties as trustees, which created an incentive to do as little as possible.

98.     By their intentional and unlawful conduct, the Yahoo Defendants and Does 1-20 breached duties of trust owed to Plaintiffs, and caused the Yahoo Trust assets to be systematically and unlawfully depleted.

99.     Plaintiffs are entitled to damages from the Yahoo Defendants and Does 1-20 for their breach of trust in the amount required to restore the value of the Trust assets to what they would have been had the breach not occurred.

**SECOND CLAIM FOR RELIEF**
**(Unjust Enrichment, Disgorgement, and Restitution Under the Common Law)**
**Against the Estate of Harry Wu, the Laogai Research Foundation, and Does 1-20**

100.     Plaintiffs re-allege and incorporate all allegations with the same force and effect as if fully restated herein.

101.     Defendants Wu and LRF enjoyed enormous financial benefits as a result of their breaches of fiduciary duty. It would be inequitable for Defendants Wu and LRF to retain these benefits, at the expense of Plaintiffs and other Yahoo Trust beneficiaries and potential beneficiaries.

102.    Plaintiffs and other Yahoo Trust beneficiaries and potential beneficiaries are entitled to the establishment of a constructive trust imposed upon the benefits to Defendants Wu and the LRF from their unjust enrichment and inequitable conduct.

### THIRD CLAIM FOR RELIEF
### (Modification of Trust under the Common Law)
### Against All Defendants, including Does 1-20

103.    Plaintiffs re-allege and incorporate all allegations with the same force and effect as if fully restated herein.

104.    To the extent Wu or the LRF purports to be a beneficiary of the Yahoo Trust, justice and equity require that the Yahoo Trust be modified to expressly disclaim Wu or the LRF as beneficiaries, given the misconduct alleged herein.

### FOURTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)
### Against Defendants Wu, Callahan, Bell, and Does 1-20

105.    Plaintiffs re-allege and incorporate all allegations of this Complaint with the same force and effect as if fully restated herein.

106.    Defendants Wu, Callahan, Bell, and Does 1-20 served on the board of directors of the LHRO, which purported to oversee Yahoo Trust assets. In their role as directors, they owed fiduciary duties to the Beneficiary Plaintiffs. By the misconduct alleged herein, including the wholesale abandonment and abdication of their oversight responsibilities over Wu and the LRF's use of Yahoo Trust assets, they breached these duties, and caused the unlawful depletion of Yahoo Trust assets.

### FIFTH CLAIM FOR RELIEF
**(Third-Party Liability for Breach of Trust and Breach of Fiduciary Duty)**
**Against Yahoo**
**(In the Alternative to the First Claim for Relief against Yahoo)**

107.    Plaintiffs re-allege and incorporate all allegations of this Complaint with the same force and effect as if fully restated herein.

108.    To the extent Yahoo is deemed not to be a trustee of the Yahoo Trust, Yahoo is liable as a third party for knowingly assisting and participating in Defendants Callahan's and Bell's breaches of trust and fiduciary duty.

### SIXTH CLAIM FOR RELIEF
**(Breach of Settlement Agreement)**
**Against All Defendants, including Does 1-20**

109.    Plaintiffs re-allege and incorporate all allegations of this Complaint with the same force and effect as if fully restated herein.

110.    Plaintiff Yu is a party to the Settlement in the 2007 Lawsuit, and Beneficiary Plaintiffs are third-party beneficiaries of the Settlement.

111.    Plaintiff Yu agreed to dismiss the 2007 Lawsuit in exchange for, among other things, the creation of the Yahoo Trust for the benefit of Chinese dissidents imprisoned for exercising their freedom of expression. The Defendants breached the agreement by their failure to do so, as alleged herein, harming Plaintiff Yu and Beneficiary Plaintiffs, and depriving Plaintiff Yu and Beneficiary Plaintiffs of the benefit of this aspect of the Settlement.

### SEVENTH CLAIM FOR RELIEF
**(Civil Conspiracy)**
**Against All Defendants, including Does 1-20**

112.    Plaintiffs re-allege and incorporate all allegations of this Complaint with the same force and effect as if fully restated herein.

113.    The Yahoo Defendants, Wu, the LRF, and Does 1-20 entered into an agreement to allow the Yahoo Trust to be unlawfully depleted. The Yahoo Defendants benefited from this scheme by avoiding the cost and burden that proper administration of the Yahoo Trust would have required of the Yahoo Defendants, while simultaneously enjoying the reputation-enhancing benefits of the Yahoo Trust, as well as the ability to rely on the existence of Yahoo Trust to defeat shareholder proposals. Wu and the LRF benefited from the scheme by using Yahoo Trust to enrich themselves, including by engaging in rampant self-dealing. As a result of the agreement and Defendants' acts in furtherance of the agreement, the Yahoo Trust assets were depleted, harming lawful beneficiaries, including Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.    Damages against all Defendants to which Plaintiffs may be entitled pursuant to each of the counts alleged in this Complaint.

B.    Disgorgement of all monies, including interest, taken by Wu and the LRF and used to their benefit and to the detriment of Plaintiffs in such amounts, including but not limited to the disgorgement and sale of real property as necessary to satisfy the judgment awarded herein.

C.    Specific performance of the Settlement.

D.    Declaration that any Settlement provision purporting to benefit Wu or the LRF is unenforceable.

E.    Restoration of Yahoo Trust assets, to be deposited in a constructive trust.

F.    Accounting of Yahoo Trust assets and expenditures since the establishment of the Yahoo Trust.

G.    Constructive trust over all remaining Yahoo Trust assets.

H.     Creation of a constructive trust into which Defendants shall pay damages, disgorgement, and restitution.

I.     Tracing of Yahoo Trust assets wrongfully disposed of and recovery of such assets or their proceeds.

J.     Modification of the Yahoo Trust to make Chinese dissidents imprisoned for exercising their freedom of expression the sole beneficiaries of Yahoo Trust assets.

K.     Plaintiffs' reasonable attorneys' fees and costs.

L.     Such other and further relief, including any additional equitable relief, as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial.

Dated: April 11, 2017

**COHEN MILSTEIN SELLERS & TOLL PLLC**
By: */s/ Times Wang*
Daniel S. Sommers (D.C. Bar 416549)
S. Douglas Bunch (D.C. Bar 974054)
Times Wang (D.C. Bar 1025389)
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com
twang@cohenmilstein.com
1100 New York Ave NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

*Counsel for Plaintiffs*