## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HE DEPU, *et al*., | Case No. 1:17-cv-00635-JDB |
| Plaintiffs, | Judge John D. Bates |
| v. | **ORAL HEARING REQUESTED** |
| YAHOO! INC., *et al.*, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS YAHOO! INC., RONALD BELL, AND MICHAEL CALLAHAN'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     RELEVANT BACKGROUND .............................................................................. 2

    A.      The Governing Legal Standard On This Motion To Dismiss............................... 2

    B.      The Wang v. Yahoo! Lawsuit, The Wang Settlement, And All That
        Followed .............................................................................................................. 3

III.    ALL OF PLAINTIFFS' CLAIMS AGAINST THE YAHOO DEFENDANTS
       SHOULD BE DISMISSED WITH PREJUDICE.................................................. 9

    A.      Plaintiffs Lack Standing To Bring Their Claims. .................................................. 9

    B.      Plaintiffs Other Claims Against The Yahoo Defendants (Their Sixth And
        Seventh Claims) Fail As Well............................................................................. 15

    C.      Plaintiffs' Six Claims Against The Yahoo Defendants (Their First And
        Their Third Through Seventh Claims) Are Also Time-Barred........................... 17

IV.     THE COURT SHOULD NOT GRANT PLAINTIFFS LEAVE TO AMEND.............. 25

V.      CONCLUSION.................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander v. Wash. Gas Light Co.*,
   2006 WL 3798858 (D.C. Cir. Aug. 24, 2006) ........................................................................ 25

*Alpert v. Riley*,
   274 S.W.3d 277 (Tex. App. 2008) ........................................................................................... 14

*Am. Dental Ass'n v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) ................................................................................................ 3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................................. 2, 3

*Beard v. Edmondson & Gallagher*,
   790 A.2d 541 (D.C. 2002) ...................................................................................................... 22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................. 3

*Bowhead Info. Tech. Servs., LLC v. Catapult Tech., Ltd.*,
   377 F. Supp. 2d 166 (D.D.C. 2005) ....................................................................................... 16

*Bussineau v. President & Directors of Georgetown Coll.*,
   518 A.2d 423 (D.C. 1986) ...................................................................................................... 22

*Carter v. Washington Metro. Area Transit Auth.*,
   764 F.2d 854 (D.C. Cir. 1985) ............................................................................................... 17

*Childress v. Northrop Corp.*,
   618 F. Supp. 44 (D.D.C. 1985) .............................................................................................. 22

*Coverdell v. Mid-South Farm Equipment Ass'n*,
   335 F.2d 9 (6th Cir. 1964) ........................................................................................................ 9

*De May v. Moore & Bruce, LLP*,
   584 F.Supp.2d 170 (D.D.C. 2008) ........................................................................................... 9

*DePippo v. Chertoff*,
   453 F. Supp. 2d 30 (D.D.C. 2006) .................................................................................... 18, 21

*Drake v. McNair*,
   998 A.2d 607 (2010) ......................................................................................................... 22, 23

*Edmond v. Am. Educ. Servs.*,
   2010 WL 4269129 (D.D.C. Oct. 28, 2010) ........................................................................... 16

ii

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Felter v. Kempthorne*,
  473 F.3d 1255 (D.C. Cir. 2007)..................................................................... 23

*Fischer v. Eldon Stevenson, Jr. Scholarship Fund Trust*,
  2005 Tenn. App. LEXIS 518 (Mar. 3, 2005)................................................ 13

*Freedom Republicans v. Federal Elec. Comm'n*,
  13 F.3d 412 (D.C. Cir. 1994)......................................................................... 10

*Gordon v. Nat'l Youth Work Alliance*,
  675 F.2d 356 (D.C. Cir. 1982)....................................................................... 17

*Guaranty Trust Co. v. York*,
  326 U.S. 99 (1945)......................................................................................... 18

*Habib v. Raytheon Co.*,
  616 F.2d 1204 (D.C. Cir. 1980)..................................................................... 18

*Halberstam v. Welch*,
  705 F.2d 472 (1983)....................................................................................... 17

*Hall v. Clinton*,
  285 F.3d 74 (D.C. Cir. 2002)......................................................................... 17

*Hendel v. World Plan Exec. Council*,
  705 A.2d 656 (D.C. 1997).............................................................................. 22

*Himmelfarb v. Horwitz*,
  536 A.2d 86 (1987)................................................................................ 9, 11, 14

*Hooker v. Edes Home*,
  579 A.3d 608 (D.C. 1990).............................................................................. 12

*Ibrahim v. Mid-Atl. Air of DC, LLC*,
  802 F. Supp. 2d 73 (D.D.C. 2011)................................................................... 3

*Jing v. Yahoo Inc.*,
  Case No. 7203 (Del. Chanc. Ct. 2012) ............................................................ 8

*Jung v. Mundy, Holt & Mance, P.C.*,
  372 F.3d 429 (D.C. Cir. 2004)....................................................................... 18

*Kaar v. Wells Fargo Bank, N.A.*,
  2016 WL 3068396 (N.D. Cal. June 1, 2016)................................................. 15

iii

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Kania v. Chatham,*
   297 N.C. 290 (1979) ........................................................................................ 12, 13

*Kavanagh v. Noble,*
   332 U.S. 535 (1947) ............................................................................................. 17

*Khan v. Parsons Global Servs.,*
   521 F.3d 421 (D.C. Cir. 2008) .............................................................................. 2

*Laborers' Dist. Council of the Metro. Area of Philadelphia & Vicinity v. Bd. of Trustees of Laborers' Indus. Pension Fund of Philadelphia,*
   2008 U.S. Dist. LEXIS 44396 (E.D. Pa. June 5, 2008) ....................................... 14

*Ling Yuan Hu v. George Wash. Univ.,*
   766 F. Supp. 2d 236 (D.D.C. 2011) ..................................................................... 18

*Long v. United States,*
   604 F. Supp. 2d 119 (D.D.C. 2009) ..................................................................... 23

*Macklin v. Spector Freight Systems, Inc.,*
   478 F.2d 979 (D.C. Cir. 1973) ............................................................................. 17

*Madera v. Metro. Life Ins. Co.,*
   2002 WL 1453827 (S.D.N.Y. July 3, 2002) ......................................................... 22

*Massey v. D.C.,*
   2015 WL 9310126 (D.C. Cir. Dec. 9, 2015) ................................................... 2, 15

*Matijkiw v. Strauss,*
   2011 D.C. Super. LEXIS 13 (D.C. Super. Ct. June 17, 2011).................................. 9

*Meng v. Schwartz,*
   305 F. Supp. 2d 49 (D.D.C. 2004) ....................................................................... 17

*Moldea v. N.Y. Times Co.,*
   22 F.3d 310 (D.C. Cir. 1994) ............................................................................... 25

*Mullin v. Wash. Free Weekly,*
   785 A.2d 296 (2001) ............................................................................................ 23

*Nader v. Democratic Nat'l Comm.,*
   567 F.3d 692 (D.C. 2009) .................................................................................... 23

*Nat'l Realty Trust v. Neelon Mgmt. Co., Inc.,*
   1973 WL 398 (D.D.C. July 6, 1973) .................................................................... 18

iv

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Nortel Networks, Inc.v. Gold & Apel Transfer, S.A.*,
    298 F. Supp. 2d 81 (D.D.C.2004) ........................................................... 16

*Randolph v. ING Life Ins. & Annuity Co.*,
    973 A.3d 702 (D.C. 2009) ...................................................................... 11

*Rearden v. Riggs Nat'l Bank*,
    677 A.2d 1032 (D.C. 1996) .................................................................... 15

*Resolution Trust Corp., v. Gardner*,
    788 F. Supp. 26 (D.D.C. 1992) ............................................................... 18

*Rodgers v. Ocwen Loan Servicing, LLC*,
    2015 WL 8003209 (N.D. Tex. Dec. 7, 2015) ......................................... 15

*Sandza v. Barclays Bank PLC*,
    151 F. Supp. 3d 94 (D.D.C. 2015) .......................................................... 23

*Schalkenbach Found. v. Lincoln Found.*,
    208 Ariz. 176 (2004) .............................................................................. 13

*Si v. Laogai Research Found.*,
    71 F. Supp. 3d 73 (D.D.C. 2014) ............................................................. 3

