# EXHIBIT 1

**Laogai Human Rights Organization, Inc.**

**and**

**Yahoo! Irrevocable Human Rights Trust 2009**

**Table of Contents**

**I.      Director and Trustee Contact Information**

**II.     Laogai Human Rights Organization, Inc. Documents**

Overview of Nonprofit Organization and Governance Issues...................................1

Certificate and Articles of Incorporation........................................................2

Organization Guidelines for Review of Assistance Funding Applications.............3

Bylaws .............................................................................................................4

Conflict of Interest Policy...............................................................................5

Conflict of Interest Disclosures .....................................................................6

    - 2009

Actions of Board of Directors .......................................................................7

**III.    Yahoo! Irrevocable Human Rights Trust 2009 Documents**

Overview of Trust and Governance Issues..................................................1

Declaration of Trust.....................................................................................2

Trust Guidelines for Review of Assistance Funding Applications .........................3

Appointments of Trustees............................................................................4

Escrow Agreement with U.S. Bank...............................................................5

Trust Statements of Account .......................................................................6

    - Opening Escrow Account Statement

Distributions from Trust ...............................................................................7

    - Acknowledgement and Ratification

Actions of Board of Trustees.......................................................................8

    - Consent to Adopt Guidelines dated June 12, 2009

B3672832.1

**EXHIBIT 1**
5

## Directors and Trustee Contact Information

Mr. Harry Wu
Executive Director
Laogai Research Foundation
1109 M Street, N.W.
Washington, D.C. 20005
Tel: 202-408-8300
Email: laogai@laogai.org


Mr. Michael Samway
Vice President & Deputy General Counsel
Yahoo! Inc.
One Alhambra Plaza
Suite 800
Coral Gables, FL 33134
Tel: 305-529-4425
Email: samway@yahoo-inc.com


Ms. Nan Richardson
Publisher
Umbrage Editions
111 Front Street
Suite 208
Brooklyn, N.Y. 11201
Tel: 212-796-2707
Email: nan@umbragebooks.com


Dr. Maochun Yu
Professor
U.S. Naval Academy
Department of History
Annapolis, M.D. 21402
Tel: 410-293-6283
Email: yumaochun@yahoo.com


Ms. Tienchi Martin-Liao
Laogai Research Foundation
1109 M Street, N.W.
Washington, D.C. 20005
Tel: 202-408-8300
Email: tienchimartin@gmail.com


D117300.1

**EXHIBIT 1**
6

## Laogai Human Rights Organization, Inc.
### Overview for Directors

The Laogai Human Rights Organization, Inc. (the "Organization") was established as a D.C. nonprofit corporation on June 18, 2009 (see Certificate of Incorporation at Tab 2), pursuant to a settlement agreement entered into between Yahoo! Inc and the Laogai Research Foundation ("LRF") in 2007.

The purpose of the Organization is to support certain activities of the LRF, as set forth in the Organization's Articles of Incorporation. Specifically, these activities are: (a) to support the provision by LRF of humanitarian and legal assistance primarily to persons in or from the People's Republic of China who have been imprisoned for expressing their views, and (b) to support ongoing operational expenses of the LRF, up to $1,000,000 a year.

### I.   Structure of Organization

The Organization has been established as a particular kind of 501(c)(3) organization: a "type I supporting organization." Consequently, its activities and purpose are inextricably linked to those of the LRF. Under IRS regulations, such an organization must be "responsive to the needs or demands of, and will be an integral part of or maintain a significant involvement in, the operations of" the supported entity (in this case, the LRF). In addition, the Organization must be organized and operated exclusively for the benefit of the LRF.

The Organization will review and provide oversight as well as financial support to the LRF in the two above-mentioned areas (humanitarian assistance, and operating expenses) according to the Guidelines for Review of Assistance Funding Applications adopted by the Organization (attached at Tab 3, and discussed further below).

### II.   Board of Directors

Due to the Organization's structure as a supporting organization, there are specific requirements regarding the composition of its Board of Directors. These requirements have guided the selection of the initial Directors, and will apply to the selection of any new or successor Directors.

- One Director must at all times be the person who is the Executive Director of the LRF, initially **Harry Wu**.

- One Director must at all times be a person who is selected as a representative by Yahoo! Inc., initially **Michael Samway**.

- All other directors shall have background and experience in human rights issues, and shall not be substantial financial contributors to LRF. The other initial Directors are:

  - **Tienchi Martin Lao**
  - **Maochun Yu**
  - **Nan Richardson**

- Any new or successor directors must be nominated by the Board of Directors of the LRF.

D116897.2

**EXHIBIT 1**

- Finally, if at any time, more than one Director is an employee, director, officer, or remunerated consultant of the LRF, those Directors must be outnumbered on the Board by at least one by Directors that are not currently employees, directors, officers, or remunerated consultants of the LRF.

The individuals that comprise the Board of Directors of the Organization will also comprise the Board of Trustees of the Yahoo! Trust (discussed in more detail in Section II of this binder).

## III.    Officers

The Organization shall have, at a minimum, a President, Vice-President, Secretary and Treasurer, elected to one-year terms, as follows:

- President:  the Executive Director of the LRF (currently, Harry Wu)
- Vice-President – the Director appointed by Yahoo! (currently, Michael Samway)
- Secretary – Tienchi Martin Lao
- Treasurer – Tienchi Martin Lao

## IV.    Provision of Support to LRF

The Organization will provide support to the LRF, and carry out the purposes of its Articles of Incorporation, in two primary ways.

First, the Organization will provide funds for operational expenses to the LRF, up to $1,000,000 per year..  Funds may be disbursed semiannually, after presentation by LRF of a budget and programs overview for the pending disbursement, and a report on the use of funds previously disbursed, both in accordance with the purposes and mission of the Supported Organization, shall be approved, and not otherwise subject to the discretion of the Board.

Second, the Organization will provide funds to the LRF to provide humanitarian and legal assistance according to the Guidelines for Assistance Funding (at Tab 3). Key provisions of the Guidelines include:

- The Board shall review and act on applications from the LRF and from the general public to provide humanitarian and legal assistance:

  (a) primarily to persons in or from the People's Republic of China who have been imprisoned for expressing their views, and

  (b) to organizations dedicated to assisting such persons or advocating for reforms in the PRC related to such issues.

- The Board may delegate the initial review of Assistance Funding applications to a Funding Committee of the Board, which will be composed of the President, the Vice-President, and at least one other Director.

- The Funding Committee will report to the Board on a quarterly basis with recommendations regarding whether to accept or deny received requests for Assistance Funding, as well as the recommended level of funding with which to respond to the request.

D116897.2

**EXHIBIT 1**

8

1:17-cv-00635-JDB

- Funding amounts greater than [$ ___] will require unanimous approval of the Board. The Board may accept the recommendation of the Funding Committee, or make an alternate decision based upon an independent review of the application. Any funds to be disbursed will be transferred to the LRF for distribution.

D116897.2

- 3 -

**EXHIBIT 1**

1:17-cv-00635-JDB

## Nonprofit Governance Principles for Directors

The directors of a not-for-profit corporation are bound by two general types of legal duties -- a Duty of Care and a Duty of Loyalty.  The Duty of Care is the duty to perform their responsibilities in good faith and in a manner that they reasonably believe to be in the best interests of the organization and with such care as an ordinarily prudent person in a like position with respect to a similar organization would use in similar circumstances.  The Duty of Loyalty (the duty to keep the interests of the organization paramount above personal interests when acting for or on behalf of the organization).

Below is a summary of the responsibilities a Board of Directors should fulfill to ensure that it acts in accordance with its legal duties. The list is not exhaustive, but provides examples of important responsibilities and activities.  When applicable, specific references to the Organization's Bylaws or other organizational documents are included.

**Engage Actively in the Organization.**  The organization's board of directors or trustees should play an active and central role in setting policy and providing oversight in order to assure effective and ethical management, which includes undertaking to:

- **Hold Regular Meetings.**  The Board should hold regular meetings. Otherwise, there is no way for the Board members to keep informed of the activities of the Organization and for the Board to provide the guidance it is expected to provide to the staff.  The Organization's Bylaws require monthly meetings (either in-person or via conference telephone).

- **Ensure that the Corporation Holds an Annual Meeting.**  The annual meeting of Directors shall be held in persons, once a year, to elect new Directors and officers select an auditor, and discuss and vote on other matters specified by the Organization's By-laws.

- **Keep Minutes of Board and Committee Meetings.**  Minutes are important. They are a record of the level of care and diligence that the Board exercised in arriving at its decisions and in overseeing the corporation's business. Minutes should not be a stenographic record of the proceedings, but they should address the key factors that influenced major board decisions. They should explain the reasoning behind decisions that are especially prone to being second-guessed.

- **Ensure that All Government Filings are Made on Time.**  Many federal, state, and local governmental agencies will impose penalties on an organization if required filings are not made on a timely basis.  The most important filings for a DC nonprofit include the following:
  - Application for Basic Business License with the D.C. Department of Consumer and Regulatory Affairs
  - Biannual renewal of Basic Business License from D.C. Department of Consumer and Regulatory Affairs.
  - Form 1023: Application for exempt status with the Internal Revenue Service.

- 4 -

**EXHIBIT 1**
10

1:17-cv-00635-JDB

- Form 990 (tax information return) with the Internal Revenue Service. Tax-exempt organizations are required to disclose their Form 990 reports to anyone who requests them. Beyond that, many nonprofits provide financial reports to members, donors or others even though not required to by law.
- Application for tax-exempt status with the District of Columbia.

**Review Governance Structure and Documents.**  The Board should have a committee of independent directors responsible for periodically reviewing the Organization governance structures and documents and for adopting and maintaining standards, guidelines or rules addressing the roles and conduct of the Board of Directors and the criteria for nominating and evaluating the members of the Board of Directors.  At a minimum, the Board should adopt a conflict of interest policy and follow its procedures for any transaction that may present a conflict of interest.

**Investigation of Fraud and Noncompliance with Law.**  Organizations should have procedures in place for receiving and investigating complaints involving fraud and noncompliance with law and should protect "whistleblowers" against retaliation.  The whistle-blower protection provisions of the Sarbanes-Oxley Act apply to all organizations, including nonprofit entities.

**Financial Oversight.**  The Board must take responsibility to make sure that there is a written budget that projects sufficient revenues to cover the anticipated expenses of the Organization in each year - whether the revenues come from grants or gifts or the provision of goods and services.

Each bank has a set of corporate votes taken by the Board of Directors, which authorize the opening of bank accounts and the borrowing of funds, and specify which officer can withdraw funds from the accounts. Each time an account is opened, the Board must formally adopt the resolutions for the account so that the Organization's secretary can properly execute the bank form certifying the votes.

**Establish an Audit Committee and Review the Audit.**  Organizations with significant gross revenues or other financial resources should have an audit or finance committee, composed of independent directors, to assure the quality and independence of the organization's financial auditors, review accounting policies and control systems and oversee the accuracy of financial statements.

While there is no requirement for a District of Columbia nonprofit to file its audited financial statements with the D.C. government, the financial statements should nonetheless be carefully reviewed by the Board. Further, if the Organization has a committee oversee the audit, the committee should talk with the auditor. The auditor works for the Board, not for the officers. The audit committee should spend an appropriate amount of time each year with the auditor without any other staff being in the room to learn about any matters of concern to the auditor which should not be communicated through the staff.

**Preserve Required Information.**  All organizations should have policies and procedures in place to avoid the destruction of documents that may be relevant to an actual or anticipated legal proceeding or governmental investigation. The Sarbanes-Oxley Act imposes criminal penalties on nonprofit organizations, as well as public companies, that obstruct justice by

**EXHIBIT 1**
11                                                                              1:17-cv-00635-JDB

destroying documents that are, or anticipated to become, subject to an official federal proceeding or federal agency investigation.
(http://www.sarbanesoxleysimplified.com/sarbox/compact/htmlact/sec805.html)

D116897.2

**EXHIBIT 1**
**12**

**1:17-cv-00635-JDB**

## GOVERNMENT OF THE DISTRICT OF COLUMBIA
### DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS



# C E R T I F I C A T E

**THIS IS TO CERTIFY** that all applicable provisions of the District of Columbia NonProfit Corporation Act have been complied with and accordingly, this *CERTIFICATE OF INCORPORATION* is hereby issued to:

**LAOGAI HUMAN RIGHTS ORGANIZATION, INC**

**IN WITNESS WHEREOF I** have hereunto set my hand and caused the seal of this office to be affixed as of the **18th** day of **June , 2009 .**

LINDA K. ARGO
Director

Business and Professional Licensing Administration

PATRICIA E. GRAYS
Superintendent of Corporations
Corporations Division

Adrian M. Fenty
Mayor

**EXHIBIT 1**
13

1:17-cv-00635-JDB

# ARTICLES OF INCORPORATION

## OF

## LAOGAI HUMAN RIGHTS ORGANIZATION, INC.

TO:    Department of Consumer and Regulatory Affairs
Corporate Division
941 North Capitol Street, N.E.
Washington, D.C. 20002

We, the undersigned natural persons of the age of eighteen (18) years or more, acting as

the incorporators of a nonprofit corporation under the District of Columbia Nonprofit

Corporation Act, Title 29, Chapter 3 of the District of Columbia Code of Laws, adopt the

following Articles of Incorporation:

FIRST:    The name of the corporation is "LAOGAI HUMAN RIGHTS ORGANIZATION, INC."

SECOND:    The period of duration of the corporation shall be perpetual.

THIRD:    The corporation shall be established and organized exclusively for scientific and educational purposes for the benefit of, to perform the functions of, or to carry out the purposes of, the Laogai Research Foundation, a Virginia nonprofit corporation (the "Supported Organization") so long as the Supported Organization shall be exempt from taxation under Section 501(c)(3) and 509(a)(1) or (2) of the Internal Revenue Code of 1986, as amended, as now in effect or as it may hereafter be amended, or under any successor section thereto, and regulations promulgated thereunder (the "Code"), and within the meaning of Section 29-301.04 of the District of Columbia Code of Laws. Within this broad general purpose, the specific purposes of the corporation shall be:

    (1)    To receive, maintain and administer assets in perpetuity, and to use and apply the whole or any part of the principal and income therefrom, to fund the projects and programs and administrative expenses of the Supported Organization;

    (2)    To provide support to the Supported Organization's rendering of humanitarian and legal assistance primarily to persons in or from the People's Republic of China who have been imprisoned for expressing their views, and for ongoing operational expenses of the Supported Organization;

DI12815.2

JUN 18 2008

**EXHIBIT 1**
**14**

1:17-cv-00635-JDB

(3)   To apply for, accept, and manage grants or contracts from public and private agencies or individuals consistent with the objectives of the corporation and the Supported Organization;

(4)   To engage in any other lawful activities for which nonprofit corporations may be organized under the District of Columbia Nonprofit Corporation Act to the extent that such activities will not contravene any provision of the Code such that the corporation would no longer be considered a supporting organization of the Supported Organization;

(5)   To carry out the purposes of the corporation in conjunction with any persons, firm, association, corporation or other entity;

(6)   To indemnify to the fullest extent available under applicable law any director or officer or former director or officer of the corporation, against any expenses or liability actually and necessarily incurred by him or her in any proceeding in which he or she is made a party by reason of being or having been such director or officer, except where the injury or damage was the result of willful misconduct, criminal conduct (unless such director or officer had reasonable cause to believe that such conduct was lawful), a transaction that resulted in an improper personal benefit of money, property or service to such director or officer, or an act or omission that is not in good faith and is beyond the scope of authority of the corporation;

(7)   To perform any function and carry on any activity that is permitted by the District of Columbia Nonprofit Corporation Act, as amended from time to time; and

(8)   To have and exercise all powers necessary to effect any of the purposes of the corporation.

FOURTH:   The corporation shall not have members.

FIFTH:   The election or appointment of a governing Board of Directors for the corporation shall be provided for in the governing Bylaws of the corporation.

SIXTH:   The internal affairs of the corporation shall be regulated as provided for in the governing Bylaws of the corporation. Notwithstanding any other provision of these Articles of Incorporation or of the Bylaws of the corporation, no part of the property, assets or net income of the corporation shall inure to the benefit of or be distributable to its directors, officers or other private persons, except that the corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the purposes of the corporation; no substantial part of the activities of the corporation shall be the carrying on of propaganda, or otherwise attempting to influence legislation; and the corporation shall not participate or intervene (including, without limitation, by way of the publishing or distribution of statements) in any

**EXHIBIT 1**

1:17-cv-00635-JDB

political campaign on behalf of any candidate for public office.  Notwithstanding any other provision of these Articles of Incorporation or the Bylaws of the corporation, the corporation shall not carry on any other activities not permitted to be carried on (i) by an organization exempt from Federal income tax under Section 501(c)(3) of the Code, or (ii) by an organization, contributions to which are deductible under Section 170(c)(2) of the Code.

