**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HE DEPU, *et al*., | Case No. 1:17-cv-00635-JDB |
| Plaintiffs, | Judge John D. Bates |
| v. | **ORAL ARGUMENT REQUESTED** |
| YAHOO! INC., *et al.*, | |
| Defendants. | |

<u>**DEFENDANTS THE LAOGAI RESEARCH FOUNDATION (CALIFORNIA)'S AND
LAOGAI RESEARCH FOUNDATION (VIRGINIA)'S REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**</u>

Defendants The Laogai Research Foundation ("LRF-CA") and Laogai Research

Foundation ("LRF-VA") (collectively, "LRF"), by counsel, pursuant to F.R.Civ.P. 12(b), file this

Reply Memorandum in Support of their Motion to Dismiss the First Amended Complaint.

Plaintiffs' Opposition consists largely of repeatedly stating that defendants have failed to

attack individually every single allegation of the 149 separate paragraphs of the Amended

Complaint, and that the defendants have thereby admitted the truth of the Amended Complaint

and conceded positions that they have not.[1]  *See* Opp. at 3, 4, 8, 14, 15, 29, 33, 35, 44.  The

Opposition not only misrepresents LRF's Motion to Dismiss, but grossly misapprehends the

nature of a motion to dismiss, the legal standard applicable to such a motion, the difference

between factual allegations and legal conclusions, and plaintiffs' burden under the

*Iqbal/Twombly* standard to plead a plausible cause of action.

---

[1] *See, e.g.*, Opposition at 1 ("*not one* [of the motions to dismiss] meaningfully challenges that these profound breaches of trust and contract have occurred") (emphasis in original).  This absurd proposition cannot be maintained by anyone who has read the Motions.  Not only does a motion to dismiss requires the movant to assume the truth of well-pleaded factual allegations for its argument, but every single Motion to Dismiss vehemently and repeatedly denies that there was any breach of trust or contract **at all.**  The Opposition contains dozens of these bizarre and fictitious claims that defendants have conceded some allegation or agreed with one of plaintiffs' legal conclusions; simply refuting each of them separately would occupy most of this Reply.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Conclusory allegations and formulaic recitations of
the elements of a claim do not suffice.  *Id.*  Legal conclusions masquerading as facts do not meet
plaintiff's burden, *see Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545
(2007).  Even where allegations taken as true "are consistent with" unlawful conduct, the
complaint still must be dismissed if the allegations are "more likely explained by, lawful …
behavior."  *Iqbal*, 556 U.S. at 680.  These pleading requirements apply to each element of a
plaintiff's claim, *id*. at 680-84.

Plaintiffs, not defendants, bear the burden of alleging a plausible claim.  "Plaintiffs bear
the burden of sufficiently stating a plausible claim for relief in their Complaint; they cannot rely
on facts that may be discovered in yet to be conducted discovery to meet this burden."  *Cheeks v.
Fort Myer Constr. Corp*., 216 F. Supp. 3d 146, 158 (D.D.C. 2016).  As the Motion to Dismiss
shows, they have not done so.

The Opposition repeatedly and mistakenly asserts that the unsupported legal conclusions
scattered throughout the Amended Complaint must be taken as true.  In particular, the
Opposition contends that plaintiff's allegations that the Yahoo Settlement established a trust, and
that the defendants are trustees of that trust, are factual allegations that the Court must accept as
true on this Motion.  Opp. at 9-14.  Not only are such legal conclusions <u>not</u> taken as true, *Iqbal,*
556 U.S. at 678, but where the documents referred to in the complaint contradict the factual
allegations of the complaint, the document, not the allegation, is accepted.  "Nor must we accept
as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or
matters subject to judicial notice."  *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004).
"[W]here a conclusory allegation in the complaint is contradicted by a document attached to the

complaint, the document controls and the allegation is not accepted as true." *Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 3d 21, 26 n. 4 (D.D.C. 2014).

Here, there is a reason that Plaintiffs have chosen not to attach the documents that they claim form the foundation for all their claims. It is because those very documents defeat the allegations of their Complaint.[2] Those documents provide:

1. Only Yu is a party to the Yahoo Settlement; the "Beneficiary Plaintiffs" are not.

2. The Yahoo Settlement specifically states that there are no intended third party beneficiaries, express or implied, of the Settlement, barring the claims of the "Beneficiary Plaintiffs," including that of a purported "trust" established by the Yahoo Settlement.

3. The Yahoo Settlement specifically allows the use of the Yahoo Funds for operational and educational expenses of LRF, and does not provide for the "primary humanitarian purpose" as alleged by plaintiffs.

4. Yu, as the only party to the Yahoo Settlement, is the only plaintiff with even ostensible standing to sue for its breach or to seek rescission or modification of it, and <u>cannot</u> seek rescission or modification of the Yahoo Settlement because of her repeated affirmation of it, her waiver of any right to rescind, and her failure to return the benefits she received from it.

---

[2] Plaintiffs assert that the Court should not take judicial notice of Yahoo's Exhibit 1, which contain the documents related to the creation of the actual Yahoo Trust in 2009 (what Plaintiffs insist on calling the "subtrust," even though it is the only actual trust in this matter.) But the Amended Complaint itself refers to this Exhibit as a key document containing the facts supporting their case. *See* AC, ¶ 49-57, where the Amended Complaint cites numerous parts of Exhibit 1 as support for their theory. The Opposition cites the Exhibit as well. Opp. at 4-6, 13-14, 19. Plaintiffs cannot have it both ways. The Court can obviously take judicial notice of this document, cited by plaintiffs in the Amended Complaint but not attached, without converting the motion to a motion for summary judgment. *Art & Drama Therapy Inst., Inc. v. District of Columbia*, 110 F. Supp. 3d 162, 173 n. 10 (D.D.C. 2015).

5. Yu released her claims of breach of the Settlement Agreement and unjust enrichment in a comprehensive 2011 Release and dismissed those claims with prejudice in the 2011 Dismissed Action.

