**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HE DEPU, *et al*., | Case No. 1:17-cv-00635-JDB |
| Plaintiffs, | Judge John D. Bates |
| v. | **ORAL HEARING REQUESTED** |
| YAHOO! INC., *et al.*, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**
**YAHOO! INC., RONALD BELL, AND MICHAEL CALLAHAN'S**
**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.   THE *WANG* SETTLEMENT DID NOT CREATE A CHARITABLE TRUST. .............. 2

    A.    The *Wang* Settlement Confirms that Plaintiffs Are Not Beneficiaries of that Agreement. ....................................................................................... 4

    B.    The Express Terms of the *Wang* Settlement and Charitable Trust Law First Principles Confirm that Yahoo Did Not Intend to Create a Charitable Trust.. ....................................................................................... 4

III.  EVEN IF THE *WANG* SETTLEMENT CREATED A CHARITABLE TRUST, PLAINTIFFS LACK STANDING. ......................................................................... 9

    A.    There Are Too "Many" Alleged Beneficiaries for Plaintiffs to Have a "Special Interest" in the Fund. ....................................................................... 9

    B.    Plaintiffs Lack Standing Even if They Are Challenging Alleged "Fundamental Violation[s]" of the Fund's Alleged Purposes. .......................... 13

    C.    Plaintiffs Lack Article III Standing.................................................................. 14

IV.   PLAINTIFFS FAIL TO ADEQUATELY SHOW THE YAHOO DEFENDANTS BREACHED THE PURPORTED CHARITABLE TRUST OR THE *WANG* SETTLEMENT. ................................................................................................. 15

    A.    Plaintiffs Fail to Allege Any Conduct Inconsistent with the *Wang* Settlement Agreement.................................................................................... 15

    B.    Yu Ling Similarly Fails To Identify Any Provision of the *Wang* Settlement that the Yahoo Defendants Breached.............................................. 16

V.    PLAINTIFFS' STATUTE OF LIMITATIONS ARGUMENTS ALSO FAIL.. ............. 18

VI.   CONCLUSION................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alco Gravure, Inc. v. Knapp Found.*,
  64 N.Y.2d 458 (N.Y. 1985) ........................................................................... 13, 14

*Am. Dental Ass 'n v. Cigna Corp.*,
  605 F.3d 1283 (11th Cir. 2010) ........................................................................ 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................... 6

*Athey v. U.S.*,
  132 Fed. Cl. 683 (2017) ................................................................................... 3

*Beard v. Edmondson & Gallagher*,
  790 A.2d 541 (D.C. 2002) ............................................................................... 19

*Bradford v. George Washington Univ.*,
  2017 U.S. Dist. LEXIS 58590 (D.D.C April 17, 2017) .................................... 19

*Butterworth v. Keeler*,
  219 N.Y. 446 (1917) ........................................................................................ 7

*Duggan v. Keto*,
  554 A.2d 1126 (1989) ........................................................................... 1, 3, 4, 5

*Federation for World Peace v. Hyun Jin Moon*,
  129 A.3d 234 (D.C. 2015) .......................................................................... 11, 12

*Fort Lincoln Civic Assoc. v. Fort Lincoln New Town Corp.*,
  944 A.2d 1055 (D.C. 2007) ............................................................................. 5, 6

*Friendsview Manor v. State Tax Comm'n*,
  247 Or. 94 (1966) ............................................................................................ 8

*Gray v. St. Matthews Cathedral Endowment Fund*,
  544 S.W.2d 488 (Tex. Ct. Civ. App. 1976) .................................................... 10

*Grigson v. Harding*,
  154 Me. 146 (1958) .................................................................................. 4, 5, 7

*Hooker v. Edes Home*,
  579 A.2d 608 (D.C. 1990) .......................................................................... 12, 14

*In re Ames Dep't Stores, Inc.*,
  144 F. App'x 900 (2d Cir. 2005) ..................................................................... 8

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Century Aluminum Co. Sec. Litig.*,
   704 F.3d 1119 (9th Cir. 2013), *as amended* 729 F.3d 1104 (9th Cir. 2013) .............................. 6

*In re Contempt Finding in U.S. v. Steven*s,
   663 F.3d 1270 n.2 (D.C. Cir. 2011) ................................................................................... 1

*In re Diet Drugs Prods. Liab. Litig.*,
   2001 WL 283163 (E.D. Pa. Mar. 21, 2001) ...................................................................... 3

*In re Lord's Inc.*,
   356 F.2d 456 (7th Cir. 1965) ........................................................................................... 8

*Kaempe v. Myers*,
   367 F.3d 958 (D.C. Cir. 2004) .................................................................................... 1, 15

*Marsh v. Frost Nat'l Bank,*
   129 S.W.3d 174 (Tex. Ct. App. 2004) .............................................................................. 7

*Massey v. D.C.*,
   2015 WL 9310126 (D.C. Cir. Dec. 9, 2015) .................................................................... 6

*Meima v. Broemmel,*
   117 P.3d 429 (Wyo. 2005) ............................................................................................... 8

*Morrow v. U.S.*,
   723 F. Supp. 2d 71 (D.D.C. 2010) ................................................................................... 6

*Pagtakhan-So v. Cueto*,
   664 Fed. App'x 394 (6th Cir. 2016) ............................................................................... 14

*Peterson v. Fairview Health Servs.*,
   2005 WL 226168 (D. Minn. Feb. 1, 2005) ...................................................................... 5

*Robert Schalkenbach Found. v. Lincoln Found., Inc.*,
   208 Ariz. 176 (2004) ...................................................................................................... 10

*Sabeta v. Baptist Hops. of Miami, Inc.*,
   410 F. Supp. 2d 1224 (S.D. Fla. 2005) ............................................................................ 7

*Sandza v. Barclays Bank PLC*,
   151 F. Supp. 3d 94, 112 (D.D.C. 2015) ......................................................................... 20

*Washington Hosp. Center Health Sys. v. Riggs Nat'l Bank of Washington, D.C.*,
   575 A.2d 719 (1990) ........................................................................................................ 5

