# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HE DEPU, et al.,<br><br>　　　　Plaintiffs,<br>　　　　　v.<br><br>YAHOO! INC., et al.<br><br>　　　　Defendants. | Civil Action No. 17-635 (JDB) |

## MEMORANDUM OPINION

China's vast censorship of speech on the Internet has been widely reported, as has the Chinese government's detention and imprisonment of many of its citizens for expressing political views online. Plaintiffs are seven Chinese citizens who allege that they were imprisoned in China for online speech, and the wife of another Chinese citizen who was also imprisoned. They allege that as part of a settlement of a 2007 lawsuit brought by imprisoned Chinese activists against Yahoo, the defendants established a charitable trust to provide humanitarian and legal assistance to imprisoned Chinese dissidents. But then defendants allegedly mismanaged and depleted the trust funds and terminated the trust's humanitarian purpose, in violation of their duties under trust and contract law. As explained below, plaintiffs' claims that sound in trust law will be dismissed because they have not plausibly alleged that Yahoo established a charitable trust in 2007 and, even if they had, they lack standing to bring these claims. Plaintiff Ling Yu's contract claims are both insufficiently pled and were released by her when she settled an earlier lawsuit against these defendants. Hence, those claims also fail and the complaint in its entirety will be dismissed.

## BACKGROUND

This case arises from another case filed by Chinese political activists against Yahoo more than ten years ago. See Am. Compl. [ECF No. 26] ¶ 29 [hereinafter "FAC"]; Wang v. Yahoo! Inc.

1

No. 07-cv-2151-CW (N.D. Cal. filed Apr. 18, 2007). The Wang lawsuit was brought by Wang Xiaoning and Shi Tao, two imprisoned Chinese political activists, and Wang's wife, Ling Yu, who is also a plaintiff in this case. The plaintiffs in Wang alleged that Yahoo violated federal and state laws by turning over their Yahoo e-mails to Chinese authorities who used the information to prosecute Wang and Shi for political dissent. FAC ¶¶ 28–30. Yahoo moved to dismiss the Wang lawsuit in August 2007.

In November 2007 (while the case remained pending), Yahoo's CEO, Jerry Yang, testified before Congress concerning the company's disclosure of information to Chinese authorities. Shortly after the hearing, and facing significant pressure from certain members of Congress, Yahoo agreed to settle the Wang lawsuit. In exchange for the Wang plaintiffs' agreement to dismiss their lawsuit with prejudice, Yahoo agreed to pay $3.2 million to each plaintiff's family, and an additional $17.3 million to the Laogai Research Foundation ("LRF") to establish the Yahoo Human Rights Fund ("YHRF"). Id. ¶¶ 33, 36. Plaintiffs here allege that the YHRF is a charitable trust for which they are beneficiaries. See, e.g., id. ¶ 33. The LRF is a non-profit corporation founded by Harry Wu, a former Chinese political prisoner turned political activist. Id. ¶ 24.

Under the terms of the settlement agreement (the "Wang Settlement"), the LRF was to use the $17.3 million for three purposes: (1) "to provide humanitarian and legal assistance primarily to persons in or from . . . China who have been imprisoned for expressing their views through Yahoo! or another medium"; (2) "to resolve claims primarily by such persons, or persons threatened with prosecution or imprisonment, against the Yahoo! Entities or any Yahoo! subsidiary or affiliate"; and (3) "for payment of [LRF] operating expenses and the [LRF's] educational work conducted in the United States in support of human rights." Wang Settlement (Ex. 2 to Yahoo's Mot. to Dismiss) [ECF No. 29-5] at 113; FAC ¶ 40 n.4. The Wang Settlement further provided

2

that there were "no express or implied third party beneficiaries" to the agreement, and that individuals who received funds from the LRF to resolve claims against Yahoo were not third-party beneficiaries. Id. at 113, 119.

In June 2009, the Wang Settlement was amended to create the Yahoo Irrevocable Human Rights Trust 2009 ("YIHRT").[1] FAC ¶ 6 & n.1. As part of the amendment, the LRF transferred $3.55 million to the YIHRT, while the remaining funds were transferred to the newly formed Laogai Human Rights Organization ("LHRO"). See id. ¶¶ 25, 52–54; see also June 12, 2009 Amendment (Ex. 3 to Yahoo's Mot. to Dismiss) [ECF No. 29-6] at 128. The LHRO was to provide up to $1 million annually to the LRF for its operational expenses, and additional support for LRF's "humanitarian and legal assistance" to Chinese activists. See LHRO and YIHRT 2009 Documents (Ex. 1 to Yahoo's Mot. to Dismiss) [ECF No. 29-4] at 8.

