UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HE DEPU, et al.,

    Plaintiffs,

        v.

YAHOO! INC., et al.

    Defendants.

Civil Action No. 17-635 (JDB)

## MEMORANDUM OPINION

Before the Court is [42] plaintiffs' motion to alter or amend this Court's judgment of March 30, 2018 and for leave to amend their first amended complaint, both of which defendants oppose. Plaintiffs' first amended complaint alleged that a settlement agreement arising from a 2007 lawsuit brought by imprisoned Chinese activists against Yahoo established a charitable trust of which plaintiffs are beneficiaries and that defendants, all of whom are allegedly trustees, improperly depleted the trust's assets and unlawfully terminated the trust's humanitarian purpose. See Depu v. Yahoo! Inc., 306 F. Supp. 3d 181, 185 (D.D.C. 2018). Defendants moved to dismiss the complaint, arguing that the settlement agreement did not establish a charitable trust and that plaintiffs lack standing to enforce any trust. Id. This Court dismissed the complaint with prejudice, holding that the settlement did not establish a trust and that even if it had, plaintiffs lack standing to enforce it. Id. at 189, 191. Now, plaintiffs move the Court to set aside the judgment and for leave to file a second amended complaint that, they assert, will cure some of the first amended complaint's defects, allowing some of plaintiffs' claims to survive a motion under Rule 12(b)(6). For the reasons explained below, the Court will deny plaintiffs' motion to alter or amend the March 30, 2018 judgment and will deny plaintiffs' motion for leave to amend their complaint.

1

**BACKGROUND**

The full facts and procedural history of this case are laid out in this Court's earlier memorandum opinion. See Depu, 306 F. Supp. 3d at 185–87. In short, as part of a settlement agreement to end a 2007 lawsuit filed by Chinese political activists (the "Wang Settlement"), Yahoo agreed to pay $17.3 million to the Laogai Research Foundation ("LRF"), a non-profit corporation founded by Harry Wu, to establish the Yahoo Human Rights Fund ("YHRF" or "YHR Fund"). See id. at 185. In 2017, plaintiffs[1] filed a lawsuit alleging that the YHRF is a charitable trust established for plaintiffs' benefit and contending that defendants[2]—all of whom are allegedly trustees—unlawfully breached and modified the purported trust under D.C. law. See id. at 186–87; FAC ¶¶ 125–130, 135–41.[3]

The Court granted defendants' subsequent motions to dismiss the trust-based claims under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). First, the Court held that plaintiffs failed to allege plausibly that the Wang Settlement created a charitable trust. See Depu, 306 F. Supp. 3d at 187–89. Second, the Court held that even if the Wang Settlement had somehow established a charitable trust, plaintiffs failed to allege plausibly that they had standing to enforce the trust, both under the principles of trust law and, as to six of seven plaintiffs, under Article III. See id. at 189–91 & n.9. Because the Court's order dismissing the FAC did not specify whether the complaint was dismissed with or without prejudice, the claims were dismissed with prejudice under Federal Rule of Civil Procedure 41(b). See Rollins v. Wackenhut Servs., Inc., 703 F.3d 122, 131 (D.C.

---

[1] Plaintiffs are Chinese citizens alleging they or their family were imprisoned in China for online speech, and include Ling Yu, He Depu, Yang Zili, Li Dawei, Wang Jinbo, Ouyang Yi, Xu Yonghai, and Xu Wangping (collectively the "Beneficiary Plaintiffs"). Am. Compl. [ECF No. 26] ¶¶ 10–18 [hereinafter "FAC"].

[2] Defendants are Yahoo! Inc. and two of its executives, the Estate of Harry Wu, the LRF, the aogai Human Rights Organization ("LHRO"), the "Yahoo Human Rights Fund Trust," and unknown Doe defendants who are allegedly current and former employees, officers, and directors of the defendants. FAC ¶¶ 19–27.

