# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

HE DEPU *et al.*,

    *Plaintiffs*,

v.

OATH HOLDINGS, INC. *et al.*,

    *Defendants*.

Civil Action No. 17-635 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiffs are Chinese citizens who were imprisoned for expressing dissent on the internet. Although this case has been pending for over four years (including a trip to the D.C. Circuit), Plaintiffs now move for a preliminary injunction barring the Laogai Research Foundation and the Laogai Human Rights Organization (the "Laogai Defendants") from spending any remaining portion of the $17.3 million Yahoo! Human Rights Fund on any purpose other than providing humanitarian and legal assistance to Chinese dissidents imprisoned for online dissent. Dkt. 107; Dkt. 110. On October 29, 2021, the Court will hold an evidentiary hearing on the threshold question whether the settlement in *Wang v. Yahoo! Inc.* created an irrevocable charitable trust. Minute Order (June 10, 2021). The Laogai Defendants represent that, if the Court grants Plaintiffs' motion, they will be unable to pay counsel to prepare for and to appear at the hearing and that a preliminary injunction will, in effect, end the litigation against them, before the Court can decide the pivotal issue in the case.

Because the Court concludes that Plaintiffs have failed to demonstrate that they will suffer irreparable harm before the Court resolves that question, because the balance of equities

1

do not favor granting immediate relief, and because the law favors final adjudication of cases on a complete record, the Court will **DENY** the motion.

## I. BACKGROUND

Because this Court and the D.C. Circuit have previously described the relevant background of the case at length, *see He Depu v. Yahoo! Inc.*, 306 F. Supp. 3d 181 (D.D.C. 2018) (*"Depu I"*); *He Depu v. Yahoo! Inc.*, 334 F. Supp. 3d 315 (D.D.C. 2018) (*"Depu II"*), *rev'd and remanded*, 950 F.3d 897 (D.C. Cir. 2020) (*"Depu III"*); *He Depu v. Oath Holdings, Inc.*, --- F. Supp. 3d ---, 2021 WL 1110845 (D.D.C. Mar. 22, 2021) (*"Depu IV"*), the Court will summarize the facts only as relevant to the pending motion.

In April 2007, two imprisoned Chinese dissidents sued Yahoo for allegedly violating federal and state law by turning their online communications over to Chinese authorities, which contributed to their arrests. As part of a settlement agreement, Yahoo agreed to pay $17.3 million to the Laogai Research Foundation (the "LRF") for the establishment of a "Yahoo! Human Rights Fund" (the "Fund"). Dkt. 113-5 at 3. The agreement required that the money be kept "separately from other Foundation funds" and used for only three purposes:

> (a) to provide humanitarian and legal assistance primarily to persons in or from the People's Republic of China who have been imprisoned for expressing their views through Yahoo! or another medium; (b) to resolve claims primarily by such persons, or persons threatened with prosecution or imprisonment, against the Yahoo! Entities . . . ; and (c) for payment of [LRF] operating expenses and the [LRF's] educational work conducted in the United States in support of human rights.

*Id.* at 4.

In 2017, Plaintiffs filed this suit against Yahoo and other defendants, including the LRF and the Laogai Human Rights Organization, which currently control the remaining Fund assets. *See* Dkt. 1. Plaintiffs claim that the settlement agreement created a charitable trust and that

Defendants are its trustees. *See* Dkt. 64 at 4 (2d Am. Compl. ¶ 1). They further allege that Defendants violated their fiduciary duties by improperly depleting the trust's assets and, ultimately, terminating the trust's humanitarian and legal assistance program altogether in 2009. *Id.* at 56–57 (2d Am. Compl. ¶¶ 170–77). In 2018, this Court dismissed the complaint, holding that (1) Plaintiffs failed to plausibly allege that the 2007 settlement agreement established a charitable trust under D.C. law, *Depu I*, 306 F. Supp. 3d at 187–89, and (2) Plaintiffs failed to establish that they had standing required to enforce the alleged trust, *id.* at 189–91. The D.C. Circuit reversed, holding that "the complaint in this case plausibly alleges both that Yahoo created a charitable trust and that [P]laintiffs' 'special interest' in the trust is sufficient to give them standing to enforce it." *Depu III*, 950 F.3d at 901. On remand, this Court granted in part and denied in part Defendants' motion to dismiss Plaintiffs' second amended complaint. *Depu IV*, 2021 WL 1110845, at *1.

