UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HE DEPU, *et al*.,<br><br>      Plaintiffs,<br><br>  v.<br><br>OATH HOLDINGS, INC., *et al*.,<br><br>      Defendants. | No. 1:17-0635-RDM<br><br>Judge Randolph D. Moss |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PRIVILEGE CLAIMS
REGARDING CERTAIN OF YAXUE CAO-RITTER'S DOCUMENTS**

I.   **FACTUAL BACKGROUND**

Plaintiff He Depu[1] is a pro-democracy activist who spent years in prison in the People's Republic of China based in part on evidence obtained from his Yahoo email account. Declaration of He Depu ("He Decl.") ¶¶ 2-4. Mr. He was also one of the initial beneficiaries of the Yahoo Human Rights Fund's humanitarian purpose. *Id.* ¶ 5.

After his 2011 release, Mr. He became aware of concerns that the Fund was being mismanaged and abused, and that Yahoo knew about these problems but was not doing anything about them. *Id.* ¶ 6. By 2015, Mr. He resolved to address these concerns. Based on his understanding that the Fund was meant to benefit Chinese dissidents imprisoned based on evidence from their Yahoo accounts, he contacted persons fitting that profile. *Id.* ¶ 7.

In July 2015, seven such persons, led by Mr. He, wrote a letter to Yahoo demanding transparency and accountability regarding the Fund. Declaration of Times Wang ("Wang Decl.") Ex. A (email transmitting letter).[2] Six became become plaintiffs in this action, and five—Mr. He, Wang Jinbo, Li Dawei, Xu Yonghai, and Ouyang Yi—remain such. Mr. He asked a friend in California to mail the letter, which the friend did. He Decl. ¶ 8. Mr. He also asked the friend to help find a lawyer, but was told that would be more difficult. *Id.*

Around November 2015, having failed to hear from Yahoo, Mr. Wang contacted Yaxue Cao-Ritter over Twitter. *Id.* ¶¶ 9-10. Neither Mr. Wang nor any of the others knew Ms. Cao, but they knew of her work and website, ChinaChange.org, which focused on English-language content relating to Chinese human rights issues, often translated from Chinese. *Id.* ¶ 10; Cao Decl. ¶¶ 3-4.

After being introduced by Mr. Wang, Mr. He and Ms. Cao began communicating regularly,

---

[1] Per Chinese custom, family names come before given names.
[2] This document was produced to defendants and no privilege claim is made over it.

1

including over Skype. He Decl. ¶ 11; Cao Decl. ¶ 5. Mr. He asked Ms. Cao if she would translate their letter into English and publish it on her website. He Decl. ¶¶ 11-12; Cao Decl. ¶¶ 5-7. He also asked her to help find a lawyer, and to generally advance his efforts given that neither he nor any of the other would-be plaintiffs knew how to navigate the United States, where the Fund was located. He Decl. ¶¶ 12-13; Cao Decl. ¶ 8. Ms. Cao, having been persuaded by the justness of their cause, and having previously already chosen to devote her skills to helping Chinese human rights activists, agreed to do so, and on a volunteer basis. Cao Decl. ¶¶ 8-10.

Soon after, on behalf of the plaintiffs, and with their consent, Ms. Cao contacted the lawyer who'd filed the 2007 lawsuit that had led to the creation of the Fund in the first place, Morton Sklar.[3] Cao Decl. ¶ 9. She obtained Mr. Sklar's advice on how the plaintiffs should proceed, and conveyed that advice to them. He Decl. ¶ 13; Cao Decl. ¶ 9-10. Ms. Cao also helped them investigate and analyze the Fund's publicly available tax filings, which were only available in English. He Decl. ¶ 13; Cao Decl. ¶¶ 8-10. Around the same time, the plaintiffs created a Google Group with the address "tosueyahoo@googlegroups.com" dedicated to their efforts, and made Ms. Cao a member of the group. He Decl. ¶ 14; Cao Decl. ¶ 11.

Through 2016, and at plaintiffs' behest, Ms. Cao continued to search for lawyers willing to sue, as Mr. Sklar was unable to litigate the actual lawsuit. Ms. Cao initially found a firm called Lavin Puig PLLC, before being introduced to current counsel, Times Wang, in December 2016, who was then an associate at Cohen Milstein Sellers & Toll PLLC. Cao Decl. ¶ 12. In 2016, Ms. Cao also executed written agency agreements with the plaintiffs. *Id*.

---

[3] The privilege log includes Ms. Cao's communications with lawyers on plaintiffs' behalf, and asserts, among other things, attorney-client privilege over those items. Counsel for Ms. Cao has pointed out that fact on numerous occasions, and defendants have not responded. Thus, defendants apparently do not challenge the privilege log's assertions of attorney-client privilege.

Also in early 2016, plaintiffs and Ms. Cao agreed in writing that Ms. Cao was acting as their agent and translator on a volunteer basis, and in her personal capacity (as opposed in her capacity as the head of ChinaChange.org). He Decl. ¶ 17; Cao Decl. ¶ 12. They also agreed in writing that their main goal was not to obtain damages payable to the plaintiffs personally, but to the Fund's humanitarian purpose as a whole. He Decl. ¶ 18; Cao Decl. ¶ 11. All this was confirmed in the recent deposition of plaintiff Ouyang Yi. *E.g.*, Wang Decl. Ex. B at 78:16-18 ("I was one of the … people that agreed that we need to find someone that … [is] bilingual and also act as our agent … and can do interpretation or translation and also can help us to find a lawyer.")

