UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HE DEPU, *et al.*,<br><br>      Plaintiffs,<br><br>    v.<br><br>OATH HOLDINGS, INC., *et al.*,<br><br>      Defendants. | No. 1:17-0635-RDM<br><br>Judge Randolph D. Moss |

**PLAINTIFFS' OPPOSITION TO THE LAOGAI RESEARCH FOUNDATION'S MOTION TO CANCEL *LIS PENDENS***

  The Laogai Research Foundation's motion to cancel the *lis pendens* should be denied. Dkt. 178. The *lis pendens*, available at Dkt. 179-1, is valid under D.C. law because: (1) this action "directly affects" title to the building, and specifically equitable title, which is "directly at issue" in this action, D.C. Code §§ 42–1207(b) and (j); and because (2) Plaintiffs are asserting, under trust law, both an equitable "lien" on the building, as well as a direct "ownership interest" in it, within the meaning of D.C. Code § 42–1207(b).

  **A.** **The requirements set forth in D.C. Code § 42–1207(b) and (j).**

  D.C. Code § 42–1207(b) provides that a *lis pendens*—that is, notice of pendency of action—may be recorded, and will be effective, "if the underlying action or proceeding directly affects the title to … or asserts a … lien … or other ownership interest in real property situated in the District of Columbia," and if certain other requirements not relevant here are met. Meanwhile, D.C. Code § 42–1207(j) provides that the "provisions of subsection … (b) … shall not be construed to apply where the title to or interest in the real property affected by the notice is not directly at issue in the underlying action or proceeding."

1

This lawsuit satisfies all these elements.

### B. This action "directly affects" equitable title to the building, which is also "directly at issue" because the LRF disputes that title is divided.

"The fundamental nature of a trust is the division of title, with the trustee being the holder of legal title and the beneficiary that of equitable title." Am. Jur. 2d Trusts § 1 (2005). Here, Plaintiffs assert that the building is subject to a trust. *E.g.*, Dkt. 164-3, ¶ 73 (alleging that the LRF "spen[t] a substantial portion of Trust assets for their own benefit, this time to purchase a $2 million building"); *Chiquita Fresh N. Am., LLC v. Fierman Produce Exch. Inc.*, 198 F. Supp. 3d 171, 203 (E.D.N.Y. 2016), adhered to, No. 14-CV-0982(ADS)(AKT), 2016 WL 11795224 (E.D.N.Y. Nov. 30, 2016) (holding that a certain disputed piece of real property was trust property because it 'was "purchased by trust assets"'). That the building is subject to a trust is true regardless of whether the purchase of the building itself constituted a breach of trust. As such, Plaintiffs are asserting that title to the building is divided—while Plaintiffs do not dispute that the LRF might have legal title to the building, Plaintiffs *do* dispute that the LRF has full *equitable* title. Thus, this action "directly affects the title to … real property situated in the District of Columbia[.]" D.C. Code § 42–1207(b). And, because the LRF clearly seems to believe it *does* have full equitable title to the building,[1] along with legal title, "the title to … the real property affected by the notice is directly at issue" as well. D.C. Code § 42–1207(j).

This alone is sufficient deny the LRF's motion.

---

[1] For example, its brief in support of its motion describes the building as an "LRF asset," as opposed to an asset of the trust. Dkt. 179 at 6 (describing the building as the "LRF's chief asset"); *id.* at 7 (asserting that "[t]he Property is … an unencumbered LRF asset").

### C. Plaintiffs are asserting in this action both an equitable "lien" on the building, as well as an "ownership interest" in it.

The motion should also be denied because trust law makes clear: (1) that Plaintiffs may assert an "equitable lien" on real property purchased with trust assets; and (2) that by asserting that the building constitutes trust property, Plaintiffs are asserting an "ownership interest" in it.