*Si v. Laogai Research Found.*,
    Case No. 1:09-cv-023888-KBJ (D.D.C.) .......................................... 8, 21

*Sperling v. Donovan*,
    104 F.R.D. 4 (D.D.C. 1984) ................................................................... 22

*St. Croix Chippewa Indians of Wis. v. Salazar*,
    384 F. App'x 7 (D.C. Cir. 2010) ............................................................ 10

*St. Croix Chippewa Indians of Wisconsin v. Kempthorne*,
    2008 WL 4449620 (D.D.C. Sept. 30, 2008) ......................................... 10

*State v. Hutcherson*,
    96 S.W.3d 81 (2003) .............................................................................. 13

*Stevens v. Sodexo, Inc.*,
    846 F. Supp. 2d 119 (D.D.C. 2012) .................................................. 2, 15

*Swanson v. Martins*,
    2017 WL 123722 (D.D.C. Jan. 11, 2017) ......................................... 1, 16

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Thompson, Cobb, Bazilio & Assocs., P.C. v. Grant Thornton LLP,*
  2002 WL 458997 (D.D.C. Mar. 25, 2002) ............................................................. 18

*U.S. Ecology, Inc. v. U.S. Dept. of Interior,*
  231 F.3d 20 (D.C. Cir. 2000) .......................................................................... 9, 10

*Waldon v. Covington,*
  415 A.2d 1070 (D.C. 1980) .............................................................................. 17

*Wang v. Yahoo! Inc.,*
  Case No. 4:07-cv-02151-CW (N.D. Cal.) ................................................................ 3

*Williams v. Bd. of Trustees of Mt. Jezreel Baptist Church,*
  589 A.3d 901 (D.C. 1991) ............................................................................. 1, 12

*Zheng v. Yahoo! Inc.,*
  2009 WL 4430297 (N.D. Cal. Dec. 2, 2009) ............................................................. 6

## Statutes

D.C. Code § 12-301(8)...................................................................................... 18

D.C. Code § 19-1310.05 .................................................................................... 21

## Other Authorities

G. Bogert, THE LAW OF TRUSTS AND TRUSTEES § 414 (Rev. 2d Ed. Supp. 2003) ...................... 13

RESTATEMENT (SECOND) OF TRUSTS § 200 (1959)................................................... 11, 15

## I.       INTRODUCTION

China's treatment of political dissidents poses important human-rights concerns, but this time-barred lawsuit—brought by plaintiffs without standing to sue—is not the proper vehicle to address them.  Plaintiffs' claims against Yahoo! Inc. and its former general counsels Ronald Bell and Michael Callahan (the "Yahoo Defendants") should be dismissed for three main reasons.

*First*, plaintiffs lack standing to sue.  As Chinese dissidents, plaintiffs contend they are the beneficiaries of a trust created to assist individuals like them generally, but the law is clear that members of such a broad, "uncertain" class lack standing.  *Williams v. Bd. of Trustees of Mt. Jezreel Baptist Church*, 589 A.2d 901, 909 (D.C. 1991).  Plaintiffs ask the Court to ignore this rule and extend standing to all "potential beneficiaries" of the trust—a class that (on plaintiffs' theory of the case) is comprised of likely hundreds of thousands of unknown past and future dissidents.  But courts regularly reject far less radical attempts to confer standing on potential beneficiaries because doing so invites "recurring vexatious litigation."  *Id.*  In any event, the actual Trust itself—erroneously described by plaintiffs—limits its scope "to mak[ing] distributions … in order to resolve claims" against Yahoo by "persons … who have been imprisoned [or threatened with prosecution] for expressing their views through Yahoo."  Decl. of Matt Kline ("KD") Ex. 1 at 70.[1]  Most Plaintiffs fail to allege such a nexus, and even when they do so indirectly, they are still mere "potential beneficiaries" of the Trust, *id.* at 68, who, by definition, lack standing to file suit, *see Williams*, 589 A.3d at 904.

*Second*, plaintiffs' breach of settlement claims fail for similar reasons.  All but one plaintiff is *not* a party to the 2007 settlement at issue, and therefore lacks standing.  *See Swanson*

---

[1] Plaintiffs' complaint incorporates the Trust by reference, *e.g.*, Dkt. 1 ("Compl.") ¶¶ 47-66, meaning the Court may consider it on this Motion.  *Infra* at 3.  The Yahoo Defendants have filed a request asking the Court to consider this source and other judicially noticeable materials ("RJN").

*v. Martins*, 2017 WL 123722, at *2 (D.D.C. Jan. 11, 2017).  The one plaintiff with standing

under the agreement, Yu Ling, fails to state a claim.  She identifies no specific provision of the

2007 settlement that the Yahoo Defendants breached.  This defeats her claim.  *See Stevens v.*

*Sodexo, Inc.*, 846 F. Supp. 2d 119, 125 (D.D.C. 2012).  Indeed, there can be no dispute that

Ms. Yu received any money owed to her under the 2007 settlement.  Ms. Yu conceded as much

in settling yet another lawsuit she filed and settled in 2011.

*Third*, plaintiffs' claims are time-barred.  A three-year limitations period governs each of

their claims, and the complained-of conduct here—alleged financial waste and "abdicat[ion]" of

fiduciary duties—occurred more than three years before the filing of this suit.  These (erroneous)

allegations, moreover, were widely reported in a variety of public sources, including three prior

lawsuits (one by Ms. Yu) and in various major media outlets, putting all of the plaintiffs on

notice of their alleged injuries.  In short, this case can and should be dismissed, with prejudice.[2]

## II.     RELEVANT BACKGROUND

Plaintiffs' complaint is replete with misleading and inaccurate allegations that have been

asserted publicly for years.  Even accepting these erroneous allegations as true (when pleaded

properly), plaintiffs still fail to state a claim, and their complaint should be dismissed.

### A.     The Governing Legal Standard On This Motion To Dismiss

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Conclusory allegations and formulaic recitations of

the elements of a claim do not suffice.  *See id.*; *Massey v. D.C.*, 2015 WL 9310126, at *1 (D.C.

Cir. Dec. 9, 2015) ("sparse, conclusory, and unsupported allegations [a]re inadequate to allow

the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[2] Plaintiffs' claims are also subject to arbitration.  *See* KD Ex. 2 at 117.  In filing this Motion, the Yahoo Defendants seek the dismissal of plaintiffs' claims, but do not waive their right to arbitrate.  *See Khan v. Parsons Global Servs.,* 521 F.3d 421, 427 (D.C. Cir. 2008).

alleged"); *Si v. Laogai Research Found.*, 71 F. Supp. 3d 73, 84 (D.D.C. 2014) ("plaintiff must provide 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

Legal conclusions masquerading as facts do not meet plaintiff's burden, *see Iqbal*, 556 U.S. at 678, and "speculative" allegations are insufficient, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Allegations also need not be assumed true if there are "obvious alternative explanation[s] [for defendants' actions], which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer."  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).  Thus, even where allegations taken as true "are consistent with" unlawful conduct, the complaint still must be dismissed if the allegations are "more likely explained by, lawful … behavior."  *Iqbal*, 556 U.S. at 680.  These pleading requirements apply to each element of a plaintiff's claim, *id*. at 680-84, and plaintiffs cannot seek discovery to fix a deficient complaint.  *See id* at 678-79.

In deciding this motion, the Court may consider documents referenced in a complaint as well as judicially noticeable materials.  Here, that includes the operative agreements cited in the complaint, filings in related lawsuits, and various newspaper articles.  *See Ibrahim v. Mid-Atl. Air of DC, LLC*, 802 F. Supp. 2d 73, 75 (D.D.C. 2011) ("court may consider facts alleged in the complaint, documents attached to or incorporated in the complaint, matters of which courts may take judicial notice, and documents appended to a motion to dismiss whose authenticity is not disputed, if they are referred to in the complaint and integral to a claim"); *see also* RJN *passim*.

**B.     The *Wang v. Yahoo!* Lawsuit, The *Wang* Settlement, And All That Followed**

As noted in plaintiffs' complaint, Compl. ¶ 30 *et seq*., this lawsuit arises from another case filed against Yahoo more than 10 years ago, which settled in October 2007.  *See Wang v. Yahoo! Inc.*, Case No. 4:07-cv-02151-CW (N.D. Cal.).  That *Wang* lawsuit, like this present one, was primarily brought by Chinese political activists.  *Wang*, *supra*, Dkt. 51.