Upon dissolution of the corporation, the Directors of the corporation shall, after paying or making provision for the payment of all of the liabilities of the corporation, dispose of all assets of the  corporation to the Supported Organization, or any successor organization thereto, if it is then qualified or tax exempt under Section 501(c)(3) of the Code, and, if not, to one or more organizations created and organized exclusively for charitable, educational or scientific purposes similar to those of the Supported Organization, contributions to which are deductible under Section 170 of the Code and which qualify as exempt under Section 501 (c)(3) of the Code, as the directors shall determine.

SEVENTH:    The address of the initial registered office is:

> 1015 - 15th Street, N.W., Suite 1000
> Washington, DC 20005

and the name of the initial registered agent at such address is:

> CT Corporation

EIGHTH:    The number of directors constituting the initial Board of Directors is three (3), and the names and addresses of the persons who will serve as the initial directors until the first annual meeting or until their successors have been elected and qualified are:

> Harry Wu
> 1109 M Street, NW
> Washington, DC 20005

> Michael Samway
> 95 Merrick Way
> Coral Gables, FL 33134

> Tienchi Martin-Lao
> 1109 M Street, NW
> Washington, DC 20005

The manner of election or appointment of future members of the Board of Directors shall be as provided in the governing Bylaws of the corporation.

D112815.2

**EXHIBIT 1**
**16**

NINTH:     The names and addresses of the incorporators are:

> James T. Montgomery, Jr.
> 1875 K Street, N.W., Suite 800
> Washington, DC  20006
>
> Gare A. Smith
> 1875 K Street, N.W., Suite 800
> Washington, DC  20006
>
> Sarah A. Altschuller
> 1875 K Street, N.W., Suite 800
> Washington, DC  20006

WITNESS, the due execution of these Articles of Incorporation by the undersigned incorporators as of June 17, 2009.

_____
James T. Montgomery, Jr.

_____
Gare A. Smith

_____
Sarah A. Altschuller

D112815.2

**EXHIBIT 1**
17

1:17-cv-00635-JDB

DISTRICT OF COLUMBIA ) ss.                                        June 17, 2009

    I, _Angélica M. Villagran_ a Notary Public, hereby certify that on the _17_ day of _June_ 2009, James T. Montgomery, Jr., Gare A. Smith and Sarah A. Altschuller, personally appeared before me and signed the foregoing document as incorporators, and have averred that the statements therein contained are true.

                                        Notary Public

My Commission Expires: _____

                ANGELICA M. VILLAGRAN
           Notary Public, District of Columbia
        My Commission Expires March 31, 2013

D112815.2

**EXHIBIT 1**
18                                                        1:17-cv-00635-JDB

DRAFT - OCTOBER 5, 2009

## LAOGAI HUMAN RIGHTS ORGANIZATION, INC.

## GUIDELINES FOR REVIEW OF ASSISTANCE FUNDING APPLICATIONS

Upon receipt of each application from an individual or an organization, the Laogai Research Foundation staff and the Board of the Laogai Human Rights Organization (the "Supporting Organization") (or a designated Board committee) will review the application and make the following determinations.  Once these determinations have been made, the Laoga staff (or designated Board committee) will present its final recommendation to the full Supporting Organization Board.

The recommendation made by the Foundation staff or a designated Board committee will be based upon:

**For Applications from Individuals:**

1. Does the case involve persons from or in the PRC?
2. Has the person suffered violations of fundamental human rights (prolonged arbitrary detention, torture, forced labor, etc.)?
3. Were these violations of human rights the direct result of the victim exercising his or her freedom of expression?
4. Was Yahoo! or another electronic medium involved?

Persons meeting all of these criteria will be given the highest priority and should receive support immediately.  Individuals who meet at least two of the four criteria may also be provided assistance if doing so would further the objectives of the Supporting Organization and the Foundation.

If the application warrants a disbursement, the Foundation staff or designated Board committee will recommend an amount of support to the Board.  The Board will make every effort to award consistent amounts to applicants who have experienced similar factors.  This recommended amount shall be based in part upon the following criteria:

1. Whether the person has been, or still is, imprisoned;
2. Whether the person was convicted, and if so, the length of the sentence;
3. The individual's family situation; and
4. The individual and his or her family's needs for legal defense.

The recommendation made by the Foundation staff or designated Board committee will be based upon:

**For Applications from Organizations:**

DI14495.2

**EXHIBIT 1**
19

1:17-cv-00635-JDB

1. Will the group use the support to provide legal or humanitarian assistance to persons from or in the PRC?
2. Will the group use the support from the Supporting Organization to advocate for or directly assist individuals who have suffered violations of fundamental human rights (prolonged arbitrary detention, torture, forced labor, etc.)?
3. Does the group work to protect the right to freedom of expression?
4. Recipient organizations must not use the funds to support in any manner, directly or indirectly, any litigation, claim, complaint, before any court, administrative body, legislative body, or any other forum, anywhere in the world, by any person or entity, against Yahoo!
5. Recipient organizations must not use the funds for political purposes of any kind and shall not give, or use to support or assist, directly or indirectly, any governments, political parties, or armed organizations.

If the application warrants a disbursement, the Foundation staff or designated Board committee will recommend an amount of support to the Board. The Board will make every effort to award consistent amounts from the Supporting Organization to applicants who have experienced similar factors. This recommended amount shall be based in part upon the following criteria:

1. Whether the group will provide direct legal services to persons who have been, or are still, unjustly imprisoned;
2. The group's record of success in protecting human rights; and
3. The group's reputation for effective, transparent management.

D114495.2

EXHIBIT 1
20
1:17-cv-00635-JDB

BYLAWS OF

# LAOGAI HUMAN RIGHTS ORGANIZATION, INC.
### (the "Corporation")

## ARTICLE I

## GENERAL PROVISIONS

### Section 1.1   Purposes, Objectives and Activities

The name and purposes of the Corporation shall be as set forth in its Articles of Incorporation. The Articles of Incorporation of the Corporation are hereby made a part of these Bylaws, and the powers of the Corporation and of its directors and officers, and all matters concerning the conduct and regulation of the affairs of the Corporation, shall be subject to such provisions in regard thereto, if any, as are set forth in the Articles of Incorporation. In the event of any inconsistency between the Articles of Incorporation and these Bylaws, the Articles of Incorporation shall be controlling. All references in these Bylaws to the Articles of Incorporation shall be construed to mean the Articles of Incorporation as from time to time amended.

As set forth in the Articles of Incorporation, the Corporation shall be established and organized exclusively for scientific and educational purposes for the benefit of, to perform the functions of, or to carry out the purposes of, the Laogai Research Foundation, a Virginia nonprofit corporation (the "Supported Organization") so long as the Supported Organization shall be exempt from taxation under Section 501(c)(3) and 509(a)(1) or (2) of the Internal Revenue Code of 1986, as amended, as now in effect or as it may hereafter be amended, or under any successor section thereto, and  regulations promulgated thereunder (the "Code"), and within the meaning of Section 29-301.04 of the District of Columbia Code of Laws.  The Corporation shall provide support to the Supported Organization's rendering of humanitarian and legal assistance primarily to persons in or from the People's Republic of China who have been imprisoned for expressing their views, and for ongoing operational expenses of the Supported Organization.

## ARTICLE II

## OFFICES

The Corporation shall have a registered agent and registered office in the District of Columbia as required under the District of Columbia Code of Laws, and may have such other offices at such places as may be determined by the Board of Directors of the Corporation from time to time.

## ARTICLE III

## MEMBERS

The Corporation shall have no members.

-1-

**EXHIBIT 1**
21

## ARTICLE IV

## BOARD OF DIRECTORS

**Section 4.1   Management of Affairs**

The affairs of the Corporation shall be managed by a Board of Directors (sometimes hereinafter referred to as the "Board").  Directors need not be residents of the District of Columbia.

**Section 4.2   Number**

The number of Directors of the Corporation shall be at least three (3) and not more than seven (7), with the exact number to be set from time to time by a resolution of the Board of Directors.

**Section 4.3   Qualifications**

One Director shall at all times be the person who is then the Executive Director of the Supported Organization, initially Harry Wu..  One Director shall at all times be a person who is selected as a representative by Yahoo! Inc., initially Michael Samway.  All other directors shall have background and experience in human rights issues, shall not be substantial contributors to the Supported Organization, and shall be nominated by the board of directors of the Supported Organization.  If at any time, more than one Director shall be an employee, director, officer, or remunerated consultant of the Supported Organization, there shall be a total of at least the same number plus one more Directors on the Board that are not currently employees, directors, officers, or remunerated consultants of the Supported Organization, such that the Board shall not at any time be controlled by disqualified persons within the meaning of § 4946 of the Code.

**Section 4.3   Terms of Office and Vacancies**

The term of each member of the Board shall be for a period of three (3) years ending on December 31.  Within ninety (90) days prior to the expiration of the term of any member of the Board, the  members of the Board then in office shall elect or appoint any individual deemed qualified to succeed such expiring term for a new term of one (1) year thereafter, such new term to end on December 31st of the next succeeding year.  Upon the occasion of any vacancy on the Board (whether caused by reason of resignation, death, disability or any other inability, failure or refusal to serve), the remaining members of the Board then in office shall elect or appoint any individual deemed qualified to fill such vacancy for the unexpired term.

**Section 4.4   Meetings**

(a)     The Board shall meet monthly, either in person or telephonically, and minutes shall be kept by a Secretary and approved at the next meeting of the Board.  At each such meeting, the Board shall review applications presented to the Board by the Supported Organization for Assistance Funding (as set forth in Article VI below), and on a semi-annual basis, for Operational Funds for the Supported Organization.

D112816.5

**EXHIBIT 1**
22

1:17-cv-00635-JDB

(b)     At least once per annum, the Board shall meet for a full-day, in-person, strategic planning session and Annual Meeting, to be held at such place and on such date and time as the Board of Directors shall resolve.  At each annual meeting, the officers of the Corporation shall be elected in accordance with the provisions of Article V of these Bylaws, and any other business or affairs of the Corporation which may come before the annual meeting may be considered and acted upon. At least seven (7) but no more than sixty (60) days prior to the Annual Meeting or any special meeting, notice of the time, date and place of the meeting shall be given to all Directors.  The notice shall also contain a proposed agenda setting forth the general character of the business proposed to be transacted at the meeting.  The agenda shall include the review of the proposal by the Supported Organization for

(c)     Attendance by any Director at a meeting shall constitute a waiver of notice of such meeting, except where a Director attends a meeting for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called.

(d)     Each Director present at a meeting shall be entitled to one (1) vote.  Directors may not vote by proxy.  A quorum shall consist of a simple majority of the Board, but in all cases, quorum can not be achieved unless the Board members then serving as President and Vice-President of the Corporation, are present..  An act approved by majority vote of Directors present at a meeting at which a quorum is present shall be the act of the Board of Directors.

(e)     Any or all Directors may participate in a meeting of the Board of Directors by means of conference telephone or by any means of communication by which all Directors participating in the meeting are able to hear one another, and such participation shall constitute presence in person at the meeting.

(f)     Any action required or permitted to be taken at any meeting of the Board of Directors may be taken without a meeting if all Members of the Board of Directors then in office unanimously consent in writing to such action.  Such written consent may be executed in counterparts and shall have, for all purposes, the same force and effect as a unanimous vote of the Board of Directors.  Such written consent shall be filed with the minutes of proceedings of the Board.

## Section 4.5   Designation of Chairperson

The President (or, in his or her absence, the Vice President) shall serve as the Chairperson of the Board of Directors.  The Chairperson of the Board will preside over any and all meetings of the Board of Directors and carry on such other functions as the Board of Directors may delegate from time to time.

## Section 4.6   Removal

Any Director may be removed from the Board either for cause as determined by the vote of at least ninety percent (90%) of the remaining Directors. However, under no circumstances may the President or Vice-President of the Corporation be removed from the Board of Directors.

**ARTICLE V**

**OFFICERS**

## Section 5.1   Number and Qualifications

The officers of the Corporation shall be a President, a Vice President, a Secretary, and a Treasurer, and such other officers (if any) as may be elected or appointed by the Board of Directors (including, without limitation, one or more assistant officers). Any two offices may simultaneously be held by the same person; provided, however, that the person holding the office of President may not simultaneously hold the office of Secretary or Vice-President.

## Section 5.2   Election and Term of Office

The President of the Corporation shall be the Director who is the Executive Director of the Supported Organization. The Vice-President of the Corporation shall be the Director who is a representative designated by Yahoo! Inc. All other officers of the Corporation shall be elected by the Board and shall hold office for a term of one (1) year and until their successors are duly elected. Upon the death, resignation or removal of any officer, the vacancy in office may be filled by the Board of Directors of the Corporation at any meeting of the Board of Directors, with the exception of the President and Vice-President, which shall be appointed by the Directors of the Supported Organization, and Yahoo! Inc., respectively.

## Section 5.3   Removal

Any officer elected or appointed by the Board of Directors may be removed by the Board of Directors, with or without cause, at any time.

## Section 5.4   Powers and Duties of the President

Subject to the direction of the Board of Directors, the President shall see that all votes and resolutions of the Board of Directors are carried out.

## Section 5.5   Power and Duties of the Vice President

Subject to the direction of the Board of Directors, the Vice President shall undertake responsibility for all duties of the President upon the occurrence of any failure, refusal or inability of the President to carry out his or her duties for any reason.

**Section 5.6**   **Powers and Duties of the Secretary**

The Secretary shall attend all meetings of the Directors and record all votes and the minutes of all proceedings in a book to be kept for that purpose.  The Secretary shall give, or cause to be given, notice of all meetings of the Directors and shall have such other powers and duties as the Board may prescribe from time to time.

**Section 5.7**   **Powers and Duties of the Treasurer**

The Treasurer shall have the custody of the corporate funds and securities, shall keep full and accurate accounts of receipts and disbursements in books belonging to the Corporation, and shall deposit all monies and other valuable effects in the name and to the credit of the Corporation in such depositaries as may be designated by the Board.  The Treasurer shall disburse the funds of the Corporation as may be ordered by the Board, taking proper vouchers for such disbursements, and shall render to the Board of Directors, at an annual or regular meeting of the Directors, or whenever they may require it, an account of all transactions of the Treasurer and of the financial condition of the Corporation.  The Treasurer shall have such other powers and duties as the Board may prescribe from time to time.

**Section 5.8**   **Compensation**

No officer of the Corporation shall receive compensation for services rendered to the Corporation (other than reimbursement for out-of-pocket expenses incurred on behalf of the Corporation).

**ARTICLE VI**

**PROGRAMS OF THE CORPORATION**

**Section 6.1**   **Assistance Funding**

The Board shall review and act on applications from the Supported Organization and from the general public to render humanitarian and legal assistance primarily to persons in or from the People's Republic of China who have been imprisoned for expressing their views, and to organizations dedicated to assisting such persons or advocating for reforms in the PRC related to such issues.  The Board, or a Committee acting on its behalf, shall review and act on such applications in accordance with Guidelines to be adopted by the Board.

**Section 6.2**   **Operational Support**

The Board will approve on a semi-annual basis the disbursement of funds to the Supported Organization in order to support the operations of the Supported Organization.  The disbursement of up to $1,000,000 annually, in response to a presentation of a budget and programs overview for the pending disbursement, and a report on the use of funds previously disbursed, both in accordance with the purposes and mission of the Supported Organization, shall be approved, and not otherwise subject to the discretion of the Board.

D112816.5

**EXHIBIT 1**
**25**

## ARTICLE VII

## COMMITTEES

The Board may delegate the initial review of Assistance Funding applications to a Funding Committee.  The Funding Committee will report to the Board on a quarterly basis with recommendations regarding whether to accept or deny received requests for Assistance Funding, as well as the recommended level of funding with which to respond to the request.  Funding amounts greater than [$ ____] shall require unanimous approval of the Board.  The Board may accept the recommendation of the Funding Committee, or make an alternate decision based upon an independent review of the application.   Any such Funding Committee that is established by the Board shall be comprised of the President, Vice President, and at least one other Director of the Corporation, as may be selected by the other Board of Directors.

## ARTICLE VIII

## CHECKS, CONTRACTS AND OTHER DOCUMENTS
## THAT BIND THE CORPORATION

All checks or demands for money, notes of the Corporation, contracts or other documents or instruments that bind the Corporation shall be signed by such officer or officers or such other person or persons as the Board may specifically designate by resolution.

## ARTICLE IX

## FISCAL YEAR AND AUDITORS

### Section 9.1   Fiscal Year

The fiscal year of the Corporation shall begin on the first day of January and shall end on the last day of December each year, unless the Board otherwise determines.

### Section 9.2   Auditors

The Board of Directors shall appoint a firm of independent auditors to audit, review or compile the books of account of the Corporation and to report not less than annually on the financial condition of the Corporation.