I. **THE YAHOO SETTLEMENT IS NOT A CHARITABLE TRUST, AND DOES NOT CONTAIN THE "PRIMARY HUMANITARIAN PURPOSE" ALLEGED IN THE AMENDED COMPLAINT.**

A. The Yahoo Settlement is not a charitable trust and does not establish one.

As LRF's Motion to Dismiss pointed out, plaintiffs repetitively calling the Yahoo Settlement a trust does not make it one. The Amended Complaint asserts no factual allegation to support its naked legal conclusion that the Yahoo Settlement is a trust. Unable to come up with any factual basis for its claims of a trust, the Opposition claims, contrary to *Iqbal*, that *defendants* must come up with facts to dispute plaintiffs' *ipse dixit* claim of a trust. Opp. at 10-11. That is simply not the law applicable to a motion to dismiss.[3] The Court need not accept "legal conclusions [of fiduciary duty] cast in the form of factual allegations." *Magee v. AICPA*, 2017 U.S. Dist. LEXIS 46099 at **22-23 (D.D.C. Mar. 29, 2017), quoting *Kowal v. MCI Commc'ns Corp*., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Yet that is all plaintiffs have.[4]

Likewise, the Opposition can come up with no plausible support for their claim that the non-existent trust was solely to support an unwritten, unspoken "primary humanitarian purpose." *See* LRF Brief as 30-33; Yahoo Brief at 17-18. Rather, the Opposition again contends,

---

[3] Plaintiff's citation of the D.C. Court of Appeals' decision in *Federation for World Peace v. Hyun Jin Moon,* 129 A.3d 234 (D.C. 2015) is inapposite. That case dealt with allegations of an *oral* trust that were plausibly alleged. Here, there is a written document, the Yahoo Settlement, which plaintiffs allege created a trust, but whose provisions are available to the Court and flatly contradict plaintiffs' trust theory.

[4] *See* AC, ¶ 36, which alleges that the Settlement created "the establishment of a $17.3 million trust fund for the benefit of imprisoned Chinese dissidents." This is a naked legal conclusion, one which is contradicted by the Yahoo Settlement itself.

repeatedly, and incorrectly, that the Complaint's mere allegation of a "primary humanitarian purpose is sufficient."  Opp. at 3, 32.[5]

As noted above, it is the documents referred to in the Amended Complaint, not Plaintiffs' fanciful and unfounded characterization of those documents, that control whether the Amended Complaint plausibly states a cause of action.  *Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 3d at 26 n. 4.[6]  Here, not only is the Yahoo Settlement devoid of support for Plaintiff's trust theory, but it actively contradicts Plaintiff's claims.

The Yahoo Settlement is not a trust.  The Yahoo Settlement expressly provides that the "Beneficiary Plaintiffs" are neither beneficiaries of the Settlement, nor do they have standing to enforce the terms of the Settlement.  The Settlement provides that the <u>only</u> persons that it is intended to benefit are the parties to the Settlement and their successors and assigns:

> **N. Predecessors, Successors and Assigns.** This Agreement shall bind and inure
> *to the benefit only of, and be enforceable only by, the Parties hereto* and their
> respective successors and assigns (and their respective predecessors to the fullest

---

[5] In response to the defendants' clear and repeated attacks on the plausibility of plaintiffs' legal conclusion of the Yahoo Settlement's "primary humanitarian purpose,", and its incompatibility with the actual espoused purposes of the Yahoo Settlement, *see, e.g.* LRF Brief as 9, 30-33, Yahoo Brief at 17-18, rather than address the issue, the Opposition elects to pretend that the defendants have all conceded the existence of the invented "primary humanitarian purpose."  Opp. at 3, 8, 9, 15, 16, 29, 32, 33, 40.

[6] The Opposition's argument that the documents referred to in a complaint cannot be relied on "for the truth of the matter," citing *Hurd v. District of Columbia,* 864 F.3d 671 (D.C. Cir. 2017), is a mischaracterization of *Hurd* and its holding, which has no application here.  In *Hurd,* the court dealt with the consideration of documents such as the results of drug tests, which were extraneous documents that were not attached to the complaint or referenced in the complaint, but had been filed as exhibits in another related case.  The defendant argued that since the documents had had been filed as exhibits in another case, the district court could take judicial notice of them.  The D.C. Circuit affirmed the longstanding rule that a court may take judicial notice of certain facts under the Federal Rules of Evidence, but ruled that the court could not take judicial notice of whether the statements in the drug tests were true.

Here, the documents being taken judicial notice of –such as the Yahoo Settlement and the 2011 Release -- are not exhibits filed in another case, but are referred to in the Amended Complaint and form the basis of the claims therein. Moreover, the "truth of the matter asserted" is not at issue here.  The issue of these contractual documents is simply: what is their legal effect?  *See Rogers v. Johnson-Norman,* 466 F. Supp. 2d 162, 170 n.5 (D.D.C. 2006) (court could appropriately consider effect on current case of settlement agreement in another litigation where parties did not dispute the validity of the agreement, only the meaning of its terms); *Halldorson v. Sandi Group,* 934 F. Supp. 2d 147, 153 (D.D.C. 2015).  *See also* Fed. R. Evid. 801 Advisory Committee's Note; *Schindler v. Seiler,* 474 F.3d 1008, 1010 (7th Cir. 2007) ("signed instruments such as wills, contracts, and promissory notes are writings that have independent legal significance and are not hearsay.")

extent permitted by law). *There are no express or implied third party beneficiaries of this Agreement.*

(Emphasis supplied.)  There is no disputing this clause, and the Opposition does not even mention it.  The clear provisions of the Yahoo Settlement prohibiting third party beneficiaries, and permitting only the parties to the Settlement the power to enforce it, are definitive evidence defeating plaintiff's invention of a trust.[7]

B.  The "primary humanitarian purpose" does not exist, and the Yahoo Settlement expressly provides that the operational expenditures are proper uses of the funds.

All counts of the Amended Complaint rests on one central, wholly false premise: that the use of funds by LRF for its operational and educational programs is a breach of the Yahoo Settlement.  Though ignored in the Opposition, there is no dispute that the Yahoo Settlement specifically authorizes the use of the Funds "*for payment of Foundation operating expenses and the Foundation's educational work conducted in the United States in support of human rights.*" Dkt. 29-5, Section II.C.2.