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Williams Enters., Inc. v. Sherman R. Smoot Co.*,
938 F.2d 230 (D.C. Cir. 1991) ................................................................. 1

*Williams v. Board of Trustees*,
589 A.2d 901 (1991) ............................................................................. 13

*Williamson v. Williamson*,
2013 WL 12121985, at *6 (Nov. 3, 2013) ................................................ 20

**STATUTES**

D.C. Code § 19-1304.05 ............................................................................. 7

D.C. Code § 19-1310.06 ........................................................................... 15

D.D.C. L. Civ. R. 7(e) ................................................................................. 1

**OTHER AUTHORITIES**

AMY HESS, GEORGE G. BOGERT & GEORGE T. BOGERT, THE LAW OF TRUSTS AND TRUSTEES (3d ed. 2017) ................................................................................... *passim*

Central Intelligence Agency, World Fact Book - China,
*available at* https://www.cia.gov/library /publications/the-world-factbook/geos/ch.html ....... 12

RESTATEMENT (SECOND) OF TRUSTS ......................................................... 8, 9

RESTATEMENT (THIRD) OF TRUSTS ............................................................... 2

U.S. Census, Washington D.C. Quick Facts,
*available at* https://www.census.gov/quickfacts/DC ................................. 12

UNIFORM TRUST ACT § 1005 (2010) ......................................................... 20

## I.    INTRODUCTION

Plaintiffs' 45-page brief—which includes *60 footnotes* of over 8,500 words—sows confusion, seeking to complicate a simple case.[1]  Given the length of plaintiffs' brief and the irrelevance of most arguments it advances, the Yahoo Defendants will respond only to the critical issues that plaintiffs raise—none of which saves their complaint from Rule 12 dismissal.

To begin, plaintiffs' brief confirms that their breach of trust claim depends on the false notion that the *Wang v. Yahoo* settlement—to which plaintiffs (save Yu Ling) are not parties—created a "charitable trust," of which plaintiffs are the beneficiaries.  The problem for plaintiffs is that the *Wang* settlement is silent about charitable trusts and, most critically, *expressly states that it creates no third-party beneficiaries.*  It is well-established that without such a beneficiary, no trust exists—private, charitable, or otherwise.  *See, e.g.*, *Duggan v. Keto*, 554 A.2d 1126, 1133 (D.C. 1989).  Plaintiff Yu Ling's breach of settlement claim fares no better.  She ignores the *actual* language of the *Wang* settlement, and instead attempts to amend it through her complaint allegations—a practice that this Court and others rightly reject.  *See, e.g.*, *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) (a court need not "accept as true the complaint's factual allegations insofar as they contradict … matters subject to judicial notice").

In light of these and other deficiencies, plaintiffs' complaint must be dismissed, with prejudice, for four independent reasons.  *First*, plaintiffs fail to allege that the *Wang* settlement created a charitable trust—a fact confirmed by the agreement's statement that it has no "third-party beneficiaries."  Dkt. 29-5 at 119.  *Second*, plaintiffs fail to plausibly allege that they have

---

[1] This copious use of footnotes flouts the Court's page-limits, *see* D.D.C. L. Civ. R. 7(e); *see also Williams Enterprises, Inc. v. Sherman R. Smoot Co.*, 938 F.2d 230, 238-39 (D.C. Cir. 1991) (sanctioning counsel who "[manipulated] footnotes to evade specific page limits"), and waives various arguments, including plaintiffs' supposed narrow opposition to the Yahoo Defendants' request for judicial notice (Dkt. 29-2), *see In re Contempt Finding in U.S. v. Steven*s, 663 F.3d 1270, 1275 n.2 (D.C. Cir. 2011) (party waived argument made "only in a footnote").

standing since they concede that there are "many" potential beneficiaries of the trust they describe, FAC ¶ 28—a class that numbers, at least, in the tens of thousands. *Third*, plaintiffs do not plausibly allege any breach of settlement or trust, since the conduct they allege here comports with the *Wang* settlement. *Fourth*, the statute of limitations bars plaintiffs' claims against the Yahoo Defendants; indeed, plaintiffs' efforts to avoid this defense only further confirm that dismissal is required.

Each of these four independent grounds to dismiss this case is addressed in turn below.

## II.     THE *WANG* SETTLEMENT DID NOT CREATE A CHARITABLE TRUST.

Plaintiffs' trust-related claims against the Yahoo Defendants—their First, Fourth, and Fifth causes of action, FAC ¶¶ 125-131, 137-141—all fail because they do not, and cannot, plausibly allege that the *Wang* settlement created a charitable trust.  In their motion to dismiss, the Yahoo Defendants relied on documents referenced in the FAC to explain that the only trust at issue here is the Yahoo Irrevocable Human Rights Trust ("Trust").  *See* Dkt. 29-1; Dkt. 29-4 at 67 *et seq.*  Plaintiffs allege no violation of the Trust, and confirm in their opposition that it is not the subject of this lawsuit. *E.g.*, Dkt. 32 at 19 n.22.  Instead, they rest their breach of trust claims—and *their entire lawsuit*—on the fallacy that Yahoo created a *separate* charitable trust when it reached the *Wang* settlement in 2007.  The LRF, LHRO, and Wu Estate explained in their motions to dismiss why plaintiffs' charitable trust arguments are infirm, and the Yahoo Defendants join those arguments. *See* Dkt. 27-1 at 2-3, 5, 7; Dkt. 28-1 at 2; Dkt. 30-1 at 9-10. Plaintiffs' opposition further confirms that their reading of the *Wang* settlement is untenable and that their breach of trust claims must be dismissed.