Meanwhile, Harry Wu—once a celebrated human rights activist with close ties to members of Congress—came under increased scrutiny for his alleged mismanagement of the LRF and the YHRF, and he was involved in several lawsuits. See FAC ¶¶ 37–39; see generally Andrew Jacobs, Champion of Human Rights in China Leaves a Tarnished Legacy, N.Y. Times, Aug. 13, 2016 (Ex. 13 to Yahoo's Mot. to Dismiss) [ECF No. 29-16]. One of those lawsuits was filed in 2011 by Ling Yu, who is also a plaintiff in this case. See Yu v. Wu, No. 11-cv-92 (E.D. Va. filed Jan. 28, 2011) [hereinafter "the 2011 Lawsuit"].[2] Yu sued Harry Wu, the LRF, the LHRO, and the YHRF for the alleged mismanagement, misuse, and conversion of settlement funds, including the LRF's purchase of real estate in Washington, and defendants' other alleged breaches of their fiduciary

---

[1] Plaintiffs here do not allege any violation of this 2009 trust and expressly disclaim that their lawsuit is based on this trust. See Pls.' Opp'n [ECF No. 32] at 18–19 n.22. Rather, their lawsuit is based on the alleged trust created in 2007 by the Wang Settlement. FAC ¶¶ 26, 36.
[2] The LRF attached a copy of the complaint from the 2011 Lawsuit as an exhibit to its motion to dismiss. See Ex. A to LRF's Mot. to Dismiss [ECF No. 27-2] [hereinafter "DAC"].

3

duties owed to the plaintiffs. See DAC ¶¶ 5–7, 48. Yu settled her lawsuit later in 2011. She agreed to dismiss all of her claims with prejudice, see Notice of Dismissal with Prejudice (Ex. B to LRF's Mot. to Dismiss) [ECF No. 27-3] at 1, and granted Wu, the LRF, the LHRO, and the YHRF, and their affiliates, comprehensive releases, see 2011 Lawsuit Release (Ex. 5 to Yahoo's Mot. to Dismiss) [ECF No. 29-8] at 138.

Six years later, Yu filed this lawsuit against Yahoo and two of its executives, the Estate of Harry Wu,[3] the LRF, the LHRO, the "Yahoo Human Rights Fund Trust," and unknown Doe defendants who are allegedly current and former employees, officers, and directors of the defendants. FAC ¶¶ 19–27. Yu is joined by seven other plaintiffs—He Depu, Yang Zili, Li Dawei, Wang Jinbo, Ouyang Yi, Xu Yonghai, and Xu Wangping (collectively the "Beneficiary Plaintiffs")—who allegedly are all political activists who were imprisoned in China for online dissent. Id. ¶¶ 10–16. Plaintiffs contend that through the 2007 Wang Settlement Yahoo established a charitable trust with the "primary" purpose of providing humanitarian and legal assistance to Chinese dissidents imprisoned for exercising their freedom of expression online. Id. ¶¶ 1, 19, 26, 33, 36. The Beneficiary Plaintiffs allege that they are "beneficiar[ies] of the Trust's humanitarian purpose." Id. ¶¶ 10–16. They contend that defendants—all of whom are allegedly trustees—improperly depleted the trust's assets and unlawfully terminated the trust's humanitarian purpose. They bring claims for breach and modification of trust, id. ¶¶ 125–131, 135–36, as well as third party and principal-agent liability claims for breach of trust, id. ¶¶ 137–141. Plaintiff Yu brings claims for unjust enrichment, id. ¶¶ 132–34, and for breach of the Wang Settlement, id. ¶¶ 142–45. All of the plaintiffs bring a claim for civil conspiracy. Id. ¶¶ 146–49. Defendants have all filed motions to dismiss the FAC. See Mot. in Supp. of Defs. LRF Cal. and LRF Va.'s Mot. to

---

[3] Wu died on April 26, 2016. FAC ¶ 23.