[3] Plaintiffs also brought various contract and civil conspiracy claims, see FAC ¶¶ 132–34, 142–49, but do not argue in the instant motions that the Court erred in dismissing those claims with prejudice. See Proposed Second Am. Compl. [ECF No. 32-1] [hereinafter "SAC"].

2

Cir. 2012) ("[Rule] 41(b) provides, in part, that '[u]nless the dismissal order states otherwise, [an involuntary dismissal]—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.'"). Plaintiffs now move to set aside the judgment and for leave to amend their trust claims in a proposed second amended complaint that they claim will survive. See Rule 59(e) Mot. to Alter J. from Dismissal With Prejudice to Dismissal Without Prejudice, Rule 15(a) Mot. for Leave to Amend, and Mem. of P. & A. in Support Thereof ("Pls.' Mot. to Amend") [ECF No. 42].

## LEGAL STANDARD

Plaintiffs may move to "amend their complaint after it was dismissed with prejudice 'only by filing . . . a [Federal Rule of Civil Procedure] 59(e) motion to alter or amend the judgment combined with a [Federal Rule of Civil Procedure] 15(a) motion requesting leave of court to amend their complaint.'" Brink v. Cont'l Ins. Co., 787 F.3d 1120, 1128 (D.C. Cir. 2015) (quoting Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam)). Plaintiffs followed that procedure here, filing a combined Rule 59(e) and Rule 15(a)(2) motion requesting that the Court grant leave to amend. See Pls.' Mot. to Amend at 3.

Rule 59(e) motions to amend or alter a judgment provide "a limited exception to the rule that judgments are to remain final" and, because they "are aimed at 'reconsideration, not initial consideration,'" "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." Leidos, Inc. v. Hellenic Republic, 881 F.3d 213, 217 (D.C. Cir. 2018) (citations omitted). Instead, a Rule 59(e) motion may be granted "under three circumstances only: (1) if there is an 'intervening change of controlling law'; (2) if new evidence becomes available; or (3) if the judgment should be amended in order to 'correct a clear error or prevent manifest injustice.'" Id. (citation omitted).

3

Rule 15(a)(2), by contrast, is a flexible measure by which plaintiffs may request leave to amend their complaint. "The Supreme Court has explained that 'the grant or denial of an opportunity to amend [under Rule 15] is within the discretion of the District Court,' but leave to amend should be freely given '[i]n the absence of any apparent or declared reason—such as . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." In re McCormick & Co., Pepper Prods. Mktg. & Sales Practices Litig., 275 F. Supp. 3d 218, 224 (D.D.C. 2017) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

Because the Court may not consider leave to amend an inoperative complaint, the Court turns first to plaintiffs' Rule 59(e) motion seeking to alter or amend the Court's order dismissing plaintiffs' trust claims with prejudice.

## DISCUSSION

### I. THE COURT DID NOT "CLEARLY ERR" BY DISMISSING PLAINTIFFS' COMPLAINT WITH PREJUDICE

Plaintiffs assert that the Court committed "clear error" within the meaning of Rule 59(e) by dismissing plaintiffs' complaint with prejudice. Pls.' Mot. to Amend at 3–4. In Firestone, the D.C. Circuit instructed that "dismissal <u>with prejudice</u> is warranted only when a trial court 'determines that the allegation of other facts <u>consistent with the challenged pleading</u> could not possibly cure the deficiency.'" 76 F.3d at 1209 (second emphasis added) (citation omitted). And because dismissal with prejudice "operates as a rejection of the plaintiff[s'] claims on the merits and precludes further litigation of them," Rudder v. Williams, 666 F.3d 790, 794 (D.C. Cir. 2012) (alteration and citation omitted), the D.C. Circuit has since observed that the standard for dismissing a complaint with prejudice is "high," Brink, 787 F.3d at 1129.