The parties agree that a central—and, perhaps, *the* central—question in this case is whether the 2007 settlement agreement created an irrevocable charitable trust. To streamline the case, the Court, accordingly, scheduled an evidentiary hearing for October 29, 2021, to address that threshold question. *See* Minute Order (June 10, 2021). But, even before the parties completed discovery on that question, Plaintiffs moved for a preliminary injunction, seeking to enjoin the Laogai Defendants from "spending any remaining monies traceable to the $17.3 million Fund that they control on anything other than humanitarian and legal assistance to Chinese dissidents imprisoned for online dissent." Dkt. 110 at 7. In response, the Laogai Defendants argue that "[t]he consequences of the proposed injunction" would be "grave[]": "virtually all of the assets of LRF would be frozen," "its operations would be paralyzed," and it

3

"would be placed at risk of default in the present case and be placed in legal jeopardy with both the D.C. Attorney General . . . as well as the IRS." Dkt. 113 at 29.

The Court held a hearing on Plaintiffs' motion on September 8, 2021. At that time, the parties agreed to try to negotiate a compromise, such as an agreed-upon limit on the Laogai Defendants' spending of Fund assets during the pendency of this suit—or at least over the next several weeks, while the Court decides whether the settlement created a charitable trust. *See* Dkt. 118 at 53–61. On September 16, the parties informed the Court that discussions were "fruitful," but that they needed more time to complete their negotiations. Dkt. 117 at 1. On September 23, however, the parties reported that they were unable to reach an agreement. Dkt. 119 at 1. The motion is thus now ripe for consideration.

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), but "only when the party seeking the relief, by a clear showing, carries the burden of persuasion," *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). To secure a preliminary injunction, a plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20.

Before the Supreme Court's decision in *Winter*, the D.C. Circuit applied a "sliding-scale" approach to the preliminary injunction analysis under which "a strong showing on one factor could make up for a weaker showing on another." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011). Since *Winter*, however, the court of appeals has "suggested, without deciding, that *Winter* should be read to abandon the sliding-scale analysis in favor of a 'more demanding

4

burden' requiring a plaintiff to independently demonstrate both a likelihood of success on the merits and irreparable harm." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 205 F. Supp. 3d 4, 26 (D.D.C. 2016) (quoting *Sherley*, 644 F.3d at 392–93); *see also Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018) (observing that *Winter* may be "properly read to suggest a 'sliding scale' approach to weighing the four factors be abandoned").

Regardless of whether the sliding scale approach survives *Winter*, Plaintiffs cannot prevail unless they show that irreparable harm would likely occur in the absence of a preliminary injunction. *Navajo Nation v. Azar*, 292 F. Supp. 3d 508, 512 (D.D.C. 2018); *see also Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). "[A] showing that irreparable injury is 'likely' is the *sine qua non* for obtaining a preliminary injunction." *Cal. Ass'n of Priv. Postsecondary Schs. v. DeVos*, 344 F. Supp. 3d 158, 167 (D.D.C. 2018) (quoting *Achagzai v. Broad. Bd. of Governors*, No. 14-cv-768, 2016 WL 471274, at *3–4 (D.D.C. Feb. 8, 2016)). Moreover, "a mere 'possibility' of irreparable harm will not suffice." *Id.* (quoting *Winter*, 555 U.S. at 22). As the D.C. Circuit "has said time and again," "the degree of proof required for 'irreparable harm' is 'high,' and . . . a failure to surmount it provides 'grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Olu-Cole v. E.L. Haynes Pub. Charter Sch.*, 930 F.3d 519, 528 (D.C. Cir. 2019) (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297).

### III. ANALYSIS

A preliminary injunction is not a garden-variety tool for expediting litigation; it is an extraordinary, equitable remedy limited to those rare occasions when waiting for a full adjudication on the merits is too late. For this reason, irreparable injury is the *sine qua non* for

5

obtaining a preliminary injunction. Because Plaintiffs have failed to clear this necessary hurdle, the Court begins its analysis with that question. And although the answer to that question is sufficient to resolve the pending motion, the Court will also briefly address the balance of hardships, which—at least this stage of the proceeding—tips decidedly against granting Plaintiffs' motion. Finally, given these conclusions, the Court need not address Plaintiffs' likelihood of success on the merits, and it declines to do so just a month before the parties will have the opportunity to call witnesses and to present evidence at a hearing the Court scheduled months ago.

Plaintiffs' theory of irreparable injury is straightforward: this is an action brought to prevent the waste and diversion of trust assets from one of the alleged trust's essential purposes—providing humanitarian and legal assistance to persons in or from China who have been imprisoned for expressing their views on the internet. But, absent a preliminary injunction, Plaintiffs' efforts may all be for naught. The Laogai Defendants, according to Plaintiffs, "have *already* spent the bulk of the monies traceable to the Fund, and have no apparent intention of stopping." Dkt. 110 at 27. Therefore, "absent an injunction requiring [the Laogai Defendants] to spend [Fund] assets only on the trust's humanitarian purpose, a post-litigation judgment requiring them to pay damages to that purpose is likely to be an empty victory." *Id.* at 28. As explained below, the Court is unpersuaded.