II.   ARGUMENT

    A.   **Ms. Cao was and remains plaintiffs' agent.**

D.C. law has "established a twofold test for determining whether . . . a[n] agency relationship exists: First, the court must look for evidence of the parties' *consent* to establish a principal-agent relationship. Second, the court must look for evidence that the activities of the agent are subject to the principal's *control*." *Jackson v. Loews Washington*, 944 A.2d 1088, 1097 (D.C. 2008) (emphasis in original).

Here, both elements are met. There can be no reasonable dispute that plaintiffs and Ms. Cao consented to the establishment of an agency relationship between them. Mr. He contacted Ms. Cao to ask for her help pursuing the allegations that led to this lawsuit on behalf of himself and the other plaintiffs, and she agreed in writing. There can also be no reasonable dispute that Ms. Cao's actions were subject to the plaintiffs' control. At every step, Ms. Cao sought and obtained the plaintiffs' permission before proceeding. She never took any significant action on their behalf without doing so. None of this would have been necessary had Ms. Cao been acting on her own behalf. Thus, at all relevant times, Ms. Cao was plaintiffs' agent.

3

B.    **Ms. Cao's documents were prepared in anticipation of litigation.**

Under Rule 26(b)(3), "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." The litigation "need not be imminent or certain[.]" *Hertzberg v. Veneman*, Civil Action No. 01-2494 (PLF), at *1 (D.D.C. July 28, 2003). Nor need there be a "specific claim" contemplated. *In re Sealed Case*, 146 F.3d 881, 887 (D.C. Cir. 1998). Rather, material is prepared "in anticipation of litigation" if the preparer "had a subjective belief that litigation was a real possibility, and that belief . . . [was] objectively reasonable." *Id.* at 884.

That standard is met here. Mr. He's 2015 letter made demands arising out of Yahoo's alleged role in Mr. He's imprisonment, as well as alleged mismanagement of the Fund. Mr. He tried to find a lawyer to represent him regarding such perceived misconduct. Ms. Cao was aware of those allegations. She contacted Mr. Sklar on Mr. He's behalf to discuss, among other things, bringing a lawsuit. Thus, Ms. Cao had a subjective belief that litigation was a real possibility.

That belief was objectively reasonable. Mr. He has not sued Yahoo over its role in his imprisonment but the 2007 lawsuit proves the objective reasonableness of the belief that such a lawsuit might be filed (as does a 2020 lawsuit over similar issues). *See generally Ning Xianhua v. Oath Holdings, Inc.*, 20-cv-6185 (N.D. Cal.). That belief was also objectively reasonable as to allegations of mismanagement of the Fund. After all, those allegations led to the filing of this action. Thus, Ms. Cao's documents were prepared in anticipation of litigation.

C.    **Rule 26(b)(3)'s drafters intended that it apply to persons like Ms. Cao.**

Before 1970, it had "always been clear that 'documents and tangible things prepared by or for the attorney of the party from whom discovery is sought are within the qualified immunity given to work product, so long as they were prepared in anticipation of litigation or preparation

4

for trial[.]'" *Hertzberg v. Veneman*, No. 01-2494 (PLF), at *1 (D.D.C. July 28, 2003) (quoting 8 Charles Alan Wright, Arthur R. Miller, Richard L. Marcus, Federal Practice and Procedure § 2024 at 359 (3d ed. 1994)). However, according to the notes of the Advisory Committee for the 1970 amendments to the Federal Rules of Civil Procedure, "[t]he courts [were] divided as to whether the work-product doctrine extends to the preparatory work only of lawyers." *Goff v. Harrah's Operating Co.*, 240 F.R.D. 659, 660 (D. Nev. 2007).

To resolve this split, the 1970 amendments enacted Rule 26(b)(3), which "'expressly extended protection to documents prepared by or for a representative of a party, including his agent,' *regardless of whether the agent is an attorney*." *Hertzberg*, No. 01-2494 (PLF), at *1 (D.D.C. July 28, 2003) (emphasis in original) (quoting Wright, Miller, and Marcus at 361) (cleaned up). "Under the amended Rule, 'materials prepared by *any* representative of the client are protected, regardless of whether the representative is acting for the attorney,' so long as they were clearly prepared in anticipation of litigation." *Id.* (emphasis in original). *See also, e.g.*, *S.D. Warren Company v. Eastern Electric Corporation*, 201 F.R.D. 280, 283 (D. Me. 2001) ("courts have preferred to interpret Rule 26(b)(3) literally, giving work product protection to all materials actually compiled in anticipation of litigation, not just to those created by or for attorneys").

Given all this, there can be no real dispute that Ms. Cao may rely on Rule 26(b)(3). That she was not an attorney and was not always working at one's direction is of no importance.[4]

### III.   CONCLUSION

The law and evidence admit of only one conclusion: Rule 26(b)(3) applies to all of Ms. Cao's documents and communications prepared in anticipation of litigation on plaintiffs' behalf.

---

[4] Defendants have not argued to plaintiffs that the requirements of Rule 26(b)(3)(i)-(ii) are met so they are not addressed here.

Dated: February 2, 2023                              Respectfully submitted,

**NORTH RIVER LAW PLLC**
*/s/ Times Wang*
Times Wang (D.C. Bar 1025389)
1300 I Street NW, Suite 400E
Washington, DC 20005
Telephone: (202) 838-6489
twang@northriverlaw.com

**SLARSKEY LLC**
David Slarskey (admitted *pro hac vice*)
Evan Fried (admitted *pro hac vice*)
420 Lexington Ave., Suite 2525
New York, NY 10170
Telephone: (212) 658-0661
dslarskey@slarskey.com
efried@slarskey.com

*Counsel for plaintiffs*