Regarding the lien, the Restatement (Second) of Trusts § 202 (1959) provides that, "[w]here the trustee by the wrongful disposition of trust property acquires other property, the beneficiary is entitled … to enforce an equitable lien upon it to secure his claim against the trustee for damages for breach of trust, as long as the product of the trust property is held by the trustee and can be traced." Here, Plaintiffs allege that the building was wrongfully purchased using trust assets and filed a *lis pendens* in part to assert a lien on that building under trust law. That is a proper use of D.C. Code § 42–1207(b), which permits a *lis pendens* where the action "asserts a … lien … in real property situated in the District of Columbia[.]"

Trust law further provides that beneficiaries of a trust have "ownership" interests in trust property. *E.g.*, Bogert's The Law of Trusts and Trustees § 183 ("the beneficiary ... is ... substantially equivalent to equitable ownership of the trust res") (footnote omitted); *see also, e.g.*, Restatement (Third) of Trusts § 2 (2003) ("[t]he term 'owner' is used to indicate a person by whom one or more interests are held for the person's own benefit"). Here, Plaintiffs assert they are beneficiaries of a trust that holds the building as trust property. As such, they are asserting an "ownership interest" in the property under trust law. That provides an additional basis to sustain the *lis pendens* under D.C. Code § 42–1207(b), which permits a *lis pendens* where the action "asserts … [some] other ownership interest in real property situated in the District of Columbia[.]"

3

Meanwhile, because the LRF's position is that a trust does not even exist, the propriety of Plaintiffs' lien, as well of Plaintiffs' assertion of ownership interests in the building, are "directly at issue," thus satisfying D.C. Code § 42–1207(j) as well.

**D.     The LRF's arguments to the contrary fail.[2]**

The LRF's first real argument rests on the fact that, in their prayer for relief, Plaintiffs request, among other things, "disgorgement and sale of real property, as necessary to satisfy the judgment[.]" Dkt. 179 at 2. But as the Restatement (Second) of Trusts § 202 (1959) makes clear, making sure such relief is available is *precisely what an equitable lien is for*. Specifically, as discussed above, where, as here, Plaintiffs allege that "the trustee by the wrongful disposition of trust property acquires other property," Plaintiffs are "entitled … to enforce an equitable lien upon it to secure his claim against the trustee for damages for breach of trust, as long as the product of the trust property is held by the trustee and can be traced." The fact that the *purpose* of the lien is to secure Plaintiffs' damages claims only underscores that this lawsuit *does* assert that Plaintiffs' have the right to such a lien. Regardless of whether Plaintiffs ultimately are granted such a lien, the fact that Plaintiffs are asserting the right to one is all that is required to make the *lis pendens* proper under D.C. Code § 42–1207(b) (permitting a *lis pendens* where the action "asserts a … lien … in real property situated in the District of Columbia").

The LRF also argues that, "[e]ven if Plaintiffs succeeded on all of their claims, title to the Property would be unaffected." Dkt. 179 at 4. But that is just wrong as a matter of trust law,

---

[2] The LRF claims that during the meet and confer process, it discussed the 2010 amendment, through counsel, with Plaintiffs' counsel, and that the latter "did not offer differing authority, but nonetheless declined to release the Lis Pendens." Attached as Exhibit A to the concurrently filed Declaration of Times Wang is the actual email exchange. As the Court will see, it is counsel for the LRF who had nothing substantive to say in response to Plaintiffs' explanation, backed by authority, of why the *lis pendens* is proper.

4

because title *would* be affected, in that the trust's beneficiaries would be deemed to have *equitable* title to the property.

Nor is the LRF's cause aided by the fact that the statute was amended in 2010, or by *Garcia v. Tygier*, 295 A.3d 594 (D.C. 2023). For one, as discussed above, Plaintiffs meet the statutory text post-amendment, which is sufficient to end the analysis.