*1. Yahoo China's operations.*  Yahoo Hong Kong Limited ("YHK") entered the Chinese market in 1999, and through a Chinese subsidiary (Yahoo China) began offering Yahoo Mail, a personal e-mail service, in China.  *Id.* ¶¶ 14-16; Compl. ¶ 29.  Years later, members of Congress raised concern that the Chinese government (the "PRC") had prosecuted political activists using information obtained in the PRC from several technology companies, including Yahoo China. KD Ex. 5 at 138 (Feb. 15, 2006 Hr'g Tr.).  Congress held hearings on the matter in early 2006, at which representatives from Yahoo and other companies testified.  *Id.*

*2. The 2007* **Wang v. Yahoo** *litigation.*  On April 18, 2007, two imprisoned Chinese political activists, Wang Xiaoning and Shi Tao, and Mr. Wang's wife Yu Ling (a plaintiff in this *He* case) filed suit against Yahoo and YHK in California, alleging that they violated federal and state law by turning over Mr. Wang and Mr. Shi's e-mail records to the PRC.  *See Wang*, *supra*.

Yahoo vigorously defended against the claims, and moved to dismiss the case in August 2007.  *Id.* Dkt. 65.  The motion made clear that any disclosure of e-mails by YHK's subsidiary was made *involuntarily*, in response to subpoenas from the PRC.  *Id.* at 3 & n.3 (Hong Kong Privacy Commissioner: "the disclosure of [i]nformation … was not a voluntary act, … but was compelled under the force of PRC law").  Yahoo showed that compliance with PRC law, including its subpoenas, was mandated by both PRC and American law.  *Id.* at 5.  Yahoo disputed plaintiffs' contention that Wang's and Shi's criminal convictions were caused by Yahoo China's alleged disclosure.  *Id.* at 4 n.4.  It further argued that the claims at issue were not judiciable under the political question doctrine and that the conduct challenged—responding to lawful subpoenas—was privileged under federal, California, and international law.  *Id.* at 4-35.

*3. The* **Wang** *settlement*.  On November 6, 2007, while these motions were pending, Yahoo's then-CEO Jerry Yang testified before the U.S. House of Representatives Committee on Foreign Affairs.  Representative Tom Lantos and others criticized Yahoo.  *See* KD Ex. 6 at 480,

4

483.  Two days after the hearing, Yahoo agreed to settle the *Wang* case.  *See Wang*, Dkt. 114; KD Ex. 7 (*Washington Post*:  "The pressures by Congress on Jerry Yang were of tremendous importance to making this settlement happen,' said Morton H. Sklar, executive director of the World Organization for Human Rights USA, which represents the Chinese families.").

In exchange for the *Wang* plaintiffs agreeing to dismiss their lawsuit with prejudice, Yahoo agreed to pay $3.2 million to the families of plaintiffs Wang and Shi and agreed to pay $17.3 million to the Laogai Research Foundation ("LRF") to establish the Yahoo Human Rights Fund ("YHRF").  *See* KD Ex. 2 (*Wang* settlement agreement).  The LRF is an organization founded by Harry Wu, himself a former Chinese political prisoner who at the time of the *Wang* settlement had become a leading activist for Chinese political prisoners.  *See* Compl. ¶ 24, 25; KD Ex. 8.  The LRF was to use the $17.3 million for three purposes:  (1) to provide humanitarian and legal assistance to people in China imprisoned or threatened with imprisonment for expressing themselves through Yahoo, (2) to resolve claims by such persons against Yahoo, and (3) to provide up to $1 million per year to the LRF to fund its "operating expenses" and its "educational work conducted in the United States in support of human rights."  KD Ex. 2 at 112.

The *Wang* plaintiffs were represented by counsel in this resolution.  *See* KD Ex. 7; *Wang*, Dkt. 114 at 2 (stipulation of dismissal by Morton Sklar, Roger Myers, Karen Parker on behalf of plaintiffs).  Harry Wu executed the settlement on behalf of plaintiffs, after obtaining power of attorney for each plaintiff.  *See* KD Ex. 2 at 122-24 (power of attorney executed by Yu Ling on behalf of herself and her husband Wang Xiaoning; power of attorney executed by Gao Qingsheng on behalf of herself and her son Shi Tao).  As required by the *Wang* settlement, Yahoo paid plaintiffs $3.2 million and provided $17.3 million to the LRF.  *See* Compl. ¶ 37.

*4. The operations of the LRF and the YHRF.*  Shortly after execution of the *Wang* settlement in 2007, major national newspapers, including the *Wall Street Journal*, *New York*

*Times*, and *Washington Post* began reporting on the LRF's work and how the *Wang* settlement funds were being used.  *See* KD Exs. 8-10.  The stories reported that the LRF used the settlement proceeds to purchase and fund the LRF's new Laogai Museum in Washington D.C., which documented China's treatment of political prisoners.  *Id.*  The LRF also used the funds to settle claims filed by Chinese political activists, including Li Zhi and Jiang Lijun.  *See* Compl. 1 ¶ 55 n.5.  Yahoo also defended—and defeated—claims brought by other activists.[3]

5. *2009 amendment to the* **Wang** *settlement.*  In June 2009, *Wang* settlement was amended.  Under the terms of the amendment, the LRF transferred $3.55 million to a new Yahoo Irrevocable Human Rights Trust ("Trust"), and the remaining funds were transferred to a new organization called the Laogai Human Rights Organization, Inc. ("LHRO").  *See* KD Ex. 3 (June 12, 2009 Amendment).  The three purposes of the original settlement funds, *supra* at 5, were divided between the Trust and LHRO.  The Trust had only one purpose: "to resolve claims against Yahoo Inc. entities, subsidiaries, or affiliates by (a) persons primarily in or from the People's Republic of China … who have been imprisoned for expressing their views through Yahoo, or (b) any persons threatened with prosecution or imprisonment for expressing their views through Yahoo."  *Id.* Ex. 1 at 66 (Trust Overview); *id.* at 69-70 ("The trustees shall pay such part (or all) of the net income and/or principal of the trust property, *in their discretion, in order to resolve claims against Yahoo Inc. entities, subsidiaries, or affiliates* by (a) persons primarily in or from the People's Republic of China … who have been imprisoned for expressing their views through Yahoo, or (b) any persons threatened with prosecution or imprisonment for expressing their views through Yahoo.") (emphases added).  The LHRO was to provide up to $1

---

[3] *See Zheng v. Yahoo! Inc.*, 2009 WL 4430297, at *4-5 (N.D. Cal. Dec. 2, 2009) (dismissing claims against Yahoo with prejudice).  Yahoo made clear that while it "disagrees with the PRC's restrictions on freedom of expression and privacy, this litigation is not the place to change American foreign policy promoting investment in China and requiring companies operating abroad to comply with local law."  *Zheng*, Case No. 3:08-cv-01068-MMC, Dkt. 62 at 1.

million a year to the LRF to funds its operational expenses and additional funds to the LRF for "humanitarian and legal assistance" to qualifying Chinese activists.  *See id.* at 7 (LHRO Overview); *id.* at 14 (LHRO Articles of Incorporation:  LHRO's purpose is to "fund the projects and programs and administrative expenses of the [LRF]").  The LHRO's bylaws granted it little discretion in approving the LRF's requests for funds to supports operational expenses.  Requests for funds "shall be approved, and not otherwise subject to the discretion of the [LHRO] Board," after a "presentation by [the] LRF of a budget and programs overview for the pending disbursement, and a report on the use of funds previously disbursed."  *Id.* at 8; *see id.* at 25.

Yahoo was neither a director or trustee of the Trust or LHRO.  It was the merely the Trust's "Donor," and its role was limited to the power to appoint and remove a single trustee and director of the Trust and LHRO, respectively.  *See id.* at 69.  Michael Samway was the original director and trustee named by Yahoo.  *Id.* at 6.  He was replaced as director and trustee by Mr. Callahan, who served as a director and trustee "until his departure from Yahoo" in July 2012, at which point he was replaced as director and trustee by Mr. Bell.  Compl. ¶¶ 21-22.

Under the Trust incorporation documents, the LHRO was the "known beneficiary" of the Trust, and "applicants for assistance funding" were deemed "potential beneficiaries."  KD Ex. 1 at 64.  The Trust terminated by its own terms on June 12, 2014.  *Id.* at 70.