## ARTICLE X

## NOTICES

### Section 10.1   Form of Notices

Whenever under the provisions of these Bylaws notice is required, it shall not be construed to mean personal notice, but except as otherwise provided, such notice may be given in writing, by mail, mailgram, electronic mail, confirmed facsimile transmission, or express overnight delivery by a reputable overnight courier addressed to such address for the recipient as appears in the

D112816.5

**EXHIBIT 1**
**26**

1:17-cv-00635-JDB

records of the Corporation.  Except as otherwise provided by law or in these Bylaws, such notice shall be deemed given at the time it is delivered to the carrier.

**Section 10.2   Waiver**

Any notice required to be given under these Bylaws may be waived in writing, signed by the person or persons waiving notice.

**ARTICLE XI**

**COMPENSATION FOR SERVICES**

Subject to Section 5.8 of these Bylaws, the Board of Directors may authorize the payment of reasonable compensation for services rendered by employees and agents of the Corporation (including, without limitation, reasonable compensation for services rendered by employees, and independent contractors).

**ARTICLE XII**

**DURATION AND DISSOLUTION**

The period of duration of the Corporation shall be perpetual, subject to dissolution only upon resolution and affirmative vote by the Board of Directors.  Upon dissolution of the Corporation, the Directors of the Corporation shall, after paying or making provision for the payment of all of the liabilities of the Corporation, dispose of all assets of the Corporation to the Supported Organization, or any successor organization thereto, if it is then qualified or tax exempt under Section 501(c)(3) of the Code, and, if, not, to one or more organizations created and organized exclusively for charitable, educational, or scientific purposes similar to those of the Supported Organization contributions to which are deductible under Section 170 of the Code and which qualify as exempt under Section 501 (c)(3) of the Code, as the directors shall determine.

**ARTICLE XIII**

**INDEMNIFICATION**

The Corporation shall, to the extent permitted by applicable law, indemnify each of its directors and officers (including persons who serve at its request as directors, officers, or trustees of another organization in which it has any interest as an owner, creditor or otherwise) against all liabilities and expenses, including amounts paid in satisfaction of judgments, in compromise or as fines and penalties, and counsel fees, reasonably incurred by him or her in connection with the defense or disposition of any action, suit or other proceeding, whether civil or criminal, in which he or she may be involved or with which he or she may be threatened, while in office or thereafter, by reason of his or her being or having been such a director or officer, except where the injury or damage was the result of willful misconduct, criminal conduct (unless such director or officer had reasonable cause to believe that such conduct was lawful), a transaction that resulted in an improper personal benefit of money, property or service to such director or officer, or an act or omission that is not in good faith and is beyond the scope of authority of the Corporation; provided, however, that as to any matter disposed of by a compromise payment by

such director or officer, pursuant to a consent decree or otherwise, no indemnification either for said payment or for any other expenses shall be provided unless such compromise shall be approved as in the best interests of the Corporation, after notice that it involved such indemnification, (i) by a disinterested majority of the directors then in office; or (ii) by a majority of the disinterested directors then in office, provided that there has been obtained an opinion in writing of independent legal counsel to the effect that such director or officer appears to have acted in good faith in the reasonable belief that his or her action was in the best interests of the Corporation. The right of indemnification hereby provided shall not be exclusive of or affect any other rights to which any director or officer may be entitled. As used in this section, the terms "director" and "officer" include their respective heirs, executors and administrators, and an "interested" director or officer is one against whom in such capacity the proceedings in question or another proceeding on the same or similar grounds is then pending. Nothing contained in this section shall affect any rights to indemnification to which corporate personnel other than directors and officers may be entitled by contract or otherwise under law.

## ARTICLE XIV

### PROVISIONS RELATIVE TO TRANSACTIONS WITH INTERESTED PERSONS

The Corporation may enter into contracts and transact business with one or more of its directors or officers or with any corporation, organization or other concern in which one or more of its directors or officers are directors, officers, stockholders, partners or otherwise interested; and, in the absence of fraud, no such contract or transaction shall be invalidated or in any way affected by the fact that such directors or officers of the Corporation have or may have interests which are or might be adverse to the interest of the Corporation even though the vote or action of directors or officers having such adverse interest may have been necessary to obligate the Corporation upon such contract or transaction, unless, for so long as the Corporation is a private foundation described in section 509 of the Internal Revenue Code of 1986, as amended (the "Code"), such contract or transaction constitutes an act of self-dealing prohibited by section 4941 of the Code. In the absence of fraud or, for so long as the Corporation is a private foundation described in section 509 of the Code, in the absence of self-dealing, no director or officer of the Corporation having such adverse interest shall be liable to the Corporation or to any creditor thereof or to any other person for loss incurred by it under or by reason of such contract or transaction, nor shall any such director or officer be accountable for any gains or profits realized thereon. Notwithstanding the foregoing, subject to the Articles of Incorporation and applicable law, the Board of Directors shall adopt a conflict of interest policy covering the Corporation's substantial contributors, directors, officers and such other employees as shall be specified in the policy.

## ARTICLE XV

### AMENDMENTS

Any of the Bylaws of the Corporation shall be subject to amendment or repeal, and new Bylaws may be adopted, at any duly called annual, regular or special meeting of the Board of Directors, by majority of the Board of Directors which majority shall include the Directors serving as

D112816.5

**EXHIBIT 1**
**28**

1:17-cv-00635-JDB

President and Vice President of the Corporation.  No Bylaws may be amended, repealed or adopted in violation of the Articles of Incorporation of the Corporation.


Adopted June __, 2009.

D112816.5

**EXHIBIT 1**
**29**

1:17-cv-00635-JDB

*Adopted by vote of the Board of Directors, October 5, 2009*

**Conflict of Interest Policy for**
**Laogai Human Rights Organization, Inc.**

### Introduction

This conflict of interest policy applies to all directors, officers and employees of the Laogai Human Rights Organization, Inc. (the "Organization"), a D.C. nonprofit corporation established as a supporting organization of the Laogai Research Foundation ("Laogai"). It is intended to foster the highest standards of integrity and honesty for those serving the Organization.

### Statement of General Policy

Individuals serving the Organization must avoid placing themselves in positions in which there may be a conflict, or the appearance of a conflict, between their personal interest and their fiduciary duty to the Organization . Conflicts may arise when:

a)  the individual's interests (or those of a member of his or her family) are adverse to the interests of the Organization.

b)  the individual is in a position to influence a business or grantmaking decision of the Organization in such a way that it will, or might appear to, benefit the individual, his or her family member, or an entity in which either has an interest.

### Implementation

1.  **Disclosure.**  Upon first being elected or appointed, each director or officer (which terms also include any individuals having powers or responsibilities similar to those of directors or officers) shall disclose in writing to the Board of Directors, to the best of his or her knowledge:

a.  Any financial transactions with the Organization,  that involve the director or officer, his or her immediate relatives[1], or any entity with which he or she is associated

---

[1]  For purposes of this Conflict of Interest Policy, a person's "immediate relatives" include brothers and sisters, children, grandchildren, great grandchildren, ancestors (parents, grandparents, etc.) and spouses (of the individual and any relatives in the categories identified above).

D117134.1

**EXHIBIT 1**

in a significant leadership or ownership capacity[2] ("related-party transactions"); and

b.      Any association through which the director or officer, or his or her immediate relatives, is in a position to exercise substantial influence over the affairs of an organization or entity with which the Organization has a financial or programmatic relationship.

2.      **Review of Related-Party Transactions.**

The terms of all related-party transactions shall be reviewed initially by the board of directors.  The board of directors shall determine whether, all factors considered, a given transaction is on fair and reasonable terms and is in the best interests of the Organization.  For this purpose, a "transaction" includes an ongoing business relationship between the Organization and professional firm or supplier.  All such long term relationships which involve related parties shall be reviewed annually.  No member of the board of directors who is interested in any related-party transaction shall participate in the board's review of that transaction.

3.      **Voting by Directors.** An individual should not vote on, approve or make recommendations regarding a transaction between the Organization or Laogai and an entity in which the individual or a member of his or her immediate relatives has an ownership interest.  In certain instances, a director may be asked by at least a majority of the disinterested directors to leave the room or disconnect the telephone or other conferencing method during discussion of the transaction. The minutes of the meeting of the board of directors shall reflect any such recusal or absence.  If a director or officer of the Organization becomes aware that such a related-party transaction is being discussed or planned for the future, he or she should make known to the President or to the board of directors the facts of his or her relationship to the transaction before the Organization  initiates any action with regard to the transaction.

4.      **Disqualification of Individuals.**  No director or officer or member of his or her immediate relatives or an entity owned by any such individual may do business with the Organization, unless the facts of the particular related-party transaction have been fully disclosed and the transaction has been expressly authorized by the Directors of the Organization.

5.      **Receipt of Gifts.**  No Director or officer or any of his or her immediate relatives should accept gifts or other favors under circumstances that might lead to the inference that the gift or favor was intended to influence his or her decision-

---

[2]      For purposes of this Conflict of Interest Policy, "ownership" means direct or indirect control of more than 35% of the total combined voting power, profits interest, or beneficial interest of an entity (e.g., a corporation, partnership, trust or estate, etc., for profit or nonprofit.)

- 2 -

**EXHIBIT 1**
31

making while serving the Organization.  Any non-trivial gifts offered by a person or organization that does business with the Organization must be declined, and the offer reported to the President.

### *Disclosure Procedure/Applicability*

Individuals to whom this procedure applies are expected to complete a conflict of interest disclosure form prior to their first participation in the affairs of the Organization. Thereafter, disclosures shall be updated annually, or sooner, if changed circumstances require disclosure.  In addition, persons subject to this policy are expected to update the statement at any time during the year that the information requested on the statement changes.  Disclosure statements should be submitted to the President, who will be the conflict of interest officer, and who will administer this policy.

D117134.1

**EXHIBIT 1**

1:17-cv-00635-JDB

## **Organization's Conflict of Interest Policy**
## **Acknowledgment Form**

Name:_____

          (please print)

I acknowledge that I have read the Organization's conflict of interest policy adopted as of October __, 2009 and I agree to abide by its terms. I agree to disclose any personal potential or actual conflict of interest to the President, the designated conflict of interest officer, and to complete and keep current the Organization's conflict of interest disclosure statement. Terms used herein shall have the meaning given to them in the conflict of interest policy.

_____

          Signature

_____

          Date

- 4 -

<u>**Organization's Conflict of Interest**</u>
<u>**2009 Disclosure Statement**</u>

**Offices and Positions**

Are you, or an immediate relative in a position to exercise substantial control over the affairs of any organization with which the Organization or Laogai may be expected to have business dealings in the next year?

＿   Yes          ＿   No

*If -yes-, please provide the following information:*

| **Organization** | **Position** | **Person with Potential Conflict** | **Nature of Organization's Business** |
|---|---|---|---|
| | | | |

**Ownership Interests**

Do you, or an immediate relative individually or collectively, directly or indirectly own more than 35% of the total combined voting power, profits interest, or beneficial interest in any entity with which the Organization or Laogai may be expected to have business dealings in the next year, other than a Permitted Interest?[3]

＿   Yes          ＿   No

*If -yes-, please provide the following information:*

| **Organization** | **Nature of Financial Interest** | **Nature of Organization's Business** |
|---|---|---|
| | | |

**Remunerative Activities**

---

[3]Permitted Interest means the ownership of (a) shares of stock listed on the New York Stock Exchange, the American Stock Exchange, or any other recognized stock exchange or national market system, so long as the amount of such stock of any one issuer is less than five percent of the outstanding voting shares; (b) shares of mutual funds; (c) an interest in a blind trust; or (d) any debt instruments of publicly held companies.

D117134.1

**EXHIBIT 1**
34

1:17-cv-00635-JDB

Do you, or an immediate relative individually or collectively, expect to receive in the current or a future year, remuneration for services (other than salary as an employee) in excess of $5,000 from an organization with which the Organization **may** be expected to have business dealings in the next year?

    \_\_    Yes        \_\_    No

*If -yes-, please provide the following information:*

|  |  | **Nature of** |
|---|---|---|
| **Organization** | **Location** | **Organization's Business** |

_____
Name (please print)

_____
Signature

_____
Date

D117134.1

**EXHIBIT 1**
35

1:17-cv-00635-JDB

*Adopted by vote of the Board of Directors, October 5, 2009*

### Conflict of Interest Policy for
### Laogai Human Rights Organization, Inc.

#### *Introduction*

This conflict of interest policy applies to all directors, officers and employees of the Laogai Human Rights Organization, Inc. (the "Organization"), a D.C. nonprofit corporation established as a supporting organization of the Laogai Research Foundation ("Laogai"). It is intended to foster the highest standards of integrity and honesty for those serving the Organization.

#### *Statement of General Policy*

Individuals serving the Organization must avoid placing themselves in positions in which there may be a conflict, or the appearance of a conflict, between their personal interest and their fiduciary duty to the Organization . Conflicts may arise when:

   a)   the individual's interests (or those of a member of his or her family) are adverse to the interests of the Organization.

   b)   the individual is in a position to influence a business or grantmaking decision of the Organization in such a way that it will, or might appear to, benefit the individual, his or her family member, or an entity in which either has an interest.

#### *Implementation*

1.   **Disclosure.**   Upon first being elected or appointed, each director or officer (which terms also include any individuals having powers or responsibilities similar to those of directors or officers) shall disclose in writing to the Board of Directors, to the best of his or her knowledge:

   a.   Any financial transactions with the Organization,  that involve the director or officer, his or her immediate relatives[1], or any entity with which he or she is associated

---

[1]      For purposes of this Conflict of Interest Policy, a person's "immediate relatives" include brothers and sisters, children, grandchildren, great grandchildren, ancestors (parents, grandparents, etc.) and spouses (of the individual and any relatives in the categories identified above).

in a significant leadership or ownership capacity[2] ("related-party transactions"); and

    b.    Any association through which the director or officer, or his or her immediate relatives, is in a position to exercise substantial influence over the affairs of an organization or entity with which the Organization has a financial or programmatic relationship.

2.    **Review of Related-Party Transactions.**

The terms of all related-party transactions shall be reviewed initially by the board of directors.    The board of directors shall determine whether, all factors considered, a given transaction is on fair and reasonable terms and is in the best interests of the Organization.    For this purpose, a "transaction" includes an ongoing business relationship between the Organization and professional firm or supplier.    All such long term relationships which involve related parties shall be reviewed annually.    No member of the board of directors who is interested in any related-party transaction shall participate in the board's review of that transaction.

3.    **Voting by Directors.** An individual should not vote on, approve or make recommendations regarding a transaction between the Organization or Laogai and an entity in which the individual or a member of his or her immediate relatives has an ownership interest.    In certain instances, a director may be asked by at least a majority of the disinterested directors to leave the room or disconnect the telephone or other conferencing method during discussion of the transaction.    The minutes of the meeting of the board of directors shall reflect any such recusal or absence.    If a director or officer of the Organization becomes aware that such a related-party transaction is being discussed or planned for the future, he or she should make known to the President or to the board of directors the facts of his or her relationship to the transaction before the Organization   initiates any action with regard to the transaction.

4.    **Disqualification of Individuals.**  No director or officer or member of his or her immediate relatives or an entity owned by any such individual may do business with the Organization, unless the facts of the particular related-party transaction have been fully disclosed and the transaction has been expressly authorized by the Directors of the Organization.

5.    **Receipt of Gifts.**  No Director or officer or any of his or her immediate relatives should accept gifts or other favors under circumstances that might lead to the inference that the gift or favor was intended to influence his or her decision-

---

[2]    For purposes of this Conflict of Interest Policy, "ownership" means direct or indirect control of more than 35% of the total combined voting power, profits interest, or beneficial interest of an entity (e.g., a corporation, partnership, trust or estate, etc., for profit or nonprofit.)

- 2 -

**EXHIBIT 1**

making while serving the Organization.  Any non-trivial gifts offered by a person or organization that does business with the Organization must be declined, and the offer reported to the President.

*Disclosure Procedure/Applicability*

Individuals to whom this procedure applies are expected to complete a conflict of interest disclosure form prior to their first participation in the affairs of the Organization. Thereafter, disclosures shall be updated annually, or sooner, if changed circumstances require disclosure.  In addition, persons subject to this policy are expected to update the statement at any time during the year that the information requested on the statement changes.  Disclosure statements should be submitted to the President, who will be the conflict of interest officer, and who will administer this policy.

DI17134.1

**EXHIBIT 1**

1:17-cv-00635-JDB

**Organization's Conflict of Interest Policy
Acknowledgment Form**

Name: _NAN RICHARDSON_
(please print)

I acknowledge that I have read the Organization's conflict of interest policy adopted as of October 5, 2009 and I agree to abide by its terms.  I agree to disclose any personal potential or actual conflict of interest to the President, the designated conflict of interest officer, and to complete and keep current the Organization's conflict of interest disclosure statement.  Terms used herein shall have the meaning given to them in the conflict of interest policy.