The entire Amended Complaint is thus premised on the Plaintiffs' creation of an imaginary "primary humanitarian purpose" of the Yahoo Settlement that can be found nowhere in that document, as conceded by the Opposition.[8]  The Opposition makes no attempt to address the fact that the Yahoo Settlement provides for three distinct permitted uses of the Yahoo Funds,

---

[7] The Opposition spends some effort in arguing that the defendants could possibly be constructive trustees, or *de facto* trustees, or trustees *de son tort.*  Opp. at 12-14.  Again, there is no factual allegation at all in the Amended Complaint to support these various theories.  There is merely a mention of these legal terms in paragraph 126, and the flat declaration that the defendants may have been one of these various legal animals.  After *Iqbal,* formulaic recitations of a claim will not suffice to state a cause of action.  556 U.S. at 678.  Plaintiffs' Amended Complaint does not even aspire to the recitation of a formulaic claim here: there is merely the random namedropping of these legal terms into the Amended Complaint, with no explanation of how the defendants plausibly assumed these roles.
[8] Plaintiffs' sole factual allegation, the contortion of a letter from Yahoo's general counsel that postdated the execution of the Yahoo Settlement by nine months, does not suffice.  Opp. at 2-4.  Obviously, this post execution letter, which like the Yahoo Settlement does not contain this "primary humanitarian purpose" language, from the attorney of one of the parties does not form part of the Yahoo Settlement.

and that the operational and educational expenditures by LRF – which are the outrageous and wrongful "depletions" the plaintiffs complain of  -- are in fact one of those three expressly permitted uses.[9]  Therefore the "breaches" of the Yahoo Settlement alleged in the Amended Complaint are not breaches at all, and the Opposition simply ignores the plain language of the Yahoo Settlement on this point.  As these expenditures are not breaches of the Yahoo Settlement, and these expenditures are the sole thread by which every cause of action in the Amended Complaint hangs, the Amended Complaint, as a whole, fails to state a claim upon which relief may be granted.

## II.    THE AMENDED COMPLAINT SEEKS THE MODIFICATION OF THE YAHOO SETTLEMENT, AND PLAINTIFFS ARE BARRED FROM SEEKING SUCH RELIEF.

As LRF's Motion pointed out, only Yu, as party to the Yahoo Settlement, would have ostensible standing to seek to rescind or modify it, and she has repeatedly waived that right by her conduct and by written agreement.  LRF Brief at 10-14.  The Opposition contends, bizarrely, that the Amended Complaint does not seek rescission or modification of the Yahoo Settlement.  This is simply insupportable: the Amended Complaint absolutely seeks rescission or modification of the Settlement, baldly and unreservedly.  In the Prayer for Relief, all plaintiffs seek the return of all monies given to the LRF or to Wu pursuant to the Yahoo Settlement, retroactively (but not the monies given to Yu), and the complete rewriting of the Yahoo Settlement to eliminate any provisions that the plaintiffs don't like, and to create new obligations that the parties to the Settlement never intended.  *See, e.g.*, AC at 44, Prayer for Relief, paragraph

---

[9] Plaintiffs do argue that the LHRO incorporation documents, which contain provisions similar to the Yahoo Settlement's regarding LRF's use of the Yahoo Funds, cannot be used to modify the requirements of the pre-existing Yahoo Settlement.  Opp. at 15 n.16.  Plaintiffs simply choose to ignore entirely the irrefutable fact that the Yahoo Settlement itself expressly provides for LRF's use of the Funds for its operational expenditures and educational programs.

B ("Disgorgement of all monies, including interest, taken by Wu and the LRF and used to their benefit…"), paragraph I ("Modification of the Trust [i.e., the Yahoo Settlement] to make Chinese dissidents imprisoned for exercising their freedom of expression online the sole beneficiaries of Trust assets.") [10]

Yu's claim for rescission or modification is barred as a matter of law. Once again, the documents control and defeat Yu's attempt.  As the Yahoo Settlement specifically authorizes the use of the Funds "for payment of Foundation operating expenses and the Foundation's educational work conducted in the United States in support of human rights," Dkt. 29-5, Section II.C.2, plaintiffs would like the Court to redraft the Yahoo Settlement as they wish it had been written, and strike the quoted section from it.  Beyond asking the Court to do what it cannot, the primary problem with that theory is that Yu, the only plaintiff that was a party to the Yahoo Settlement, specifically, repeatedly, and unequivocally affirmed the validity of the Yahoo Settlement, including the right of LRF to spend the Yahoo Funds on its operations, in the 2011 Dismissed Action and in the 2011 Release, and released all defendants from any claims relating to such expenditures.  See LRF brief at 10-14.

Likewise, the "Beneficiary Plaintiffs," none of whom are parties to the Yahoo Settlement, attempt to separately assert Yu's doomed modification claim as her proxies in separate claims for

---

[10] Plaintiff's request for the judicial rewriting of the Yahoo Settlement would require at a minimum the removal of Section II.C.2(c) (expressly permitting the challenged expenditures by LRF); Section II.C.2(iii) (expressly permitting the challenged expenditures by LRF);Section IV.O (providing that it can only be modified by a written instrument executed by each of the parties); Section IV. S. (requiring Yu to defend the validity of the Agreement against anyone seeking to invalidate any provision of the Agreement); and Section IV.P (making Section II in its entirety non-severable from the Agreement.) *Hart v. Vt. Inv. Ltd. P'ship*, 667 A.2d 578, 584 (D.C. 1995) ("[W]e know of no legal authority permitting the court to rewrite the contract by inserting a limitation which does not appear therein."). "The arbitration agreement is a contract and the court will not rewrite it for the parties." *Williams V. E.F. Hutton & Co., Inc.*, 753 F.2d 117, 119 (D.C. Cir. 1985), citing *Davis v. Chevy Chase Financial Ltd.*, 667 F.2d 160, 167 (D.C. Cir. 1981).

"Breach of Trust" and "Modification of Trust."  AC at 38, 40, 44.  They cannot.  Even if these plaintiffs were indeed third-party beneficiaries, third-party beneficiaries cannot rescind or modify a contract under California law.  *See* LRF Brief at 12.