Unlike private trusts, charitable trusts "are designed to accomplish objects that are beneficial to the community."  RESTATEMENT (THIRD) OF TRUSTS § 28 cmt. a. (2003) ("RESTATEMENT"); AMY HESS, GEORGE G. BOGERT & GEORGE T. BOGERT, THE LAW OF TRUSTS

AND TRUSTEES § 361 (3d ed. 2017) ("BOGERT").  Plaintiffs assert that the *Wang* settlement created a charitable trust—even though the settlement never mentions those words, or even purports to be a trust document—to avoid Yahoo Defendants' showing, made in their moving papers, that plaintiffs lack standing to sue under the *Wang* settlement—under both contract law and traditional trust law.  *See* Dkt. 18-1 at 9-15; Dkt. 29-1 at 10-16.

Plaintiffs' effort to fit their claims into the box that is charitable trust law fails for many reasons.  As they concede, to state such a claim, they must show that there is (a) "a trustee, who holds the trust property and is subject to equitable duties to deal with it for the benefit of another;" (b) "[b]eneficiar[ies], to whom the trustee owes such duties;" (c) "the trust property, which is held by the trustee for the beneficiary;" and (d) an "intention [by the settlor] to create a trust, which may be manifested by 'written or spoken language or by conduct.'"  *Duggan*, 554 A.2d at 1133.  Plaintiffs are right that a settlement agreement can create a trust, Dkt. 32 at 11, but it only does so if the agreement satisfies these criteria.  Indeed, the cases that plaintiffs cite for this proposition involve *express language in a settlement agreement* creating such trusts, *see id*. (citing *Athey v. U.S*., 132 Fed. Cl. 683, 687 (2017) (settlement agreement expressly called for creation of trust); *In re Diet Drugs Prods. Liab. Litig*., 2001 WL 283163, at *1 (E.D. Pa. Mar. 21, 2001) (settlement expressly required creation of "Trust"))—language which, of course, is conspicuously lacking here.

Thus, as elaborated on below, plaintiffs fail the very "charitable trust" test they invoke.  They fail to allege (because they cannot plausibly allege) either: (a) that they are beneficiaries of the *Wang* settlement, or (b) that Yahoo intended to create a charitable trust, as opposed to merely settling the ongoing *Wang* litigation.  Each of these failure is an independent bar to plaintiffs' three breach of trust claims.

3

### A.    The *Wang* Settlement Confirms that Plaintiffs Are Not Beneficiaries of that Agreement.

The *Wang* settlement is a *contract* between identified parties—Yahoo, Yahoo Hong Kong, the plaintiffs in *Wang* (Wang Xiaoning, Shi Tao, Yu Ling, and Gao Qinsheng), Harry Wu, and the Laogai Research Foundation—to settle the *Wang* litigation.  Dkt. 29-5 at 111.  The "beneficiary" plaintiffs concede they are not a party to the *Wang* settlement and instead say they are "charitable beneficiaries" of it.  Dkt. 32 at 10.  Invoking these two words is a mere legal conclusion that does not satisfy the *Iqbal* pleading test.  *Infra* at 6-7.  The words "charitable trust," "charitable beneficiaries," "charity," or even any third-party beneficiary are never mentioned or identified in the *Wang* settlement.  To the contrary, the agreement expressly rejects any such notion:  "*This Agreement shall bind and inure to the benefit <u>only of, and be enforceable only by,</u> the Parties hereto* and their respective successors and assigns…. <u>*There are no express or implied third party beneficiaries of this Agreement.*</u>"  *Id.* at 119 (emphases added).

Plaintiffs had the *Wang* settlement before filing the FAC, Dkt. 18-5, and they did not then and cannot now explain how they are charitable trust beneficiaries of an agreement that expressly disclaims any such beneficiaries.  This shortcoming alone disposes of their trust-related claims and requires dismissal.  *E.g.*, *Duggan*, 554 A.2d at 1133.

### B.    The Express Terms of the *Wang* Settlement and Charitable Trust Law First Principles Confirm that Yahoo Did Not Intend to Create a Charitable Trust.

Even if plaintiffs could overcome the *Wang* settlement's express disclaimer of third-party beneficiaries, plaintiffs still fail to state a claim for breach of trust because they do not plausibly allege an intent by Yahoo, the purported settlor, to establish a charitable trust.  It is well-established that courts may not "invent" a charitable "intention where none exists." *Grigson v. Harding*, 154 Me. 146, 151 (1958); *see* BOGERT, *supra*, § 323 ("The conduct of the alleged settlor of the charitable trust must show an intent to create a trust and not some similar

relationship or some other effect.").  The D.C. Court of Appeals recognizes that intent "should be clearly manifested" by the settlor, *Duggan*, 554 A.2d at 1136, yet plaintiffs do not allege any intention—let alone a "clear[]"one—on Yahoo's part to create a trust, for at least three reasons.

*First*, the *Wang* settlement shows no intent to create such a trust.  *See Washington Hosp. Center Health Sys. v. Riggs Nat'l Bank of Washington, D.C.*, 575 A.2d 719, 721 (1990) (a court should look to the "four corners" of the instrument to find intent, if any).  Instead, it confirms that Yahoo's "desire" was "to resolve [its] disputes, and all claims, causes of action and controversies" with plaintiffs in the *Wang* lawsuit, "without further expenditure of time and expense on litigation."  Dkt. 29-5 at 111.

The *Wang* settlement did create the Yahoo Human Rights Fund ("Fund"), but the mere conveyance of funds is, of course, insufficient to establish a charitable trust (or any other kind of trust).  *See* BOGERT, *supra*, § 324 ("Sometimes a person seeks to confer benefits on society by means other than through the use of a trust.").  Indeed, plaintiffs acknowledge that the Fund has never been referred to, either in the settlement or in any public statements by Yahoo, as a trust. *See* Dkt. 32 at 2 (noting that the Fund has "variously [been] referred to by Yahoo and others as the 'Yahoo Human Rights Fund,' the 'Human Rights Fund,' the 'Yahoo Fund,' the 'Fund,' and the 'YHRF").  The *Wang* settlement itself also disclaims any "third-party beneficiaries" and states that it "shall bind and inure to the benefit only of, and be enforceable only by the Parties" to the agreement.  This language refutes any intention on Yahoo's part to create a charitable trust and confirms dismissal is appropriate.  *See* Dkt. 28-5 at 119; *Peterson v. Fairview Health Servs.*, 2005 WL 226168, at *7 (D. Minn. Feb. 1, 2005) (dismissing breach of trust claim with prejudice because "charitable trusts require specific language demonstrating intent to create trust" and no such intent present); *Fort Lincoln Civic Assoc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055,

1065-66, 1070 (D.C. 2007) (dismissing breach of contract and trust claims brought by third parties where contract showed no intent to confer third-party beneficiary status to them).