4

Dismiss ("LRF's Mot. to Dismiss") [ECF No. 27-1]; Mem. of Law in Supp. of Def. LHRO's Mot. to Dismiss [ECF No. 28-1]; Mem. of Law in Supp. of Defs. Yahoo! Inc., Ronald Bell, & Michael Callahan's Mot. to Dismiss ("Yahoo's Mot. to Dismiss") [ECF No. 30-1].

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion to dismiss stage, all of a plaintiff's factual allegations are taken as true. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). However, "conclusory statements," "[t]hreadbare recitals of the elements" of a claim, and legal conclusions masquerading as facts will not suffice. Id. at 678–79.

When considering a motion to dismiss for lack of standing under Rule 12(b)(1), the Court likewise accepts the plaintiff's allegations as true and draws all reasonable inferences in its favor. See Settles v. U.S. Parole Comm'n, 429 F.3d 1098, 1107 (D.C. Cir. 2005). However, because the Court has an "affirmative obligation to ensure that it is acting within the scope" of its authority, a "'plaintiff's factual allegations . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1350 (2d ed. 1987)). In deciding a motion to dismiss, the Court may consider documents attached to or incorporated in the complaint and matters subject to judicial notice. See Settles, 429 F.3d at 1107.

## ANALYSIS

### I. WHETHER THE WANG SETTLEMENT CREATED A CHARITABLE TRUST

An initial issue is whether plaintiffs have plausibly alleged that Yahoo established a charitable trust through the Wang Settlement in 2007. Plaintiffs' trust claims—Counts One, Three, Four, and Five—are founded on the proposition that they are beneficiaries of the alleged charitable trust; thus, if there is no trust, these claims must be dismissed. A charitable trust, as opposed to a private trust, is "designed to accomplish objects that are beneficial to the community." Restatement (Third) of Trusts § 28 cmt. a. (2003); see George G. Bogert, George T. Bogert, & Amy Hess, The Law of Trusts and Trustees § 361 (3d ed. 2017) [hereinafter "Bogert"]. To state viable trust claims, plaintiffs must establish that there are: "[1] a trustee, who holds the trust property and is subject to equitable duties to deal with it for the benefit of another; [2] beneficiar[ies], to whom the trustee owes such duties; . . . [3] trust property, which is held by the trustee for the beneficiar[ies] . . . [4] [and an] intention [by the settlor] to create a trust, which may be manifested 'by written or spoken language or by conduct.'" Duggan v. Keto, 554 A.2d 1126, 1133 (D.C. 1989) (citation omitted).

Plaintiffs contend that "these elements are easily met," and they place great stock in the fact that payments were made "in trust" to the LRF. Pls.' Opp'n at 10 (citing FAC ¶¶ 36 & n.3, 40). But courts have recognized that there is nothing talismanic about inclusion of the term "in trust" in an agreement. See In re Ames Dep't Stores, Inc., 144 F. App'x 900, 901–02 (2d Cir. 2005) ("[A]dding the words 'trust' or 'agency' to a contract does not, without more, convert [the agreement] into a trust or agency relationship."); Meima v. Broemmel, 117 P.3d 429, 444–46 (Wyo. 2005) (finding no trust established even though the parties used the words "in trust" in the relevant agreement). Plaintiffs also assert that a settlement agreement "can[] result in the creation

of a trust—indeed, numerous cases involve just that scenario." Pls.' Opp'n at 11. But just because a settlement agreement can create a trust does not mean that it does. Each of the cases cited by plaintiffs for this proposition involved express language in a settlement agreement that created a trust. See Athey v. United States, 132 Fed. Cl. 683, 687 (Fed. Cl. 2017) (settlement required payments to be made to an administrator who would then "establish an 'Athey Class Settlement' Trust"), appeal docketed, 17-2277 (Fed. Cir. filed July 10, 2017); In re Diet Drugs Prods. Liab. Litig., No. 99-cv-20593, 2001 WL 283163, at *1 (E.D. Pa. Mar. 21, 2001) (settlement created "[trust] fund [that] must be administered by . . . seven court appointed trustees"). Here, such language is absent from the Wang Settlement.