4

According to plaintiffs, the Court failed to clear that high bar here, dismissing the FAC with prejudice absent any clear determination that plaintiffs "could not possibly cure the deficienc[ies]" in its trust claims. Pls.' Mot. to Amend at 4 (quoting Firestone, 76 F.3d at 1209). For their part, defendants respond that the Court met the Firestone standard because plaintiffs' trust claims were "predicated on whether the Wang Settlement created a charitable trust," and the Court's opinion was sufficiently clear that "new factual allegations" could not "change the plain language of the Wang Settlement, which disclaims any intention to create a charitable trust." Yahoo Defs.' Mem. of Law in Opp'n to Pls.' Mot. to Amend ("Yahoo Opp'n") [ECF No. 44] at 5.[4]

The Court agrees with defendants, conceiving of no additional allegations "consistent with" the FAC that might save plaintiffs' trust claims. As the Court's prior opinion explained, plaintiffs' trust claims were "founded on the proposition that [plaintiffs] are beneficiaries of [an] alleged charitable trust" established "through the Wang Settlement." Depu, 306 F. Supp. 3d at 187 (emphasis added). Indeed, plaintiffs' only theory for the existence of any trust relied on the language of the settlement agreement itself, the terms of which, plaintiffs claim, establish a charitable trust. See FAC ¶ 36 (alleging that "the terms [of the Wang Settlement agreement] included . . . the establishment of a $17.3 million trust fund for the benefit of . . . Plaintiffs" (emphasis added)).[5] But upon close review of the settlement agreement, the Court found that its terms "plainly" did not "manifest[] . . . an intent to create a trust," charitable or otherwise, both

---

[4] See also Defs. LRF's and LHRO's Mem. in Opp'n to Pls.' Mot. to Alter the J. and Pls.' Mot. to Amend the Compl. ("Laogai Opp'n") [ECF No. 45] at 8–10; Opp'n to Pls.' Rule 59(e) Mot. to Alter J. from Dismissal with Prejudice to Dismissal Without Prejudice, and Opp'n to Rule 15(a) Mot. for Leave to Amend [ECF No. at 46] at 2, 5.

[5] See also Pls.' Mem. of P & A in Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n to Defs.' MTD") [ECF No. 32] at 1–2, 10–12 (arguing that the Wang litigants "settled their lawsuit in exchange for . . . the establishment of a charitable trust" established "[p]ursuant to a confidential settlement agreement" and quoting provisions in the Wang Settlement as "evidencing intention to create a trust" (emphasis added)).

because language directing the creation of a trust is conspicuously "absent" from the Wang Settlement and because its terms contradict any such intention—for instance, by "expressly disclaim[ing]" third-party beneficiaries like plaintiffs and by clearly stating its intent to resolve finally all disputes arising from the 2007 Wang litigation (as opposed to creating a trust). See Depu, 306 F. Supp. 3d at 188–89. Having determined that "there is no trust," the Court necessarily concluded that plaintiffs' trust-based claims "must be dismissed." Id. at 187.[6]

Unlike a dismissal based on a complaint's omission of "certain essential facts," Belizan v. Hershon, 434 F.3d 579, 583 (D.C. Cir. 2006), the Court's rejection of the possibility that the Wang Settlement established any trust is inextricable from, and fatal to the premise of, plaintiffs' trust claims. Consequently, no set of additional facts can feasibly cure the FAC such that it would survive Rule 12(b)(6).

In reply, plaintiffs suggest that alleging the creation of a charitable trust through "conduct" might resuscitate their trust claims. Pls. Reply at 4. And the proposed SAC accomplishes just that, plaintiffs say, because the payments Yahoo made under the Wang Settlement, considered as conduct, are sufficient to "provide an independent basis for the existence of a charitable trust." Pls.' Mot. to Amend at 5; see id. at 5–8. But as already mentioned, plaintiffs' FAC was centrally predicated on alleging that the language in the Wang Settlement created a charitable trust, and