To start, given the present posture of the case, the question presented by Plaintiffs' motion is a narrow one. We are now a month away from an evidentiary hearing on a potentially dispositive issue, *see, e.g.*, Dkt. 118 at 10 (statement of defense counsel) ("[I]f there is no trust, I think the case is likely over. But if there is a trust, . . . the issues can be narrowed significantly."), and, after the Court resolves that issue, Plaintiffs will be free to renew their

6

motion for preliminary relief. As a result, all that the Court must decide is whether permitting the Laogai Defendants to continue to expend funds to prepare for and to participate in that proceeding, and to cover day-to-day operating expenses for the next several weeks, will cause Plaintiffs irreparable harm. The Laogai Defendants have represented on the record and in a manner that the Court will treat as binding, however, that their expenditures for attorney fees and other operating expenses are limited to $250,000 per quarter (or roughly $60,000 per month). Dkt. 118 at 22–23. They have also represented that more than $6 million remains in the Fund. Dkt. 118 at 20. It is therefore likely that Defendants will spend—at most—roughly $120,000 in Fund assets between now and when the Court decides the trust question. In other words, absent a preliminary injunction, the Laogai Defendants will likely spend up to 2% of the remaining Fund assets before a central question in this case is resolved.

Plaintiffs have not shown that such a marginal diminution of Fund assets is sufficient to establish irreparable harm, and their reliance on *Sprint Solutions, Inc. v. Mobile Now, Inc.*, No. 19-3752, 2020 WL 136285 (D.D.C. Jan. 13, 2020), is misplaced. In that case, Sprint sought to recover $11.2 million that it had allegedly wired to Mobile Now by mistake. *Id.* at *2. After Mobile Now spent $7 million of the funds, Sprint moved for a preliminary injunction to prevent Mobile Now from dissipating the remainder while the parties engaged in arbitration. *Id.* at *1. In granting Sprint's motion, the Court held that Sprint had demonstrated "irreparable harm absent an injunction because Mobile Now [would] continue to dissipate the $11.2 million and Sprint [would] be unable to recover the funds later." *Id.* at *7.

*Sprint* is distinguishable in at least three respects. First, and foremost, the finding of a likelihood of irreparable injury in *Sprint* was premised on the principle that "monetary loss is an irreparable harm 'where the defendant would become insolvent or otherwise judgment-proof

7

prior to the conclusion of litigation[,] . . . thus making the plaintiff's alleged damages unrecoverable.'" *Id.* at *8 (quoting *Carabillo v. Ullico Inc. Pension Plan & Tr.*, 355 F. Supp. 2d 49, 55 (D.D.C. 2004)). In that case, Mobile Now was at a high risk of insolvency, and it told the Court that "it was quickly dying as a viable business," had "terminated . . . approximately 470 employees," and that it would be shutting down all of its commercial outlets. *Id.* at *7 (quotation marks omitted). Here, in contrast, Plaintiffs have not shown—or even suggested—that the Laogai Defendants are at risk of insolvency over the next several weeks. To the contrary, the Fund will expend only a small portion of its existing assets during that period, leaving the Fund not only solvent but in almost the same financial position that it is in today.

Second, the *Sprint* Court reasoned that Mobile Now had no other assets that it could use to pay a judgment against it, apart from "choses in action . . . with real world value in excess of $11 million." *Id.* (quotation marks omitted). The Court found that it was "not in a position to assess Mobile Now's chances" of prevailing in those suits "and the likelihood that it [would] obtain net damages in excess of $11 million." *Id.* Here, in contrast, counsel for the Laogai Defendants represented on the record that (1) $3 million of the $6 million in remaining Fund assets are held in equity in a property in Washington, D.C., and (2) the Laogai Defendants do not intend to sell that property. Dkt. 118 at 20. Nor do Plaintiffs need to rely on counsel's representation alone; Plaintiffs have filed a notice of *lis pendens* against that property, which, at least according to the Laogai Defendants, serves as "protection from dissipation of the [F]und." Dkt. 113 at 11.

Finally, the Court in *Sprint* held that "the unrecoverable loss of $11.2 million . . . also threaten[ed] the integrity" of the ongoing arbitration by creating the risk of a "hollow formality." *Sprint*, 2020 WL 136285, at *8. Here, unlike in *Sprint*, no such threat exists.