But even setting the text aside, the context of the amendment *supports* the *lis pendens* here. As the *Garcia* case explains, the statute was amended in response to *Heck v. Adamson*, 941 A.2d 1028 (D.C. 2008). In *Heck*, the plaintiff did *not* claim there was a trust holding the disputed property for his benefit, or that the property had been wrongfully purchased using trust assets, or that he was in any sense an owner of that property. Rather, he claimed merely that the property had been partly purchased using his money, and thus sought, as a remedy, a constructive trust over that property. The court upheld the *lis pendens* based on the breadth of the then-operative statutory text, which required only the assertion of an "interest" in the property (and not an "ownership interest"), however remote. In particular, it held that the plaintiff's request for a constructive trust was itself sufficient to support a *lis pendens*. *Heck*, 941 A.2d at 1030 ("On its face, Heck's action asserting an equitable interest in the Naylor Road property *via* a constructive trust is *an* 'interest in real property,' which is all the statute requires.") (emphasis in original). The legislature responded to that holding by enacting amendments requiring, among other things, that the "interest" asserted be an "ownership interest," and that it be "directly at issue" in the lawsuit. As discussed above, Plaintiffs satisfy these stricter requirements as a statutory matter.

More to the point, the facts here are nothing like *Heck*, or, for that matter, *Garcia*, both of which involved a *lis pendens* based solely on the plaintiff's request for a constructive trust

over real property as a remedy for non-fiduciary torts.[3] Here, by contrast, Plaintiffs are basing their *lis pendens* principally on their assertion that the *building itself* is the asset of an express, charitable trust.

That makes all the difference. Unlike the *Heck* and *Garcia* plaintiffs, trust law affords Plaintiffs a potential claim for restitution against a third-party purchaser of the building with notice of the alleged breaches of trust. Indeed, putting such purchasers on notice is among the core purposes of a *lis pendens*. *E.g.*, Bogert § 893 ("At common law the mere pendency of some actions with regard to the title to property made a purchaser during the pendency of the action take subject to the claims of the parties as later adjudicated. Statutes now provide that in an action affecting the title to realty a notice of the pendency of the action may be filed in the real property record office, and that it shall be constructive notice to purchasers of the realty pendente lite.").

### E. Cancelling the *lis pendens* without requiring that sale proceeds be held in escrow would severely prejudice Plaintiffs.

It makes enormous *practical* difference as well. It appears that the LRF wants to sell the building at least in part for its own operational reasons, and thus potentially in breach of their duties to the trust's humanitarian purpose. Permitting the LRF to do so would severely prejudice Plaintiffs' ability to recover for any such breaches, which ability is already severely hampered. Indeed, the LRF understands this, which is why, to address Plaintiffs' concerns about this litigation depleting trust assets, the LRF previously represented, through counsel, that it would not sell the property. Dkt. 118 (Sept. 8, 2021 Hearing Tr.) 20:5-18 (LRF's counsel asserting that

---

[3] The *Garcia* plaintiff's underlying complaint was essentially that the defendants had and were continuing to defraud him, including by fraudulently conveying assets to conceal them from judgment. He then filed a *lis pendens* against the personal residence of one of his antagonists, despite that residence not being part of the alleged fraudulent scheme.

6

because "there's $3,000,000 in cash plus $3,000,000 in equity in a property[,]" and because "[t]here's no effort to sell the building," to which counsel was willing to "stipulate[,]" there was no risk of irreparable injury to the humanitarian purpose); *see also, e.g., id.* 33:22-34:4 (the Court asking why, "given Mr. Kostel's representation that the building is not going to be sold," there would be irreparable injury). Absent an agreement to hold sales proceeds in escrow—something Plaintiffs proposed to the LRF but which has not been accepted—cancellation of the *lis pendens* would severely prejudice Plaintiffs.

For these reasons, the LRF's motion should be denied.

Dated: March 29, 2024                    Respectfully submitted,

**FARRA & WANG PLLC**
*/s/ Times Wang*
Times Wang (D.C. Bar 1025389)
Adam H. Farra (D.C. Bar 1028649)
1300 I Street NW, Suite 400E
Washington, DC 20005
Telephone: (202) 505-6227
twang@farrawang.com
afarra@farrawang.com

**SLARSKEY LLC**
David Slarskey (admitted *pro hac vice*)
Evan Fried (admitted *pro hac vice*)
420 Lexington Ave., Suite 2525
New York, NY 10170
Telephone: (212) 658-0661
dslarskey@slarskey.com
efried@slarskey.com

*Counsel for Plaintiffs*