**6.  *Criticisms of Harry Wu and the LRF.***  At the time of the *Wang* settlement, Mr. Wu was a celebrated human-rights activists with close ties to Congressional leaders.  *E.g.*, KD Ex. 5 at 217, 259.  In the years following the *Wang* settlement, however, Mr. Wu became the subject of significant controversy and was involved in several lawsuits, including a case brought by plaintiff Yu Ling.  *See* KD Ex. 11 (*New York Times* article); Compl. ¶¶ 39, 58.

In her lawsuit filed in 2011—*i.e.*, over *six years* ago—Ms. Yu accused Mr. Wu and the LRF of mismanaging the LRF and of misusing the settlement proceeds, including by purchasing

a $1.45 million property in Washington, DC, and by "otherwise breach[ing]" duties owed to her and her husband.  *Yu v. Wu*, Case No. 1:11-cv-00092-JCC-JFA (E.D. Va.), Dkt. 1 at 16-17.  The lawsuit received media attention when filed.  *See* KD Ex. 12 ("The Chinese couple who sued Yahoo for its role in the husband's being sentenced to 10 years of forced labor in a Chinese prison says the man who brokered the settlement with Yahoo extorted millions of dollars from them.").  Ms. Yu settled her lawsuit in late 2011, and in doing so, she granted the Trust, the LRF, and their directors and affiliates broad releases.  *See* KD Ex. 16 at 511.

In 2009, a former employee of the LRF (Si Pengcheng) filed another lawsuit against the LRF and Wu, alleging that Wu violated the False Claims Act by mismanaging LRF funds and defrauding the government.  *See Si v. Laogai Research Found.*, Case No. 1:09-cv-023888-KBJ (D.D.C.).  As plaintiffs in this *He* case contend in their complaint, Compl. ¶ 82, the *Si* case was a "public lawsuit making serious allegations against Wu and the LRF," and Si's allegations "came to light" in public when, in 2012, the court unsealed the *Si* complaint.

*7. Criticism of the Trust by shareholders.*  In 2011, the Chinese dissident Jing Zhao, also a Yahoo shareholder, introduced a public "proposal urging that Yahoo take various measures to protect human rights" and "calling for Yahoo to 'supervise the abused [Trust]' in light of information that it was being mismanaged."  Compl. ¶ 68.  After his proposal was soundly defeated, Mr. Jing filed suit asserting the same claims.  *See Jing v. Yahoo Inc.*, Case No. 7203 (Del. Chanc. Ct. 2012).  The Complaint cited alleged "evidence [that] … [Yahoo]'s directors and officers were aware that Harry Wu was misappropriating and misusing Fund assets and [Yahoo's] directors and officers did not use proper judgment or due care when establishing the Fund and when it failed to prohibit or end these wrongdoings."  KD Ex. 17 ¶ 9.  It further alleged "that Yahoo may have materially participated in the malfeasances…."  *Id*. ¶ 10.  Mr. Jing

was represented by Morton Sklar, the same lawyer who represented plaintiff Yu Ling in her the *Wang* lawsuit and settlement.  *See id.*; *supra* at 5.

**8.** ***This litigation.***   On April 11, 2017, plaintiffs He Depu, Yang Zili, Li Dawei, Wang Jinbo, Ouyang Yi, Xu Yonghai, Xu Wangping, and Ms. Yu filed this lawsuit against the Yahoo Defendants, the LRF, the LHRO, the Trust,[4] and the Estate of Harry Wu.[5]  Each plaintiff, except Yu Ling, claim to be political activists who were imprisoned in China.  *Id.* ¶¶ 11-17.  Ms. Yu is the only plaintiff who claims to be a party to the 2007 settlement agreement in *Wang*.  *Id.* ¶ 19.  The Complaint asserts claims against the Yahoo Defendants for breach and modification of trust, *id.* ¶¶ 95-99, 103-04, breach of settlement, *id.* ¶ 109, and civil conspiracy, *id.* ¶¶ 112-13.  It also alleges a claim for breach of fiduciary duty against Messrs. Bell and Callahan, *id.* ¶¶ 105-06, and a third-party liability claim for breaches of trust and fiduciary duty against Yahoo, *id.* ¶¶ 107-08.

## III.   ALL OF PLAINTIFFS' CLAIMS AGAINST THE YAHOO DEFENDANTS SHOULD BE DISMISSED WITH PREJUDICE.

### A.   Plaintiffs Lack Standing To Bring Their Claims.

The Complaint should be dismissed because Plaintiffs lack standing to sue.  All plaintiffs (save for Ms. Yu) fail the Article III standing test because the Court cannot redress their asserted injuries.  *See U.S. Ecology, Inc. v. U.S. Dept. of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000).  All Plaintiffs (including Ms. Yu) lack standing to sue under trust law (the basis for plaintiffs' First, Third, Fourth, and Fifth Claims) because they are not "beneficiaries with an interest" in the trust. *Himmelfarb v. Horwitz*, 536 A.2d 86, 92 (1987).

---

[4] The Trust is not a proper party.  *See Matijkiw v. Strauss,* 2011 D.C. Super. LEXIS 13, at *14-15 (D.C. Super. Ct. June 17, 2011) ("while the plaintiffs ask the court to impose judgment against the trusts, they are really seeking judgment against the trustee, because a trust is merely the description of a relationship between the legal and equitable owners of property"); *accord De May v. Moore & Bruce, LLP*, 584 F.Supp.2d 170, 185-86 (D.D.C. 2008); *Coverdell v. Mid-South Farm Equipment Ass'n*, 335 F.2d 9, 11-13 (6th Cir. 1964) ("overwhelming weight of authority" holds that a "[t]rust cannot be sued").  In any event, the Trust no longer exists.  *Supra* at 7.

[5] Harry Wu died April 26, 2016.  *See* Compl. ¶ 24.

**1. *Plaintiffs lack Article III standing.*** Plaintiffs claim they are "substantially less likely" to receive assistance from the Trust or that they received "less … in assistance than [they] would have" as a result of Mr. Wu's and others alleged mismanagement. Compl. ¶ 92. Such speculative theories of injury and redress—based on the possibility that Plaintiffs might have been awarded discretionary funding, from a source that had no legal obligation to give them any funding—are insufficient for Article III purposes. *See U.S. Ecology*, 231 F.3d at 24; *Freedom Republicans v. Federal Elec. Comm'n*, 13 F.3d 412, 415 (D.C. Cir. 1994) ("Compliance with the mandates of Article III is an essential prerequisite to the exercise of federal jurisdiction.").

In *St. Croix Chippewa Indians of Wisconsin v. Kempthorne*, 2008 WL 4449620, at *1-2 (D.D.C. Sept. 30, 2008), for example, the court rejected a similar claim. There, a Native American tribe applied to the Interior Department to have off-reservation land taken into federal trust so the tribe could build a casino. Prior to any agency decision, the tribe filed suit, alleging the Department's procedure for reviewing its application violated federal law. *Id.* at *3. The Department moved to dismiss, arguing that the tribe lacked standing to sue because its application had not yet been denied. The court agreed. *Id.* at *4, 7. The tribe's "only claimed injury is the increased 'possibility' that the … application will be denied. While plaintiff contends its application may 'in all probability' be denied, such predictions are not enough to withstand the injury in fact requirement[.]" *Id.* at *7. On appeal, the D.C. Circuit affirmed, holding that the tribe lacked Article III standing because it could not allege a "substantial probability" that the challenged action "will harm its concrete and particularized interests." *St. Croix Chippewa Indians of Wis. v. Salazar*, 384 F. App'x 7, at *3 (D.C. Cir. 2010).

Here, plaintiffs similarly fail to allege "a substantial probability" of harm or redress. They do not and cannot possibly establish why their requests for awards had to be granted, much less why they were more meritorious than other possible applicants' requests for such funds.