_____
Signature

_____
Date

- 4 -

**EXHIBIT 1**

1:17-cv-00635-JDB

**Organization's Conflict of Interest**
**2009 Disclosure Statement**

### Offices and Positions

Are you, or an immediate relative in a position to exercise substantial control over the affairs of any organization with which the Organization or Laogai may be expected to have business dealings in the next year?

_____ ✗ Yes                    _____ No

*If -yes-, please provide the following information:*

| **Organization** | **Position** | **Person with Potential Conflict** | **Nature of Organization's Business** |
|---|---|---|---|
| Umbrage Editions | Publisher | ( self ) | Publishing |

### Ownership Interests

Do you, or an immediate relative individually or collectively, directly or indirectly own more than 35% of the total combined voting power, profits interest, or beneficial interest in any entity with which the Organization or Laogai may be expected to have business dealings in the next year, other than a Permitted Interest?[3]

_____ ✗ Yes                    _____ No

*If -yes-, please provide the following information:*

| **Organization** | **Nature of Financial Interest** | **Nature of Organization's Business** |
|---|---|---|
| ( same as above ) | | |

### Remunerative Activities

---

[3]Permitted Interest means the ownership of (a) shares of stock listed on the New York Stock Exchange, the American Stock Exchange, or any other recognized stock exchange or national market system, so long as the amount of such stock of any one issuer is less than five percent of the outstanding voting shares; (b) shares of mutual funds; (c) an interest in a blind trust; or (d) any debt instruments of publicly held companies.

- 5 -

Do you, or an immediate relative individually or collectively, expect to receive in the current or a future year, remuneration for services (other than salary as an employee) in excess of $5,000 from an organization with which the Organization **may** be expected to have business dealings in the next year?

     _____    Yes           _____    No

*If -yes-, please provide the following information:*

**Organization**          **Location**          **Nature of**
                                                  **Organization's Business**

_____
                  Name (please print)

NAN   RICHARDSON
_____
                  Signature

11/5/09
_____
Date

**EXHIBIT 1**

*Adopted by vote of the Board of Directors, October 5, 2009*

## Conflict of Interest Policy for
## Laogai Human Rights Organization, Inc.

### *Introduction*

This conflict of interest policy applies to all directors, officers and employees of the Laogai Human Rights Organization, Inc. (the "Organization"), a D.C. nonprofit corporation established as a supporting organization of the Laogai Research Foundation ("Laogai"). It is intended to foster the highest standards of integrity and honesty for those serving the Organization.

### *Statement of General Policy*

Individuals serving the Organization must avoid placing themselves in positions in which there may be a conflict, or the appearance of a conflict, between their personal interest and their fiduciary duty to the Organization . Conflicts may arise when:

    a)    the individual's interests (or those of a member of his or her family) are adverse to the interests of the Organization.

    b)    the individual is in a position to influence a business or grantmaking decision of the Organization in such a way that it will, or might appear to, benefit the individual, his or her family member, or an entity in which either has an interest.

### *Implementation*

1.    **Disclosure.**    Upon first being elected or appointed, each director or officer (which terms also include any individuals having powers or responsibilities similar to those of directors or officers) shall disclose in writing to the Board of Directors, to the best of his or her knowledge:

    a.    Any financial transactions with the Organization, that involve the director or officer, his or her immediate relatives[1], or any entity with which he or she is associated

---

[1]    For purposes of this Conflict of Interest Policy, a person's "immediate relatives" include brothers and sisters, children, grandchildren, great grandchildren, ancestors (parents, grandparents, etc.) and spouses (of the individual and any relatives in the categories identified above).

D117134.1

**EXHIBIT 1**

1:17-cv-00635-JDB

in a significant leadership or ownership capacity[2] ("related-party transactions"); and

    b.    Any association through which the director or officer, or his or her immediate relatives, is in a position to exercise substantial influence over the affairs of an organization or entity with which the Organization has a financial or programmatic relationship.

2.    **Review of Related-Party Transactions.**

The terms of all related-party transactions shall be reviewed initially by the board of directors.   The board of directors shall determine whether, all factors considered, a given transaction is on fair and reasonable terms and is in the best interests of the Organization.   For this purpose, a "transaction" includes an ongoing business relationship between the Organization and professional firm or supplier.   All such long term relationships which involve related parties shall be reviewed annually.   No member of the board of directors who is interested in any related-party transaction shall participate in the board's review of that transaction.

3.    **Voting by Directors.** An individual should not vote on, approve or make recommendations regarding a transaction between the Organization or Laogai and an entity in which the individual or a member of his or her immediate relatives has an ownership interest.   In certain instances, a director may be asked by at least a majority of the disinterested directors to leave the room or disconnect the telephone or other conferencing method during discussion of the transaction.   The minutes of the meeting of the board of directors shall reflect any such recusal or absence.   If a director or officer of the Organization becomes aware that such a related-party transaction is being discussed or planned for the future, he or she should make known to the President or to the board of directors the facts of his or her relationship to the transaction before the Organization  initiates any action with regard to the transaction.

4.    **Disqualification of Individuals.**  No director or officer or member of his or her immediate relatives or an entity owned by any such individual may do business with the Organization, unless the facts of the particular related-party transaction have been fully disclosed and the transaction has been expressly authorized by the Directors of the Organization.

5.    **Receipt of Gifts.**  No Director or officer or any of his or her immediate relatives should accept gifts or other favors under circumstances that might lead to the inference that the gift or favor was intended to influence his or her decision-

---

[2]    For purposes of this Conflict of Interest Policy, "ownership" means direct or indirect control of more than 35% of the total combined voting power, profits interest, or beneficial interest of an entity (e.g., a corporation, partnership, trust or estate, etc., for profit or nonprofit.)

making while serving the Organization.  Any non-trivial gifts offered by a person or organization that does business with the Organization must be declined, and the offer reported to the President.

### Disclosure Procedure/Applicability

Individuals to whom this procedure applies are expected to complete a conflict of interest disclosure form prior to their first participation in the affairs of the Organization. Thereafter, disclosures shall be updated annually, or sooner, if changed circumstances require disclosure.  In addition, persons subject to this policy are expected to update the statement at any time during the year that the information requested on the statement changes.  Disclosure statements should be submitted to the President, who will be the conflict of interest officer, and who will administer this policy.

D117134.1

**EXHIBIT 1**
**44**

1:17-cv-00635-JDB

## **Organization's Conflict of Interest Policy**
### **Acknowledgment Form**

Name: _MAOCHUN YU_

(please print)

I acknowledge that I have read the Organization's conflict of interest policy adopted as of October __, 2009 and I agree to abide by its terms.  I agree to disclose any personal potential or actual conflict of interest to the President, the designated conflict of interest officer, and to complete and keep current the Organization's conflict of interest disclosure statement.  Terms used herein shall have the meaning given to them in the conflict of interest policy.

Signature

5 oct 09

Date

D117134.1

- 4 -

**EXHIBIT 1**
45

1:17-cv-00635-JDB

## Organization's Conflict of Interest
## 2009 Disclosure Statement

### Offices and Positions

Are you, or an immediate relative in a position to exercise substantial control over the affairs of any organization with which the Organization or Laogai may be expected to have business dealings in the next year?

___     Yes                     ✓  No

*If -yes-, please provide the following information:*

| | | **Person with** | **Nature of** |
|---|---|---|---|
| **Organization** | **Position** | **Potential Conflict** | **Organization's Business** |

### Ownership Interests

Do you, or an immediate relative individually or collectively, directly or indirectly own more than 35% of the total combined voting power, profits interest, or beneficial interest in any entity with which the Organization or Laogai may be expected to have business dealings in the next year, other than a Permitted Interest?[3]

___     Yes                     ✓  No

*If -yes-, please provide the following information:*

| | **Nature of** | **Nature of** |
|---|---|---|
| **Organization** | **Financial Interest** | **Organization's Business** |

### Remunerative Activities

---

[3]Permitted Interest means the ownership of (a) shares of stock listed on the New York Stock Exchange, the American Stock Exchange, or any other recognized stock exchange or national market system, so long as the amount of such stock of any one issuer is less than five percent of the outstanding voting shares; (b) shares of mutual funds; (c) an interest in a blind trust; or (d) any debt instruments of publicly held companies.

- 5 -

D117134.1

**EXHIBIT 1**
46

1:17-cv-00635-JDB

Do you, or an immediate relative individually or collectively, expect to receive in the current or a future year, remuneration for services (other than salary as an employee) in excess of $5,000 from an organization with which the Organization **may** be expected to have business dealings in the next year?

    ___     Yes            ___    No

*If -yes-, please provide the following information:*

**Organization**           **Location**           **Nature of Organization's Business**

_____
Name (please print)

_____
Signature

_____
Date

D117134.1

**EXHIBIT 1**
47

1:17-cv-00635-JDB

*Adopted by vote of the Board of Directors, October 5, 2009*

## Conflict of Interest Policy for
## Laogai Human Rights Organization, Inc.

### Introduction

This conflict of interest policy applies to all directors, officers and employees of the Laogai Human Rights Organization, Inc. (the "Organization"), a D.C. nonprofit corporation established as a supporting organization of the Laogai Research Foundation ("Laogai"). It is intended to foster the highest standards of integrity and honesty for those serving the Organization.

### Statement of General Policy

Individuals serving the Organization must avoid placing themselves in positions in which there may be a conflict, or the appearance of a conflict, between their personal interest and their fiduciary duty to the Organization . Conflicts may arise when:

    a)      the individual's interests (or those of a member of his or her family) are adverse to the interests of the Organization.

    b)      the individual is in a position to influence a business or grantmaking decision of the Organization in such a way that it will, or might appear to, benefit the individual, his or her family member, or an entity in which either has an interest.

### Implementation

1.     **Disclosure.**     Upon first being elected or appointed, each director or officer (which terms also include any individuals having powers or responsibilities similar to those of directors or officers) shall disclose in writing to the Board of Directors, to the best of his or her knowledge:

    a.      Any financial transactions with the Organization, that involve the director or officer, his or her immediate relatives[1], or any entity with which he or she is associated

---

[1]     For purposes of this Conflict of Interest Policy, a person's "immediate relatives" include brothers and sisters, children, grandchildren, great grandchildren, ancestors (parents, grandparents, etc.) and spouses (of the individual and any relatives in the categories identified above).

D117134.1

**EXHIBIT 1**

in a significant leadership or ownership capacity[2] ("related-party transactions"); and

b.   Any association through which the director or officer, or his or her immediate relatives, is in a position to exercise substantial influence over the affairs of an organization or entity with which the Organization has a financial or programmatic relationship.

2.   **Review of Related-Party Transactions.**

The terms of all related-party transactions shall be reviewed initially by the board of directors.   The board of directors shall determine whether, all factors considered, a given transaction is on fair and reasonable terms and is in the best interests of the Organization.   For this purpose, a "transaction" includes an ongoing business relationship between the Organization and professional firm or supplier.   All such long term relationships which involve related parties shall be reviewed annually.   No member of the board of directors who is interested in any related-party transaction shall participate in the board's review of that transaction.

3.   **Voting by Directors.**   An individual should not vote on, approve or make recommendations regarding a transaction between the Organization or Laogai and an entity in which the individual or a member of his or her immediate relatives has an ownership interest.   In certain instances, a director may be asked by at least a majority of the disinterested directors to leave the room or disconnect the telephone or other conferencing method during discussion of the transaction.   The minutes of the meeting of the board of directors shall reflect any such recusal or absence.   If a director or officer of the Organization becomes aware that such a related-party transaction is being discussed or planned for the future, he or she should make known to the President or to the board of directors the facts of his or her relationship to the transaction before the Organization   initiates any action with regard to the transaction.

4.   **Disqualification of Individuals.**   No director or officer or member of his or her immediate relatives or an entity owned by any such individual may do business with the Organization, unless the facts of the particular related-party transaction have been fully disclosed and the transaction has been expressly authorized by the Directors of the Organization.

5.   **Receipt of Gifts.**   No Director or officer or any of his or her immediate relatives should accept gifts or other favors under circumstances that might lead to the inference that the gift or favor was intended to influence his or her decision-

---

[2]   For purposes of this Conflict of Interest Policy, "ownership" means direct or indirect control of more than 35% of the total combined voting power, profits interest, or beneficial interest of an entity (e.g., a corporation, partnership, trust or estate, etc., for profit or nonprofit.)

making while serving the Organization.  Any non-trivial gifts offered by a person or organization that does business with the Organization must be declined, and the offer reported to the President.

*Disclosure Procedure/Applicability*

Individuals to whom this procedure applies are expected to complete a conflict of interest disclosure form prior to their first participation in the affairs of the Organization. Thereafter, disclosures shall be updated annually, or sooner, if changed circumstances require disclosure.  In addition, persons subject to this policy are expected to update the statement at any time during the year that the information requested on the statement changes.  Disclosure statements should be submitted to the President, who will be the conflict of interest officer, and who will administer this policy.

**EXHIBIT 1**

**Organization's Conflict of Interest Policy**
**Acknowledgment Form**

Name: _Harry Wu_____

(please print)

I acknowledge that I have read the Organization's conflict of interest policy adopted as of October __, 2009 and I agree to abide by its terms.  I agree to disclose any personal potential or actual conflict of interest to the President, the designated conflict of interest officer, and to complete and keep current the Organization's conflict of interest disclosure statement.  Terms used herein shall have the meaning given to them in the conflict of interest policy.

_____
Signature

_____
Date

- 4 -

D117134.1

**EXHIBIT 1**

51

1:17-cv-00635-JDB

## Organization's Conflict of Interest
## 2009 Disclosure Statement

**Offices and Positions**

Are you, or an immediate relative in a position to exercise substantial control over the affairs of any organization with which the Organization or Laogai may be expected to have business dealings in the next year?

✓ Yes          ___ No

*If -yes-, please provide the following information:*

| Organization | Position | Person with Potential Conflict | Nature of Organization's Business |
|---|---|---|---|
| L.R.F. | Exb. Director | | NGO |

**Ownership Interests**

Do you, or an immediate relative individually or collectively, directly or indirectly own more than 35% of the total combined voting power, profits interest, or beneficial interest in any entity with which the Organization or Laogai may be expected to have business dealings in the next year, other than a Permitted Interest?[3]

✓ Yes          ___ No

*If -yes-, please provide the following information:*

| Organization | Nature of Financial Interest | Nature of Organization's Business |
|---|---|---|
| L.R.F. | Exb. Director | NGO |

**Remunerative Activities**

---

[3]Permitted Interest means the ownership of (a) shares of stock listed on the New York Stock Exchange, the American Stock Exchange, or any other recognized stock exchange or national market system, so long as the amount of such stock of any one issuer is less than five percent of the outstanding voting shares; (b) shares of mutual funds; (c) an interest in a blind trust; or (d) any debt instruments of publicly held companies.

- 5 -

Do you, or an immediate relative individually or collectively, expect to receive in the current or a future year, remuneration for services (other than salary as an employee) in excess of $5,000 from an organization with which the Organization **may** be expected to have business dealings in the next year?

_____ Yes        ✓_____ No

*If -yes-, please provide the following information:*

| **Organization** | **Location** | **Nature of Organization's Business** |
|---|---|---|

L. R. F.          WASHINGTON.D.C,        NGO.

_____HARRY WU_____
Name (please print)

_____
Signature

10/5/2005
Date

*Adopted by vote of the Board of Directors, October 5, 2009*

### Conflict of Interest Policy for
### Laogai Human Rights Organization, Inc.

#### Introduction

This conflict of interest policy applies to all directors, officers and employees of the Laogai Human Rights Organization, Inc. (the "Organization"), a D.C. nonprofit corporation established as a supporting organization of the Laogai Research Foundation ("Laogai"). It is intended to foster the highest standards of integrity and honesty for those serving the Organization.

#### Statement of General Policy

Individuals serving the Organization must avoid placing themselves in positions in which there may be a conflict, or the appearance of a conflict, between their personal interest and their fiduciary duty to the Organization . Conflicts may arise when:

a) the individual's interests (or those of a member of his or her family) are adverse to the interests of the Organization.

b) the individual is in a position to influence a business or grantmaking decision of the Organization in such a way that it will, or might appear to, benefit the individual, his or her family member, or an entity in which either has an interest.

#### Implementation

1. **Disclosure.** Upon first being elected or appointed, each director or officer (which terms also include any individuals having powers or responsibilities similar to those of directors or officers) shall disclose in writing to the Board of Directors, to the best of his or her knowledge:

a. Any financial transactions with the Organization, that involve the director or officer, his or her immediate relatives[1], or any entity with which he or she is associated

---

[1] For purposes of this Conflict of Interest Policy, a person's "immediate relatives" include brothers and sisters, children, grandchildren, great grandchildren, ancestors (parents, grandparents, etc.) and spouses (of the individual and any relatives in the categories identified above).