Finally, what plaintiffs request, that the Court strike an essential and integral part of the Yahoo Settlement, is barred by the Settlement itself.  The Yahoo Settlement clearly states that the provision the plaintiffs seek to remove is not severable.  Section IV.P of the Yahoo Settlement states that Section II, which contains the provisions that plaintiffs ask the Court to excise, is essential to the Agreement, and cannot be severed from the Agreement.  Dkt. 29-5.[11] "We are of the general opinion that it is not the function of the courts to rewrite contracts and thereby negate the plain unambiguous language adopted by the contracting parties.  We must ever guard against allowing sympathy for a party to produce a result contrary to the clear language of the contractual provisions before us even if done in the name of public policy." *Conesco Industries, Ltd. v. Conforti & Eisele, Inc.*, 627 F.2d 312, 315 (D.C. Cir. 1980).

Yu has ratified the Yahoo Settlement, through acceptance of its benefits, to the sum of $3.2 million.  She admitted in the 2011 Dismissed Action that she was fully aware of the provisions allowing LRF to spend the Yahoo Funds on its operational and educational expenses, and still affirmed the validity of the Yahoo Settlement by suing to enforce, rather than rescind, it. In settlement, she released all defendants from any claim relating to the Yahoo Settlement or the 2011 Dismissed Action, and expressly affirmed the continuing validity of the Settlement; she affirms it again, in her Complaint herein, by suing once again for its alleged breach.  Enough is enough.  Yu cannot claim now – ten years after signing it and accepting its benefits – that the

---

[11] The Opposition does not even attempt to address this prohibition.

Court should modify the Yahoo Settlement to strike only those provisions that utterly eviscerate her latest Complaint.

### III.     ALL OF YU'S CLAIMS HAVE BEEN RELEASED.

The Opposition makes zero effort to deal with the unavoidable conclusion that the allegations of Yu's 2011 Dismissed Action are largely identical to the allegations she makes in her Complaint herein.  The instant Complaint is quite clear that the acts complained of are part and parcel, if not identical to, the same factual allegations of the 2011 Dismissed Action, **which were dismissed with prejudice**.  *See* LRF Brief at 15-17 (comparing the allegations of the complaints.)

Yu's only attempt to defend against the fact that these claims have been released is to cite a single clause of the 14-page release and ask the Court to ignore the rest of the Release.  There is no ambiguity in the Release.  Under the exhaustive, encyclopedic language of the 2011 Release, Yu released any claim or cause of action, whether known to Yu or not, between her and the defendants herein, related in any way to the events or circumstances alleged in the 2011 Dismissed Action.  Yu released all claims

> of every kind and nature whatsoever in law, equity or otherwise, past, present or future, ascertained or unascertained, whether now known or unknown, suspected or unsuspected, and whether or not concealed or hidden, which have existed or may have existed, or which do exist or may exist, without regard to subsequent discovery or the existence of additional or different facts, from the beginning of the world to the date of this Agreement *arising out of or related in any manner to all prior dealings between the parties, without limitation, including but not limited to any events or circumstances alleged or which could have been alleged in the Civil Action.*

*See* Dkt. 29-8 (emphasis supplied.).[12]  Thus, the Release waives 1) all claims Yu had against any of the defendants or their affiliates, including even unknown, undiscovered or unsuspected

---

[12] The release precludes any "newly-discovered facts" as a possible exception to the comprehensive scope of the release provided by Yu.  Dkt. 29-8 at 3.

claims; 2) all claims relating in any way to the parties' prior dealings; 3) in particular, claims related in any way to the events and circumstances described in the 2011 Dismissed Action; and 4) any claims that could possibly have been alleged in the 2011 Dismissed Action.

The Opposition's sole theory is that because the instant complaint has changed its legal theory from the 2011 Dismissed Action, the Release does not apply.  Yu contends that because the 2011 Dismissed Action did not allege that the Trust's humanitarian purpose was being violated, and she now does, that alone makes the release inapplicable.  This is nonsense, defeated by the plain words of the Release.  The entire purpose of the Release's broad language was to preclude Yu from later filing a new lawsuit changing her theory, or "discovering" additional claims that she failed to allege previously.  The Release included any claims "arising out of or related in any manner to all prior dealings between the parties, without limitation, including but not limited to any events or circumstances alleged or which could have been alleged in the Civil Action."  As shown, the 2011 Complaint ("DAC") claims breach of the Settlement Agreement, and is rife with allegations concerning the allegedly wrongful conduct of LRF and Wu in expenditures on LRF's operations and employees, the same conduct that is alleged anew in the current Complaint.  See LRF Brief at 14-17, 22-23.  Indeed, Yu admits in the DAC that she was fully aware that LRF and Wu were expending the Yahoo Funds in support of LRF's operations, and that not all funds from the Yahoo Settlement were being distributed to Chinese dissidents: Dkt. 27-2,¶ 47.  Yu thus has released any claim related to the Yahoo Settlement, or to LRF's spending of the Yahoo Funds, or to benefits obtained by defendant Wu and his alleged self-dealings, or that the Yahoo Settlement should be rescinded in whole or in part.  Those claims cannot be revived now.  Both the express terms of the Release and the principles of res judicata prevent the reassertion of Yu's claims by another name.

The Release also covers Yu's unjust enrichment claim, as the sole benefit she alleges she provided to the LRF and Wu was the "enormous financial benefits" they received as a result of her signing the 2007 Yahoo Settlement.  AC, ¶¶ 35-36, 133.  Those were the same benefits that were alleged repeatedly by Yu in the 2011 Dismissed Action:

> Defendant Wu also intentionally and materially failed to disclose to Plaintiff Yu that *Defendant Laogai had also received a significant sum from Yahoo!, which Defendants Wu and Laogai negotiated for their own benefit,* …and further failed to disclose to Plaintiff Yu that from these settlement funds, *Defendant Laogai acquired significant other benefits, to the benefit of Defendant Laogai, Defendant Wu and his wife.* Upon information and belief, *Defendant Wu and his wife have each personally and materially benefitted from the funds received by Defendants Wu and Laogai from Yahoo! coincident with its and their receipt of monies for the settlement of Plaintiffs Yu and Wang's claims against Yahoo!.*

DAC, Dkt. 27-2, ¶ 39 (emphasis supplied).