*Second*, while the FAC makes the conclusory allegation that a charitable trust was created in 2007, it fails to allege any intention by Yahoo to create such a trust, much less plausible support for this allegation. Such conclusory allegations do not survive a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."); *Massey v. D.C.*, 2015 WL 9310126, at \*1 (D.C. Cir. Dec. 9, 2015) ("sparse, conclusory, and unsupported allegations [a]re inadequate to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Nor do plaintiffs rule out the obvious *non*-liability creating reasons for the Yahoo Defendants' conduct—something plaintiffs must do to pass the *Iqbal* test. *E.g., Morrow v. U.S.*, 723 F. Supp. 2d 71, 7 (D.D.C. 2010) ("Where 'more likely explanations' than those alleged by the plaintiff exist, the Court should be wary of finding that the plaintiff's allegations have sufficiently nudged the claims into the realm of plausibility."); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1295 (11th Cir. 2010) (dismissing plaintiffs' claim in light of lawful, logical, "alternative explanation[s] for each" act)*; In re Century Aluminum Co. Sec. Litig.*, 704 F.3d 1119, 1122 (9th Cir. 2013), *as amended* 729 F.3d 1104 (9th Cir. 2013) ("When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation[.]"). Having settled the *Wang* case, the Yahoo Defendants had good reason *not* to create a charitable trust or thousands of third-party beneficiaries who could sue it again and again under plaintiffs' theory of the case. Instead, the Yahoo Defendants looked for repose and found it in their 2007 settlement, which generously contributed to humanitarian causes but did not create a charitable trust or invite the sort of second-guessing litigation that plaintiffs' lawsuit represents. *Cf., e.g.,*

*Sabeta v. Baptist Hops. of Miami, Inc.*, 410 F. Supp. 2d 1224, 1235 (S.D. Fla. 2005) (dismissing claim because "charitable trusts require language demonstrating a specific intent to create the trust"; "there is no allegation that such specific language anywhere exists").

*Third*, the creation of the Fund establishes no intent to create a charitable trust.  Under well-established trust-law, a charitable trust must have *only charitable purposes*, and may not provide any benefit to the settlor.  *See* BOGERT, *supra*, § 364 ("The trust income *must be* distributable *solely* for the public benefit, and *not partly or wholly* for the purpose of advancing the financial condition of the settlor") (emphasis added); *id*. (quoting *Butterworth v. Keeler*, 219 N.Y. 446, 449 (1917) (Cardozo, J.) ("It is not charity to aid a business enterprise.")); D.C. Code § 19-1304.05 ("A charitable trust may be created for the relief of poverty, the advancement of education or religion, the promotion of health, governmental or municipal purposes, or other purposes the achievement of which is beneficial to the community.").  Where a purported trust has both charitable and non-charitable aims, *no charitable trust is created*.  *See Grigson*, 154 Me. at 151 (document seeking to create a charitable trust "must manifest [an] intention to limit the" trust's purposes "to charitable objects" only or charitable trust "will fail"); BOGERT, *supra*, § 372 (where a trust has "a clearly charitable purpose" but "the trustee is also directed or permitted to apply trust funds for the benefit of noncharitable causes," no charitable trust is created).

Whether a particular use is charitable or non-charitable is a question of law for the Court, *see, e.g., Marsh v. Frost Nat'l Bank,* 129 S.W.3d 174, 177 (Tex. Ct. App. 2004), and here, the Fund plainly had both charitable and non-charitable purposes.  By its terms, the Fund was created: "(a) to provide humanitarian and legal assistance primarily to persons in or from the [PRC] who have been imprisoned for expressing their views through Yahoo or another medium; (b) *to resolve claims* primarily by such persons … *against the Yahoo Entities or any Yahoo subsidiary or affiliate*; and (c) for payment of [the LRF's] operating expenses and [the LRF's]

7

education work…." Dkt. 29-5 at 113.  Even if the provision of humanitarian and legal assistance constitutes a charitable purpose, plaintiffs themselves challenge the payment of LRF's operating expenses as improper and benefitting a private party, *see* FAC at 44, and the payment of money to resolve legal claims *against Yahoo* plainly benefits a private company, *not* the public at large. "A trust is not a charitable trust if the property or the income therefrom is to be devoted to a private use," RESTATEMENT (SECOND) OF TRUSTS § 376 (1959) ("RESTATEMENT (SECOND)"), and here it is undisputed that was partly the case.  *See Friendsview Manor v. State Tax Comm'n*, 247 Or. 94, 105 (1966) (no charitable trust created where donors "were helping themselves" by contributing funds to nursing home); BOGERT, *supra*, § 364.

Plaintiffs nevertheless contend that Yahoo intended to create a "charitable trust" because the *Wang* settlement states that the $17.3 million was to be paid "in [t]rust" to the LRF.  Dkt. 32-1 at 10; Dkt. 29-5 at 112.  They are mistaken, as the designated uses of the proceeds (to include paying off legal claims against Yahoo and the payments for LRF operating expenses) confirm. Moreover, the use of the words "in trust" does not imply an intent to establish a charitable trust, particularly where, as here, a settlement expressly disavows such a purpose.  *See Meima v. Broemmel,* 117 P.3d 429, 444 (Wyo. 2005) (no trust established where parties used the term "in trust" in document); *In re Lord's Inc.*, 356 F.2d 456, 458 (7th Cir. 1965) ("[I]s the situation materially changed by the mere use of the term 'trust' in one article of a long agreement…? There is nothing magical in the word 'trust' standing alone."); *In re Ames Dep't Stores, Inc*., 144 F. App'x 900, 901-02 (2d Cir. 2005) ("[A]dding the words 'trust' or 'agency' to a contract does not, without more, convert [the agreement] into a trust or agency relationship.").