Defendants, in turn, provide several arguments why the Wang Settlement did not create a charitable trust. As an initial matter, the Wang Settlement is a contract and, unlike the 2009 amendment, it does not purport to be a trust document. Compare Wang Settlement with LHRO and YIHRT 2009 Documents. Defendants also contend that plaintiffs have wholly failed to support their conclusory allegations that they are "charitable beneficiaries" of the purported trust. The term "charitable beneficiaries" is never mentioned in the Wang Settlement; indeed, the agreement expressly disclaims the creation of any third-party beneficiaries. See Wang Settlement at 119 ("This Agreement shall bind and inure to the benefit only of, and be enforceable only by, the Parties hereto and their respective successors and assigns . . . . There are no express or implied third party beneficiaries of this Agreement."). Defendants also assert that plaintiffs have failed to plausibly allege that Yahoo intended to establish a charitable trust. See Bogert § 323 ("The conduct of the alleged settlor of the charitable trust must show an intent to create a trust and not some similar relationship or some other effect."); Duggan, 554 A.2d at 1136 (intent must be "clearly manifested" by the settlor). Plaintiffs have acknowledged that Yahoo has never publicly

7

or privately referred to the YHRF as a trust.[4] See Pls.' Opp'n at 2. Moreover, Yahoo's intent as stated in the settlement was its "desire . . . to resolve [its] disputes, and all claims, causes of action and controversies" with plaintiffs in the Wang litigation "without further expenditure of time and expense on litigation." Wang Settlement at 111. That stated intent plainly is not a manifestation of an intent to create a trust. See Morrow v. United States, 723 F. Supp. 2d 71, 77 (D.D.C. 2010) ("Where 'more likely explanations' than those alleged by the plaintiff exist, the Court should be wary of finding that the plaintiff's allegations have sufficiently nudged the claims into the realm of plausibility." (quoting Iqbal, 556 U.S. at 681).[5]

Ultimately, plaintiffs have not plausibly alleged that the Wang settlement created a charitable trust. Hence, all of the claims that sound in trust will be dismissed.

## II. STANDING OF THE BENEFICIARY PLAINTIFFS

Even assuming that the Beneficiary Plaintiffs have plausibly alleged that Yahoo created a charitable trust for their benefit, their trust claims would still fail for an independent reason: they have failed to establish that they have standing under principles of trust law.

The general rule with respect to charitable trusts is that "'only a public officer, usually the state Attorney General, has standing to bring an action to enforce the terms of the trust.'" Family Fed'n for World Peace v. Hyun Jin Moon, 129 A.3d 234, 244 (D.C. 2015) (quoting Hooker v.

---

[4] The mere conveyance of funds is insufficient on its own to establish a charitable trust. See Bogert § 324 ("Sometimes a person seeks to confer benefits on society by means other than through the use of a trust.").

[5] Defendants also contend that Yahoo did not create a charitable trust because the second purpose of the YHRF—"to resolve claims primarily by [imprisoned Chinese activities], or persons threatened with prosecution or imprisonment, against the Yahoo! Entities or any Yahoo! subsidiary or affiliate"—is not a charitable purpose. See Bogert § 364 (explaining that in a charitable trust, "[t]he trust income must be distributable solely for the public benefit, and not partly or wholly for the purpose of advancing the financial condition of the settlor" (emphasis added)). Plaintiffs try to explain away this issue in their surreply by stating, for the first time, that Yahoo created a "mixed trust" which can be administered for both charitable and noncharitable purposes. See Pls.' Surreply [ECF No. 39] at 3. But they have not alleged a "mixed trust" in the amended complaint, and they are not permitted to amend their pleading through their briefs. Fares v. Smith, 249 F. Supp. 3d 115, 125 (D.D.C. 2017) ("[I]t is axiomatic that Plaintiffs cannot amend their Complaint via their briefs."), appeal docketed, No. 17-5075 (D.C. Cir. filed Apr. 17, 2017).

8

Edes Home, 579 A.2d 608, 612 (D.C. 1990)). This limitation is based on the "impossibility of establishing a distinct justiciable interest on the part of a member of a large and constantly shifting benefited class, and the recurring burdens on the trust res and trustee of vexatious litigation that would result from recognition of a cause of action by any and all of a large number of individuals who might benefit incidentally from the trust." Id. However, courts have recognized exceptions to the general rule when an individual seeking to enforce the trust has a "special interest" in the trust, or is a member of a "small and distinct" beneficiary class. See id.; Hooker, 579 A.2d at 614. Plaintiffs have not shown that an exception applies here.