---

[6] The Court independently held that plaintiffs lack standing under charitable trust law principles and, as to six of seven plaintiffs, under Article III to enforce any purported charitable trust. Depu, 306 F. Supp. 3d at 189–191 & 9. "[J]urisdictional dismissal[s]" are generally not considered "adjudication[s] on the merits" and so the Court's dismissal under Article III does not on its own warrant dismissal with prejudice. Baltimore v. Pruitt, 293 F. Supp. 3d 1, 4 (D.D.C. 2017) (quoting Havens v. Mabus, 759 F.3d 91, 98 (D.C. Cir. 2014)). By contrast, the Court's finding that plaintiffs lack standing under charitable trust principles was, as plaintiffs acknowledge, on the merits, resting on the Court's finding that plaintiffs do not qualify for an exception to the general rule that only "a public officer" may enforce a charitable trust because they are merely possible members of an indistinct beneficiary class. Depu, 306 F. Supp. 3d at 189 (citation omitted); see also Reply Mem. in Supp. of Pls.' Mot. to Amend ("Pls.' Reply") [ECF No. 47] at 13 n.10 ("[C]haritable beneficiary standing is a merits question."). Nevertheless, because the Court can conceive of additional, "consistent," allegations that could plausibly cure that deficiency—for instance, allegations that one or more plaintiffs have some hitherto undisclosed "exceptionally close connection" to the purported trust, Depu, 306 F. Supp. 3d at 190—the Court concludes that its finding that plaintiffs lack standing to enforce any charitable trust does not independently warrant dismissal with prejudice of the trust claims.

instead of proposing "other facts consistent with" the FAC "cur[ing] [its] deficiency," Firestone, 76 F.3d at 1209, plaintiffs instead offer the same facts and a new legal theory.[7] "It cannot be the case," however, "that courts may dismiss with prejudice only when the allegation of any other legal theory consistent with the challenged pleading could not possibly cure the deficiency," because that "would require courts to essentially conduct legal research on behalf of plaintiffs and to potentially rewrite or contemplate the revision of their claims." Strumsky v. Wash. Post Co., 922 F. Supp. 2d 96, 106 (D.D.C. 2013); see also Jung v. Ass'n of Am. Med. Colls., 184 F. App'x 9, 12 (D.C. Cir. 2006) (affirming dismissal with prejudice where the court rejected "[t]he central premise of plaintiffs' complaint and its theory of liability" and where a "proposed amendment advancing [the dismissed] claims" on a new theory "would not be 'consistent with the challenged pleading'" (citing Firestone, 76 F.3d at 1209)).[8]

Hence, the Court's dismissal of plaintiffs' trust claims, as alleged, was "on the merits," Rudder, 666 F.3d at 794, and despite the "high" standard, the Court will find that its opinion

---

[7] The Court would also find plaintiffs' new theory—which repackages identical facts to support a largely similar legal argument—meritless, but that is not the question the Court must answer in this context; instead, at least for purposes of plaintiffs' Rule 59(e) motion, the Court must determine whether any additional, consistent, factual allegations, even if not in the proposed SAC, could have cured the defect. See Firestone, 76 F.3d at 1209; Belizan, 434 F.3d at 584. Nevertheless, courts frequently have affirmed dismissals with prejudice under the Firestone standard on the ground that a proposed complaint in fact failed to allege curative and consistent facts. See, e.g., Rollins v. Wackenhut Servs., Inc., 703 F.3d 122, 131 (D.C. Cir. 2012) (holding "Firestone standard is met" and affirming dismissal with prejudice where plaintiff "has not identified any alleged facts to cure the deficiencies in her complaint"); Belizan v. Hershon, 495 F.3d 683, 694 (D.C. Cir. 2007) (affirming dismissal of claim "with prejudice" when plaintiffs' amended complaint "merely offered to reallege the allegations of the [FAC], the insufficiency of which is the law of the case"). This Court similarly relies in part on specific failures of plaintiffs' proposed SAC to deny the Rule 59(e) motion, but defers a detailed analysis of those failures to the section denying, in the alternative, plaintiffs' Rule 15(a)(2) motion as futile. See infra Part II.