8

Of course, it is possible that the parties will continue litigating this case after the Court decides the trust question, in which case the Laogai Defendants will likely spend more than 2% of the remaining Fund assets before this suit is over. If the litigation continues for another six months, for example, the Laogai Defendants could spend another $500,000 on day-to-day operations and this litigation. It is far from clear that even such a diminution in Fund assets would support the preliminary relief requested. To obtain such relief, Plaintiffs would need to show, for example, that they are likely to obtain a judgment in excess of the $5.5 million in assets that the Laogai Defendant would still have. But Plaintiffs have not made that showing yet, and, in any event, the question is for another day—after the Court decides whether the settlement established an irrevocable charitable trust and, in light of that decision and circumstances as they then exist, after Plaintiffs decide whether to renew their motion for preliminary relief. For present purposes, it is sufficient to hold that Plaintiffs will suffer no irreparable injury over the next several weeks. *Cf. Sprint*, 2020 WL 136285, at *7 (holding that the plaintiff had demonstrated irreparable harm because there was "more than a strong indication that the defendant [would] dissipate" the remaining assets (quotation marks omitted)).

The Court, accordingly, concludes that Plaintiffs have failed to carry their burden of demonstrating that they will suffer imminent and irreparable injury in the absence of preliminary injunctive relief, and, on that basis, the Court will deny Plaintiffs' motion. Two further points, however, bear brief discussion.

First, the Court notes that the balance of hardships—although not a dispositive factor standing alone—weighs heavily against granting Plaintiffs injunctive relief at this point in the litigation. For one thing, the case is over four years old, yet this is the first time Plaintiffs have sought such urgent relief. To be sure, Plaintiffs were in no position to do so after the Court

dismissed the complaint and before the D.C. Circuit reversed that decision. But over eighteen months have passed since Plaintiffs prevailed on the appeal to the D.C. Circuit, and Plaintiffs did not move for a preliminary injunction until recently. It seems likely that the Fund expended a great deal more during the period preceding Plaintiffs' motion than it will expend over the next few weeks. Even more importantly, however, the injury that a preliminary injunction would cause the Laogai Defendants far outweighs the injury that Plaintiffs are likely to suffer in the absence of relief in the short term.

The Laogai Defendants concede that the Fund assets, which they view as the Laogai Human Rights Organization's "unfettered property," Dkt. 113 at 9, are being used to pay for "legal counsel and accountants," employee salaries, "loan commitments," and vendors, *id.* at 29. An injunction of the scope proposed by Plaintiffs would therefore "paralyze[]" the Laogai Defendants, putting them "at risk of default in the present case" over four years into the litigation, and just weeks before the Court expects to decide whether the settlement established a charitable trust. *Id.* at 7, 23. The potential harm to the Laogai Defendants is, therefore, extreme, and much more significant than the harm Plaintiffs may suffer—a small potential diminution in the assets that would be available to satisfy a judgment, if any—if the Laogai Defendants continue to spend limited funds over the next several weeks. The Court recognizes that it could issue a narrow injunction by, for example, limiting the Laogai Defendants' spending of Fund assets to legal fees (subject to a cap) and other necessary operating costs such as insurance. But, given the Laogai Defendants' representations on the record that they are already precluded from spending more than $250,000 per quarter, Dkt. 118 at 22–23, the Court is unpersuaded that a narrow injunction (in which the Court might quibble with this amount) would serve a significant purpose.

This, then, leads to the second point that further animates the Court's decision. The factual record before the Court today is—to put it mildly—underdeveloped. But, were the Court to follow the path that Plaintiffs urge, the Court would need to decide, based on that record, whether Plaintiffs are likely to prevail on the merits. And, if the Court were to decide that they are, and if it were to grant the broader preliminary injunction that Plaintiffs seek, it would likely have the effect of terminating the litigation as far as the Laogai Defendants are concerned. Unable to pay for a defense, they would have little choice but to default. In the Court's view, that is a far from optimal outcome, particularly given that the parties have taken discovery on the question whether a trust exists and are prepared to present their evidence to the Court in the next month or so. Under these circumstances, the truth-seeking function of the Court would be better served by waiting to hear that evidence and to decide whether a trust exists on a complete record. If the Court concludes that a trust exists, the parties can discuss amongst themselves whether that decision requires some greater oversight of the Fund's assets pending final judgment, and, if they are unable to reach accord, Plaintiffs can return to the Court for appropriate relief, if any.

## IV. CONCLUSION

For the reasons stated above, it is hereby **ORDERED** that Plaintiff's motion for preliminary injunction, Dkt. 107, is **DENIED**.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: September 27, 2021