10

Nor do those who claim to have received less in assistance allege why they would have received more absent the alleged misconduct or even whether they received less than they requested and in what specific amounts.  Thus, plaintiffs have not and cannot establish the "concrete and particularized interests" required to confer standing under Article III.  *Id.*

   **2.  *Plaintiffs lack standing under trust law (the basis for their First, Third, Fourth, and Fifth Claims against the Yahoo Defendants).***  The "only parties with standing to challenge the administration of a private trust … are the beneficiaries with an interest in the aspect challenged."  *Himmelfarb*, 536 A.2d at 92; *see* RESTATEMENT (SECOND) OF TRUSTS § 200 (1959) ("No one except a beneficiary or one suing on his behalf can maintain a suit against the trustee to enforce the trust or to enjoin or obtain redress for a breach of trust."); *Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702, 709 (D.C. 2009) ("Breach of fiduciary duty is not actionable unless injury accrues to the beneficiary.").  Plaintiffs are not beneficiaries of the Trust for at least two reasons.  *First*, they are at most "potential beneficiaries" of the Trust, which does not confer standing.  *Second*, four plaintiffs fail to allege that they were "imprisoned" or "threatened with prosecution" for "expressing their views through" Yahoo, a requirement to qualify for assistance.

   a.  The Trust guaranteed no asserted dissident any relief.  Plaintiffs' fiduciary duty and trust claims fail because they are at most "potential beneficiaries" of the Trust and thus lack standing to sue.  The named beneficiary of the Trust is the LHRO.  KD Ex. 1 at 68 (the "known beneficiary [of the Trust] is the [LHRO]").  The LHRO is the only entity that has standing to sue for a breach of fiduciary duty.  *See Himmelfarb*, 536 A.2d at 92.

   "[A]pplicants for assistance funding"—like plaintiffs—are defined in the Trust Overview as mere "[p]otential beneficiaries" of the Trust.  KD Ex. 1 at 68.  Such an "indefinite class" of people—totaling in the hundreds of thousands or millions by some accounts, under plaintiffs' theory of standing, *id.* Ex. 15 (Human Rights Brief)—does not have standing.  "Where property

11

is bequeathed to a person upon an intended trust for such members of an indefinite class of persons as he may select, *no member of the class can maintain a proceeding to enforce the trust, nor can any other person maintain such a proceeding*." RESTATEMENT, *supra*, § 122, cmt. d (italics added).  Indeed, courts around the country—including the D.C. Court of Appeals— repeatedly reject attempts, like Plaintiffs' here, to extend standing to members of large potential beneficiary classes, as doing so is unworkable.

In *Williams*, 589 A.2d at 904, for example, former members of a Washington D.C. church sued to block the sale of church property.  The court rejected plaintiffs' standing claim that "regular attendance and financial contributions" to the church was sufficient, holding that granting standing to such an "uncertain and limitless" class would run afoul of "traditional notions of standing" and "subject[] the … trustees to recurring vexatious litigation."  *Id.* at 909.

Plaintiffs' lack of standing here follows *a fortiori* from *Williams*:  If a potential beneficiary class consisting of individuals who regularly attended and made contributions to a single church in a single city was too "uncertain and limitless," the same is necessarily true for the hundreds of thousands of potential beneficiaries here.  *See id.*; *cf. Hooker v. Edes Home*, 579 A.2d 608, 614 (D.C. 1990) (potential beneficiaries have standing to enforce trust only "if the class is sharply defined and its members are limited"; holding plaintiffs had standing because the "sharply defined" class was female, indigent, aged, widows who were in good health and lived in Georgetown for at least five years).

Perhaps most on point are cases like *Kania v. Chatham*, 297 N.C. 290, 292 (1979), in which plaintiff sued the trustees of a foundation that did not award him a scholarship.  Plaintiff was nominated for the scholarship and "classified himself as a 'potential beneficiary'" of the trust.  *Id.*  He argued, as do plaintiffs here, "that the status thus acquired g[a]ve[] him a special interest in the performance of the trust and standing to maintain the action."  *Id.*  The North

Carolina Supreme Court rejected his claim:  "We do not agree that plaintiff's classification as a *potential beneficiary* confers upon him standing to maintain his suit.  *To the contrary, such classification is fatal to his claim.*  Plaintiff is a member of a group comprised of *hundreds* of candidates from which the trustee, in their sole discretion, selected [scholarship] recipients….  *The mere fact that a person may, in the discretion of the Trustees, become a recipient of the benefit under the trust does not entitle him to maintain a suit for the enforcement of the trust.*"  *Id.* (italics added).  The Court added that plaintiff was one of "more than 930 unsuccessful" applicants, and to "grant plaintiff standing to maintain this action would only open the door to similar actions by other unsuccessful nominees now and in the future"—which would "not only impose upon our courts the burden of multiple litigation but would also require trustees to expend valuable time and resources in defending unwarranted lawsuits."  *Id.* at 292-93.[6]

 b.  Half the Plaintiffs lack the requisite connection to Yahoo.  Four of the eight plaintiffs lack standing on the further ground that they fail to qualify for assistance from the Trust.  The Trust had one purpose:  "to resolve claims" against Yahoo "by (a) persons primarily in and from the People's Republic of China … who have been imprisoned for expressing their views *through Yahoo* … or (b) any persons threatened with prosecution or imprisonment for expressing their views *through Yahoo.*"  KD Ex. 1 at 70.  Most plaintiffs fail to allege such a nexus:

- Plaintiff Ouyang Yi, for example, alleges he was convicted for "subversion of state

---

[6] Others authorities are in accord—*see*, *e.g.*: *Schalkenbach Found. v. Lincoln Found.*, 208 Ariz. 176, 182-83 (2004) ("a party must show that they have a special interest in the trust, such as being a current beneficiary, and not merely being a potential or prior beneficiary of a large class of potential beneficiaries"); *State v. Hutcherson*, 96 S.W.3d 81, 85 (Mo. 2003) (no standing to enforce trust where the "estimated … number of [potential beneficiaries]" was at least 6,000 people); *Fischer v. Eldon Stevenson, Jr. Scholarship Fund Trust*, 2005 Tenn. App. LEXIS 518, at *14 (Mar. 3, 2005) (even "prior beneficiary of a large class of potential beneficiaries" lacks standing to sue); G. Bogert, THE LAW OF TRUSTS AND TRUSTEES § 414 (Rev. 2d Ed. Supp. 2003) ("[A]s a general rule, no private citizen can sue to enforce a charitable trust merely on the ground that he believes he is within the class to be benefitted by the trust[.]").

power," allegedly based on "email evidence."  Compl. ¶ 15.  But he does not allege
that he expressed himself through Yahoo email or was prosecuted on that basis.

- The same is so for Xu Yonghai, who alleges he was convicted of "providing state secrets and information" outside of China, *id.* ¶ 16, and Plaintiff Xu Wanping, who alleges he served time in prison for political dissent, *id.* ¶ 17.  While Mr. Xu says he asked the Trust for money, he does not allege he was imprisoned or threatened for expressing himself through Yahoo, and nor does Xu Yonghai.  *See id.*

- Finally, Plaintiff Yu Ling does not allege that she has been imprisoned or threatened with imprisonment at all, much less in connection with any use of Yahoo.  *Id.* ¶ 19.

In sum, because none of the plaintiffs are more than "potential beneficiaries" of the Trust,
and because several also fail to allege they even qualify for assistance, all of their breach of trust
and breach of fiduciary duty claims must be dismissed.  *See Himmelfarb*, 536 A.2d at 92.

   ***3. Yahoo, as a mere donor, is not a proper party in any event.***  Plaintiffs' claims against
Yahoo fail for the additional reason that Yahoo was never a trustee of the Trust.  According to
the terms of the trust, Yahoo is a donor only.  *See* KD Ex. 1 at 69.  As such, it owes no fiduciary
duties.  *See Alpert v. Riley*, 274 S.W.3d 277, 292 (Tex. App. 2008) ("Absent some assignment of
duty to the [donor] in the trust instrument, a trustee has no cause of action to sue the [donor] of a
trust for a breach of fiduciary duty to the trust beneficiaries."); *cf. Laborers' Dist. Council of the
Metro. Area of Philadelphia & Vicinity v. Bd. of Trustees of Laborers' Indus. Pension Fund of
Philadelphia*, 2008 U.S. Dist. LEXIS 44396, at *2 (E.D. Pa. June 5, 2008) (dismissing breach of
fiduciary duty claim "as a matter of law" where alleged conduct was donor conduct and "not a
fiduciary act").