D117134.1

**EXHIBIT 1**
54
1:17-cv-00635-JDB

in a significant leadership or ownership capacity[2] ("related-party transactions"); and

b.   Any association through which the director or officer, or his or her immediate relatives, is in a position to exercise substantial influence over the affairs of an organization or entity with which the Organization has a financial or programmatic relationship.

2.   **Review of Related-Party Transactions.**

The terms of all related-party transactions shall be reviewed initially by the board of directors.   The board of directors shall determine whether, all factors considered, a given transaction is on fair and reasonable terms and is in the best interests of the Organization.   For this purpose, a "transaction" includes an ongoing business relationship between the Organization and professional firm or supplier.   All such long term relationships which involve related parties shall be reviewed annually.   No member of the board of directors who is interested in any related-party transaction shall participate in the board's review of that transaction.

3.   **Voting by Directors.**   An individual should not vote on, approve or make recommendations regarding a transaction between the Organization or Laogai and an entity in which the individual or a member of his or her immediate relatives has an ownership interest.   In certain instances, a director may be asked by at least a majority of the disinterested directors to leave the room or disconnect the telephone or other conferencing method during discussion of the transaction.   The minutes of the meeting of the board of directors shall reflect any such recusal or absence.   If a director or officer of the Organization becomes aware that such a related-party transaction is being discussed or planned for the future, he or she should make known to the President or to the board of directors the facts of his or her relationship to the transaction before the Organization   initiates any action with regard to the transaction.

4.   **Disqualification of Individuals.**   No director or officer or member of his or her immediate relatives or an entity owned by any such individual may do business with the Organization, unless the facts of the particular related-party transaction have been fully disclosed and the transaction has been expressly authorized by the Directors of the Organization.

5.   **Receipt of Gifts.**   No Director or officer or any of his or her immediate relatives should accept gifts or other favors under circumstances that might lead to the inference that the gift or favor was intended to influence his or her decision-

---

[2]   For purposes of this Conflict of Interest Policy, "ownership" means direct or indirect control of more than 35% of the total combined voting power, profits interest, or beneficial interest of an entity (e.g., a corporation, partnership, trust or estate, etc., for profit or nonprofit.)

making while serving the Organization.  Any non-trivial gifts offered by a person or organization that does business with the Organization must be declined, and the offer reported to the President.

### *Disclosure Procedure/Applicability*

Individuals to whom this procedure applies are expected to complete a conflict of interest disclosure form prior to their first participation in the affairs of the Organization. Thereafter, disclosures shall be updated annually, or sooner, if changed circumstances require disclosure.  In addition, persons subject to this policy are expected to update the statement at any time during the year that the information requested on the statement changes.  Disclosure statements should be submitted to the President, who will be the conflict of interest officer, and who will administer this policy.

D117134.1

**EXHIBIT 1**

1:17-cv-00635-JDB

## **Organization's Conflict of Interest Policy**
## **Acknowledgment Form**

Name: _Trenchi Martin-Liao_
        (please print)

I acknowledge that I have read the Organization's conflict of interest policy adopted as of October __, 2009 and I agree to abide by its terms. I agree to disclose any personal potential or actual conflict of interest to the President, the designated conflict of interest officer, and to complete and keep current the Organization's conflict of interest disclosure statement. Terms used herein shall have the meaning given to them in the conflict of interest policy.

_Tiechi Martin-Liao_
Signature

_10 / 05 / 2019_
Date

D117134.1

**EXHIBIT 1**

### Organization's Conflict of Interest
### 2009 Disclosure Statement

**Offices and Positions**

Are you, or an immediate relative in a position to exercise substantial control over the affairs of any organization with which the Organization or Laogai may be expected to have business dealings in the next year?

___  Yes        ✓ No

*If -yes-, please provide the following information:*

| **Organization** | **Position** | **Person with Potential Conflict** | **Nature of Organization's Business** |
|---|---|---|---|
| | | | |

**Ownership Interests**

Do you, or an immediate relative individually or collectively, directly or indirectly own more than 35% of the total combined voting power, profits interest, or beneficial interest in any entity with which the Organization or Laogai may be expected to have business dealings in the next year, other than a Permitted Interest?[3]

___  Yes        ✓ No

*If -yes-, please provide the following information:*

| **Organization** | **Nature of Financial Interest** | **Nature of Organization's Business** |
|---|---|---|
| | | |

**Remunerative Activities**

---

[3]Permitted Interest means the ownership of (a) shares of stock listed on the New York Stock Exchange, the American Stock Exchange, or any other recognized stock exchange or national market system, so long as the amount of such stock of any one issuer is less than five percent of the outstanding voting shares; (b) shares of mutual funds; (c) an interest in a blind trust; or (d) any debt instruments of publicly held companies.

D117134.1

**EXHIBIT 1**

1:17-cv-00635-JDB

Do you, or an immediate relative individually or collectively, expect to receive in the current or a future year, remuneration for services (other than salary as an employee) in excess of $5,000 from an organization with which the Organization **may** be expected to have business dealings in the next year?

_____ Yes          ✓ No

*If -yes-, please provide the following information:*

**Organization**          **Location**          **Nature of**
                                        **Organization's Business**

Tienchi Martin-Liao
Name (please print)

*Tienchi Martin-Liao*
Signature

10/5/2009
Date

*Adopted by vote of the Board of Directors, October 5, 2009*

## Conflict of Interest Policy for
## Laogai Human Rights Organization, Inc.

### Introduction

This conflict of interest policy applies to all directors, officers and employees of the Laogai Human Rights Organization, Inc. (the "Organization"), a D.C. nonprofit corporation established as a supporting organization of the Laogai Research Foundation ("Laogai"). It is intended to foster the highest standards of integrity and honesty for those serving the Organization.

### Statement of General Policy

Individuals serving the Organization must avoid placing themselves in positions in which there may be a conflict, or the appearance of a conflict, between their personal interest and their fiduciary duty to the Organization . Conflicts may arise when:

a)      the individual's interests (or those of a member of his or her family) are adverse to the interests of the Organization.

b)      the individual is in a position to influence a business or grantmaking decision of the Organization in such a way that it will, or might appear to, benefit the individual, his or her family member, or an entity in which either has an interest.

### Implementation

1.      **Disclosure.**      Upon first being elected or appointed, each director or officer (which terms also include any individuals having powers or responsibilities similar to those of directors or officers) shall disclose in writing to the Board of Directors, to the best of his or her knowledge:

a.      Any financial transactions with the Organization,  that involve the director or officer, his or her immediate relatives[1], or any entity with which he or she is associated

---

[1]      For purposes of this Conflict of Interest Policy, a person's "immediate relatives" include brothers and sisters, children, grandchildren, great grandchildren, ancestors (parents, grandparents, etc.) and spouses (of the individual and any relatives in the categories identified above).

**EXHIBIT 1**
**60**

in a significant leadership or ownership capacity[2] ("related-party transactions"); and

b.   Any association through which the director or officer, or his or her immediate relatives, is in a position to exercise substantial influence over the affairs of an organization or entity with which the Organization has a financial or programmatic relationship.

2.   **Review of Related-Party Transactions.**

The terms of all related-party transactions shall be reviewed initially by the board of directors.   The board of directors shall determine whether, all factors considered, a given transaction is on fair and reasonable terms and is in the best interests of the Organization.   For this purpose, a "transaction" includes an ongoing business relationship between the Organization and professional firm or supplier.   All such long term relationships which involve related parties shall be reviewed annually.   No member of the board of directors who is interested in any related-party transaction shall participate in the board's review of that transaction.

3.   **Voting by Directors.**  An individual should not vote on, approve or make recommendations regarding a transaction between the Organization or Laogai and an entity in which the individual or a member of his or her immediate relatives has an ownership interest.   In certain instances, a director may be asked by at least a majority of the disinterested directors to leave the room or disconnect the telephone or other conferencing method during discussion of the transaction.   The minutes of the meeting of the board of directors shall reflect any such recusal or absence.   If a director or officer of the Organization becomes aware that such a related-party transaction is being discussed or planned for the future, he or she should make known to the President or to the board of directors the facts of his or her relationship to the transaction before the Organization   initiates any action with regard to the transaction.

4.   **Disqualification of Individuals.**   No director or officer or member of his or her immediate relatives or an entity owned by any such individual may do business with the Organization, unless the facts of the particular related-party transaction have been fully disclosed and the transaction has been expressly authorized by the Directors of the Organization.

5.   **Receipt of Gifts.**   No Director or officer or any of his or her immediate relatives should accept gifts or other favors under circumstances that might lead to the inference that the gift or favor was intended to influence his or her decision-

---

[2]      For purposes of this Conflict of Interest Policy, "ownership" means direct or indirect control of more than 35% of the total combined voting power, profits interest, or beneficial interest of an entity (e.g., a corporation, partnership, trust or estate, etc., for profit or nonprofit.)

making while serving the Organization.  Any non-trivial gifts offered by a person or organization that does business with the Organization must be declined, and the offer reported to the President.

***Disclosure Procedure/Applicability***

Individuals to whom this procedure applies are expected to complete a conflict of interest disclosure form prior to their first participation in the affairs of the Organization. Thereafter, disclosures shall be updated annually, or sooner, if changed circumstances require disclosure.  In addition, persons subject to this policy are expected to update the statement at any time during the year that the information requested on the statement changes.  Disclosure statements should be submitted to the President, who will be the conflict of interest officer, and who will administer this policy.

D117134.1

**EXHIBIT 1**
**62**

1:17-cv-00635-JDB

**Organization's Conflict of Interest Policy
Acknowledgment Form**

Name: _Michael G. Samway_
(please print)

I acknowledge that I have read the Organization's conflict of interest policy adopted as of October __, 2009 and I agree to abide by its terms.  I agree to disclose any personal potential or actual conflict of interest to the President, the designated conflict of interest officer, and to complete and keep current the Organization's conflict of interest disclosure statement.  Terms used herein shall have the meaning given to them in the conflict of interest policy.

_____
Signature

_10/5/09_
Date

### Organization's Conflict of Interest
### 2009 Disclosure Statement

**Offices and Positions**

Are you, or an immediate relative in a position to exercise substantial control over the affairs of any organization with which the Organization or Laogai may be expected to have business dealings in the next year?

_____   Yes          ✓   No

*If -yes-, please provide the following information:*

| **Organization** | **Position** | **Person with Potential Conflict** | **Nature of Organization's Business** |
|------------------|--------------|-------------------------------------|----------------------------------------|
|                  |              |                                     |                                        |

**Ownership Interests**

Do you, or an immediate relative individually or collectively, directly or indirectly own more than 35% of the total combined voting power, profits interest, or beneficial interest in any entity with which the Organization or Laogai may be expected to have business dealings in the next year, other than a Permitted Interest?[3]

_____   Yes          ✓   No

*If -yes-, please provide the following information:*

| **Organization** | **Nature of Financial Interest** | **Nature of Organization's Business** |
|------------------|-----------------------------------|----------------------------------------|
|                  |                                   |                                        |

**Remunerative Activities**

---

[3]Permitted Interest means the ownership of (a) shares of stock listed on the New York Stock Exchange, the American Stock Exchange, or any other recognized stock exchange or national market system, so long as the amount of such stock of any one issuer is less than five percent of the outstanding voting shares; (b) shares of mutual funds; (c) an interest in a blind trust; or (d) any debt instruments of publicly held companies.

- 5 -

**EXHIBIT 1**
**64**

Do you, or an immediate relative individually or collectively, expect to receive in the current or a future year, remuneration for services (other than salary as an employee) in excess of $5,000 from an organization with which the Organization **may** be expected to have business dealings in the next year?

_____ Yes          ✓  No

*If -yes-, please provide the following information:*

| **Organization** | **Location** | **Nature of Organization's Business** |
|---|---|---|

MICHAEL A. SAMWAY
Name (please print)

*(signature)*
Signature

10 / 5 / 09
Date

- 6 -

**EXHIBIT 1**

D117134.1

65

1:17-cv-00635-JDB

## Yahoo! Irrevocable Human Rights Trust 2009

### Overview for Trustees

The Yahoo! Irrevocable Human Rights Trust 2009 (the "Trust") was established on June 12, 2009 (see <u>Declaration of Trust</u> at Tab 2) pursuant to a settlement agreement entered into between Yahoo! Inc (the "Donor") and the Laogai Research Foundation ("LRF") in 2007. A D.C. nonprofit corporation, the Laogai Human Rights Organization ("LHRO"), was also established under the terms of the settlement agreement. The LHRO is a supporting organization of the LRF.

Under the terms of the Trust, the Trustees are to make distributions from the Trust in order to resolve claims against Yahoo!, Inc. entities, subsidiaries, or affiliates, by (a) persons primarily in or from the People's Republic of China (but others as well, if any) who have been imprisoned for expressing their views through Yahoo!, or (b) any persons threatened with prosecution or imprisonment for expressing their views through Yahoo!.

### I.      Board of Trustees

The Board is currently composed of five (5) Trustees:

- **Harry Wu** (original Trustee; term expires June 12, 2012)
- **Michael Samway** (original Trustee appointed by the Donor; term expires June 12, 2012)
- **Tienchi Martin Lao** (appointed October 5, 2009; term expires June 1, 2013)
- **Maochun Yu** (appointed October 5, 2009; term expires June 1, 2013)
- **Nan Richardson** (appointed October 5, 2009; term expires June 1, 2013)

There shall always be one serving Trustee appointed by the Donor.

Trustees may be reappointed at the expiration of their terms. Trustees may resign by a written communication to the other Trustees. The Donor may at any time remove the Trustee appointed by the Donor and appoint a new Trustee.

New or successor Trustees will be appointed by majority vote of serving Trustees, always with the affirmative vote of the Trustee appointed by the Donor (currently Michael Samway).

Any new or successor Trustees must be "persons with background and expertise in human rights." The serving Trustees will consult with the Donor regarding the composition and membership of the Board before making any new appointments. It is intended, however, that the Board of Trustees be composed of the same individuals who compose the Board of Directors of the LHRO.

### II.     Trust Principal and Distributions to Date

The Trust was formed with a total of $3.55 million. The Trust was formed as a "grantor" trust, meaning that the principal is owned for tax purposes by the Donor, and taxes on any income will be paid by the Donor.

D116930.2

**EXHIBIT 1**
66                                                                                    1:17-cv-00635-JDB

The Trust funds are currently held in a money market escrow account at U.S. Bank.  (See Escrow Agreement at Tab 5, and opening bank statement at Tab 6).

Joint written instructions from Harry Wu and Michael Samway are required for any distributions from the Trust or changes in investment election for the funds.

### III.      Guidelines for Distributions from the Trust

Distributions from the Trust shall be made in accordance with the Trust Guidelines for Review of Assistance Funding Applications (at Tab 3).  Key points of the Guidelines include:

- The Trustees shall establish a mechanism for applicants to contact the Trust and a mechanism for publicizing the existence of the Trust to potential applicants.

- Upon receipt of an application for assistance funding, the Trustees shall review the application based on the factors set forth in the Guidelines.

- The amount of any distribution shall be determined based on the criteria set forth in the Guidelines.

- Distributions shall only be made upon receipt of a release and waiver from the claimant in a form approved in advance in each case by the Yahoo! Inc.

### IV.      Termination of the Trust and Final Distribution

The Trust will terminate on June 12, 2014 (five years from the date of the declaration of the Trust).

Upon termination of the Trust, any remaining principal and income will be transferred to the LHRO.

D116930.2

**EXHIBIT 1**

1:17-cv-00635-JDB

## Governance Issues and Duties of Trustees

**Duty to Exercise Reasonable Care and Skill.** Trustees have the duty to exercise reasonable care and skill in administering trusts, and may be held personally liable for any losses that result from their failure to exercise such duty. A Trustee's conduct must be reasonable in light of the facts and circumstances that existed at the time of his or her decision.

**Duty of Loyalty to the Trust.** Trustees have the duty to act solely in the interest of the beneficiaries as to matters that directly and indirectly involve the trust funds. Therefore, in general, they may not profit from the trust relationship: they may not engage in acts of self-dealing; they may not transact business with the trust that benefits themselves; and they may not buy trust property or sell their own property to the trust.

Potential beneficiaries of the Trust in this case are applicants for assistance funding, and the known beneficiary is the Laogai Human Rights Organization, Inc.

**Duty of Confidentiality.** An extension of the Duty of Loyalty is a Trustee's duty to keep all trust affairs confidential. Third parties may only be told what the law requires the Trustee to divulge or what furthers the interests of the beneficiaries.

**Duty to Keep and Render Accounts.** Trustees must keep written accounts that show the nature, amount, and administration of the trust property.