> (b) *Defendant Laogai received a significant amount of money from Yahoo! for itself . . .* the Defendants acted as trustees, but acted for their own benefit and to the detriment of the Plaintiffs, (c) *from said money, Defendant Laogai was permitted to use significant monies for operating expenses, (t) Defendant Laogai had also received upon information and belief significant money from Yahoo!,* which according to Defendant Laogai's tax filings are believed to be *in excess of $17 million, which Defendants Wu and Laogai negotiated for their own benefit, . . .*

*Id.*, ¶61 (emphasis supplied).

> a.    Unbeknownst to Plaintiffs, Defendant Wu and his wife, Ching Lee Chen . . . have doubled their yearly compensation following the settlement, to their unjust enrichment and benefit and all to the detriment, loss and damage of the Plaintiffs.
> b.    Defendant Laogai purchased a building located at 1109 M Street, NW for the sum of $1.45 million in Washington DC as it new headquarters.
> c.    Defendants Wu and Laogai materially benefitted from monies paid to Defendant Laogai by Yahoo!
> d.    Defendants Wu and Laogai materially benefitted from Laogai's establishment with Yahoo! of the Yahoo! Human Rights Fund.

*Id.*, ¶83. [13]

---

[13]  Paragraph 83's allegations of financial benefits to LRF and Wu are later repeated verbatim in paragraph 88 of the DAC.  *Id.*

Thus, the 2011 Dismissed Action repeated these same allegations of unjust enrichment and financial benefits to LRF or Wu *ad nauseam,* and the 2011 Release released all Yu's claims relating in any way whatsoever to these allegations, or any claim related to the Yahoo Settlement.  LRF Brief at 14-24.  It is insulting for the Opposition to contend otherwise.

Yu claims that the Release may be ignored because she seeks to recover only for those breaches of the Settlement that occurred after she signed the Release.  Yu's argument begs the question.  The issue is whether the Amended Complaint contains plausible causes of action or claims that were not released by the Release; there are none that the Opposition can cite.  First, Yu's allegations, that use of Yahoo Funds for LRF's operational expenditures was an improper depletion of the Yahoo Funds, and that Wu and the LRF did not use their best efforts to maximize humanitarian benefits, are admitted by the Amended Complaint to have begun in 2007 and continued unabated.  *See* AC, ¶¶ 58-69 (¶ 61: "The systematic and unlawful depletion began immediately.")  Thus, they predate the Release.  Second, these very same acts and occurrences are actually alleged in the DAC, which states that Wu and LRF were using the Yahoo Funds for their own benefit, and not for "humanitarian assistance."  *See, e.g*., DAC, Dkt. 27-2, ¶¶ 39, 47, 61, 83, 88.

Thus, Yu released these "misuse of funds" claims on multiple grounds in the 2011 Release.  The 2011 Release released all claims, "past, present or future,"[14] relating to the allegations of the 2011 Dismissed Action, as well as all claims that could have been brought in

---

[14] The Opposition's citation of *Wright v. Sony Pictures Entm't, Inc*., 394 F.Supp. 3d 27 (D.D.C. 2005) as making the Release void as against public policy is inapposite.  *Wright* dealt with prospective waivers for tort liability for personal injury, and cites *Hiett v. Lake Barcroft Community Ass'n*, 418 S.E.2d 894 (Va. 1984), which stands only for the proposition that prospective waivers for liability for negligence leading to personal injury are void in Virginia. Yu does not assert a personal injury claim for negligence.

the 2011 Dismissed Action, as well as all claims that were in any way related to any prior

dealings between the parties. [15]  Yu cannot in 2011 ratify in the Release the Yahoo Settlement

and the use of the Yahoo Funds to pay for LRF's operational and educational expenses, and then

claim six years later that those very same expenditures constitute a breach of the Yahoo

Settlement.  Yu's attempt to ignore the terms of her Release, and bring this identical barred

action six years later (and her counsel's refusal to withdraw it), is simply inexplicable.

      C.     <u>Yu's claims are also barred by *res judicata* under Virginia law.</u>

As the LRF Brief pointed out in detail, not only the Release, but Virginia law of *res*

*judicata* also bars Yu's Amended Complaint.  The Opposition concedes the effect of Virginia

law on the issues raised in the 2011 Dismissed Action, but once again claims that the Amended

Complaint does not arise out of the same conduct, transaction, or occurrence as the 2011

Dismissed Action, because the relief Yu seeks now is different from the relief she sought then.

Rule 1:6 of the Rules of the Virginia Supreme Court specifically anticipates, and

addresses, this frivolous argument.  The Rule bars any later lawsuit based on "any claim

or cause of action that arises from that same conduct, transaction or occurrence, *whether*

*or not the legal theory or rights asserted in the second or subsequent action were raised*

*in the prior lawsuit, and regardless of the legal elements or the evidence upon which any*

*claims in the prior proceeding depended, or the particular remedies sought.*" (Emphasis

supplied.)  Thus, the Rule specifically bars a second suit brought on a different legal

theory or claim.  *See Martin-Bangura v. Commonwealth Dep't of Mental Health,* 640 F.

---

[15] It is of course not sufficient after *Iqbal/Twombly* to allege that Yu is only suing for unspecified and unpleaded "breaches" that occur after the date of the Release.  Yu must allege plausible factual allegations that there <u>are</u> such breaches, what specific part of the Yahoo Settlement they breached, that those breaches have not been released in the 2011 Release, and how such breaches have caused damage to her.  The Amended Complaint contains no such allegations.  To the extent that any new breach is found to not be encompassed by the broad language of the 2011 Release, Yu has failed to allege any damages resulting to her from such new breach.