For these reasons, the Court can and should honor the clear, express, and carefully negotiated language of the *Wang* settlement, and dismiss plaintiffs' unsupportable charitable trust theory—and their First, Fourth, and Fifth causes of action.

**III.    EVEN IF THE *WANG* SETTLEMENT CREATED A CHARITABLE TRUST, PLAINTIFFS LACK STANDING.**

As discussed, plaintiffs cannot plausibly allege that the *Wang* settlement created a charitable trust for their benefit.  Even if they could, they lack standing to sue.  In their brief, plaintiffs do not challenge the long-established rule that "the mere fact that a person is a possible beneficiary is…[in]sufficient to entitle him to maintain a suit for the enforcement of a charitable trust."  RESTATEMENT (SECOND), *supra*, § 391; *see* Dkt. 29-1 at 12; Dkt. 32 at 17 n.19.  Nor do they grapple with the *Wang* settlement's limitation of enforcement to "the [p]arties … and their respective successors and assigns."  Dkt. 29-5 at 119.  Instead, plaintiffs claim to have standing under an exception to the general rule—based on an alleged "special interest" to enforce the *Wang* settlement, or because they challenge a "fundamental" breach.  Both arguments fail.

**A.    There Are Too "Many" Alleged Beneficiaries for Plaintiffs to Have a "Special Interest" in the Fund.**

As the Yahoo Defendants explained, Dkt. 29-1 at 14, there are tens, if not hundreds, of thousands of potential beneficiaries under plaintiffs' capacious theory of standing.  *See* Dkt. 29-8 at 146 (China "has put together the world's most extensive and comprehensive regulatory system for Internet administration and has perfected a 24-hour, real-time, situational censorship mechanism").  Plaintiffs assert that they are part of a "sharply defined" group that is "limited in number," Dkt. 32 at 17; FAC ¶ 119, but their own FAC refutes that claim.

The FAC alleges that, "[a]s a result" of Yahoo "turn[ing] over user information to the [PRC Government] … *many* Yahoo users [had been] imprisoned based on evidence provided by Yahoo," as of the time the *Wang* lawsuit was filed in 2007.  FAC ¶ 28 (emphasis added).  The FAC also makes clear that plaintiffs' proposed beneficiary class includes not only those actually imprisoned before 2007, but also anyone "threatened with prosecution or imprisonment" for expressing themselves online in the past two decades.  Dkt. 29-5 at 113; FAC ¶¶ 50 (whether an

applicant is imprisoned is only relevant to "[t]he amount of assistance" granted and does not

impact whether they qualify as beneficiaries).  Compounding their standing problem, plaintiffs

assert that those with standing include not only Yahoo users, but also users of *any* "online

platform," Dkt. 29-1 at 14, including (but certainly not limited to) Google, Hotmail, Facebook,

WeChat, WhatsApp, Sina.com, QQ, Weibo, and Youku.  Indeed, the Congressional hearings that

led to the *Wang* settlement included Google, Microsoft, and Cisco, Dkt. 29-10 at 164, and

plaintiffs make clear that those entitled to relief under their case theory include these users as

well.  Dkt. 29-5 at 113 (Fund assets may be used "to provide humanitarian and legal assistance

primarily to persons in or from the [PRC] who have been imprisoned for expressing their views

through Yahoo *or another medium*.") (emphasis added); *see* FAC ¶ 119.  Expanding the scope of

this class even further, the *Wang* settlement does not even limit awards to those in the PRC—it

says they "primarily" should come from China, but that is not exclusive.  *Supra* at 7.

Under plaintiffs' view, "many" claimants already qualified as potential beneficiaries in

2007.  FAC ¶ 28.  That cryptic "many" number is exponentially larger today—some 10 years

later—and the beneficiary class plaintiffs identify is not a "small, easily identifiable group," as

the law requires, *see* Dkt. 32 at 19; *Gray v. St. Matthews Cathedral Endowment Fund*, 544

S.W.2d 488, 497 (Tex. Ct. Civ. App. 1976); *Robert Schalkenbach Found. v. Lincoln Found.,*

*Inc.*, 208 Ariz. 176, 183 (2004).  Rather, it is tens of thousands of people—at a minimum—who

could sue at any time.

Plaintiffs contend that their class is "sharply defined" and "limited in number" because it

is "not easily entered" and there is "no difficulty in identifying who falls within the class."  Dkt.

32 at 19.  Yet plaintiffs' proposed beneficiary class leaves many questions unanswered, *e.g.*:

- What constitutes being "threatened with prosecution or imprisonment" for expressing
  oneself online?

- How does one confirm that a proposed beneficiary was threatened, given that China does not publicly release judicial records, much less police records?

- How would the Yahoo Defendants ever be able to question whether a particular plaintiff qualifies under plaintiffs' theory, given that China does not permit foreign attorneys to depose witnesses? *See* Dkt. 29-1 at 28 n.11.

- What about other countries and online platforms?

Plaintiffs fail to cite a single case in which a court conferred standing upon a group as large as the one they contemplate here, and the cases they do cite involve smaller, more "sharply defined" and "limited" classes. In *Federation for World Peace v. Hyun Jin Moon*, for example, the court reaffirmed the traditional rule that "only … the state Attorney General[] has standing to bring an action to enforce the terms of" a charitable trust because of the "impossibility of establishing a distinct justiciable interest on the part of a member of a *large and constantly shifting [beneficiary] class*." 129 A.3d 234, 244 (D.C. 2015) (emphasis added). There, the court found standing for a select few plaintiffs because of their extraordinarily close involvement with the charitable corporation over three decades:

- Two plaintiffs were "ousted former directors" of the charity, and therefore had an obligation to "prevent a co-[director] from committing a serious breach of trust." *Id.* at 244 n.16.