To start, the Beneficiary Plaintiffs have not plausibly alleged that they have the type of "special interest" necessary for standing. In Family Federation for World Peace, for example, the court found that a few plaintiffs had the requisite "special interest" based on their exceptionally close connection to the charitable corporation. 129 A.3d at 244. The plaintiffs included: two "ousted former directors" who were also successor trustees; an entity that was a "major beneficiary from [the charity] for three decades"; an entity that was a "co-settlor" of the trust; and another entity with "close interests in [the charity's] operation[s]." Id. at 238 n.2, 244–45, 245 n.19. Plaintiffs have alleged no similarly close connection to the charitable trust here. Rather, they merely allege that they are potential beneficiaries of the trust. See FAC ¶¶ 10–16. It is well-established that "the mere fact that a person is a possible beneficiary is not sufficient to entitle him to maintain a suit for the enforcement of a charitable trust." Restatement (Second) of Trusts § 391 cmt. c; see Schalkenbach Found. v. Lincoln Found., 91 P.3d 1019, 1024 (Ariz. 2004) ("[A] party must show that they have a special interest in the trust, such as being a current beneficiary, and not merely being a potential or prior beneficiary of a large class of potential beneficiaries."); Bogert

9

§ 414 ("As a general rule, no private citizen can sue to enforce a charitable trust merely on the ground that he believes he is within the class to be benefitted by the trust . . . .").

The Beneficiary Plaintiffs likewise fail to support the conclusory allegation that they are "members of a small, sharply defined, and numerically limited class." FAC ¶ 119. Indeed, their own complaint alleges that, as of 2007, "<u>many</u> Yahoo users [had been] imprisoned [by Chinese authorities] based on evidence provided by Yahoo." <u>Id.</u> ¶ 28 (emphasis added). Yet plaintiffs' proposed class is even broader than the "many" Yahoo users imprisoned as of 2007. The proposed class: (1) includes individuals persecuted for expressing their views "online" through "Yahoo <u>or another medium</u>," <u>Wang</u> Settlement at 113 (emphasis added); FAC ¶ 119; (2) is "primarily," but not exclusively, limited to individuals in China, see <u>Wang</u> Settlement at 113; and (3) is not temporally limited at all. Plaintiffs' "many" number through 2007 has undoubtedly grown much larger today because China has more than 700 million active Internet users, and is considered one of the world's most active censors of online dissent.[6]

At bottom, the Beneficiary Plaintiffs have failed to identify any case where a court conferred standing on a beneficiary class as large as the one they allege here: the cases they rely on involve smaller and more limited classes.[7] In <u>Williams v. Board of Trustees</u>, 589 A.2d 901 (D.C. 1991), the court held that a class comprised of those who regularly attended and financially

---

[6] See <u>China's Internet users grew in 2016 by the size of Ukraine's population to 731 million</u>, <u>South China Morning Post</u>, Jan. 22, 2017 (Ex. 21 to Yahoo's Mot. to Dismiss) [ECF No. 29-24]; <u>The Internet in China: A Tool for Freedom or Suppression?: Joint Hearing Before the Subcomm. on Africa, Global Human Rights and Int'l Operations and Subcomm. on Asia and the Pac. of the H. Comm. on Int'l Relations</u>, 109th Cong. 174 (2006) (Ex. 7 to Yahoo's Mot. to Dismiss) [ECF No. 29-10] (statement of Rep. Leach, Member, H. Comm. on Int'l Relations) ("According to China's own state-run media, it has put together the world's most extensive and comprehensive regulatory system for Internet administration and has perfected a 24-hour, real-time, situational censorship mechanism.").

[7] Numerous cases have denied standing to what appear to be smaller, more limited beneficiary classes. <u>See, e.g.</u>, <u>State ex rel. Nixon v. Hutcherson</u>, 96 S.W.3d 81, 84–85 (Mo. 2003) (en banc) (no standing to enforce trust where the "estimated . . . number of [potential beneficiaries]" was at least 6,000 people); <u>Kania v. Chatham</u>, 254 S.E.2d 528, 530 (N.C. 1979) (no standing when plaintiff was the member of a beneficiary class that consisted of hundreds of members).