[8] Plaintiffs also argue that the Court's observation in its prior opinion that "Yahoo has never publicly or privately referred to the YHRF as a trust," Depu, 306 F. Supp. 3d at 188–89, suggests that the Court's dismissal of the trust claims "rested . . . on" writings and conduct outside the Wang Settlement. Pls.' Reply at 4. But that is not so. The Court was careful to state that "all of the claims that sound in trust will be dismissed" because "[u]ltimately, plaintiffs have not plausibly alleged that the Wang [S]ettlement created a charitable trust." Depu, 306 F. Supp. 3d at 189 (emphasis added). Moreover, the amended allegations must be consistent with plaintiffs' pleading, not with issues noted by the Court.

7

properly dismissed plaintiffs' trust claims with prejudice. The Court accordingly committed no "clear error" and will deny plaintiffs' Rule 59(e) motion to alter or amend the Court's judgment.

## II. PLAINTIFFS' PROPOSED SECOND AMENDED COMPLAINT IS FUTILE

Because the Court will deny plaintiffs Rule 59(e) motion, plaintiffs' complaint remains dismissed with prejudice and the Court may deny plaintiffs' Rule 15(a)(2) motion for leave to amend on that basis. Moreover, the Court would in any event deny plaintiffs' Rule 15(a)(2) motion. As the D.C. Circuit has explained, the Court "has discretion to deny a motion to amend on grounds of futility where the proposed pleading would not survive a motion to dismiss." In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 215 (D.C. Cir. 2010) (citation omitted). Here, plaintiffs' proposed SAC is futile because it fails to cure the trust claims' central deficiencies: that no charitable trust was established and that plaintiffs in any case have no standing to enforce any charitable trust.

To start, plaintiffs contend that "new factual allegations" and "objective indicators" provide an "independent basis" for finding that plaintiffs adequately alleged the creation of a charitable trust. Pls. Mot. to Amend at 5–8. Specifically, plaintiffs point to the transfer of funds to the LRF, that its purpose was to provide humanitarian assistance to imprisoned Chinese dissidents, that the funds were segregated for that purpose, and that Yahoo and others levied objections about the use of the funds. See id.

As an initial matter, beyond slight wording differences, the factual allegation that the Wang Settlement required transferring money to the LRF is not "new." See FAC ¶¶ 36 & n.3, 40 (alleging that "[p]ayments establishing the Trust were made . . . to the LRF" and the "purpose [of the trust was to] provid[e] humanitarian and legal aid to Chinese dissidents"); Pls.' Opp'n at 10 (contending "payments (i.e. trust property) were made 'in trust' . . . to the LRF (i.e. trustee) and

8

charitable beneficiaries and purposes were identified . . . that is all that is needed to allege a trust" (citation omitted)). And, except for substituting the words "YHR Fund" for "Trust assets," none of plaintiffs' "additional" objective indicators of an intention to create a trust are new either. Compare SAC ¶¶ 41–42, 107 (alleging as "new" facts evincing intent to establish a trust that "[**YHR Fund payments**] [were] 'maintained separately from other [LRF] funds,'" that a "portion of the **YHR Fund** was transferred to the LHRO," that Yahoo's then-General Counsel Ronald Bell and others "objected to LRF's use of **YHR Fund** assets," and that Yahoo's stated motive for payments to the **YHR Fund** was to "mak[e] sure [Yahoo's] actions match [its] values," not to settle claims) (emphasis added), with FAC ¶¶ 36 n.3, 40–41, 52–54, 94–100 & n.11 (alleging that "**Trust assets** be maintained separately from LRF's funds," Yahoo "orchestrated the transfer of some . . . [**Trust**] **assets**" into "a newly created non-profit corporation, the [LHRO]," General Counsel Bell and others "repeatedly and directly warned" that "**Trust assets** were being unlawfully depleted by . . . LRF," and that Yahoo's stated motive for spending "**Trust assets**" was to "mak[e] sure [Yahoo's] actions match [its] values," not to settle claims) (emphasis added).