   Plaintiffs seek to avoid this obvious conclusion by bringing a claim against Yahoo for
"[t]hird-[p]arty liability."  Compl. ¶¶ 107-08 (Fifth Claim).  This claim fails, however, because

as the D.C. Court of Appeals has explained, "a beneficiary cannot bring an action directly against a third-party wrongdoer." *Rearden v. Riggs Nat'l Bank*, 677 A.2d 1032, 1037 (D.C. 1996) (citing RESTATEMENT, *supra*, § 281). Plaintiffs bring their claims against Yahoo directly, Compl. ¶¶ 107-08, and their claims must therefore be dismissed, *see Reardon*, 677 A.2d at 1037.

### B.     Plaintiffs Other Claims Against The Yahoo Defendants (Their Sixth And Seventh Claims) Fail As Well.

#### 1.   *Plaintiffs allege no specific breach of the* **Wang** *settlement, and seven of the eight plaintiffs lack standing to enforce it.*   Plaintiffs fail to identify *any* specific provision of the *Wang* settlement the Yahoo Defendants breached, and instead rest their Sixth Claim on the conclusory assertion that the Yahoo Defendants breached the *Wang* settlement by "fail[ing]" to "benefit … Chinese dissidents imprisoned for" free expression. Compl. ¶ 111. This generalized allegation—untethered to a specific legal obligation or instance—is insufficient to survive a motion to dismiss. *See Masse*y, 2015 WL 9310126, at *1 ("unsupported allegations [a]re inadequate to allow the court to draw the reasonable inference that the defendant is liable").

To plead breach of contract after *Iqbal*, a plaintiff must allege which particular provision of the contract was breached. *See Stevens*, 846 F. Supp. 2d at 125 (plaintiff must identify "the specific terms of th[e] alleged contract" such that "[defendant's] actions could constitute a breach of its contractual obligations"); *Kaar v. Wells Fargo Bank, N.A.*, 2016 WL 3068396, at *1 (N.D. Cal. June 1, 2016) ("To claim a breach of contract in federal court[,] the complaint must identify the specific provision of the contract allegedly breached by the defendant."); *Rodgers v. Ocwen Loan Servicing, LLC*, 2015 WL 8003209, at *3 (N.D. Tex. Dec. 7, 2015) ("To plead a breach of contract claim, a plaintiff must identify a specific provision of the contract that was allegedly breached."); *cf. Edmond v. Am. Educ. Servs.*, 2010 WL 4269129, at *2 (D.D.C. Oct. 28, 2010) ("Without a contractual duty, there can be no breach of contract.").

Plaintiffs do not, and cannot, identify any such provision.  Although the Complaint says that Ms. Yu entered the 2007 settlement "for the benefit of Chinese dissidents imprisoned for exercising their freedom of expression," the settlement agreement is clear about Yahoo's duties. *See* KD Ex 2 at 111.  Yahoo was obligated to make payments to the *Wang* plaintiffs and their families (which it did), and to pay $17.3 million to the LRF to establish the YHRF (which it did). *Id.*  Plaintiffs do not and cannot allege that Yahoo failed to fulfill either of those obligations.

The breach of settlement claims brought by the seven plaintiffs who are not parties to the *Wang* agreement—*i.e.*, all plaintiffs but Ms. Yu—fail because none is a party to the agreement. *See Swanson*, 2017 WL 123722, at *2 ("valid contract *between the parties*" an element of breach of contract claim) (italics added).  The *Wang* agreement expressly rejects any claim that these plaintiffs are "third-party beneficiaries."  KD Ex. 2 at 112 ("Persons [receiving assistance] shall not be deemed third-party beneficiaries of this Agreement."); *see Bowhead Info. Tech. Servs., LLC v. Catapult Tech., Ltd.*, 377 F. Supp. 2d 166, 171 (D.D.C. 2005) (the "parties to a contract must 'directly and unequivocally intend to benefit a third-party in order for that third-party to be considered an intended beneficiary"); *Nortel Networks, Inc.v. Gold & Apel Transfer, S.A.*, 298 F. Supp. 2d 81, 90 (D.D.C. 2004) ("A mere awareness that a third party may derive a benefit from a promisor's performance under a contract is insufficient to elevate the third party to the status of an intended beneficiary.").[7]

---

[7] Yu Ling's contract claim is also barred by the settlement she reached to resolve her 2011 lawsuit.  In her settlement, Yu released Wu, the LRF, the LHRO, the Trust, and their "officers," "directors," and "affiliates" from liability for claims "arising out of or related in any manner to all prior dealings between the parties, without limitation, including but not limited to any events or circumstances alleged or which could have been alleged in the [*Yu v. Wu*] Action."  KD Ex. 16 at 511.  Not only are her claims here directed at the same parties, her claims here "aris[e] out of" and "relate" to the same alleged conduct, including the alleged breach of the 2007 settlement, alleged self-dealing and unjust enrichment, and alleged breach of fiduciary duties related to the purchase of the property on M Street and alleged salary increases for Wu.  *Compare, e.g., Yu, supra*, Dkt. 1 ¶ 48, *with* He, Compl. ¶¶ 57, 59.

*2. Plaintiffs' civil conspiracy claim also fails as a matter of law.* Civil conspiracy is not an independent cause of action under District of Columbia law. Rather, it "depends on performance of some underlying tortious act." *Halberstam v. Welch*, 705 F.2d 472, 479 (1983); *see also Waldon v. Covington,* 415 A.2d 1070, 1074 n.14 (D.C. 1980) ("There is no recognized independent tort action for civil conspiracy in the District of Columbia."); *Hall v. Clinton*, 285 F.3d 74, 82 (D.C. Cir. 2002) ("Civil conspiracy, of course, is not actionable in and of itself."); *Meng v. Schwartz*, 305 F. Supp. 2d 49, 60 (D.D.C. 2004) (same). Here, because plaintiffs' underlying causes of action fail, their civil conspiracy claim must similarly be dismissed.

C.   **Plaintiffs' Six Claims Against The Yahoo Defendants (Their First And Their Third Through Seventh Claims) Are Also Time-Barred.**

*1. Applicable Rules.* Plaintiffs' claims against the Yahoo Defendants further fail because they are barred by the applicable statutes of limitations. Limitations periods exist to "prevent[] … stale claims" and to avoid prejudice to defendants. *Macklin v. Spector Freight Systems, Inc.*, 478 F.2d 979, 996 n.30 (D.C. Cir. 1973); *see Carter v. Washington Metro. Area Transit Auth.*, 764 F.2d 854, 857 (D.C. Cir. 1985) ("[F]inality of outcome, regardless of the merits of the claim, is exactly the purpose of the statute of limitations that the legislature has enacted."). Such statutes serve "to cut off rights, justifiable or not" and "they must be strictly adhered to by the judiciary." *Kavanagh v. Noble*, 332 U.S. 535, 539 (1947).

On a motion to dismiss, a cause of action "fail[s] to state a claim" when it is barred by the statute of limitations. *Gordon v. Nat'l Youth Work Alliance*, 675 F.2d 356, 366 (D.C. Cir. 1982). Courts grant motions to dismiss on statute of limitations grounds where "the facts that give rise to the defense are [conclusively] clear from the face of the complaint." *DePippo v. Chertoff*, 453 F. Supp. 2d 30, 33 (D.D.C. 2006); *Ling Yuan Hu v. George Wash. Univ.*, 766 F. Supp. 2d 236, 245 (D.D.C. 2011) (granting motion to dismiss on statute of limitations grounds).

17

As a federal court sitting in diversity, the Court applies the District of Columbia's statute of limitations. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 110 (1945). Plaintiffs' claims for breach of settlement (a species of breach of contract), breach of fiduciary duty, breach of trust, and civil conspiracy are all subject to a three-year statute. *See Thompson, Cobb, Bazilio & Assocs., P.C. v. Grant Thornton LLP,* 2002 WL 458997, at *2 (D.D.C. Mar. 25, 2002) (breaches of contract and fiduciary duty claims); *Nat'l Realty Trust v. Neelon Mgmt. Co., Inc.*, 1973 WL 398, at *3 (D.D.C. July 6, 1973) (breach of trust); *Habib v. Raytheon Co.*, 616 F.2d 1204, 1208 (D.C. Cir. 1980) (civil conspiracy); D.C. Code § 12-301(8) (three-year catch all statute).[8]

Plaintiff's breach of settlement claim accrued "at the time of breach," and the breach of trust, breach of fiduciary duty, and civil conspiracy claims all accrued at "the time when the plaintiff both should have known of the defendant's actions and suffered actual injury." *Resolution Trust Corp., v. Gardner*, 788 F. Supp. 26, 29 (D.D.C. 1992); *see* D.C. Code § 19-1310.01 (breach of trust occurs where there has been "a violation by a trustee of a duty the trustee owes a beneficiary"); *Jung v. Mundy, Holt & Mance, P.C.*, 372 F.3d 429, 433 (D.C. Cir. 2004) ("The statute of limitations . . . begins to run once a plaintiff has inquiry notice of a potential cause of action.").