Trustees have the duty to periodically render accountings to the known beneficiaries. Such accountings must be provided at reasonable times and must provide beneficiaries with all information that is needed to protect their interests in the trust property. This could include providing a copy of the trust instrument, or disclosure of the trust's assets, their values, and matters regarding the administration of the trust.

Trustees are entitled, periodically, to a discharge of this liability by means of a judicial settlement of accounts.

**Duty of Impartiality.** Trustees must act impartially with respect to trust interests. That is, they may not favor one beneficiary over another, and may not favor one class of beneficiaries over another. In this case, the duty of impartiality dictates that the Trustees must only take actions and make decisions regarding the funds in the Trust that are impartial as between potential applicants or the Laogai Human Rights Organization, Inc.

**Duty to Carry Out the Terms of the Trust.** Trustees must carry out the intentions of the grantor as communicated in the Declaration of Trust. The beneficiaries' wishes are subordinate to the instructions of the Declaration of Trust.

- 3 -

D116930.2

**EXHIBIT 1**

## THE YAHOO! IRREVOCABLE HUMAN RIGHTS TRUST 2009

THIS AGREEMENT AND DECLARATION OF TRUST, between Yahoo!, Inc. (the "Donor", which as used herein shall include any successor organization to Yahoo!, Inc.) and (1) Harry Wu, of 1109 M Street, NW, Washington, DC and (2) Michael Samway, of 95 Merrick Way, Coral Gables, Florida, (the original "Trustees"), to be known as The Yahoo! Irrevocable Human Rights Trust 2009 shall be irrevocable and unamendable, except as provided in paragraph 3 hereof,

## W I T N E S S E T H   T H A T:

WHEREAS, the Donor intends to transfer to the Trustees certain property in cash, as more particularly described in Exhibit A hereto, to be held in trust subject to the terms of this Agreement and Declaration of Trust;

WHEREAS, all current, additional and successor Trustees agree to enter into appropriate confidentiality agreements in order to protect, inter alia, against disclosures regarding the endowment of this Trust and the specific amounts of any monetary disbursements by this Trust; and

WHEREAS, the Donor has both the capacity and intention to create a trust hereunder, the trust created hereunder has an ascertainable beneficiary or beneficiaries, the same person is not the sole trustee and sole beneficiary, the trustees hereunder have specific duties to perform, and the Trust created hereunder is for the benefit of the beneficiaries with the purposes of providing for the beneficiaries in a manner which is lawful, not contrary to public policy, and possible to achieve.

NOW, THEREFORE, the undersigned parties do hereby acknowledge, declare and agree that the material purposes of the trust created hereunder are to preserve assets for the benefit of the beneficiaries, to provide for the ongoing management of assets by the Trustees and/or successor Trustees expressly designated hereunder, whose judgment and discretion the Donor believes to be important to the preservation and management of such assets; and the Trustees hereby accept the trusteeship hereunder and further declare and covenant with the Donor that they will hold, manage, invest and reinvest said sum and any other property received and accepted by them as Trustees, together with any other property however acquired by them as Trustees (the "trust property") and will dispose of the trust property as follows:

1. Distributions. The Trustees shall pay such part (or all) of the net income and/or principal of the trust property, in their discretion, in order to resolve claims against

**EXHIBIT 1**
**69**                                                                 1:17-cv-00635-JDB

Yahoo!, Inc. entities, subsidiaries, or affiliates, by (a) persons primarily in or from the People's Republic of China (but others as well, if any) who have been imprisoned for expressing their views through Yahoo!, or (b) any persons threatened with prosecution or imprisonment for expressing their views through Yahoo!.

Distributions shall be made by the Trustees in accordance with the Yahoo! Trust Guidelines attached hereto for identification, review and settlement of claims, including a mechanism to proactively identify individuals or entities that may be eligible for such claims resolution.  However, distributions shall only be made upon receipt of a release and waiver from the claimant in a form approved in advance in each case by the Donor. Any amendments to the Yahoo! Trust Guidelines shall only be made by majority decision of the Trustees as set forth in Section 9 hereof.

Any net income not so paid shall be added to the principal of the trust at such times as the Trustees shall determine.

2. <u>Termination</u>.  The trust shall terminate five (5) years from the date hereof, whereupon the trust property as then constituted, after payment of all proper expenses of administering the trust, shall be transferred and paid over to the LAOGAI HUMAN RIGHTS FUND, a supporting organization (established or to be established) of LAOGAI RESEARCH FOUNDATION, such supporting organization shall be described under Section 509(a)(3) of the Internal Revenue Code of 1986, as amended (the "Code"), or any successor organization thereto, or if none, to such qualified charitable organizations (as defined herein) as the Trustees shall select, and if more than one, in such proportions as the Trustees shall determine, for the purpose of providing humanitarian and legal assistance primarily to persons in or from the People's Republic of China who have been imprisoned for expressing their views through Yahoo! or another medium.

A "qualified charitable organization" means an organization, governmental unit, trust, or other entity described in Sections 170(c) and 2522(a) of the Code, and exempt from taxation under Section 501(a) of the Code as an organization described in Section 501(c)(3) of the Code.

3. <u>Trustees' Limited Power to Amend</u>.  The Trustees may at any time, in their absolute and uncontrolled discretion, by an instrument in writing, signed by all the Trustees then in office and acknowledged before a notary public, amend the provisions of this Agreement and Declaration of Trust in order to (a) clarify the meaning of any provision hereof, (b) change or add to the administrative provisions hereof, and/or (c) conform to applicable provisions of federal and state tax laws, provided, however, that no such amendment shall:  (i) materially alter any beneficial interest; (ii) create or enlarge any beneficial interest in any Trustee; (iii) extend the duration of any trust hereunder beyond the expiration of the perpetuities period; or (iv) enlarge the scope of the power to amend pursuant to this Article.  The Trustees may by written instrument, at any time, in

2

**EXHIBIT 1**

their absolute and uncontrolled discretion, for themselves and/or their successors, release this power in whole or in part.

    4.  <u>Removal, Resignation and Incapacity of Trustees</u>.

    (a)  The Trustees (by majority action including the Trustee appointed by the Donor) may at any time remove any Trustee (other than the Trustee appointed by the Donor).  The Donor may at any time remove the Trustee appointed by the Donor.  Such removal shall be made by a written instrument acknowledged before a notary public, and shall take effect upon delivery thereof to such Trustee.

    (b)  Any Trustee may resign by written instrument, without intervention of court; such resignation to take effect upon delivery thereof to the other Trustees and to the Donor.  Any individual Trustee shall cease to serve as such, without any act of resignation or removal, upon the appointment of a guardian, conservator, or similar fiduciary charged with the management of such individual's property or upon adjudication by a court of competent jurisdiction that such individual is unable to properly care for his or her property.

    5.  <u>Successor/Additional Trustees</u>.

    (a)  There shall be two (2) original Trustees.  Within six (6) months of the establishment of this Trust, a minimum of an additional three (3) Trustees shall be appointed by the mutual agreement of the two original Trustees, subsequent to which there shall always be at least five (5) Trustees hereunder, one of whom shall be appointed by the Donor.

    (b)  Each Trustee (including additional and successor Trustees) shall be assigned by the Trustees to one of three (3) classes: Class I, Class II, and Class III, each having as nearly as possible the same number of Trustees.  Michael Samway (or such other Trustee appointed by the Donor) shall be a Trustee in Class I; Harry Wu shall be a Trustee in Class II; and one of each of the first three additional Trustees shall be a member of Class I, Class II, and Class III.

    Each Trustee shall be appointed to serve a three (3)-year term, beginning on the date of appointment as Trustee (and may be re-appointed at the expiration of the term to serve an additional three (3)-year term), provided that: (a) the initial term of any Class I Trustee appointed prior to June 1, 2009 shall end on June 1, 2012, (b) the initial term of any Class II Trustee appointed prior to September 1, 2009 shall end on September 1, 2012, and (c) the initial term of any Class III Trustee appointed prior to June 1, 2010 shall end on June 1, 2013.

    (c)  The Trustees may at any time appoint additional Trustees by majority action always including the affirmative vote of the Trustee appointed by the Donor (subject to the provisions of subparagraph (e) of this paragraph 5).

3

**EXHIBIT 1**

(d)  If the Trustee appointed by the Donor ceases to serve, the Donor shall appoint a successor Trustee to serve in his or her stead.  Any other vacancy in the Trusteeship may be filled (and shall be filled if such vacancy leaves fewer than four (4) Trustees) by appointment by the Trustees then serving (always including the affirmative vote of the Trustee appointed by the Donor, and subject to the provisions of subparagraph (e) of this paragraph 5), by written instrument acknowledged before a notary public.  Such appointment shall take effect upon acceptance in writing by the successor Trustee.

(e)  Additional and successor Trustees appointed by the Trustees pursuant to the foregoing provisions shall be persons with background and expertise in human rights, and such appointing Trustees shall consult with the Donor regarding the composition and membership of the Board before making any appointments to it.

6.  <u>Other Trustee Provisions</u>.

(a)  No Trustee shall be required to furnish any bond or surety.  No Trustee shall be responsible or liable for the acts or omissions of any other Trustee or any predecessor or of any custodian, agent, depositary, or counsel selected with reasonable care.

(b)  The Trustees, whether original or successor, for the time being in office shall have full authority to act even though one or more vacancies may exist, except if there be no Trustee appointed by the Donor in office.  A Trustee may, by appropriate written instrument, delegate all or any part of his or her powers to another or others of the Trustees for such periods and subject to such conditions as such delegating Trustee may determine.

(c)  The Trustees may pay reasonable compensation for services rendered and for expenses incurred in the administration of the trust, but in no event shall any Trustee who has made a contribution to the trust ever receive any compensation for his or her services as Trustee thereafter.

7.  <u>Powers of Trustees</u>.  In addition to and not in limitation of any common law and statutory powers, the Trustees shall have and may exercise at any time and from time to time any and/or all of the following powers, which powers shall continue beyond the termination of this trust for purposes of distribution of the trust property, any of which such actions shall only be taken pursuant to majority action of the Trustees which majority shall include the Trustee appointed by the Donor:

(a)  To invest and reinvest the principal and income of the trust in such property, real, personal, or mixed, and in such manner as they shall deem proper, and from time to time to change investments as they shall deem advisable; to invest in or retain any stocks, shares, bonds, notes, obligations, or personal or real property (including without limitation any interests in or obligations of any corporation, association, business trust, investment trust, common trust fund, or investment company) although some or all of the property so acquired or retained is of a kind or

4

**EXHIBIT 1**

size which but for this express authority would not be considered proper and although all of the trust funds are invested in the securities of one company. No principal or income, however, shall be loaned, directly or indirectly, to any Trustee or to anyone else, corporate or otherwise, who has at any time made a contribution to the trust, nor to anyone except on the basis of an adequate interest charge and with adequate security.

(b)  To sell, lease, or exchange any personal, mixed, or real property, at public auction or by private contract, for such consideration and on such terms as to credit or otherwise and to make such contracts and enter into such undertakings relating to the trust property, as they consider advisable, whether or not such leases or contracts may extend beyond the duration of the trust.

(c)  To borrow money for such periods, at such rates of interest, and upon such terms as the Trustees consider advisable, and as security for such loans to mortgage or pledge any real or personal property with or without power of sale; to acquire or hold any real or personal property subject to any mortgage or pledge; and to assume any mortgage or pledge on or of property acquired or held by the trust.

(d)  To execute and deliver deeds, assignments, transactions, mortgages, pledges, leases, covenants, contracts, promissory notes, releases, and other instruments, sealed or unsealed, incident to any transaction in which they engage.

(e)  To vote, to give proxies, to participate in the reorganization, merger or consolidation of any concern, or in the sale, lease, disposition, or distribution of its assets; to join with other security holders in acting through a committee, depositary, voting Trustees, or otherwise, and in this connection to delegate authority to such committee, depositary, or Trustees and to deposit securities with them or transfer securities to them; to pay assessments levied on securities or to exercise subscription rights in respect of securities.

(f)  To resist, compromise, submit to arbitration and pay any claim or matter in dispute affecting the trust property, whether asserted by or against the Trustees or any property held hereunder.

(g)  To employ a bank or trust company as custodian of any funds or securities and to delegate to it such powers as they deem appropriate; to hold trust property without indication of fiduciary capacity but only in the name of a registered nominee, provided the trust property is at all times identified as such on the books of the trust; to keep any or all of the trust property or funds in any place or places in the United States of America; to employ clerks, accountants, investment counsel, investment agents, and any special services, and to pay the reasonable compensation and expenses of all such services in addition to the compensation of the Trustees.

(h)  To buy in property or vary any contract in the case of a sale without liability for any loss that may ensue, to convey property, real or personal, with or without covenants and subject to any restrictions, limitations or other rights.

(i)  To maintain, repair, improve or develop real estate; to construct, alter or repair buildings or structures on real estate; to settle boundary lines and easements and other rights with respect to real estate; to partition and to join with co-owners and others in dealing with real estate in any way.

(j)  To fix and change the trust's fiscal year, except that no fiscal year shall last in duration longer than twelve (12) months.

(k)  In preemption of the Uniform Principal and Income Act, to determine the allocation or apportionment of receipts and disbursements as between principal and income, and to apportion the same between principal and income on a fair and equitable basis, without liability therefor to any person or entity for such determination.

(l)  To exercise all powers enumerated under Section 19-1308.16 of the District of Columbia Code.

8.  Exculpation and Indemnification of Trustees.

No individual Trustee shall be liable for any error in judgment or law on his or her own part but shall be liable only for his or her own willful default.  No Trustee shall be liable for the acts or defaults of any co-Trustee or of any agent or attorney selected with reasonable care.  Any individual Trustee shall be reimbursed in full from the trust property for any loss or expense incurred or suffered by him or her as a result of his or her being or acting as a Trustee, excluding only such loss or expense resulting from his or her own willful default.

9.  Majority Action of Trustees.  Any decision or action authorized under this Agreement and Declaration of Trust shall be made or taken by a majority of the Trustees then in office, which majority must always include the Trustee appointed by the Donor.

10.  Certificate of Facts.  A certificate signed by any Trustee and acknowledged before a notary public shall be conclusive evidence to all persons and for all purposes of the facts stated in said certificate with respect to this Agreement and Declaration of Trust, any amendment thereto, and any decisions made or action taken hereunder by any person.

11.  Grantor Trust.  It is the Donor's intention that this Trust shall constitute and be treated as a grantor trust for income tax purposes within the meaning of Sections 671 et. seq. of the Internal Revenue Code of 1986, as amended.

6

**EXHIBIT 1**

12. <u>Governing Law</u>.  This Agreement and Declaration of Trust shall be governed by and interpreted in accordance with the laws of the District of Columbia; provided, however, that to the fullest extent possible within the meaning of Section 19-1301.05(a) and (b) of the District of Columbia Code, the terms and provisions of this Agreement and Declaration of Trust shall govern the duties and powers of the Trustees, relation among Trustees, and the rights and interests of all beneficiaries such that the terms and provisions of this Agreement and Declaration of Trust shall prevail over the provisions of the Uniform Trust Code as in effect in the District of Columbia, Title 19, Chapter 13, Sections 19-1301.01 et. seq. of the District of Columbia Code, which Uniform Trust Code shall accordingly be preempted by the express terms and provisions of this Agreement and Declaration of Trust.  Notwithstanding the preceding sentence, the Trustees shall have the power and authority to remove all or any portion of the trust property or the citus of the administration of the Trust from one jurisdiction to another without the requirement of notice to any beneficiary hereunder, and elect that the law of such other jurisdiction shall thereafter govern the trust property in question to the fullest extent appropriate, in which event this Agreement and Declaration of Trust shall be governed by and construed in accordance with the laws of such other jurisdiction accordingly.

13. <u>Counterparts</u>.  This Agreement and Declaration of Trust may be executed in several counterparts, including facsimile counterparts, and as so executed shall constitute one Agreement and Declaration of Trust binding on all parties hereto, notwithstanding that all of the parties have not signed the same counterpart.  Facsimile transmission of executed pages shall constitute valid execution and delivery.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals to this instrument and one counterpart hereof, this      day of May, 2009.


YAHOO!, INC., Donor

By:  _Michael A. Samway_
Signature

_MICHAEL   A   SAMWAY_
Print Name

Its:  _VP & DEPUTY GENERAL COUNSEL_

7

**EXHIBIT 1**
75

STATE OF FLORIDA

COUNTY OF *Miami Dade*

The foregoing instrument was acknowledged before me this 26th day of May, 2009 by Michael Samway, Vice-President and Deputy General Counsel of Yahoo!, Inc..  He is personally known to me or has produced _____ as identification.