Supp. 2d 729, 738 (E.D.Va. 2009) (*res judicata* bars not only claims that were in fact brought in the earlier suit, but also all claims that were not brought in the previous suit that arise from the same conduct or transaction). What relief is sought in the differing lawsuits is utterly irrelevant, as the Rule specifically provides, to the application of *res judicata.*

As noted extensively in the LRF Brief at 14-17, a cursory review of both Complaints establishes beyond peradventure that the claims in both arise out of the same conduct and transaction: the Yahoo Settlement and its implementation. Yu's decision not to raise some of these arguments or theories in the 2011 Dismissed Action is utterly irrelevant. Under Rule 1:6, she is forever barred from relitigating these matters, and her Complaint must be dismissed.

## IV.    THE PLAINTIFFS LACK STANDING TO CHALLENGE THE ACTIONS OF LRF, A NON-PROFIT CORPORATION.

LRF adopts the arguments on standing contained in Yahoo's Reply Brief, which admirably demonstrates plaintiffs' lack of standing to bring these claims. In addition to those arguments, plaintiffs lack standing to challenge LRF's acts on separate grounds. In order to prevent vexatious challenges from the general public to the activities of non-profit corporations, both the District of Columbia and California have passed laws protecting non-profits from such lawsuits. Section 5141 of the California Corporation Code provides:

> (a) No limitation upon the activities, purposes, or powers of the corporation or upon the powers of the members, officers, or directors, or the manner of exercise of such powers, … shall be asserted as between the corporation or member, officer or director and any third person, except in a proceeding: (1) by a member or the state to enjoin the doing or continuation of unauthorized activities by the corporation or its officers, or both, in cases where third parties have not acquired rights thereby, (2) to dissolve the corporation, or (3) by the corporation or by a member suing in a representative suit against the officers or directors of the corporation for violation of their authority.

The centerpiece of plaintiffs' complaint is the alleged impropriety of the expenditure by LRF, a California nonprofit, of the Yahoo Funds given to LRF under the Yahoo Settlement or given by LHRO to LRF under its bylaws.  AC, ¶¶ 58-71.  The Amended Complaint alleges that LRF should not have spent money on its operations, bought its headquarters building, or founded the Laogai Museum, and doing so violated the laws of the District of Columbia.  *Id.*  These are legal challenges to the "activities, purpose or powers" of LRF and its directors, and the "manner of exercise of such powers."  As such, these are legal claims that only directors of the corporations, or the Attorney General of the State of California, are entitled to make under the laws of that jurisdiction.[16]  The plaintiffs have no standing to bring these claims.

## V.    THE AMENDED COMPLAINT FAILS TO ALLEGE ANY VIABLE CAUSES OF ACTION.

### A.    Plaintiffs' claims for breach of the Yahoo Settlement fail because there is no specific breach alleged.

Count I, pleading breach of the Yahoo Settlement, is nothing more than a breach of contract claim, and it fails to state a claim, because the Beneficiary Plaintiffs are not parties to the Yahoo Settlement.  Yu's own claim for breach of the Yahoo Settlement in Count VI was not only categorically released in the 2011 Release, but Yu fails to identify *any* specific provision of the Yahoo Settlement that any defendant breached.  Instead, the best she can muster is a conclusory claim that the defendants breached by breaching: "The Settlement was breached by the depletion of Trust assets to such an extent that it culminated in a breach of the Settlement." AC, ¶ 144.  This circular argument does not describe an actual breach; such a generalized allegation is insufficient to survive a motion to dismiss.  *See Massey*, 2015 WL 9310126, at *1. The Opposition fails to shed any more light on this meaningless allegation.

---

[16] While the Opposition addresses cursorily D.C. Code applicable to LHRO, it makes no effort to address California Code Section 5141, barring its efforts to sue LRF, a California nonprofit, for how it spends its funds.

To plead breach of contract after *Iqbal*, a plaintiff must allege which particular provision of the contract was breached. *See Kaar*, 2016 WL 3068396, at *1; *see also Edmond v. Am. Educ. Servs.,* 2010 WL 4269129, at *2 (D.D.C. Oct. 28, 2010) ("Without a contractual duty, there can be no breach of contract."). Plaintiffs do not, and cannot, identify any such provision. Instead, they claim that the defendants "depleted" the Yahoo Funds to such an extent that it breached the Yahoo Settlement. As noted above, the Yahoo Settlement expressly permitted the operational and educational expenditures by LRF that constitute the "depletions." This is not a breach of that agreement.

Likewise, the breach of a duty that does not exist does not state a claim. The alleged "termination" of the "primary humanitarian purpose" cannot be a breach of the Yahoo Settlement for the simple reason that the "primary humanitarian purpose" is not an actual obligation in the Yahoo Settlement, but has been invented by Plaintiffs from whole cloth. Plaintiffs' alleged "primary humanitarian purpose" requires the excision of the actual contract language that permits the operational expenditures. *See supra*, 4-7. The defendants cannot breach an obligation in a contract when that obligation does not exist. *See Robinson v. Deutsche Bank Nat'l Tr. Co.*, 932 F. Supp. 2d 95, 110 (D.D.C. 2013) (granting motion to dismiss for alleged breach of contract where plaintiff failed to show that the contract contained the obligation allegedly breached).

As noted in the LRF Brief, the Amended Complaint fails to allege any damages to Yu as a result of the alleged breach of contract. LRF Brief at 24, n.21. Contrary to the Opposition's belief,[17] damages must be alleged to state a cause of action for breach of contract.

---

[17] The Opposition cites two state court cases in which nominal damages were *awarded*. They are irrelevant. The issue is whether the *Iqbal/Twombly* standard requires a plausible *allegation* of damages to state a breach of contract case under California law. It does.

> A breach of contract claim under California law requires allegations of damages. *Reichert v. General Ins. Co.* 68 Cal.2d 822, 830, 69 Cal. Rptr. 321, 442 P.2d 377 (Cal. 1968). "[A] formulaic recitation" of the element of damages "will not do." *Bell Atlantic Corp. v. Twombly*, supra, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient to allege the element of contract damages. *Ashcroft v. Iqbal, supra,* 556 U.S. at 678.

*St. Paul Fire & Marine Ins. Co. v. Centex Homes*, 2014 U.S. Dist. LEXIS 145882 (C.D. Cal. Oct. 7, 2014).