- The remaining three plaintiffs were "entities with close interests in [the charity's] operation[s]." *Id.* at 238 n.2. One entity was a "major beneficiary … for three decades," and another alleged it was a "co-settlor" of the purported trust. *Id.* at 245.

Plaintiffs allege no "special" connection here that is remotely similar.

Plaintiffs fare no better under *Hooker*, which conferred standing upon female, indigent, "aged," widowed residents of Georgetown who were in "good health." *Hooker v. Edes Home*, 579 A.2d 608, 615 (D.C. 1990). Plaintiffs misread *Hooker*, and argue it supports their view that so long as they have an interest in the Fund "distinguishable from that of the public at large," they have a "special interest" that confers standing. Not so. *Hooker* confirms that a beneficiary class must be "small and distinct," *id*. at 614, and plaintiffs' proposed class is neither. Indeed, whereas *Hooker* was limited to qualifying individuals of a *single* neighborhood in a *single* U.S. city with a population of less than 700,000, plaintiffs' proposed group includes individuals scattered across the world's most populous country, with nearly 1.4 billion people—a population more than *20,000%* larger than Washington, D.C. *See* U.S. Census, Washington D.C. Quick Facts, available at https://www.census.gov/quickfacts/DC; Central Intelligence Agency, World Fact Book - China, available at https://www.cia.gov/library /publications/the-world-factbook/geos/ch.html. *Hooker* also held that the beneficiary class was "limited" because "the number of applications from the group of beneficiaries … ha[d] decreased significantly," and the home had "difficulty … finding" qualifying individuals. *Hooker*, 579 A.2d at 615. Here, there are (according to plaintiffs) "many" qualifying individuals, and the class grows larger every year as the PRC (and other governments) target more people for expressing themselves online. *See* Dkt. 29-1 at 14-15 (judicially noticeable government records documenting such censorship); *cf. Alco Gravure, Inc. v. Knapp Found.*, 64 N.Y.2d 458, 466 (N.Y. 1985) (standing conferred where beneficiaries limited to employees of one individual's corporations).

Plaintiffs also claim that *Williams v. Board of Trustees* supports their standing arguments, but that case demonstrates plaintiffs' error. The *Williams* plaintiffs sued to stop a pastor and board of trustees from selling the Mount Jezreel Baptist Church building. 589 A.2d 901, 903 (D.C. 1991). They claimed to have standing because they "regular[ly] … attend[ed] and

financial[ly] contribut[ed]" to the church, even though they were no longer official members. *Id.* at 909. The court *rejected* standing based on "traditional notions of standing" to enforce a charitable trust. *Id.* Although current members had standing to sue, a class comprised of those who regularly attended and contributed financially was too "uncertain and limitless" to confer standing. *Id.* Here, plaintiffs' proposed class—thousands (or more) known or unknown, current or former political prisoners (or those threatened with imprisonment) who have expressed themselves since the dawn of the Internet on any Internet platforms—is far more uncertain and expansive than the class of regular attendees and dues-payers at the single church in *Williams*.

In short, this case must be dismissed under *Williams* and well-established trust law principles. Extending standing to plaintiffs here, and granting them their requested relief, would subject the Yahoo Defendants to repeated, "vexatious" litigation that the limitations on charitable trust standing aim to avoid—particularly when a new round of purported beneficiaries could seriatim challenge the Fund's spending decisions and philanthropic priorities. *See id.*

## B. Plaintiffs Lack Standing Even if They Are Challenging Alleged "Fundamental Violation[s]" of the Fund's Alleged Purposes.

Despite the purported large beneficiary class, plaintiffs claim they have standing because they "bring this suit not to challenge relative trivialities committed to the discretion of the trustees, but to challenge the fundamental violation and outright termination of the [Fund's] humanitarian purpose." Dkt. 32 at 20. This argument misses the mark, too. The FAC is replete with allegations regarding the "ongoing administration" of the purported charitable trust, including decisions regarding employee salaries, real estate purchases, and administrative and legal expenses. *See* FAC ¶¶ 60, 62, 64, 67- 69; *see Alco Gravure*, 64 N.Y.2d at 466.

Regardless, even if plaintiffs do challenge a "fundamental violation" of the Fund, they still must show that they have a "special interest" in it—which, as discussed above, they do not.

As the D.C. Court of Appeals explained in *Hooker*, even when litigants challenge "fundamental" changes to a charitable trust, those litigants must still be members of a "potential [class of] beneficiaries [that] is *small and distinct*." 579 A.2d at 614. Plaintiffs cannot plausibly allege that here, and their breach of trust claims should be dismissed for this additional reason. Moreover, as noted in Part V, *infra*, the Yahoo Defendants had nothing to do with the alleged "fundamental" decision that plaintiffs now say that challenge.

### C.    Plaintiffs Lack Article III Standing.

Plaintiffs also fail to articulate how they have Article III standing. Even if their requested relief were granted, plaintiffs do not explain how that would redress any cognizable injury. While some allege they have *received* compensation from the Fund, none alleges that they submitted an application and were denied—or are otherwise entitled to an award. Requesting that the Fund be refilled for the benefit of unspecified potential future applicants is insufficient. Even if there is "something noble in the plaintiffs' attempt to ensure that a charitable foundation is being administered in good faith while asking nothing for themselves, … Article III has no exception for well-meaning lawsuits, and asking for nothing is a sure way to get nothing in a federal court." *Pagtakhan-So v. Cueto*, 663 Fed. App'x 394, 399 (6th Cir. 2016).

### IV.    PLAINTIFFS FAIL TO ADEQUATELY SHOW THE YAHOO DEFENDANTS BREACHED THE PURPORTED CHARITABLE TRUST OR THE *WANG* SETTLEMENT.

Plaintiffs' breach of trust claim and Yu Ling's breach of settlement claim likewise rely on what plaintiffs wish the *Wang* settlement said. Under the actual *Wang* settlement, those claims fail. *See Kaempe*, 367 F.3d at 963 (the court need not "accept as true the complaint's factual allegations insofar as they contradict … matters subject to judicial notice").