10

contributed to a single church in Washington was too "uncertain and limitless" to confer standing, id. at 909. Plaintiffs proposed class of political dissidents persecuted for using any Internet platform in the world's most populous country is far more limitless and uncertain than the beneficiary class in Williams. Plaintiffs' reliance on Hooker is similarly unhelpful. In that case, the court conferred standing on a beneficiary class that consisted of female, indigent, "aged" widowed residents of Georgetown who were in "good health" Hooker, 579 A.2d at 615. Moreover, the court found that the class was "limited" because the "number of applications from the group of beneficiaries . . . ha[d] decreased significantly" and the home had difficulty finding qualifying individuals. Id. at 615–16. In other words, in Hooker the potential beneficiaries came from a single neighborhood of a single city with a population that is just a small fraction the size of China's 700 million internet users. And here, unlike in Hooker, it appears that the beneficiary class is expanding rather than shrinking.[8]

In sum, the Beneficiary Plaintiffs have not satisfied their burden of showing that they have standing to bring their claims under the principles applicable to charitable trusts.[9]

### III. BREACH OF SETTLEMENT AND UNJUST ENRICHMENT CLAIMS

Plaintiff Yu's claims for unjust enrichment and breach of the settlement agreement—

---

[8] Hooker also reinforces the notion that even when litigants challenge a "fundamental" change to a charitable trust, for there to be standing the potential beneficiary class must still be "small and distinct." 579 A.2d at 614, 616.

[9] Defendants also argue that the Beneficiary Plaintiffs lack Article III standing. See, e.g., Yahoo's Mot. to Dismiss at 10–11. The "irreducible constitutional minimum" of standing requires a plaintiff to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (internal quotation marks omitted). Here, six of the seven Beneficiary Plaintiffs have not alleged that they have submitted an application for funding that was denied, or that they are otherwise entitled to an award from the purported trust. See FAC ¶¶ 10–15. Thus, they have not alleged a concrete injury that can be redressed by the Court, and they lack Article III standing. See US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000) (failure to demonstrate injury that is redressable warrants dismissal); Old Saybrook Police Union C.O.P.S. Loc. #106, Inc. v. Mosca, No. 3:08-cv-01025, 2009 WL 276513, at *8 (D. Conn. Feb. 4, 2009) ("[B]ecause the Union is not entitled to any gift from the trust on either of the theories it advances [including a charitable trust theory], it was not injured by the alleged improper disbursement of trust assets."). The remaining Beneficiary Plaintiff, Xu W., alleges that he applied for but did not receive funding. FAC ¶ 16. That is sufficient to establish Article III standing at this stage. Nevertheless, Xu W.'s claims fail for the independent reasons explained above.

Counts Two and Six—were released by her when she settled the 2011 Lawsuit and, in any event, are insufficiently pled. These independent grounds warrant dismissal of Yu's claims.

### A. Plaintiff Yu Released These Claims

Defendants contend that Yu's claims for unjust enrichment and breach of settlement are precluded by res judicata based on the dismissal with prejudice of the 2011 Lawsuit. See, e.g., LRF's Mot. to Dismiss at 14–15. It is true that Yu asserts some of the same causes of action in this lawsuit that she previously brought in the 2011 Lawsuit, including for unjust enrichment (Count III in the 2011 Lawsuit; Count II here) and breach of the settlement agreement (Count V in the 2011 Lawsuit; Count VI here), and that she alleges many of the same facts in this lawsuit that formed the basis of her claims in the 2011 Lawsuit. But Yu expressly disclaims that she is suing for any alleged conduct that occurred prior to October 21, 2011—the date of dismissal of the 2011 Lawsuit. FAC ¶¶ 133, 145. And Yu has alleged misconduct based on some facts that post-date the 2011 Lawsuit. See id. ¶¶ 64, 68. "Res judicata does not preclude claims based on facts not yet in existence at the time of the original action." Drake v. FAA, 291 F.3d 59, 66 (D.C. Cir. 2002); accord Apotex, Inc. v. FDA, 393 F.3d 210, 218 (D.C. Cir. 2004); see also Restatement (Second) of Judgments § 24 cmt. f (1982) ("Material operative facts occurring after the decision of an action with respect to the same subject matter may in themselves, or taken in conjunction with the antecedent facts, comprise a transaction which may be made the basis of a second action not precluded by the first."). Hence, res judicata does not bar Yu's claims.