Even if the Court viewed the identical facts through the new lens of "conduct" as plaintiffs propose, however, it would not be sufficient, without more, to establish a trust. Critically, despite plaintiffs' considerable emphasis on Yahoo's conveyance of funds to the LRF for a specific humanitarian purpose, they fail adequately to allege any intention to create a <u>trust</u> as opposed to an intention to settle claims and confer a benefit on society.[9] But "sometimes a person seeks to

---

[9] Plaintiffs cite authority for the proposition that a gift donated subject to a specific restriction "creates a charitable trust" entitling the donor "to enforce th[at] restriction" against the donee. Family Fed'n for World Peace v. Hyun Jin Moon, 129 A.3d 234, 247 n.20 (D.C. 2015) (first citing Restatement (Third) of Trusts § 28, cmt. a, and then citing id. § 94, cmt. g(3)). But that case does not change the Court's analysis. Unlike a donor offering a restricted gift, Yahoo contracted to pay LRF <u>in exchange</u> for settling its claims in the <u>Wang</u> litigation. Plaintiffs cite no authority (and the Court is aware of none) suggesting that contracted-for payments are analogous to a "restricted gift" for purposes of establishing a trust, especially considering the Court's finding that Yahoo "plainly" lacked any intention of doing so. See <u>Depu</u>, 306 F. Supp. 3d at 189. Moreover, even if the payments to the LRF and the creation of the YHRF were treated as restricted gifts creating a charitable trust, as plaintiffs suggest, only <u>Yahoo</u> would have a right

9

confer benefits on society by means other than through the use of a trust." See George G. Bogert et al., The Law of Trusts and Trustees § 324 (3d ed. 2017).[10] Accordingly, plaintiffs' proposed SAC remains futile for failure adequately to allege an intention to establish a charitable trust.

Even were the Court to assume that the proposed SAC sufficiently alleges a charitable trust, that would still not cure the FAC's independent deficiency—that plaintiffs lack standing to enforce any trust. As the Court has explained, given the "impossibility of establishing a distinct justiciable interest on the part of a member of a large and constantly shifting benefited class," the general rule is that "only a public officer . . . has standing" to enforce a charitable trust. Depu, 306 F. Supp. 3d at 189 (citing Family Fed'n, 129 A.3d at 244). And while courts have recognized two exceptions to that rule—finding standing when plaintiffs establish either a "special interest" in the putative trust or that they are "members of a 'small and distinct' beneficiary class"—the Court found that the FAC failed plausibly to allege that either exception applies here. Id. at 189–91 (emphasis added and citation omitted). Regarding the latter exception, the Court noted that the FAC's proposed class of beneficiaries, as defined by the Wang Settlement, "(1) includes individuals persecuted for expressing their views 'online' through 'Yahoo or another medium'; (2) is 'primarily,' but not exclusively, limited to individuals in China; and (3) is not temporally limited at all." Id. at 190 (citations omitted). Such a beneficiary class is "far more limitless and uncertain"

---

to enforce that restriction as the donor, not plaintiffs as possible donees. See Family Fed'n, 129 A.3d at 247 n.20 (noting that a "restricted gift . . . entitles the settlor to maintain a suit against the trustee-organization" (emphasis added and citation omitted)); Depu, 306 F. Supp. 3d at 189–91 (holding plaintiffs failed to plausibly allege any "special interest" sufficient to enforce any charitable trust).

[10] Plaintiffs also attempt to relitigate the language used in the Wang Settlement, insisting that it can be construed to reflect an intention to establish a charitable trust. See Pls.' Mot. to Amend at 10–13 & nn.9–10. But in doing so, plaintiffs offer no proposed amendment to the FAC and—reflecting the reality that no such amendment can cure the FAC's deficiency—instead use Rule 15(a)(2) effectively as a chance to appeal the Court's ruling, doubling-down on the same already-rejected arguments.

than any class courts have found sufficiently discrete, the Court held, and so not sufficiently small or sharply defined to establish charitable trust standing. See id.