*2. Ample Notice.* Plaintiffs' allegations make clear that the Yahoo Defendants' alleged breaches of fiduciary duties and the settlement agreement occurred well before April 11, 2014— *i.e.*, more than three years prior to the filing of the Complaint. Plaintiffs claim that the "*from the*

---

[8] Plaintiff also allege assert a modification of trust "claim," but that is a remedy rather than a cause of action, as the Complaint implicitly acknowledges. *See* Compl. 1 ¶ 104 (requesting trust be modified if Harry Wu or the LRF "purport to be beneficiaries"). In any event, *National Realty* holds that the three-year limitations period applies for breach of trust claims where, as here, a plaintiff seeks "legal relief[] such as damages or an accounting." 1973 WL 398, at *3; *see also* Compl. ¶ 99 ("Plaintiffs are *entitled to damages from the Yahoo Defendants* … for their breach of trust in the amount required to restore the value of the Trust assets….") (italics added).

*outset*, the Yahoo Defendants failed to take [their] fiduciary responsibilities seriously" and that the "[d]eplet[ion]" of the funds began at the "*beginning*."  Compl. ¶¶ 53, 54, 57 (italics added). Plaintiffs also expressly identify numerous alleged bad acts that occurred—and were well-publicized—*before 2014* that allegedly injured them.

a.  The LRF's 2008 purchase of a property on M Street NW.  Plaintiffs allege that YHRF funds were wasted on an "unlawful" 2008 purchase of a $1.45 million property on M St.  *Id.* ¶ 59.  This acquisition received significant media attention in 2008 and 2011, and these stories highlighted the use of YHRF assets to purchase the building:

- Nov. 12, 2008 *Wall Street Journal* article:  "On Wednesday, the Laogai Museum will open on M Street in Washington, D.C.  Run by expatriate Chinese dissident Harry Wu, the museum documents forced labor camps called laogai through photographs, government papers and prisoner uniforms ….  *The museum is backed by a noteworthy benefactor: Internet giant Yahoo Inc.*  Following its public apology last year for aiding in the arrest of Chinese journalist Shi Tao, Yahoo set up a human rights fund to 'provide humanitarian and legal support to political dissidents who have been imprisoned for expressing their views online.'  *The museum is one of the fund's first public projects.*  Yahoo CEO Jerry Yang is scheduled to cut the ribbon."  KD Ex. 8.

- June 27, 2011 *Washington Post* article:  "The [Laogai] [M]useum is intended to showcase human rights abuses in China….  It was created by Harry Wu, 74, a human rights activist who spent 19 years in forced labor camps ….  The museum first opened on M Street NW in 2008.  The new space, which opened this spring on 20th Street, cost $1 million to develop, design and construct.  *Most of the money for the 2,100-square-foot museum came from the Yahoo Human Rights Fund*."  *Id.* Ex. 9.

- June 30, 2011 *New York Times* article: "The Laogai Museum … is the only museum in the United States to focus on China's labor camp system. *[It] opened in April with support from the Yahoo Human Rights Fund.*" *Id.* Ex. 10 (all italics added).

b.  The 2011 Yahoo shareholder proposal regarding the management of the YHRF.  In 2011, Jing Zhao publicly "call[ed] for Yahoo to 'supervise the abused [YHRF]' in light of information that it was being mismanaged."  Compl. ¶ 68.  He claimed that "*considerable information ha[d] come to light in 2011* in court proceedings and *in extensive media coverage and vast Internet blogs* concerning of the appropriateness of Yahoo's handling of the unethical and potentially unlawful activities of the [YHRF]."  KD Ex. 4 (italics added).  His unsuccessful proposal attracted media attention in 2011, including from CNN.  *See* KD Ex. 14.

c.  Mr. Jing's 2012 lawsuit against Yahoo.  After his shareholder proposal was defeated, Mr. Jing's filed suit against Yahoo in the Delaware Chancery Court making the same allegations about the YHRF.  He alleged "specific instances [where]  … [Yahoo]'s directors and officers were aware that Harry Wu was misappropriating and misusing Fund assets and the Company's directors and officers did not use proper judgment or due care when establishing the Fund and when it failed to prohibit or end these wrongdoings."  KD Ex. 17 ¶ 9; *supra* at 8-9.

d.  Plaintiff Yu Ling's 2011 lawsuit against Harry Wu.  The Complaint here alleges that "the LRF incurred enormous legal fees," paid for with Trust assets, defending lawsuits against Mr. Wu, the LRF, and the LHRO, including a lawsuit filed by plaintiff Yu Ling to recover $1 million of her *Wang* settlement funds from defendants.  Compl. ¶ 58.  This public 2011 lawsuit alleged that Wu and the LRF were mismanaging funds the LRF received pursuant to the *Wang* settlement, including by purchasing the $1.45 million property on M St., and by "breach[ing] … their fiduciary obligations."  *Yu*, Case No. Case No. 1:11-cv-00092-JCC-JFA, Dkt. 1 at 16-17.  Ms. Yu settled her claims.  Again, her lawsuit and claims were public news.  *E.g.*, KD Ex. 12.

5.  Si Pengcheng's 2009 lawsuit against Mr. Wu and the LRF.  Mr. Si's 2009 lawsuit similarly alleged that Mr. Wu mismanaged LRF funds and committed fraud.  *See Si*, Case No. 1:09-cv-023888-KBJ.  As the Complaint here concedes, Si's allegations "came to light" five years ago, in 2012, when the *Si* complaint was unsealed.  *See* Compl. ¶ 82 (the *Si* lawsuit was a "public lawsuit making serious allegations against Wu and the LRF"); KD Ex. 13 ("A federal judge on Wednesday declined to toss a False Claims Act suit against … the Laogai Research Foundation and the China Information Center, formed by human rights activist Harry Wu").

e.  Other asserted harms.  The Complaint further alleges that Mr. Wu and his wife increased their salaries at the LRF after receipt of the *Wang* settlement proceeds.  Compl. ¶ 57. Yet these alleged increases began in 2008—some nine years ago.  *Id.*  Similarly, the Complaint alleges that Mr. Wu and the LRF improperly transferred funds to a Wu-affiliated organization, the China Information Center.  *Id.* ¶ 60.  Again, the first transfer occurred in 2009.

Given that these alleged injuries—and any basis to challenge the alleged management of the Trust or to assert breach—all arose years before April 2014 (and thus occurred more than three years before the filing of this suit), plaintiffs' claims are time-barred.  *See DePippo*, 453 F. Supp. 2d at 33.[9]  Plaintiffs seek to revive these past claims and excuse the untimeliness of their lawsuit generally by arguing that the "unlawful activity" they allege "was continuing in nature, and could not reasonably have been expected to be the subject of a lawsuit until recently," and that "[o]nly over time did the cumulative impact of the repeated failures to administer Yahoo Trust assets in good faith … cause harm to Plaintiffs."  Compl. ¶ 93.

---

[9] Plaintiffs' breach of trust and fiduciary duty claims against Mr. Callahan are also barred under D.C. Code § 19-1310.05, which requires that "a judicial proceeding by a beneficiary against a trustee for breach of trust … be commenced within 3 years after [his] removal [or] resignation."  D.C. § 19-1310.15.  As the Complaint admits, Mr. Callahan has not been a trustee since June 2012.  Compl. ¶ 21.  Plaintiffs' claims against him fail for this further reason as well.