_____
Notary Public, State of Florida
My Commission Expires:

NOTARY PUBLIC-STATE OF FLORIDA
Ernesto A. Luciano
Commission # DD746530
Expires:   FEB. 08, 2012
BONDED THRU ATLANTIC BONDING CO., INC.

8

**EXHIBIT 1**

1:17-cv-00635-JDB

_____
HARRY WU, Trustee

DISTRICT OF COLUMBIA ) ss:                          June 12, 2009

    Then personally appeared before me the above-named HARRY WU, and acknowledged the foregoing instrument to be his free act and deed.

_____
Notary Public
My commission expires: Oct. 14, 2013

**KATHERN M. THOMSON**
Notary Public, District of Columbia
My Commission Expires October 14, 2013

9

**EXHIBIT 1**

_Michael A Samway_
MICHAEL SAMWAY, Trustee

STATE OF FLORIDA

COUNTY OF Miami Dade

The foregoing instrument was acknowledged before me this 26th day of May, 2009 by Michael Samway.  He is personally known to me or has produced _____ as identification.

_[signature]_
Notary Public, State of Florida
My Commission Expires:

NOTARY PUBLIC-STATE OF FLORIDA
Ernesto A. Luciano
Commission # DD746530
Expires:   FEB. 08, 2012
BONDED THRU ATLANTIC BONDING CO., INC.

10

**EXHIBIT 1**

1:17-cv-00635-JDB

EXHIBIT A

SCHEDULE OF TRUST PROPERTY

1.      The sum of $3,550,000 (three million, five hundred fifty thousand dollars) in cash.

DI 12803.9

# YAHOO! IRREVOCABLE HUMAN RIGHTS TRUST 2009

## GUIDELINES FOR REVIEW OF ASSISTANCE FUNDING APPLICATIONS

The Trustees will establish a mechanism for applicants to contact the Trust and a mechanism for publicizing the existence of the Trust to potential applicants.

Upon receipt of each application from an individual for humanitarian or legal assistance and claims resolution, the Trustees will review the application and make the following determinations. Once these determinations have been made, the Trustees will make a consensus determination as to the amount of assistance to be offered, and shall present such offer to the applicant.

The determination made by the Trustees will be based upon these factors:

1. Does the case involve persons from or in the PRC?
2. Has the person suffered violations of fundamental human rights (prolonged arbitrary detention, torture, forced labor, etc.)?
3. Were these violations of human rights the direct result of the victim exercising his or her freedom of expression?
4. Was Yahoo! or another electronic medium involved?
5. Is the individual prepared to enter into a settlement and waiver of any claims it may have against Yahoo! in connection with its case?

If the application warrants a disbursement, the Trustees will offer an amount of assistance to the applicant. The Trustees will make every effort to award consistent amounts to applicants who have experienced similar factors. This recommended amount shall be based in part upon the following criteria:

1. Whether the person has been, or still is, imprisoned;
2. Whether the person was convicted, and if so, the length of the sentence;
3. The individual's family situation; and
4. The individual and his or her family's needs for legal defense.

**EXHIBIT 1**
**80**

1:17-cv-00635-JDB

## THE YAHOO! IRREVOCABLE HUMAN RIGHTS TRUST 2009

## APPOINTMENT OF TIENCHI MARTIN LAO AS ADDITIONAL TRUSTEE

WHEREAS, Yahoo!, Inc. (the "Donor"), and (1) Harry Wu, of 1109 M Street, NW, Washington, DC and (2) Michael Samway, of 95 Merrick Way, Coral Gables, Florida, (the original "Trustees") did create a trust pursuant to the terms of that certain Agreement and Declaration of Trust dated as of June 12, 2009 and known as The Yahoo! Irrevocable Human Rights Trust 2009 (the "Trust"); and

WHEREAS, Michael Samway and Harry Wu currently serve together as the initial - Trustees of said Trust; and

WHEREAS, pursuant to Paragraph (a) of Article 5 of said Trust, the undersigned Initial Trustees may appoint additional trustees of the Trust within the first 6 (six) months of its existence;

NOW, THEREFORE, the undersigned parties do hereby acknowledge, consent, approve and agree as follows:

1.      Pursuant to Paragraph (a) of Article 5 of said Trust, the undersigned Initial Trustees do hereby appoint Tienchi Martin Lao, currently a resident of _____, to serve as an additional Trustee of the Trust.

2.      Pursuant to Paragraph (b) of Article 5 of said Trust, the undersigned, Tienchi Martin Lao hereby declares that she is able and willing to serve as an additional Trustee of said Trust, and does hereby accept appointment as an additional Trustee of The Yahoo! Irrevocable Human Rights Trust 2009 and of each trust created and administered thereunder, for a term expiring June 1, 2013.

WITNESS the due execution of this instrument by the undersigned.

Date: 10/15/09

Michael Samway, Initial Trustee

D117128.1

**EXHIBIT 1**

Date: _10/5/09_                         _____
                                         Harry Wu, Initial Trustee

Date: _10/5/2009_                       _____
                                         Tienchi Martin Lao, Additional Trustee

D117128.1

- 2 -

**EXHIBIT 1**
**82**

1:17-cv-00635-JDB

Washington, District of Columbia ss:

October 5, 2009

Then personally appeared the above-named Michael Samway and acknowledged the

foregoing instrument to be his free act and deed, before me.

Notary Public

My commission expires: *Oct. 14, 2013*

KATHERN M. THOMSON
Notary Public, District of Columbia
My Commission Expires October 14, 2013

- 3 -

**EXHIBIT 1**
83

1:17-cv-00635-JDB

Washington, District of Columbia ss:

October 5, 2009

Then personally appeared the above-named Harry Wu and acknowledged the foregoing

instrument to be his free act and deed, before me.

Notary Public

My commission expires: Oct. 14, 2013

KATHERN M. THOMSON
Notary Public, District of Columbia
My Commission Expires October 14, 2013

- 4 -

**EXHIBIT 1**
84

Washington, District of Columbia ss:

October 5, 2009

Then personally appeared the above-named Tienchi Martin Lao and acknowledged the

foregoing instrument to be her free act and deed, before me.

Notary Public

My commission expires: *Oct 14, 2013*

KATHERN M. THOMSON
Notary Public, District of Columbia
My Commission Expires October 14, 2013

- 5 -

ACCEPTANCE OF DELIVERY

The undersigned Trustees of <u>The</u> <u>Yahoo!</u> <u>Irrevocable</u> <u>Human</u> <u>Rights</u> <u>Trust</u> do hereby and in accordance with Paragraph (a) of Article 5 of said Trust acknowledge and accept delivery of this instrument of acceptance by the Additional Trustee, Tienchi Martin Lao as of this 5th day of October, 2009.


Michael Samway, Trustee


Harry Wu, Trustee

# THE YAHOO! IRREVOCABLE HUMAN RIGHTS TRUST 2009

## APPOINTMENT OF MAOCHUN YU AS ADDITIONAL TRUSTEE

WHEREAS, Yahoo!, Inc. (the "Donor"), and (1) Harry Wu, of 1109 M Street, NW, Washington, DC and (2) Michael Samway, of 95 Merrick Way, Coral Gables, Florida, (the original "Trustees") did create a trust pursuant to the terms of that certain Agreement and Declaration of Trust dated as of June 12, 2009 and known as The Yahoo! Irrevocable Human Rights Trust 2009 (the "Trust"); and

WHEREAS, Michael Samway and Harry Wu currently serve together as the initial Trustees of said Trust; and

WHEREAS, pursuant to Paragraph (a) of Article 5 of said Trust, the undersigned Initial Trustees may appoint additional trustees of the Trust within the first 6 (six) months of its existence;

NOW, THEREFORE, the undersigned parties do hereby acknowledge, consent, approve and agree as follows:

1.      Pursuant to Paragraph (a) of Article 5 of said Trust, the undersigned Initial Trustees do hereby appoint Maochun Yu, currently a resident of _____, to serve as an additional Trustee of the Trust.

2.      Pursuant to Paragraph (b) of Article 5 of said Trust, the undersigned, Maochun Yu hereby declares that he is able and willing to serve as an additional Trustee of said Trust, and does hereby accept appointment as an additional Trustee of The Yahoo! Irrevocable Human Rights Trust 2009 and of each trust created and administered thereunder, for a term expiring June 1, 2013.

WITNESS the due execution of this instrument by the undersigned.

Date: _____

_____
Michael Samway, Initial Trustee

D117127.1

**EXHIBIT 1**
87

1:17-cv-00635-JDB

Date: _10/5/09_                     _Harry Wu_
                                    Harry Wu, Initial Trustee

Date: _1-OCT. 09_                   _Maochun Yu_
                                    Maochun Yu, Additional Trustee

DI17127.1

**EXHIBIT 1**

Washington, District of Columbia ss:

October 5, 2009

Then personally appeared the above-named Michael Samway and acknowledged the

foregoing instrument to be his free act and deed, before me.

Notary Public

My commission expires: Oct. 14, 2013

KATHERN M. THOMSON,
Notary Public, District of Columbia
My Commission Expires October 14, 2013

D117127.1

**EXHIBIT 1**

1:17-cv-00635-JDB

Washington, District of Columbia ss:

October 5, 2009

Then personally appeared the above-named Harry Wu and acknowledged the foregoing

instrument to be his free act and deed, before me.

Notary Public

My commission expires: Oct. 14, 2013

**KATHERN M. THOMSON**
Notary Public, District of Columbia
My Commission Expires October 14, 2013

D117127.1

Washington, District of Columbia ss:

October 5, 2009

Then personally appeared the above-named Maochun Yu and acknowledged the

foregoing instrument to be her free act and deed, before me.

_Notary Public_

My commission expires: _Oct. 14, 2013_

KATHERN M. THOMSON
Notary Public, District of Columbia
My Commission Expires October 14, 2013

**EXHIBIT 1**

D117127.1

ACCEPTANCE OF DELIVERY

The undersigned Trustees of The Yahoo! Irrevocable Human Rights Trust do hereby and in accordance with Paragraph (a) of Article 5 of said Trust acknowledge and accept delivery of this instrument of acceptance by the Additional Trustee, Maochun Yu as of this 5th day of October, 2009.

_____

Michael Samway, Trustee

_____

Harry Wu, Trustee

D117127.1

**EXHIBIT 1**

1:17-cv-00635-JDB

**THE <u>YAHOO!</u> <u>IRREVOCABLE</u> <u>HUMAN</u> <u>RIGHTS</u> <u>TRUST</u> 2009**

**APPOINTMENT OF NAN RICHARDSON AS ADDITIONAL TRUSTEE** 

WHEREAS, Yahoo!, Inc. (the "Donor"), and (1) Harry Wu, of 1109 M Street, NW, Washington, DC and (2) Michael Samway, of 95 Merrick Way, Coral Gables, Florida, (the original "Trustees") did create a trust pursuant to the terms of that certain Agreement and Declaration of Trust dated as of June 12, 2009 and known as <u>The</u> <u>Yahoo! Irrevocable Human Rights</u> <u>Trust 2009</u> (the "Trust"); and

WHEREAS, Michael Samway and Harry Wu currently serve together as the initial - Trustees of said Trust; and

WHEREAS, pursuant to Paragraph (a) of Article 5 of said Trust, the undersigned Initial Trustees may appoint additional trustees of the Trust within the first 6 (six) months of its existence;

NOW, THEREFORE, the undersigned parties do hereby acknowledge, consent, approve and agree as follows:

1.    Pursuant to Paragraph (a) of Article 5 of said Trust, the undersigned Initial Trustees do hereby appoint Nan Richardson, currently a resident of _____, to serve as an additional Trustee of the Trust.

2.    Pursuant to Paragraph (b) of Article 5 of said Trust, the undersigned, Nan Richardson hereby declares that she is able and willing to serve as an additional Trustee of said Trust, and does hereby accept appointment as an additional Trustee of <u>The</u> <u>Yahoo!</u> <u>Irrevocable</u> <u>Human</u> <u>Rights</u> <u>Trust</u> <u>2009</u> and of each trust created and administered thereunder, for a term expiring June 1, 2013.

WITNESS the due execution of this instrument by the undersigned.

Date: 10 / 5 / 09

Michael Samway, Initial Trustee

D117096.1

**EXHIBIT 1**

1:17-cv-00635-JDB

Date: _6/5/09_

Harry Wu, Initial Trustee

Date: _10/5/09_

Nan Richardson, Additional Trustee

- 2 -

**EXHIBIT 1**
**94**

Washington, District of Columbia ss:

October 5, 2009

Then personally appeared the above-named Michael Samway and acknowledged the

foregoing instrument to be his free act and deed, before me.

Notary Public

My commission expires: _Oct. 14, 2013_

KATHERN M. THOMSON
Notary Public, District of Columbia
My Commission Expires October 14, 2013

- 3 -

**EXHIBIT 1**
95

D117096.1

1:17-cv-00635-JDB

Washington, District of Columbia ss:

October 5, 2009

Then personally appeared the above-named Harry Wu and acknowledged the foregoing instrument to be his free act and deed, before me.

Notary Public

My commission expires: _Oct. 14, 2013_

KATHERN M. THOMSON
Notary Public, District of Columbia
My Commission Expires October 14, 2013

D117096.1

**EXHIBIT 1**

1:17-cv-00635-JDB

Washington, District of Columbia ss:

October 5, 2009

Then personally appeared the above-named Nan Richardson and acknowledged the foregoing instrument to be her free act and deed, before me.

Notary Public

My commission expires: _Oct. 14, 2013_

**KATHERN M. THOMSON**
Notary Public, District of Columbia
My Commission Expires October 14, 2013

- 5 -

**EXHIBIT 1**
**97**

## ACCEPTANCE OF DELIVERY

The undersigned Trustees of <u>The Yahoo! Irrevocable Human Rights Trust</u> do hereby and in accordance with Paragraph (a) of Article 5 of said Trust acknowledge and accept delivery of this instrument of acceptance by the Additional Trustee, Nan Richardson, as of this 5th day of October, 2009.

_____
Michael Samway, Trustee

_____
Harry Wu, Trustee

D117096.1

- 6 -

**EXHIBIT 1**

1:17-cv-00635-JDB

### ESCROW AGREEMENT

THIS ESCROW AGREEMENT (the "Escrow Agreement") made and entered into as of the _9_ day of _Sep_, 2009 by and between The Yahoo! Irrevocable Human Rights Trust 2009 (the "Yahoo! Trust") and U.S. Bank, National Association as Escrow Agent, with its office at One California Street, Suite 1000, San Francisco, California 94111.

### WITNESSETH

WHEREAS, Yahoo! Inc. ,Harry Wu, and Michael Samway have heretofore entered into an Agreement and Declaration of Trust(the "Agreement") for the purpose resolving certain claims against Yahoo! Inc. in accordance with the provisions of the Agreement,, and WHEREAS, pursuant to the Agreement, the Yahoo! Trust hereby deposits $3,000,000 (the "Escrow Fund") with the Escrow Agent;

NOW THEREFORE, IT IS AGREED:

1.   The Yahoo! Trust hereby delivers to the Escrow Agent, and the Escrow Agent hereby acknowledges receipt of the Escrow Funds to be held in accordance with the terms and conditions of this Escrow Agreement.

2.   The Escrow Agent shall hold the Escrow Fund until such time as it shall receive Joint Written Instructions from Harry Wu and Michael Samway as Trustees of the Yahoo! Irrevocable Human Rights Trust 2009 to release all or a portion of the Escrow Fund. The Escrow Agent shall be fully protected and shall conclusively rely on such Joint Written Instructions

3.   **U.S. Bank National Association General Provisions are incorporated herein and attached hereto as Exhibit A.**

4.   Escrow Agent fees shall be paid in advance by the Trust in accordance with the Fee Schedule attached as Exhibit B. The Escrow Agent shall submit an invoice to the Trustees on an annual basis. The Trustees will provide Joint instructions to the Escrow Agent to pay its fees and expenses from funds on deposit in the Escrow account.

5.   Escrow Agent is to invest the funds in a US Bank Money Market Account, as fully described on the attached Exhibit C. Interest earned shall be added to the Escrow Account and become a part of the fund.

6.   NOTICES All notices, demands, and requests required or permitted to be given under the provisions of this agreement must be in writing and shall be deemed to have been sufficiently given when received if personally delivered or by facsimile or, if mailed by registered or certified mail, with return receipt requested, or overnight mail addressed as follows:

7.   USA Patriot Act Compliance. To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. For a non-individual person such as a business entity, a charity, a trust or other legal entity the Escrow Agent will ask for documentation to verify its formation and existence as a legal entity. The Escrow Agent may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation. The

agreemen.doc 3/98

**EXHIBIT 1**
99

1:17-cv-00635-JDB

Parties each agree to provide all such information and documentation as to themselves as requested by Escrow Agent to ensure compliance with federal law.