Finally, the Amended Complaint claims that the Yahoo Settlement's humanitarian purpose was terminated when the late Mr. Wu reportedly told one of the plaintiffs that LRF had decided to stop providing humanitarian assistance to dissidents.[18]  AC, ¶ 144.  Again, the Amended Complaint does not specify a provision of the Yahoo Settlement that would be breached, even if the Complaint alleged that LRF had stopped all humanitarian assistance. Rather, the Amended Complaint relies entirely on the same vague and invented "primary humanitarian purpose" of the Yahoo Settlement that cannot be found anywhere in the actual Settlement. *See supra* at 5-7.  Plaintiffs do not state a claim for breach of contract, and these counts must be dismissed.

B.     Plaintiff Yu's unjust enrichment claim must be dismissed.

Yu's unjust enrichment claim must also be dismissed.  The Opposition claims that Yu's unjust enrichment claim survives the Motion to Dismiss as an alternative claim to relief, and that the presence of an express contract does not bar the claim.  The unjust enrichment claim Yu alleges is barred by the 2011 Release, LRF Brief at 14-24 and *supra* at 13-14; barred by the statute of limitations, LRF Brief at 34-36 and Yahoo Brief at 18-26; and barred by the presence of an express contract, the Yahoo Settlement, LRF Brief at 33-34.

---

[18] The Complaint does not allege that LRF has in fact stopped providing humanitarian assistance, or that the Board of Directors have passed such a resolution, but only that shortly before his death, Mr. Wu said this to one of the plaintiffs.

Even it had not been released by Yu, the three year statute of limitations has run, as the 2011 Dismissed Action shows that the statute began to run immediately upon execution of the Yahoo Settlement.  In *Bradford v. George Washington Univ.*, 2017 U.S. Dist. LEXIS 58590 (D.D.C. April 18. 2017), a similar claim of unjust enrichment was presented, and dismissed on statute of limitations grounds.

> The plaintiffs here assert that the defendant became unjustly enriched by "retaining revenue derived from [the plaintiffs'] tuition payments" and that "[r]etention of these benefits . . . would be unjust and inequitable because [the defendant] falsely and misleadingly represented the nature and quality [of the SSL program]." … As the Court has already determined, the plaintiffs became aware of the alleged deficiencies in the program shortly after the program began in 2012, as indicated by the numerous complaints lodged about the program beginning on January 21, 2012. … It necessarily follows that the plaintiffs were also aware that the defendant was being unjustly enriched by retaining their tuition payments. Therefore, the plaintiffs' claim of unjust enrichment accrued more than three years before their Complaint was filed, rendering it time-barred.

*Id.* at *23.

Likewise, here, Yu alleges that the unjust enrichment was the "enormous financial benefits" received by LRF and Wu under the Yahoo Settlement.  Yu was aware, by her own voluminous admissions in the DAC, of those benefits no later than January 2011.  Even if the claims had not been released, the statute of limitations for this claim ran in January 2014, at the latest, based on Yu's own admissions in the DAC.

Finally, Yu cannot use the benefits conferred by the Yahoo Settlement, an express contract, as the basis for the alleged unjust enrichment.  Yu is not alleging unjust enrichment as an alternative theory to recovery for breach of the Yahoo Settlement; she is alleging that the Yahoo Settlement is the unjust enrichment.  AC, ¶ 133.

While there appears to be a conflict in the District of Columbia as to whether the presence of an express contract is sufficient grounds to grant a Motion to Dismiss on an unjust

enrichment claim[19], here the express contract, the Yahoo Settlement, is a California contract governed by California law.[20]  California law strictly prohibits a claim of unjust enrichment in the presence of an actual contract.

In *Muniz v. Microsoft Corp.*, 2010 U.S. Dist. LEXIS 115990, *10-11 (W.D.Wash. Oct. 29, 2010), the court ruled that the presence of an express contract governed by California law required the application of California law, which barred the plaintiff's claim of unjust enrichment:

> Under California law, an "action for unjust enrichment does not lie where . . . express binding agreements exist and define the parties' rights." *Cal. Med. Ass'n v. Aetna U.S. Healthcare of Cal., Inc*., 94 Cal. App. 4th 151, 114 Cal. Rptr. 2d 109, 125 (Cal. Ct. App. 2001). Plaintiff may not plead unjust enrichment as an alternative argument to claims based on the existence of an express contract. *Gerlinger v. Amazon, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) ("Even though Rule 8(e) (2) of the Federal Rules of Civil Procedure allows a party to state multiple, even inconsistent claims, it does not alter a substantive right between the parties and accordingly does not allow a plaintiff invoking [California] state law to allege an unjust enrichment claim while also alleging an express contract.").

*Id.  See also In re GMC*, 2005 U.S. Dist. LEXIS 23258 at **12-13 (W.D. Okla. August 8, 2005) (same).  As the California law applicable to the Yahoo Settlement bars Yu's alternative theory of unjust enrichment, this count must be dismissed.

---

[19] The Opposition relies on *Lee v. Foote*, 481 A.2d 484 (D.C. 1984) for the proposition that under D.C. law, an express contract does not always bar an unjust enrichment claim.  The D.C. Court of Appeals' latest pronouncement on the issue was in *Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550 (D.C. 2016).  There, the court reaffirmed the rule that an express contract usually bars quasi-contractual claims, and held that the only exception to that rule is where the contract is alleged to be invalid or unenforceable.  *Id.* at 556, citing *Harrington v. Trotman*, 983 A.2d 342, 347 (D.C. 2009).  S*ee also United States v. Kellogg Brown & Root Servs.*, 800 F. Supp. 2d 143, 160-61 (D.D.C. 2011) (granting motion to dismiss where parties do not dispute validity of express contract).  *But see* this Court's discussion in *Shtauber v. Gerson*, 2017 U.S. Dist. LEXIS 34252 at **18-19 (D.D.C. March 10, 2017) (declining to dismiss).  Here, not only does Yu affirm the validity of the Yahoo Settlement, she claims that the "benefit" it conferred on LRF and Wu were merely the benefits contained in the Yahoo Settlement itself. Nonetheless, given the applicability of California law on this issue of the effect of the Yahoo Settlement, the issue is somewhat moot.