A.    **Plaintiffs Fail to Allege Any Conduct Inconsistent with the *Wang* Settlement Agreement.**

Plaintiffs' opposition claims they have "plausibly" alleged a breach of trust because they allege 4% of the Fund was spent on the Fund's purported "humanitarian purpose."  Dkt. 32 at 15; FAC ¶¶ 59.  That claim mischaracterizes the *Wang* settlement.

Plaintiffs concede that the *Wang* settlement authorizes expenditures beyond direct "humanitarian and legal assistance" to PRC nationals imprisoned for expressing themselves online, including on administrative expenses.  *See* Dkt. 32 at 3; FAC ¶ 44.  They nevertheless claim administrative expenses were inconsistent with the Fund's "humanitarian purpose."  Dkt. 32 at 15.  The words "humanitarian purpose," however, appear nowhere in the *Wang* settlement agreement.  Rather, the *Wang* settlement permits the very administrative expenditures plaintiffs say it prohibits.  *See* Dkt. 29-5 at 113; D.C. Code § 19-1310.06 ("A trustee who acts in reasonable reliance on the terms of the trust as expressed in the trust instrument is not liable to a beneficiary for a breach of trust to the extent the breach resulted from the reliance.").

Plaintiffs attempt to plead around this plain language by claiming that Yahoo somehow adopted a "humanitarian purpose" obligation through "numerous public and private statements."  Dkt. 32 at 2.  But plaintiffs do not explain how their selective quotations operate to amend the *Wang* settlement itself, which by its terms refutes any such theory and thereby disproves plaintiffs' claims.  Dkt. 29-5 at 117 (noting that the *Wang* settlement agreement "constitutes the entire agreement and understanding between the Parties"); *id.* at 119 (noting that agreement "may be amended … only by written instrument executed by each of the parties").

Plaintiffs similarly fail to adequately explain how the Yahoo Defendants were trustees *de son tort*, *de facto* trustees, or implied trustees.  Dkt. 32 at 13.  They cite no authority for the proposition that a corporation becomes a trustee (with corresponding fiduciary duties) merely

through the power to appoint a single trustee. Their argument that Yahoo became a trustee by "orchestrating the transfer of Fund assets in 2009" is undercut by the *Wang* settlement, which requires that amendments be agreed to by all parties, including Yahoo. *See* Dkt. 29-5 at 119. Challenging that 2009 amendment is also time-barred. *See infra* at Part V.

> **B.    Yu Ling Similarly Fails To Identify Any Provision of the *Wang* Settlement that the Yahoo Defendants Breached.**

Plaintiff Yu's breach of settlement claim fails for similar reasons. Yu claims she only "agreed to dismiss the 2007 Lawsuit in exchange for, among other things, the creation of a Trust for the benefit of Chinese dissidents imprisoned for exercising their freedom of expression online," Dkt. 32 at 40; FAC ¶ 143, and that the payment of the Fund's administrative expenses is inconsistent with this understanding. But again, the actual *Wang* settlement allows exactly what Yu claims it precludes: the use of the $17.3 million on both "humanitarian and legal assistance" to Chinese political activists imprisoned or threatened with imprisonment for online expression *and* the "payment of [LRF] operating expenses and the [LRF's] education work conducted in the United States in support of human rights." Dkt. 29-5 at 113.

Yu next claims that Yahoo breached its contractual obligations by failing to "maintain oversight" of the LRF, citing a provision of the *Wang* settlement requiring the LRF to provide Yahoo with periodic reports about its expenditures and granting Yahoo the right to be consulted about the appointment of Fund directors. *See* Dkt. 29-5 at 114, 116. Yet both provisions were promises (with corresponding obligations) made *by the LRF to Yahoo*, not promises made by Yahoo to plaintiff Yu (or any other party). Plaintiff Yu fails to explain how Yahoo—which was defending a lawsuit brought by her and which was not her fiduciary—agreed to assume oversight responsibilities—without ever expressly saying so—on her behalf, a litigation opponent. Given

16

the implausability of her allegations, and the absence of factual support for them, the Court must dismiss plaintiff Yu's breach of settlement claim.

Yu similarly fails to grapple with the release she executed to settle her 2011 lawsuit, which also bars her claims.  Yu released the defendants from claims "of every kind and nature whatsoever in law, equity or otherwise, past, present or future, ascertained or unascertained, whether now known or unknown, suspected or unsuspected, and whether or not concealed or hidden, which have existed or may have existed, or which do exist or may exist, without regard to subsequent discovery or the existence of additional or different facts, from the beginning of the world to the date of this Agreement *arising out of or related in any manner to all prior dealings between the parties, without limitation, including but not limited to any events or circumstances alleged or which could have been alleged in the Civil Action.*"  Dkt. 29-8 at 138.

Yu argues that the broadly-worded release does not bar her claims here because it only applies to conduct that occurred before its execution.  *See* Dkt. 32 at 38.  Even if true, the conduct underlying her breach of settlement claim here—the purchase of real estate, increased employee salaries, and other LRF administrative and educational expenses—is *conduct that Yu was fully aware* of when she filed her 2011 lawsuit, and *conduct which Yu ratified* by executing the 2011 settlement.  *See* Dkt. 29-1 at 8.  Yu's only argument is that she did not release any claims arising after the execution of the 2011 settlement.  Dkt. 32 at 38.  This makes no sense— Yu cannot ratify the use of the Fund to pay for LRF administrative and operating expenses in 2011, and then turn around in 2017 and claim that those very same expenditures constitute a breach of settlement.  Given the complete lack of plausibility of her allegations, plaintiff Yu's breach of settlement claim must also be dismissed.

## V.    PLAINTIFFS' STATUTE OF LIMITATIONS ARGUMENTS ALSO FAIL.

Plaintiffs' arguments regarding timeliness similarly attempt to cloud the issues, but they further confirm that dismissal of all claims against the Yahoo Defendants is required.