But Yu is not completely out of the woods. Defendants' stronger argument is that Yu's claims are barred by the release that she negotiated when she dismissed the 2011 Lawsuit. See,

e.g., LRF's Mot. to Dismiss at 14–24. The 2011 Release—a contract executed by and between Yu, Wu, the LRF, the LHRO, and the YHRT[10]—states that Yu released all claims

> of every kind and nature whatsoever in law, equity or otherwise, past, present or future, ascertained or unascertained, whether now known or unknown, suspected or unsuspected, and whether or not concealed or hidden, which have existed or may have existed, or which do exist or may exist, without regard to subsequent discovery or the existence of additional or different facts, from the beginning of the world to the date of this Agreement arising out of or related in any manner to all prior dealings between the parties, without limitation, including but not limited to any events or circumstances alleged or which could have been alleged in the Civil Action.

2011 Release at 2. Yu contends that because she has changed the legal theory from the 2011 Lawsuit—i.e., she now alleges breach of the settlement's "primary humanitarian purpose"—the 2011 Release does not apply. Pls.' Opp'n at 38. Not so. The broad language of the release belies this argument and prevents Yu from evading the release by merely altering her legal theory or by "discovering" additional claims that she could have, but failed to, allege previously.[11] See 2011 Release at 2. Yu has not sufficiently explained why the violation of the humanitarian purpose theory could not have been alleged in the prior action. Hence, it is barred by the comprehensive 2011 Release.

### B. The Claims Are Insufficiently Pled

Even if Yu's claims were not precluded by the 2011 Release, they fail for independent reasons. Yu's breach of settlement claim is insufficient because the amended complaint fails to identify any specific provisions of the Wang Settlement that defendants allegedly breached. See Kaar v. Wells Fargo Bank, N.A., 2016 WL 3068396, at *1 (N.D. Cal. June 1, 2016) ("To claim a

---

[10] The Release expressly applies to these entities and "their parent entities, whole and partial subsidiaries and other affiliated companies and each of their respective current and former officers, employees, directors, shareholders, fiduciaries, transferees, attorneys, insurers, accountants, sureties, trusts, predecessors, successors, and assignees." 2011 Release at 2.

[11] Indeed, Yu has alleged that "[t]he systematic and unlawful depletion began immediately [in 2007]," FAC ¶ 61, and she admitted that she was aware of this improper depletion by the time she filed the 2011 Lawsuit, see DAC ¶¶ 47–48.

breach of contract in federal court[,] the complaint must identify the specific provision of the contract allegedly breached by the defendant."); Spinelli v. Nat'l Football League, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015) ("Twombly-Iqbal standards of federal pleading require a complaint to identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached."); Saha v. George Washington Univ., 577 F. Supp. 2d 439, 443 (D.D.C. 2008) (plaintiff failed to state a claim because he had "not identified specific breached provisions"). Indeed, the amended complaint is completely lacking any reference to a section or provision of the Wang Settlement that defendants supposedly violated. Instead, Yu provides generalized allegations of breach that are untethered to the actual contractual provisions. For example, her allegation that "[t]he Settlement was breached upon . . . the depletion of Trust assets to such an extent that it culminated in the breach of the Settlement," FAC ¶ 144, is conclusory, circular, and fails to identify a settlement provision that was breached. Her claim that a breach occurred because defendants depleted the trust assets and did not use them exclusively (or primarily) "to provide humanitarian and legal assistance" to Chinese dissidents, id., ignores that the Wang Settlement expressly permits the YHRF to be spent to "resolve claims primarily by such persons . . . ; and . . . for payment of [LRF's] operating expenses and the Foundation's education work conducted in the United States in support of human rights." Wang Settlement at 113. Similarly missing from the amended complaint is an identification of any contractual provision tied to the alleged breach arising from Yahoo's failure to "review all of Wu and the LRF's activities." FAC ¶ 144. And the alleged termination of the "primary" humanitarian purpose is not a breach that plaintiff has connected to any obligation found in the settlement agreement. See Edmond v. Am. Educ. Servs., No. 10-cv-0578, 2010 WL 4269129, at *2 (D.D.C. Oct. 28, 2010) ("Without a contractual duty, there can be

no breach of contract." (internal quotation marks omitted)). Hence, the breach of settlement claim fails.