Plaintiffs argue that the proposed SAC cures that deficiency by "includ[ing] plausible, non-conclusory allegations that the beneficiary class consists of between 800 and 1,200 individuals, which is indisputably small enough for charitable beneficiary standing." Pls.' Mot. to Amend at 14. Specifically, the proposed SAC alleges that the putative trust is intended only "to benefit: (1) Chinese persons (2) who are imprisoned in China (3) for exercising their freedom of expression (4) online," and that plaintiffs' query of a database maintained by the U.S. Congressional-Executive Committee on China ("CECC") for Chinese prisoners yields a "conservative estimate" of 800 to 1,200 individuals meeting those criteria. See SAC ¶¶ 136–44 (emphasis added).

But the relevant expression of an intent to benefit a particular, defined, group remains the language in the Wang Settlement creating the YHRF, see SAC ¶ 41, and plaintiffs cite nothing in that document to support their conclusory allegation that putative charitable beneficiaries are limited to the (slightly) narrower parameters they propose. Instead, as defendants point out, "[p]laintiffs simply ignore the Court's finding that the proposed class, as defined by the Wang Settlement language upon which [p]laintiffs rely," is neither exclusively limited to Chinese individuals nor temporally limited. Laogai Opp'n at 5–6 (emphasis added); see Yahoo Opp'n at 9. Indeed, just as with the FAC, the proposed SAC does not allege that the intended beneficiaries are limited to Chinese dissidents imprisoned in China, as plaintiffs themselves acknowledge. See Pls.' Reply at 14 ("[T]he [Wang] Settlement Agreement . . . mak[es] clear that the YHR Fund was intended to 'primarily'"—but not exclusively—"benefit imprisoned dissidents 'in or from . . . China.'").

Moreover, even if the SAC did plausibly allege that Yahoo intended to benefit only "Chinese persons . . . imprisoned [in China] . . . for exercising their freedom of expression . . . online," SAC ¶ 136, such a beneficiary class remains "limitless and uncertain," Depu, 306 F. Supp. 3d at 191, as it is both temporally boundless and reliant on the estimate of an organization that itself acknowledges its information is incomplete and unreliable.[11]

Finally, plaintiffs separately argue that the proposed SAC avoids futility "because it asserts a [new] standalone claim for the imposition of a constructive charitable trust." Pls.' Mot. to Amend at 14–16; see SAC ¶¶ 167–68. But that argument is meritless. The imposition of a constructive trust is an equitable remedy, not a separate cause of action. See Ross v. Hacienda Co-op., Inc., 686 A.2d 186, 191 (D.C. 1996); Gray v. Gray, 412 A.2d 1208, 1210 (D.C. 1980); Alemayehu v. Abere, 199 F. Supp. 3d 74, 87 (D.D.C. 2016) ("[A] constructive trust is not an independent cause of action.").

Because plaintiffs' proposed amendments would be futile for the reasons explained, the Court will thus deny plaintiffs' motion to amend under Rule 15(a)(2).

## CONCLUSION

For the foregoing reasons, and upon consideration of plaintiffs' motions, the parties' briefing, applicable law, and the entire record herein, plaintiffs' motions to alter or amend the judgment and for leave to amend the complaint will be denied. A separate order will issue.

---

[11] See PPD Frequently Asked Questions (FAQs), Congressional-Executive Commission on China, https://www.cecc.gov/ppd-frequently-asked-questions-faqs (last visited Sep. 12, 2018) ("Reliable up-to-date information about Chinese political prisoners is not easy to acquire. The Chinese government generally does not provide information on such prisoners . . . . By necessity, therefore, much of the prisoner information in the [CECC's political prisoner database] is unofficial. The content of unofficial reports varies widely. . . . [A]s a result of the difficulty of obtaining information, reports may be incomplete, flawed, or contradictory, and sometimes represent informed conjecture.").

$$\text{/s/}$$
JOHN D. BATES
United States District Judge

Dated: September 24, 2018