These conclusory excuses—and mere recitation of elements—are unavailing, and the so-called "continuing violation" doctrine has no application here.  *See Madera v. Metro. Life Ins. Co.*, 2002 WL 1453827, at \*4 (S.D.N.Y. July 3, 2002) ("Plaintiff's conclusory allegations that the acts amounted to a continuing violation are an insufficient substitute for an explanation of how these distinct acts are related."); *accord Childress v. Northrop Corp.*, 618 F. Supp. 44, 46-47 (D.D.C. 1985).  "[C]ourts have carefully limited their application" of the doctrine, *Sperling v. Donovan*, 104 F.R.D. 4, 7 (D.D.C. 1984), and it does not apply when plaintiffs (and the public) were plainly on notice of the alleged conduct—so much so, that it was subject of numerous prior lawsuits and various news stories from large media outlets.  *E.g.*, *Hendel v. World Plan Exec. Council*, 705 A.2d 656, 667 (D.C. 1997) ("[O]nce the plaintiff has been placed on notice of an injury and the role of the defendants' wrongful conduct in causing it, the policy disfavoring stale claims makes application of the continuous tort doctrine inappropriate."); *Beard v. Edmondson & Gallagher*, 790 A.2d 541, 548 (D.C. 2002) ("When the plaintiff is or should be aware that he or she is being injured by a continuing tort, the statute of limitations begins to run.").

Nor does the so-called "discovery rule" apply.  It applies only "where the relationship between the fact of injury and the alleged tortious conduct is obscure when the injury occurs." *Bussineau v. President & Directors of Georgetown Coll.*, 518 A.2d 423, 425 (D.C. 1986).  The D.C. Court of Appeals has held that a "party with immediate suspicions of wrongdoing has an obligation to move promptly and with reasonable diligence to inquire further into the matter," and that the "discovery rule does not ... give the plaintiff carte blanche to defer legal action indefinitely if she knows or should know that she may have suffered injury and that the defendant may have caused her harm."  *Drake v. McNair*, 993 A.2d 607, 617 (2010).  Indeed, "a right of action may accrue before the plaintiff becomes aware of all of the relevant facts";

"general knowledge that [the defendant's conduct] was wrongful, rather than knowledge of the precise legal remedies for [it], is the focus of this discovery rule."  *Hendel*, 705 A.2d at 661.

Here, plaintiffs knew or should have known about their alleged injuries since 2011, if not well before.  Ms. Yu plainly knew, because she filed suit making the same claims in 2011.  *See Yu*, *supra*, Dkt. 1 at 16-17.  The remaining plaintiffs similarly should have been aware of the allegations in the Complaint, which, as detailed above, have been publicized for years and were easily discoverable through reasonable inquiry.  *See Sandza v. Barclays Bank PLC,* 151 F. Supp. 3d 94, 112 (D.D.C. 2015) (taking judicial notice of news articles, granting motion to dismiss, and holding that "press coverage was sufficient, as a matter of law, to put a reasonable person on notice of the need to investigate"); *Nader v. Democratic Nat'l Comm.,* 567 F.3d 692, 700-01 (D.C. 2009) (affirming motion to dismiss on timeliness grounds; plaintiff "could by reasonable diligence have known" about alleged wrongdoing because it was covered in press); *cf. Mullin v. Wash. Free Weekly*, 785 A.2d 296, 299 (2001) (declining to apply discovery rule to claims that received coverage in newspaper; "fact of … injury c[ould] be readily determined").

*4. Recent Activity.*  Finally, the Complaint references three acts that allegedly occurred in the past three years—*i.e.*, that Mr. Wu and the LRF purchased "a $2.55 million townhouse" in July 2015; that Mr. Wu received a salary of $131,200 and $122,907 in 2014 and 2015; and that "the LRF reported … $515,000 in legal expenses" between 2013 and 2015.  Compl. ¶¶ 56-59.  These claims do not save the complaint from it fatal untimeliness problems.  These are at most "lingering injur[ies]," *Long v. United States*, 604 F. Supp. 2d 119, 122 (D.D.C. 2009), from defendants' alleged initial "fail[ure]" to meet their "fiduciary responsibilities," Compl. ¶ 53.  *See Felter v. Kempthorne*, 473 F.3d 1255, 1260 (D.C. Cir. 2007) (subsequent "effect of an unlawful act is not itself an unlawful act").  Indeed, complaints about Wu's salary, buying real property, and use of funds date back to 2007, 2008, 2009, and Yu's 2011 lawsuit.  *Supra* at 5-8; *supra* n.7.

23

In any event, all of the alleged conduct occurred *after* Mr. Callahan resigned as a trustee in 2012, Compl. ¶ 21, and most (including the alleged house purchase in 2015) occurred *after* the Trust's termination in 2014. *Id.* ¶ 22; KD Ex.1 at 70. Unsurprisingly, Plaintiffs fail to allege that the Yahoo Defendants approved any of these expenses. Moreover, while plaintiffs allege that the LRF made these "unlawful" expenditures using "Yahoo Trust assets," Compl. ¶¶ 57-60, they never explain *how* these expenditures are unlawful or run afoul of the *Wang* settlement or the LHRO or Trust bylaws. Nor can they. While it is true that part of the $17.3 million that Yahoo paid in *Wang* was aimed at "providing humanitarian aid to imprisoned Chinese dissidents," *id.* ¶ 55, the Complaint sidesteps the equally vital fact that $1 million each year was to be used "for payment of [the LRF's] *operating expenses* and the [LRF's] education work conducted in the United States." KD Ex. 2 at 112 (italics added).[10]

While the Complaint asserts the legal conclusion that Mr. Wu should not have been paid the salary he was, that the LRF should not have opened the educational museum that it did, or that Mr. Wu's legal expenses should not have been covered in the *Yu* case, Compl. ¶¶ 57-60, the fact of the LRF using its operating expense budget to pay for such items *was long since known to plaintiffs, and indeed, was subject of Yu's and others' lawsuit. Supra* at 7-8, 18-21. Indeed, the disbursement of $1 million per year to cover such operating expenses was not only permitted by the *Wang* settlement that Ms. Yu sued to enforce, *see id.* & n.7; KD Ex. 2 at 111, such payments were *required* by the bylaws referenced in plaintiff's Complaint. *Compare* Compl. ¶ 54-62, *with* KD Ex. 1 at 8 (the LHRO "*will* provide funds for operational expenses to the LRF, up to $[1 million] a year," which shall "*not otherwise be subject to the discretion of the Board*") (italics added).

---

[10] This payment reflected Yahoo's real commitment to human rights—which extends broadly. *See* https://yahoobhrp.tumblr.com/ (Yahoo Business & Human Rights Program).

In short, plaintiffs' claims are all untimely, and while they may be dissatisfied with the terms of the *Wang* settlement or with the LHRO and Trust's bylaws, such terms have been known to them for years and cannot be challenged now in this time-bared case.

## IV.   THE COURT SHOULD NOT GRANT PLAINTIFFS LEAVE TO AMEND.

Plaintiffs cannot cure the defects of the Complaint and, therefore, the Court should deny them leave to amend.  Plaintiffs cannot create standing for themselves where, as a matter of law and contract, none exists.  Moreover, they cannot change when their asserted injuries occurred, and nor can they change the numerous ways that these alleged injuries were openly discussed in public, starting the clock running many years ago to file suit.  Because any amendment would be futile, the Yahoo Defendants should be spared multiple rounds of briefing these defective claims. *See, e.g.*, *Moldea v. N.Y. Times Co.*, 22 F.3d 310, 319 (D.C. Cir. 1994) (affirming denial of leave to amend complaint where "the amended [c]omplaint could not withstand a motion to dismiss and so would be futile."); *Alexander v. Wash. Gas Light Co.*, 2006 WL 3798858, at *1 (D.C. Cir. Aug. 24, 2006) (leave to amend inappropriate where "an amendment would [be] futile.").

## V.   CONCLUSION

For all of the foregoing reasons, the Court should grant the Yahoo Defendants' motion and dismiss plaintiffs' complaint in its entirety without leave to amend.

Dated:   June 12, 2017

Respectfully Submitted,

By:  /s/ Matt Kline
       Matthew T. Kline

Brian Boyle (D.C. Bar No. 419773)
  bboyle@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
Telephone:   (202) 387-5327
Facsimile:    (202) 383-5414

Matthew T. Kline (*pro hac vice*)
  mkline@omm.com
Patrick S. McNally (*pro hac vice*)
  pmcnally@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone:   (310) 553-6700
Facsimile:    (310) 246-6779

*Attorneys for Defendants Yahoo! Inc., Ronald Bell, and Michael Callahan*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 12, 2017, I caused the foregoing document to be electronically filed with the clerk of the United States District Court for the District of Columbia using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the electronic Mail Notice List.

Executed on June 12, 2017, in Los Angeles, California.


/s/ Matt Kline
Matthew T. Kline