If to the Trustees:          Harry Wu
                             Laogai Research Foundation
                             1109 M Street, NW
                             Washington, DC 20005

and

                             Michael Samway
                             Yahoo! Inc.
                             One Alhambra Plaza, Suite 800
                             Coral Gables, FL 33134

If to the Yahoo! Trust:      Yahoo! Irrevocable Human Rights Trust 2009
                             c/o Robert Lau
                             Yahoo! Inc.
                             701 First Avenue
                             Sunnyvale, CA 94089

If to U.S. Bank :            U.S. Bank National Association
                             One California Street, Suite 1000
                             San Francisco, Ca 94111
                             Sheila Spares
                             Vice President
                             Telephone (415) 273-4582
                             Fax: (415) 273-4590

agreemen.doc 3/98

**EXHIBIT 1**
**100**

IN WITNESS WHEREOF, the parties hereto have executed this Escrow Agreement as of the date and year first above written.

The Yahoo Irrevocable Human Rights Trust 2009
By: Michael Samway
Title:  Trustee


The Yahoo Irrevocable Human Rights Trust 2009
By: Harry Wu
Title:  Trustee


U.S.BANK, National Association, as Escrow Agent
By: Sheila Soares
Title:  Vice President

9-10-09

Sheila K. Soares
**Vice President**


agreemen.doc 3/98

**EXHIBIT 1**

# Exhibit A

## Global Escrow Depository Services
## General Provisions for Corporate Escrow Agreements

**LIABILITY OF ESCROW AGENT**

In performing any duties under the Escrow Agreement ("Agreement"), Escrow Agent ("Agent") shall not be liable to any Party for consequential damages, (including, without limitation lost profits) losses, or expenses, except for gross negligence or willful misconduct on the part of the Agent. Agent shall not incur any such liability for (I) any act or failure to act made or omitted in good faith, or (II) any action taken or omitted in reliance upon any instrument, including any written statement or affidavit provided for in this Agreement that Agent shall in good faith believe to be genuine, nor will Agent be liable or responsible for forgeries, fraud, impersonations, or determining the scope of any representative authority. In addition, Agent may consult with legal counsel in connection with Agent's duties under this Agreement and shall be fully protected in any act taken, suffered, or permitted by him/her in good faith in accordance with the advice of counsel. Agent is not responsible for determining and verifying the authority of any person acting or purporting to act on behalf of any party to this Agreement.

**FEES AND EXPENSES**

It is understood that the fees and usual charges agreed upon for services of Agent shall be considered compensation for ordinary services as contemplated by this Agreement. In the event that the conditions of this Agreement are not promptly fulfilled, or if Agent renders any service not provided for in this Agreement, or if the Parties request a substantial modification of its terms, or if any controversy arises, or if Agent is made a Party to, or intervenes in, any litigation pertaining to this escrow or its subject matter, Agent shall be reasonably compensated for such extraordinary services and reimbursed for all costs, attorney's fees, including allocated costs of in-house counsel, and expenses occasioned by such default, delay, controversy or litigation and Agent shall have the right to retain all documents and/or other things of value at any time held by Agent in this escrow until such compensation, fees, costs, and expenses are paid. The Parties jointly and severally promise to pay these sums upon demand. Unless otherwise provided, the Parties each will pay one-half of all Agent's usual charges and Agent may deduct such sums from the funds deposited.

**CONTROVERSIES**

If any controversy arises between the Parties to this Agreement, or with any other Party, concerning the subject matter of this Agreement, its terms or conditions, Agent will not be required to determine the controversy or to take any action regarding it. Agent may hold all documents and funds and may wait for settlement of any such controversy by final appropriate legal proceedings or other means as, in Agent's discretion, Agent may require, despite what may be set forth elsewhere in this Agreement. In such event, Agent will not be liable for interest or damage. Furthermore, Agent may at its option, file an action of interpleader requiring the Parties to answer and litigate any claims and rights among themselves. Agent is authorized to deposit with the clerk of the court all documents and funds held in escrow, except all costs, expenses, charges and reasonable attorney fees incurred by Agent due to the interpleader action and which the Parties jointly and severally agree to pay. Upon initiating such action, Agent shall be fully released and discharged of and from all obligations and liability imposed by the terms of this Agreement.

**INDEMNIFICATION OF ESCROW AGENT**

The Parties and their respective successors and assigns agree jointly and severally to indemnify and hold Agent harmless against any and all losses, claims, damages, liabilities, and expenses, including reasonable costs of investigation, counsel fees, including allocated costs of in-house counsel and disbursements that may be imposed on Agent or incurred by Agent in connection with the performance of his/her duties under this Agreement, including but not limited to any litigation arising from this Agreement or involving its subject matter, except to the extent caused by the Agent's gross negligence or willful misconduct.

**EXHIBIT 1**
**102**

1:17-cv-00635-JDB

General Provisions for Corporate Escrow Agreements                                    Page 2 of 2

## INVESTMENT INSTRUCTIONS

For the purpose of investing funds held in escrow, Agent may accept written instructions (including instructions sent to the agent  by facsimile transmission, with original sent promptly to the agent) from an authorized party. The parties shall indemnify and hold Agent harmless from any and all liability for acting on such  investment instruction purported to be given by an Authorized Party. Agent shall not be responsible for the authenticity of any instructions, or be in any way liable for any unauthorized instruction or for acting on such an instruction, whether or not the person giving the instructions was, in fact, an Authorized Party. In no event shall Agent be liable to the Parties for any consequential, special, or exemplary damages, including but not limited to lost profits, from any cause whatsoever arising out of, or in any way connected with acting upon  instructions believed by Agent to be genuine. In the absence of such instructions, the agent shall invest, to the extent reasonably practicable, in a U.S. Bank Money Market Account, which is insured by the FDIC.

The Agent may make any investments through its own investment department or that of its affiliates.  The Agent shall not be liable for any loss from such investments, including upon the sale or disposition of any investments.

Agent will act upon investment instructions the day that such instructions are received, provided the requests are communicated within a sufficient amount of time to allow Agent to make the specified investment.  Instructions received after an applicable investment cutoff deadline will be treated as being received by Agent on the next business day, and Agent shall not be liable for any loss arising directly or indirectly, in whole or in part, from the inability to invest funds on the day the instructions are received.  Agent shall not be liable for any loss incurred by the actions of third parties or by any loss arising by error, failure, or delay in making  an investment which is caused by circumstances beyond Agent's reasonable control.

## FUNDS INVESTED DURING ESCROW

The Parties acknowledge that payment of any interest earned on the funds invested in this escrow will be subject to backup withholding penalties unless a properly completed Internal Revenue Service Original form W8 or W9 certification is submitted to Escrow Agent.

## RESIGNATION OF ESCROW AGENT

 Agent may resign at any time upon giving at least thirty (30) days' written notice to the Parties; provided, however, that no such resignation shall become effective until the appointment of a successor escrow agent which shall be accomplished as follows:  The Parties shall use their best efforts to mutually agree on a successor escrow agent within thirty (30) days after receiving such notice.  If the Parties fail to agree upon a successor escrow agent within such time, Agent shall have the right to appoint a successor escrow agent authorized to do business in the state of California.  The successor escrow agent shall execute and deliver an instrument accepting such appointment and it shall, without further acts, be vested with all the estates, properties, rights, powers, and duties of the predecessor escrow agent as if originally named as escrow agent.   Agent shall be discharged from any further duties and liability under this Agreement.

## AUTOMATIC SUCCESSION

Any company into which the Agent may be merged or with which it may be consolidated, or any company to whom Agent may transfer a substantial amount of its Global Escrow business, shall be the Successor to the Agent without the execution or filing of any paper or any further act on the part of any of the Parties, anything herein to the contrary notwithstanding.

## GOVERNING LAW

This Agreement is to be construed and interpreted according to California law.

Prepared by U.S. Bank, National Association

gp.doc  3/03

**EXHIBIT 1**
**103**

1:17-cv-00635-JDB



**US bank**
Corporate Trust
Services

### Schedule of Fees for Services as
### ESCROW AGENT

### For

### THE YAHOO! IRREVOCABLE HUMAN RIGHTS TRUST 2009

*Initial Fees*

| | | |
|---|---|---|
| 01010 | **Acceptance Fee** | WAIVED |

The acceptance fee includes the administrative review of documents, initial set-up of the account, and other reasonably required services up to and including the closing. **This is a one-time fee, payable at closing.**

U.S. Bank Corporate Trust Services reserves the right to refer any or all escrow documents for legal review before execution. Legal fees (billed on an hourly basis) and expenses for this service will be billed to, and paid by, the customer. If appropriate and upon request by the customer, U.S. Bank Corporate Trust Services will provide advance estimates of these legal fees.

### "IMPORTANT INFORMATION
### ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT"

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account.

For a non-individual person such as a business entity, a charity, a Trust or other legal entity we will ask for documentation to verify its formation and existence as a legal entity. We may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation."

*Administration Fees Billed annually*

| | | |
|---|---|---|
| 04460 | **Escrow Agent** | 1,000.00 |

Annual administration fee for performance of the routine duties of the escrow agent associated with the management of the account.

*Incidental Expenses*

| | | |
|---|---|---|
| SUCE0000 | Charge for miscellaneous expenses such as; fax, messenger service, overnight mail, telephone, stationery and postage. This charge is a percent of total Administration Fees, charged in advance. | 0.0% |

*Transaction Fees ( billed in arrears)*

| | | |
|---|---|---|
| 10880 | **Disbursements ( In excess of  15 per year)** | $20.00 |

Charge per item disbursed. Includes check or wire.

| | | |
|---|---|---|
| 10100 | **Trades (If Applicable)** | 100.00 |

Charge per trade to buy or sell Investments, excluding automated sweep transactions.*

*Automatic sweeping of cash into money market funds is not considered a "trade" for the purposes of this fee. However, applicable fees are disclosed in the "Automatic Money Market Investments" authorization letter or the fund prospectus provided

*Direct Out of Pocket Expenses*

**EXHIBIT 1**
**104**

1:17-cv-00635-JDB



Corporate Trust
Services

| | |
|---|---|
| Reimbursement of expenses associated with the performance of our duties, including but not limited to publications, legal counsel after the initial close, travel expenses and filing fees. | At Cost |

**Extraordinary Services**

Extraordinary services are duties or responsibilities of an unusual nature, including termination, but not provided for in the governing documents or otherwise set forth in this schedule. A reasonable charge will be assessed based on the nature of the service and the responsibility involved. At our option, these charges will be billed at a flat fee or at our hourly rate then in effect.

Account approval is subject to review and qualification. Fees are subject to change at our discretion and upon written notice. **Fees paid in advance will not be prorated.** The fees set forth above and any subsequent modifications thereof are part of your agreement. Finalization of the transaction constitutes agreement to the above fee schedule, including agreement to any subsequent changes upon proper written notice. In the event your transaction is not finalized, any related out-of-pocket expenses will be billed to you directly. Absent your written instructions to sweep or otherwise invest, all sums in your account will remain uninvested and no accrued interest or other compensation will be credited to the account. Payment of fees constitutes acceptance of the terms and conditions set forth.

Dated: 8/12/09

## "IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT"

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account.

For a non-individual person such as a business entity, a charity, a Trust or other legal entity we will ask for documentation to verify its formation and existence as a legal entity. We may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation."

**EXHIBIT 1**
105

1:17-cv-00635-JDB

F-2004.1-1.                          EXHIBIT C

## U.S. BANK NATIONAL ASSOCIATION
## MONEY MARKET ACCOUNT
## DESCRIPTION AND TERMS

The U.S. Bank Money Market account is a U.S. Bank National Association ("U.S. Bank") interest-bearing money market deposit account designed to meet the needs of U.S. Bank's Corporate Trust Services Escrow Group and other Corporate Trust customers of U.S. Bank.    Selection of this investment includes authorization to place funds on deposit and invest with U.S. Bank.

U.S. Bank uses the daily balance method to calculate interest on this account (actual/365 or 366).  This method applies a daily periodic rate to the principal balance in the account each day.  Interest is accrued daily and credited monthly to the account.  Interest rates are determined at U.S. Bank's discretion, and may be tiered by customer deposit amount.

The owner of the account is U.S. Bank as Agent for its trust customers.  U.S. Bank's trust department performs all account deposits and withdrawals. Deposit accounts are FDIC Insured per depositor, as determined under FDIC Regulations, up to applicable FDIC limits.


### AUTOMATIC AUTHORIZATION

In the absence of specific written direction to the contrary, U.S. Bank is hereby directed to invest and reinvest proceeds and other available moneys in the U.S. Bank Money Market Account.  The U.S. Bank Money Market Account is a permitted investment under the operative documents and this authorization is the permanent direction for investment of the moneys until notified in writing of alternate instructions.

Form 2004.1 MMDA eff.

**EXHIBIT 1**
**106**

1:17-cv-00635-JDB

YAHOO! IRREVOCABLE HUMAN RIGHTS TRUST 2009

<u>Acknowledgement and Ratification of Trustees</u>

This Acknowledgement and Ratification is made as of ~~May [ ]~~ June 12 2009 by the undersigned, being all the Trustees of the Yahoo! Irrevocable Human Rights Trust 2009 (the "Trust").

WHEREAS:    Harry Wu, on May [ ] 2009 did enter into a settlement and waiver of claims against Yahoo! Inc., with Mr. Jian Lijun, and Ms. Tian Shiyu, as representative of Mr. Li Zhi (each a "Claimant", and together the "Claimants") in exchange for disbursements and assistance funds to Claimants totaling $550,000; and

WHEREAS    Such disbursements and assistance funds were in accordance with the purpose of the Trust, and the Guidelines adopted by the Trustees; and

WHEREAS    Mr. Wu was acting on behalf of the Trust and in his character as Trustee of the Trust, pending its formation;

it is therefore

RESOLVED:    That the $550,000 expenditure will be charged and accounted for as a Trust disbursement.

RESOLVED:    That all actions heretofore taken by Harry Wu hereby are, acknowledged, ratified, approved, and confirmed by the Trustees as in accordance with the purpose and Guidelines of the Trust.


_____
MICHAEL SAMWAY, Trustee


_____
HARRY WU, Trustee


District of Columbia : SS
Subscribed and Sworn to before me, in my presence,
this 12ᵗʰ day of June 2009

_____
Notary Public, D.C.
My commission expires Oct. 14, 2013

                    KATHERN M. THOMSON
                    Notary Public, District of Columbia
                    My Commission Expires October 14, 2013

D114620.1

**EXHIBIT 1**
107

### YAHOO! IRREVOCABLE HUMAN RIGHTS TRUST 2009

#### Consent of Trustees

This Consent of Trustees is made as of ~~May [ ]~~ *June 12,* 2009 by the undersigned, being all the Trustees of the Yahoo! Irrevocable Human Rights Trust 2009 (the "Trust").

RESOLVED:   That the Guidelines attached hereto be, and they hereby are, adopted, confirmed, and approved for use by the Trustees in making disbursements as set forth in the Trust.

_____
MICHAEL SAMWAY, Trustee

_____
HARRY WU, Trustee

District of Columbia : SS
Subscribed and Sworn to before me, in my presence,
this 12" day of _June_ , 2009

_____
Notary Public, D.C.
My commission expires  Oct. 14, 2013

KATHERN M. THOMSON
Notary Public, District of Columbia
My Commission Expires October 14, 2013

D114656.1

**EXHIBIT 1**
**108**

1:17-cv-00635-JDB

# YAHOO! IRREVOCABLE HUMAN RIGHTS TRUST 2009

## GUIDELINES FOR REVIEW OF ASSISTANCE FUNDING APPLICATIONS

The Trustees will establish a mechanism for applicants to contact the Trust and a mechanism for publicizing the existence of the Trust to potential applicants.

Upon receipt of each application from an individual for humanitarian or legal assistance and claims resolution, the Trustees will review the application and make the following determinations. Once these determinations have been made, the Trustees will make a consensus determination as to the amount of assistance to be offered, and shall present such offer to the applicant.

The determination made by the Trustees will be based upon these factors:

1. Does the case involve persons from or in the PRC?
2. Has the person suffered violations of fundamental human rights (prolonged arbitrary detention, torture, forced labor, etc.)?
3. Were these violations of human rights the direct result of the victim exercising his or her freedom of expression?
4. Was Yahoo! or another electronic medium involved?
5. Is the individual prepared to enter into a settlement and waiver of any claims it may have against Yahoo! in connection with its case?

If the application warrants a disbursement, the Trustees will offer an amount of assistance to the applicant. The Trustees will make every effort to award consistent amounts to applicants who have experienced similar factors. This recommended amount shall be based in part upon the following criteria:

1. Whether the person has been, or still is, imprisoned;
2. Whether the person was convicted, and if so, the length of the sentence;
3. The individual's family situation; and
4. The individual and his or her family's needs for legal defense.

**EXHIBIT 1**
**109**

1:17-cv-00635-JDB