[20] *See* LRF Brief at 33 n.29.

Moreover, Yu is not pleading unjust enrichment as an alternative theory; here, the alleged benefits Yu claims she conferred on LRF and Wu were conferred by the specific provisions of the Yahoo Settlement she signed relinquishing her claims.  AC, ¶¶ 35-36, 133.  Here, there is not merely the presence of an express contract; Yu alleges that her agreement to the express contract **was** the very benefit conferred by her to LRF and Wu.  *Id.*  The benefit allegedly conferred was created only by the express contract, which is the very reason for the general rule that an express contract cannot be avoided by recasting it in the guise of unjust enrichment.  As such, the alleged benefits conferred on Wu and LRF are defined solely by the Yahoo Settlement between the parties, and therefore Yu's unjust enrichment claim must also be dismissed.

      C.     <u>Plaintiffs' civil conspiracy claim also fails as a matter of law.</u>

The Opposition fails to address the fact that civil conspiracy is not an independent cause of action under District of Columbia law, but "depends on performance of some underlying tortious act."  *Halberstam v. Welch*, 705 F.2d 472, 479 (1983); *see also Waldon v. Covington*, 415 A.2d 1070, 1074 n.14 (D.C. 1980) ("There is no recognized independent tort action for civil conspiracy in the District of Columbia.").  There are no torts alleged in the Amended Complaint: merely contractual and quasi-contractual claims.  Because plaintiffs' underlying causes of action fail, their civil conspiracy claim must similarly be dismissed.

      **V.     <u>PLAINTIFFS' CLAIMS ARE ALL TIME-BARRED.</u>**

Finally, all of plaintiffs' claims against the Defendants fail because they are barred by the applicable statutes of limitations.  The allegations in the Complaint show indisputably that plaintiffs' alleged injuries and defendants' alleged wrongful acts occurred well before April 11, 2014 -- i.e., more than three years prior to the filing of this action.  The Yahoo Brief painstakingly details the acts that put plaintiffs on notice of their alleged claims, and the applicable law that bars each claim.  To avoid that bar, plaintiffs respond once again with their

invented "primary humanitarian purpose," claiming that purpose was terminated by the defendants in 2016, and that act creates a brand-new limitations period. The alleged act is that defendant Wu, shortly before his death, purportedly told one of the plaintiffs that LRF was not going to be making grants to Chinese dissidents in the future.[21] The "primary humanitarian purpose" cannot have been terminated in 2016, because it does not exist in the first place. See supra at 5-7.

Next, in a desperate attempt to avoid both the statute of limitations and Yu's inarguable release of these claims, the Opposition argues that the plaintiffs' claims do not even accrue until they have sustained a certain undefined quantum of damages. Opp. at 32-34. ("Plaintiff's alleged injuries are (1) "the depletion of Trust assets to *such an extent* that it constituted a breach of the [Trust's humanitarian] purpose…") *Id.* at 32 (emphasis in original). The Plaintiffs' theory that the statute of limitations does not begin to run until their alleged damages have reached some arbitrary height, which quantum only they can determine, is obviously contrary to black letter law. "[A] plaintiff need not sustain, or even identify, all damages for a cause of action to accrue, as 'any appreciable and actual harm flowing from [a defendant's] conduct is sufficient.'" *Bradford v. George Washington Univ.*, 2017 U.S. Dist. LEXIS 58590, *14 (D.D.C April 17, 2017), quoting *Beard v. Edmondson & Gallagher*, 790 A.2d 541, 546 (D.C. 2002). The Amended Complaint admits that the alleged injuries were first sustained in 2008, and thus are both barred by the statute of limitations and encompassed by Yu's 2011 Release. *See* AC, ¶ 61 et seq.; DAC, Dkt. 27-2.

---

[21] The Amended Complaint does not allege that LRF has stopped making humanitarian grants, just that Mr. Wu said this, shortly before his death, to one of the plaintiffs.

VI.     **THE COURT SHOULD NOT GRANT PLAINTIFFS LEAVE TO AMEND**

It is apparent from their two failed attempts that Plaintiffs cannot cure the defects of their complaint, and therefore the Court should deny them leave to amend again.  Yu's Release of the defendants in 2011 is comprehensive.  She cannot revoke the Release, six years later.  Nor can she partially rescind the Yahoo Settlement, ten years after signing it, and having repeatedly and undisputedly affirmed its validity, to excise those provisions that defeat her claim, while retaining all benefits of the contract in her favor.  The other co-plaintiffs cannot create standing for themselves where, as a matter of law, it does not exist.  Nor can the plaintiffs' claims escape the bar of the statutes of limitations.  The Plaintiffs have twice filed complaints that fail to state a claim, and should not be afforded a third try.


**CONCLUSION**

For all of the foregoing reasons, the Court should grant LRF's Motion and dismiss plaintiffs' Amended Complaint in its entirety without leave to amend, to award LRF its attorneys' fees and costs against plaintiff Ling Yu, and to grant such other relief as to the Court seems proper.

Respectfully submitted,


*/s/  David I. Bledsoe*--------------------

David I. Bledsoe
DC Bar No. 422596
600 Cameron Street
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)
bledsoelaw@earthlink.net


*/s/  George E. Kostel*-------------------

George E. Kostel
DC Bar No. 1000015
Email: georgekostel@impresalegal.com
Jason P. Matechak
DC Bar No. 461194
Email: jasonmatechak@impresalegal.com
Impresa Legal Group
3033 Wilson Boulevard
Suite 700
Arlington, VA 22201
Telephone: (703) 842-0660
Facsimile: (703) 684-1851


*Counsel for the Laogai Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 28, 2017, I caused the foregoing document to be electronically filed with the clerk of the United States District Court for the District of Columbia using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the electronic Mail Notice List.

<u>/s/ David I. Bledsoe</u>---------------------

David I. Bledsoe
DC Bar No. 422596
600 Cameron Street
Suite 203
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)
bledsoelaw@earthlink.net