Plaintiffs' FAC and opposition brief allege conduct by defendants that plaintiffs claim was inconsistent with the alleged "humanitarian purpose" of the purported charitable trust.  *See* FAC ¶ 124; Dkt. 32 at 32.  Most of the conduct that plaintiffs contend violated trust law or the *Wang* settlement itself occurred *years* ago—starting in 2008—and was the subject of extensive media coverage (which is all judicially noticeable by the Court).  *See* Dkt. 29-1 at 22-23, 25; Dkt. 29-2 at 1-2.

Yet in an obvious attempt to plead around this glaring statute-of-limitations problem, plaintiffs now claim that none of the conduct they complained about in their FAC constituted an "injury" for purposes of accrual of their five causes of action against the Yahoo Defendants.  *See* Dkt. 32 at 32.  Instead, they now say their only claimed injuries are (a) the alleged termination of the purported trust in March 2016; and (2) the "depletion of Trust assets to such an extent that it constituted a breach of the Trust's humanitarian purpose," which conveniently occurred at some unspecified point after April 11, 2014 (fewer than three years before they filed suit).  *Id.*  Neither of plaintiffs' arguments succeeds in keeping the Yahoo Defendants in the case.

To begin, the alleged termination of trust occurred in March 2016, *see* FAC ¶ 72, four years *after* Michael Callahan's resignation, *see id.* ¶ 20.  Plaintiffs allege no basis to hold Callahan liable for the alleged termination or any reason to keep him in the case.  Nor does the FAC allege involvement by Yahoo or Ronald Bell in the alleged termination—rather, they blame Harry Wu and the LRF (two other defendants) for making this purported decision in a one-on-one communication with one of the plaintiffs.  *See* Dkt. 32 at 36 n.39 ("Clear repudiation only occurred in 2016, when plaintiff Xu W. was informed that **Wu and the LRF** had terminated the

Trust's humanitarian purpose.") (emphasis added).  Because none of the Yahoo Defendants were involved in the alleged decision, plaintiffs cannot hold them liable regardless of when the termination occurred and regardless of when the limitations period began.

Plaintiffs' only other alleged injury—the supposed depletion of Fund assets "to such an extent that it constituted a breach" of the Fund's "humanitarian purpose"—is not a cognizable harm.  "*Any appreciable and actual harm* flowing from [a defendant's] conduct is sufficient" to start the statute of limitations running.  *Bradford v. George Washington Univ.*, 2017 U.S. Dist. LEXIS 58590, at *14 (D.D.C April 17, 2017) (quoting *Beard v. Edmonson & Gallagher*, 790 A.2d 541, 546 (D.C. 2002)) (emphasis added).  Under the plain terms of the FAC, defendants began depleting the Fund close to 10 years ago—and in ways (*e.g.,* building a museum, supporting the operations of LRF) that were not only public the past decade, but formed the basis of lawsuits that plaintiff Yu and others filed and settled or lost years ago.  *See* Dkt 29-1 at 8, 22; Dkt. 29-2 at 1-2.  While plaintiffs now assert—contrary to the FAC—that they do not challenge any "discretion[ary]" funding decisions made by alleged trustees, Dkt. 32 at 20, this concession does not exempt them from the statute of limitations or rules of repose that govern this case.  The appreciable and actual harm they allege—spending Fund money in violation of the asserted charitable trust—began almost a decade ago.

Plaintiffs make a number of other arguments seeking to save their time-barred claims. Like the scores of points they raise in footnotes throughout their brief, none alters the analysis above.  For example, they contend that the claims against Callahan are not time-barred because Section 19-1310.05—which they argue applies here—is not a statute of repose and is therefore subject to tolling.  Not so.  The authors of the Uniform Trust Code (on which Section 19-1310.05 is based) make clear that although states (and the District of Columbia) *may* permit tolling, the statute is intended to "provide some *ultimate repose* for actions against a trustee," UNIFORM

TRUST ACT § 1005 (2010), cmt. (emphasis added), and for that reason should not be subject to tolling. *Cf. Williamson v. Williamson,* 2013 WL 12121985, at *6 (Nov. 3, 2013) (Alabama statute subject to tolling because legislative history "states [so] explicitly").  In any event, plaintiffs' claims should not be tolled here because they have been on notice of their alleged injuries for years.  Their claim that the Yahoo Defendants "concealed" their potential claims, Dkt. 32 at 30, is contradicted by the FAC, which confirms that accusations of Fund mismanagement were levelled a decade ago.  *See, e.g.,* FAC ¶¶ 78-89.  Indeed, plaintiffs do not dispute that the use of Fund resources to pay for the LRF's operating expenses (including the museum) has been widely publicized in major newspapers for years, *see* Dkt. 29-1 at 24-25, putting them on notice of their claims.  *See Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 112 (D.D.C. 2015) (taking judicial notice of news articles, granting motion to dismiss, and holding that "press coverage was sufficient, as a matter of law, to put a reasonable person on notice of the need to investigate.").

## VI.    CONCLUSION

For all the foregoing reasons, as well as those stated in defendants' other motions, the Court should grant the Yahoo Defendants' motion and dismiss plaintiffs' FAC in its entirety without leave to amend.

Dated:   September 28, 2017    Respectfully Submitted,

By: /s/ Matt Kline
     Matthew T. Kline

Brian Boyle (D.C. Bar No. 419773)
 bboyle@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
Telephone: (202) 387-5327
Facsimile: (202) 383-5414

Matthew T. Kline (*pro hac vice*)
 mkline@omm.com
Patrick S. McNally (*pro hac vice*)
 pmcnally@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

*Attorneys for Defendants Yahoo! Inc., Ronald Bell, and Michael Callahan*

21

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2017, I caused the foregoing document to be electronically filed with the clerk of the United States District Court for the District of Columbia using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the electronic Mail Notice List.

Executed on September 28, 2017, in Los Angeles, California.

/s/ Matt Kline
_____
Matthew T. Kline