Yu's unjust enrichment claim is likewise deficient. That claim is based on the alleged "enormous financial benefits" obtained by Wu and LRF as a result of Yu signing the Wang Settlement, and alleges that defendants obtained "unjust benefits . . . as a result of Wu and the LRF's breaches of the Settlement's requirements." FAC ¶¶ 133-34. Thus, the unjust enrichment claim is based on the terms of the Wang Settlement, and turns on defendants' alleged breaches of those terms. While the existence of an express contract does not always foreclose a claim for unjust enrichment—and courts have sometimes permitted a party to plead this as an alternative theory in certain circumstances, see, e.g., Shtauber v. Gerson, 239 F. Supp. 3d 248, 256 (D.D.C. 2017)—courts require an allegation that the contract is invalid or unenforceable. See Falconi-Sachs v. LPF Senate Square, LLC, 142 A.3d 550, 556 (D.C. 2016); see also United States ex rel. Morsell v. Symantec Corp., 130 F. Supp. 3d 106, 129 (D.D.C. 2015) (dismissing unjust enrichment claim and stating that this "alternative claim[] must be supported by, at the very least, an allegation that there is no valid contract" (internal quotation marks omitted)); United States v. Kellogg Brown & Root Servs., 800 F. Supp. 2d 143, 160 (D.D.C. 2011) (finding plaintiff could not sustain claim for unjust enrichment without an "allegation that there [was] no valid contract"); Plesha v. Ferguson, 725 F. Supp. 2d 106, 112 (D.D.C. 2010) (dismissing claim for unjust enrichment pled in the alternative when plaintiff attached a copy of the agreement to the complaint and neither party disputed the validity of the agreement). No such allegation of invalidity or unenforceability is made here. Courts have found similarly infirm unjust enrichment claims that, as here, rest on the terms of an express contract. See Albrecht v. Comm. on Employee Benefits of Fed. Reserve Employee Benefits Sys., 357 F.3d 62, 69 (D.C. Cir. 2004) (dismissing unjust enrichment claim

15

"that rests on the terms of the [express contract]"); In re APA Assessment Fee Litig., 766 F.3d 39, 47 (D.C. Cir. 2014) ("Insofar as the terms of the contracts governed the matter in dispute, they precluded an unjust enrichment claim."); Movahedi v. U.S. Bank, N.A., 853 F. Supp. 2d 19, 29 (D.D.C. 2012) ("Defendants are correct that when the claim for unjust enrichment is based on the terms of the contract, a claim for unjust enrichment is unavailable."). Hence, Yu's unjust enrichment claim will be dismissed.[12]

## IV. CIVIL CONSPIRACY CLAIM

Plaintiffs remaining civil conspiracy claim (Count Seven) is not an independent cause of action under District of Columbia law. Rather, it "depends on the performance of some underlying tortious act." Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983); accord, Waldon v. Covington, 415 A.2d 1070, 1074 n.14 (D.C. 1980). Plaintiffs have not alleged any torts in the amended complaint, and all of their other claims will be dismissed. Hence, the civil conspiracy claim will also be dismissed. See Hall v. Clinton, 285 F.3d 74, 82 (D.C. Cir. 2002) ("Civil conspiracy, of course, is not actionable in and of itself.").[13]

## CONCLUSION

For these reasons, defendants' motion to dismiss will be granted. A separate order has been issued on this date.

---

[12] The result would be the same under California law, which the parties selected as the governing law for the Wang Settlement. See Klein v. Chevron U.S.A., Inc., 137 Cal. Rptr. 3d 293, 331–32 (Cal. Ct. App. 2012) ("[P]laintiffs' breach of contract claim pleaded the existence of an enforceable agreement and their unjust enrichment claim did not deny the existence or enforceability of that agreement. Plaintiffs are therefore precluded from asserting a quasi-contract claim under the theory of unjust enrichment."); Gerlinger v. Amazon.Com, Inc., 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) (dismissing "unjust enrichment claim without leave to amend" because plaintiff relied on the existence of an express contract as the basis for another claim and thus "cannot assert his unjust enrichment claim in the alternative").

[13] The Court need not reach defendants' other arguments in favor of dismissal, including that plaintiffs' claims are time barred. The claims against the Doe defendants will not survive for the same reasons explained above. Finally, the parties' requests for a hearing on the motions to dismiss are denied as moot.

16

/s/
JOHN D. BATES
United States District Judge

Dated: March 30, 2018