## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HE DEPU, *et al.* | |
| Plaintiffs, | |
| v. | Case No. 1:17-cv-00635-RDM |
| OATH HOLDINGS, INC., *et al.* | Judge Randolph D. Moss |
| Defendants. | |

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

MCGUIREWOODS LLP
Brian E. Pumphrey (admitted *pro hac vice*)
Garrett H. Hooe (admitted *pro hac vice*)
John J. Woolard (D.C. Bar No. 1614841)
800 East Canal Street
Richmond, VA 23219
Telephone: (804) 775-7745
Facsimile: (804) 698-2018
bpumphrey@mcguirewoods.com
ghooe@mcguirewoods.com
jwoolard@mcguirewoods.com

*Counsel for Defendants Oath Holdings, Inc., Michael Callahan, and Ronald Bell*


CARR MALONEY P.C.
J. Peter Glaws, IV (D.C. Bar 1013049)
2000 Pennsylvania Ave., NW, Suite 8001
Washington, D.C.  20006
(202) 310-5500 (Telephone)
(202) 310-5555 (Facsimile)
peter.glaws@carrmaloney.com

*Counsel for Defendant Impresa Legal Group*

CHARNOFF SIMPSON PLLC
Mikhael D. Charnoff (D.C. Bar 476583)
111 Church Street NW
Suite 202 A
Vienna, VA 22180
Telephone: 703-291-6650
mike@charnoffsimpson.com

*Counsel for Defendant Estate of Harry Wu*

IMPRESA LEGAL GROUP
George E. Kostel (D.C. Bar 1000015)
Jason P. Matechak (D.C. Bar 461194)
3033 Wilson Boulevard, Suite 700
Arlington, VA 22201
Telephone: (703) 842-0660
georgekostel@impresalegal.com
jasonmatechak@impresalegal.com

LAW FIRM OF WILLIAM BLAKELY
William Douglas Blakely (D.C. Bar 326793)
10908 Thimbleberry Ln
Great Falls, VA 22066
Telephone: (703) 430-4398
wblakely@williamblakelylaw.com

*Counsel for Defendants Laogai Research Foundation and Laogai Human Rights Organization*

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

BACKGROUND .................................................................................................... 2

LEGAL STANDING ............................................................................................... 5

ARGUMENT ......................................................................................................... 6

    I.    Plaintiffs lack Article III standing. ........................................................... 6

        A. The Plaintiffs who received funding have not suffered an injury in fact ............... 7

        B.  The Plaintiffs who did not apply for funding have not suffered an injury in fact . 9

        C. Plaintiffs cannot show injury in fact based on speculation about future aid........... 9

    II. Plaintiffs lack charitable trust standing ...................................................... 12

CONCLUSION...................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Al-Beshrawi v. United States*
  Case No. 04-0743 (RCL), 2005 U.S. Dist. LEXIS 35410 (D.D.C. July 29, 2005) .................. 14

*Alco Gravure, Inc. v. Knapp Found.*,
  64 N.Y.2d 458 (1985) ........................................................................................................ 13

*Al-Owhali v. Ashcroft*,
  279 F. Supp. 2d 13 (D.D.C. 2003) ...................................................................................... 6

*Van v. LLR, Inc.*,
  962 F.3d 1160 (9th Cir. 2020) ............................................................................................ 7

*Cooke v. Wis*an,
  458 F. App'x 700 (9th Cir. 2011) ....................................................................................... 6

*Cooke v. Wisan*,
  No. CV-09-8152-PCT-JAT, 2010 WL 1641015 (D. Ariz. Apr. 22, 2010) .............................. 6

*Erby v. United States*,
  424 F. Supp. 2d 180 (D.D.C. 2006) ................................................................................... 5

*Hadassah Acad. Coll. v. Hadassah Women's Zionist Org. of Am., Inc.*,
  No. 18 CIV. 2446 (AT), 2018 WL 8139301 (S.D.N.Y. Nov. 1, 2018) .................................... 6

*Hadassah Acad. Coll. v. Hadassah, The Women's Zionist Org. of Am., Inc.*,
  795 F. App'x 1 (2d Cir. 2019) ............................................................................................ 6

*He Depu v. Yahoo! Inc.*,
  306 F. Supp. 3d 181 (D.D.C. 2018) ................................................................................ 7, 9

*He Depu v. Yahoo! Inc.*,
  950 F.3d 897 (D.C. Cir. 2020) ................................................................................... 2, 9, 13

*Herbert v. Nat'l Acad. of Scis.*,
  974 F.2d 192 (D.C. Cir. 1992) ............................................................................................ 5

*\*Hooker v. Edes Home*,
  579 A.2d 608 (D.C. 1990) ....................................................................................... passim

*\*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .................................................................................................... 7, 10

*Miller v. City of Wickliffe, Ohio*,
  852 F.3d 497 (6th Cir. 2017) ................................................................. 9

*Nat'l City Mortg. Co. v. Navarro*,
  220 F.R.D. 102 (D.D.C. 2004) ............................................................. 14

*Old Saybrook Police Union C.O.P.S. Loc. # 106, Inc. v. Mosca*,
  No. 3:08-cv-01025, 2009 WL 276513 (D. Conn. Feb. 4, 2009) ................. 7

*Pinkert v. Schwab Charitable Fund*,
  48 F.4th 1051 (9th Cir. 2022) ............................................................. 6

*Pinkert v. Schwab Charitable Fund*,
  No. 20-CV-07657-LB, 2021 WL 2476869 (N.D. Cal. June 17, 2021) ..................... 6

*Ranchers-Cattlemen Action Legal Fund, Un. Stockgrowers of Am. v. U S. Dep't of Agric.*,
  573 F. Supp. 3d 324 (D.D.C. 2021) ....................................................... 5

*Simon v. United States Dep't of Justice*,
  No. CV 20-0580 (RC), 2021 WL 1578293, (D.D.C. Apr. 22, 2021) ............... 5

*Simon v. United States Dep't of Justice*,
  No. 21-5099, 2021 WL 4767941 (D.C. Cir. Sept. 15, 2021).................... 5

*Washer v. Bullitt County*,
  110 U.S. 558 (1884)............................................................................ 14

*Zaidan v. Trump*,
  317 F. Supp. 3d 8 (D.D.C. 2018) ........................................................... 5

**Other Authorities**
Bogert's The Law of Trusts and Trustee ....................................................... 8

## INTRODUCTION

Plaintiffs' Third Amended Complaint ("TAC") suffers from two fatal flaws and should be dismissed.  Plaintiffs' new pleading—especially in light of the changes it makes from the previous complaints—makes these failings clear.

First, Plaintiffs fail to show that they suffered a concrete injury in fact, redressable by this Court, which Article III requires.  Indeed, the evidence confirms the opposite.  The four Plaintiffs who applied for aid from the Trust received it[1]—sometimes in quantities greater than Plaintiffs acknowledge—and the remaining two Plaintiffs *never even applied for aid* from the Trust.  And no Plaintiff alleges any concrete plan to apply for aid in the future, or that they are entitled to funds from the Trust.  Even if they did allege plans to apply, Plaintiffs have no basis for their speculative fear that they would not receive aid.  Trust records reflect that the LRF has consistently, through today, granted humanitarian aid to Chinese dissidents, and that the LRF has not denied a single properly-submitted application since 2017.  As a result, no Plaintiff has Article III standing and this action must be dismissed.

Second, Plaintiffs also lack the special interest standing required to enforce the terms of a charitable trust.  With limited exceptions, the general rule is that public officers (usually the state Attorney General) have exclusive authority to bring an action to enforce the terms of a charitable trust.  *Hooker v. Edes Home,* 579 A.2d 608, 612 (D.C. 1990)*.*  The rationale for this rule "stems from the inherent impossibility of establishing a distinct justiciable interest on the part of a member of a large and constantly shifting benefited class," and "the recurring burdens on the trust res and trustee of vexatious litigation that would result from recognition of a cause of action by any and

---

[1] Defendants maintain their objection to the Court's May 12, 2022 ruling that a charitable trust exists.

all of a large number of" potential beneficiaries.  *Id*.  An exception to the general rule exists where an individual has special interest standing, which may be established if an individual challenges "an extraordinary measure threatening the existence of the trust"—that is, "an issue that, by its nature, could only be tried once."  *Id.* at 615.  This is not the case here.

In a marked departure from their earlier complaints, Plaintiffs now abandon any assertion that the Trust has been terminated or its assets depleted.  Previously, they (incorrectly) alleged that "the defendants improperly depleted the trust's funds and terminated it altogether."  *He Depu v. Yahoo!* Inc., 950 F.3d 897, 899 (D.C. Cir. 2020) (*Depu II*).  Following discovery, Plaintiffs now acknowledge that the Trust still exists, has millions of dollars in assets, and continues to distribute humanitarian aid.  TAC ¶¶ 112, 113.  Plaintiffs allege no "extraordinary measure" that would threaten the Trust's existence, or fundamentally change its nature.  *Hooker*, 579 A.2d at 615. Instead, they simply assert that not enough money has been spent on them and the Trust's humanitarian purpose over its more than 16 years of operation.  This is a challenge to the ordinary exercise of the trustees' judgment on how Trust funds are spent, and it is the very type of litigation that charitable trust standing requirements are designed to prevent.

Given the drastic shift in Plaintiffs' allegations—from alleging the Trust's "outright termination," *Depu II*, 950 F.3d at 906, to merely contesting its ongoing operations—Plaintiffs do not satisfy the requirements for charitable trust standing.  This Court therefore lacks jurisdiction, and the TAC should be dismissed on this basis as well.

## BACKGROUND

This action centers on a charitable trust created through an earlier lawsuit's 2007 settlement agreement ("the Trust").  TAC ¶ 1.  Plaintiffs allege that the Trust's primary purpose—what they

2

call its humanitarian purpose—is to assist people imprisoned by the Chinese government for expressing dissent online. *Id.*  Plaintiffs assert that they are such people. *Id.* ¶¶ 9-14.

Following periods of imprisonment in China, most of the Plaintiffs applied for and received individual humanitarian aid grants from the Trust.   The following chart details Plaintiffs' allegations in this respect:

| Plaintiffs' Allegations in the TAC | | | |
|---|---|---|---|
| **Plaintiff** | **Applied For (Year)** | **Grant Received** | **TAC Cite** |
| He Depu ("He") | $30,000 (2008) | $10,000 | ¶ 9 |
| Li Dawei ("Li") | $8,000 (2012) | $1,000 | ¶ 10 |
| Wang Jinbo ("Wang") | $20,000 (2008) | $3,000 (Wang asserts he was "approved" for $4,000) | ¶ 11 |
| Ouyang Yi ("Ouyang") | Never applied | Never applied | ¶ 12 |
| Xu Yonghai ("Xu Y.") | Never applied | Never applied | ¶ 13 |
| Xu Wanping ("Xu W.") | Unspecified (2016) | $500 (from trustee Harry Wu) | ¶ 14 |

Plaintiffs' allegations, however, do not tell the whole story.  Facts revealed in discovery show that almost all Plaintiffs received more funding than asserted in their pleading.  First, Trust documents show that Plaintiff Wang received $4,000 from the Trust (instead of the $3,000 he alleges to have received).  Song Decl. ¶ 26.  Second, the following chart shows the nine *additional occasions* in which these Plaintiffs received humanitarian aid from the Trust:

| Additional Humanitarian Aid From The Trust | | | |
|---|---|---|---|
| Plaintiff | Grant Received | Date | Cite |
| He | $2,000 | September 17, 2009 | Declaration of Yongyi Song ("Song Decl.") ¶ 26 |
| Wang | $500 | 1H 2019 | Song Decl. ¶ 104 |
| | $500 | 2H 2019 | |
| | $1000 | 2020 | |
| Xu Y. | $1,000 | 2019 | Song Decl. ¶ 104 |
| | $1,000 | 2021 | |
| | $700 | Between April 2022 and March 2023 | |
| | $500 | February 23, 2024 | |
| Xu W. | $3,000 | August 6, 2008 | Song Decl. ¶ 26 |

Recognizing their lack of harm, Plaintiffs He, Li, Wang, and Xu W. allege that although they did receive aid, they are injured because they would have received more funds had the trustees devoted "sufficient Trust assets" to the humanitarian purpose.  TAC ¶¶ 9-11, 14. For their part, Plaintiffs Ouyang and Xu Y. do not allege that they ever applied for humanitarian aid at all from the Trust, and exclusively cast themselves as potential future beneficiaries.

All the Plaintiffs claim that because they continue to voice dissenting opinions in China, they are "potential future beneficiaries" of the Trust harmed by the lost opportunity to obtain "meaningful funding" and the decreased likelihood of a "meaningful restoration of that opportunity."  TAC ¶¶ 9-14.  None of the Plaintiffs, however, allege any concrete plans to seek further funding from the Trust, nor do they allege to have made an application for aid from the Trust in the seven years this case has been pending.  *See id.*  Trust documents also confirm that no Plaintiff has applied for humanitarian assistance from the Trust since this lawsuit was filed in 2017, despite the Trust's ongoing distributions of aid.  Song Decl. ¶ 31.

Plaintiffs do not allege a legal entitlement to Trust distributions.  Nothing in the 2007 settlement agreement requires the trustees to make grants to any specific beneficiary or guarantees

any level of funding ("meaningful" or otherwise) to any beneficiary.  Plaintiffs do not allege differently.

Finally, unlike in the previous iterations of the Complaint, Plaintiffs do not allege that the humanitarian purpose or the Trust was terminated.  Plaintiffs now allege that (1) the Trust has millions of dollars in assets, and (2) the LRF continues to distribute humanitarian aid.  TAC ¶¶ 81, 112, 141.  Plaintiffs even admit that the Trust "increase[d] its regard for the Humanitarian Purpose" after previous trustee Harry Wu died in 2016.  *Id.* ¶ 84.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1), which applies to Defendants' challenge to Plaintiffs' Article III standing, requires courts to "dismiss any claim over which they lack subject matter jurisdiction."  *Simon v. United States Dep't of Justice*, No. CV 20-0580 (RC), 2021 WL 1578293, at *2 (D.D.C. Apr. 22, 2021), *aff'd*, No. 21-5099, 2021 WL 4767941 (D.C. Cir. Sept. 15, 2021).  "The party claiming subject-matter jurisdiction bears the burden of demonstrating that such jurisdiction exists."  *Zaidan v. Trump*, 317 F. Supp. 3d 8, 16 (D.D.C. 2018); *see Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006) ("[T]he plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence.").

The Court may "dispose of a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) on the complaint standing alone."  *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).  But the Court may also, "where necessary, . . .  consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Id.; see Ranchers-Cattlemen Action Legal Fund, United Stockgrowers of Am. v. United States Dep't of Agric.*, 573 F. Supp. 3d 324, 335 (D.D.C. 2021) ("When presented with a factual challenge to standing, courts

routinely consider affidavits and other evidence[.]").  Considering documents outside the pleadings "does not convert the motion into one for summary judgment[.]"  *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 21 (D.D.C. 2003).

Rule 12(b)(6) applies to Defendants' challenge to Plaintiffs' charitable trust standing.[2]  To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Though "the Court must construe the complaint in favor of the plaintiff," it "need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (citation omitted).

## ARGUMENT

Plaintiffs' TAC should be dismissed with prejudice for two independent reasons.  First, Plaintiffs' allegations and the supporting record evidence do not establish a concrete, non-speculative injury in fact suffered by any Plaintiff.  Second, the TAC fails to establish that Plaintiffs have special interest standing to enforce a charitable trust.

**I.    Plaintiffs lack Article III standing.**

Plaintiffs do not satisfy the "irreducible constitutional minimum of standing[,]" which

---

[2] Courts have discretion to analyze charitable trust standing under Rule 12(b)(1).  *See Pinkert v. Schwab Charitable Fund*, No. 20-CV-07657-LB, 2021 WL 2476869, at *4–6 (N.D. Cal. June 17, 2021), *aff'd*, 48 F.4th 1051 (9th Cir. 2022) (assessing special interest standing under Rule 12(b)(1)); *Hadassah Acad. Coll. v. Hadassah Women's Zionist Org. of Am., Inc.*, No. 18 CIV. 2446 (AT), 2018 WL 8139301, at *1–2 (S.D.N.Y. Nov. 1, 2018) (same), *aff'd sub nom. Hadassah Acad. Coll. v. Hadassah, The Women's Zionist Org. of Am., Inc.*, 795 F. App'x 1 (2d Cir. 2019); *Cooke v. Wisan*, No. CV-09-8152-PCT-JAT, 2010 WL 1641015, at *2 n.5 (D. Ariz. Apr. 22, 2010), *aff'd*, 458 F. App'x 700 (9th Cir. 2011) (same).

requires each Plaintiff to have suffered an "injury in fact" that is both "concrete and particularized" and "actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The allegations of the TAC are themselves insufficient to invoke jurisdiction. And should the Court need to look beyond the TAC,[3] additional facts—drawn largely from the Trust's business records—confirm this failing. *See generally* Song Decl.

### A.    The Plaintiffs who received funding have not suffered an injury in fact.

Plaintiffs He, Li, Wang, and Xu W. admit that they all applied for and received humanitarian aid from the Trust. TAC ¶¶ 9-11, 14; *see also* Song Decl. ¶ 26. Despite this, they allege they were injured because they would have received *more* money if not for the alleged diversion of Trust assets away from the humanitarian purpose. *Id.* This is insufficient to establish Article III standing.

To show a concrete injury, Plaintiffs must prove that they were *entitled* to more money from the Trust. *See He Depu v. Yahoo! Inc.*, 306 F. Supp. 3d 181, 191 n.9 (D.D.C. 2018) (*Depu I*) (explaining that six of the seven then-plaintiffs lacked Article III standing because they had "not alleged that they have submitted an application for funding that was denied, or that they are otherwise entitled to an award from the purported trust"); *Old Saybrook Police Union C.O.P.S. Loc. # 106, Inc. v. Mosca,* No. 3:08-cv-01025, 2009 WL 276513, at *8 (D. Conn. Feb. 4, 2009) ("[B]ecause the Union is not entitled to any gift from the trust on either of the theories it advances [including a charitable trust theory], it was not injured by the alleged improper disbursement of trust assets."); *cf. Van v. LLR, Inc.*, 962 F.3d 1160, 1161 (9th Cir. 2020) ("[T]he inability to have

---

[3] "Where a motion to dismiss a complaint present[s] a dispute over the factual basis of the court's subject matter jurisdiction . . . the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Ctr. For Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 585 F. Supp. 3d 63, 71 (D.D.C. 2022) (citations and quotation omitted).

and use money to which a party is *entitled* is a concrete injury.") (emphasis added)).

Plaintiffs He, Li, Wang, and Xu W. have not (and cannot) show that they were (or are) entitled to more or larger grants from the Trust than what they have already received. Such entitlement is not grounded in the text of the Trust instrument, which does not compel any trustee to exercise fiduciary discretion in favor of any individual or require the trustee to make grants in any given amounts. And, as a general matter, charitable trusts do not entitle any beneficiaries to any specific distribution of trust property. Unlike private trusts where "[t]he trustee owes fiduciary duties to identifiable beneficiaries who are the equitable owners of the property," the *public* is a charitable trust's beneficiary. Bogert's The Law of Trusts and Trustees §§ 411, 362. The charitable trustee must "apply the trust res to some form of public benefit, and persons thereby receive advantages because they are conduits through whom the social gains flow"—not because they are entitled to some stake in the trust res. Bogert, supra, §§ 363, 411.

Because they cannot show that they were entitled to more, Plaintiffs He, Li, Wang, and Xu W. lack standing. Wang's allegation that he received less than what he was "approved" for also fails, not only for the above reason, but also because Trust records show he did, in fact, receive $4,000. Song Decl. ¶¶ 26, 26 n.1. And Xu W.'s allegation that he applied for aid in 2016 and received money from a trustee, rather than the Trust, also does not amount to a concrete injury, especially in light of Trust records showing that the Trust disbursed aid to him. *Id.*

Because charitable trusts generally, and this Trust specifically, do not entitle any definite beneficiaries to any specific distribution of trust property in any specific amounts, Plaintiffs cannot assert Article III standing based on an alleged failure to give them all the funding they requested, or that they believe they are entitled to. Plaintiffs He, Li, Wang, and Xu W. therefore lack Article III standing.

**B.      The Plaintiffs who did not apply for funding have not suffered an injury in fact.**

The remaining Plaintiffs, Ouyang and Xu Y., lack Article III standing because they never applied for Trust assistance at all.  Judge Bates previously held in this case that Plaintiffs' failure to allege that "they have submitted an application for funding that was denied" defeats Article III standing.  *Depu I*, 306 F. Supp. 3d at 191 n.9[4]; *see also Miller v. City of Wickliffe, Ohio*, 852 F.3d 497, 504 (6th Cir. 2017) (no Article III standing for plaintiff to challenge passage of ordinance because plaintiff never applied for permit subject to terms of ordinance).

Here, Ouyang and Xu Y. do not allege that they applied to the Trust for aid and were denied, or that they were entitled to funds; they only allege that they are mere "potential future beneficiar[ies] of the Trust."  TAC ¶¶ 12-13.  Trust records confirm that there is no record of either Plaintiff having made an application for assistance from the Trust.  Song Decl. ¶ 27.  Therefore, Ouyang and Xu Y. lack standing.

**C.      Plaintiffs cannot show injury in fact based on speculation about future aid.**

All of the Plaintiffs also allege they are injured as "potential future beneficiaries" due to "losing the opportunity to obtain meaningful funding" and "a decrease in the likelihood of a meaningful restoration of that opportunity."  TAC ¶¶ 9-14.  But alleging a speculative "decrease in the likelihood" that they could be granted aid by the Trust at an unspecified point in the future

---

[4] Article III standing was not at issue in the appeal that followed this decision.  *See Depu II*, 950 F.3d at 905 n.11.

is insufficient to establish the "actual or imminent injury" required for Article III standing.  *See Lujan*, 504 U.S. at 564 (alleging "'some day' intentions" cannot show injury in fact).

None of the Plaintiffs allege any intent to apply to the Trust for assistance again, much less "concrete plans" to do so at a specified time.  If Plaintiffs intended to apply again for aid, they have had a direct line of communication to the Trust since this litigation was filed in 2017.  Yet Plaintiffs have not applied for individual humanitarian assistance from the Trust in the last seven years.  Song Decl. ¶ 31.  They have no excuse for not doing so; evidence in the record demonstrates there is no prohibition on seeking multiple rounds of aid.  *Id.* ¶ 43.  Even if Plaintiffs had alleged plans to apply for aid in the future, they would be unable to allege that such applications would be denied.  And, as noted above, they do not allege any entitlement to a set amount of funding.

Plaintiffs' lack of standing is apparent from the face of the TAC, *see* TAC ¶ 112 (asserting that the Trust has granted over $630,000 in humanitarian aid through 2022), but facts outside that pleading also show the Trust has continued to distribute humanitarian aid, which would be available to Plaintiffs should they apply.  Song Decl. ¶ 51.  For example, since its creation in 2007, the Trust has continuously granted aid, including in the years since Plaintiffs filed suit.  *Id.* ¶ 30. Between 2018 and 2022 alone, in connection with various grants to individuals and non-governmental organizations ("NGO"), the Trust distributed approximately $350,000 to approximately 600 victims of China's political oppression.  *Id.* ¶¶ 51, 56, 67.  And it continues this work today.  *Id.* ¶ 108; *see also id.* ¶ 12 (explaining that Trust has not, since 2018, denied any individual application for relief).

In 2018, for example, the Trust provided thousands of dollars of humanitarian support to a repeat applicant, as part of eight total grants it made to individual applicants in 2018.  *Id.* ¶¶ 40-43; *see id.* ¶ 68 (showing the Trust distributed $68,050 in humanitarian aid during fiscal year 2018

to 260 dissidents).  The Trust made similarly-sized grants to 14 individuals in fiscal year 2019, and to 6 individual applicants in 2020 through its different grant programs.  *Id.* ¶¶ 79, 84, 97; *see also id.* ¶¶ 47-48 (describing grant programs established in 2018).  On multiple occasions between 2018 and the present, the Trust granted thousands in humanitarian aid to another individual (and previous plaintiff in this action), while also hiring him to work for the Fund.  *Id.* ¶¶ 33, 37, 65, 101, 106, 108.  In 2021, the Trust supported 18 individuals and distributed thousands of dollars to a Chinese activist and his family.  *Id.* ¶¶ 101-04.  The Trust provided similar support to dozens of individuals in 2022.  *Id.* ¶¶ 105, 108-09.

At the same time, the Trust distributed tens of thousands of dollars to NGOs devoted to providing humanitarian aid to Chinese dissidents, through which dozens of other individuals received assistance.  These individuals include Plaintiff Wang, who received multiple grants totaling $2,000 from the Independent Chinese PEN Center (on top of the $4,000 grant from the Trust he received in 2008)—funds which are directly traceable to distributions from the Trust.  *Id.* ¶¶ 44-46, 68, 107.  Plaintiff Xu Y., who alleges he never received remuneration from the Trust, also benefited from these same directly-traceable funds when the PEN Center granted him $1,000 in aid in 2019, $1,000 in 2021, $700 between April 2022 and March 2023, and $500 in February 2024—just a few months ago.  *Id.* ¶¶ 73, 103, 104. And Plaintiffs Wang and He appear to have applied to the Trust for $30,000 in humanitarian aid in late 2018 on behalf of the PEN Center.  Song Decl. ¶ 58.  The Trust granted the organization $26,000.[5]  *Id.* ¶¶ 56-58.

---

[5] Plaintiffs Wang and He are listed as "Project Planners" on the organization's application, with Wang listed as Secretary-General of the organization and He as a board member.  Song Decl. ¶ 58.  Despite having submitted this application to the Trust in 2018, Plaintiffs alleged later that the Trust's humanitarian purpose had been terminated in 2016, an allegation Plaintiffs knew or should have known was false.  Second Amended Complaint ¶ 78 ("The complete termination of the Trust's humanitarian purpose occurred in 2016").  This allegation has been removed from the TAC.

Through NGO grants, the Trust has also supported programs like the Liberty Sculpture Park's Communist Victim Museum program.  In funding Liberty Sculpture Park in 2022, the Trust both supported program volunteers who are victims of Chinese political persecution and furthered the organization's efforts to commemorate other victims.  *Id.* ¶¶ 109-110.

Plaintiffs' alleged loss of an opportunity to receive an undefined amount of "meaningful funding" from the Trust (should they ever re-apply, or apply in the first instance) fails to establish an injury in fact.  Not only do Plaintiffs fail to allege a concrete plan to apply for aid at a specified point in the future, or to show anyone's entitlement to a specific amount of "meaningful funding," but the Trust's continued and ongoing operations also reflect that it has continued to provide humanitarian aid to individuals and organizations—including some Plaintiffs.  Because Plaintiffs have not carried their burden of showing that any one of them has suffered or imminently will suffer an actual, non-speculative injury, the TAC must be dismissed for lack of Article III standing.

## II.    **Plaintiffs lack charitable trust standing.**

This Court should dismiss the TAC for a second independent reason: Plaintiffs lack special interest standing to enforce the Trust.

As explained earlier, "the traditional rule" is that "only a public officer . . . has standing to bring an action to enforce the terms of [a charitable] trust."  *Hooker*, 579 A.2d at 612.  This rule "stems from the inherent impossibility of establishing a distinct justiciable interest on the part of a member of a large and constantly shifting benefited class," as well as "the recurring burdens . . . of vexatious litigation that would result from recognition of a cause of action by any and all of a large number of individuals who might benefit incidentally from the trust."  *Id.*

District of Columbia courts recognize limited exceptions to this rule, including that a person with a "'special interest' in continued performance of the trust distinguishable from that of

the public at large" may sue to enforce the trust. *Id.* This "special interest" exception can be invoked only when two requirements are satisfied. First, the plaintiff must be a member of a "sharply defined" class of potential beneficiaries that is "limited in number." *Id.* at 614 (citing *Alco Gravure, Inc. v. Knapp Found.*, 64 N.Y.2d 458, 465 (1985)). Second, the plaintiff must challenge "an extraordinary measure threatening the existence of the trust"—that is, "an issue that, by its nature, could only be tried once." *Id.* at 615. Special interest standing is not satisfied by a challenge to "an ordinary exercise of discretion on a matter expressly committed to the trustees." *Id.* Otherwise, even with a limited and sharply defined class of potential beneficiaries, there would still exist "the danger of proliferation of wasteful lawsuits" and "recurring litigation" that the general limit on charitable trust standing is meant to avoid. *Id.*.

Plaintiffs fail to satisfy the second requirement for special interest standing.[6] At the outset, they no longer allege that the Trust was terminated. In the First and Second Amended Complaints, Plaintiffs alleged that the Trust "terminat[ed]" its humanitarian purpose "outright" and "completely" in 2016 after "depleting" its assets. ECF 26 ¶¶ 1, 10-16; ECF 64 ¶ 2. Because Plaintiffs challenged "the outright termination of the Fund," there was no dispute (from a pleading perspective) on the first motion to dismiss that they satisfied this prong of special interest standing. *Depu II*, 950 F.3d at 906. As the D.C. Circuit reasoned on the appeal of that initial motion to dismiss ruling, "there could hardly be anything more threatening to [the Trust's] existence" than its total termination. *Id.* (citation omitted).

---

[6] Defendants do not concede that Plaintiffs can or will establish the first prong of special interest standing, but do not contest their allegations at this stage.

In the TAC, Plaintiffs now acknowledge the continued existence of the Trust and its humanitarian purpose.[7]  TAC ¶ 81.  In fact, Plaintiffs acknowledge that the Trust "*increase[d] its regard for the Humanitarian Purpose*" after Harry Wu's death in 2016, currently maintains assets totaling millions of dollars, and provided humanitarian aid through at least 2022.[8]  *Id.* ¶¶ 84, 112, 141.  Indeed, Plaintiffs allege that between 2018 and 2022 (for example), the Trust distributed $199,400 in humanitarian aid.  TAC ¶ 112.  Plaintiffs' admission that the Trust continues to operate, and their failure to allege an "extraordinary" action that threatens the Trust's existence, defeats special interest standing.

Having recognized that the Trust was not terminated, Plaintiffs pivot to alleging "a yearslong course of conduct that systematically elevated the LRF Purpose"—i.e., spending on LRF's operating expenses—"over the Humanitarian Purpose" to the extent it "threaten[s] termination of the Humanitarian Purpose."  TAC ¶ 159.  These allegations are insufficient to establish special interest standing.[9]  Even if such a challenge were meritorious (and it is not), that

---

[7] Because the Third Amended Complaint has been submitted to the Court, the allegations of the First and Second Amended Complaints no longer exist, and the D.C. Circuit's analysis of those allegations no longer controls.  *See Al-Beshrawi v. United States*, Case No. 04-0743 (RCL), 2005 U.S. Dist. LEXIS 35410, at *9 (D.D.C. July 29, 2005) ("Since the second amended complaint supercedes both the original complaint and the first amended complaint, the second amended complaint has become the operative complaint in the case, and the original complaint no longer controls the litigation." (citing *Washer v. Bullitt County*, 110 U.S. 558, 562 (1884); *see also Nat'l City Mortg. Co. v. Navarro*, 220 F.R.D. 102, 106 (D.D.C. 2004)); *see also Duda v. Bd. of Educ.*, 133 F.3d 1054, 1057 (7th Cir. 1998) ("The amended complaint became, upon its submission, the operative complaint in the case; the original filing no longer controlled the litigation.").

[8] To the extent that Plaintiffs argue the existence of the Trust is threatened because the bulk of the remaining Trust assets are tied up in the Trust's real estate holdings, this threat is of the Plaintiffs' own doing.  As the Court knows, Plaintiffs have recorded a memorandum of *lis pendens* on the Trust's property, which prevents the LRF from its goal of selling the property and having access to the sale funds to use for humanitarian aid.

[9] Of course, the LRF's consistent and ongoing distribution of humanitarian aid conclusively refutes Plaintiffs' position.

is precisely the sort of challenge to the "ongoing administration" of a charitable trust that courts do not have jurisdiction to entertain.[10]

At its core, Plaintiffs' challenge to the "yearslong course of conduct" is a dispute about the everyday and ongoing administration of the Trust over the last 16 years.[11]  *Id.*  Plaintiffs contest the myriad fiduciary decisions made while the fiduciary exercised "ordinary discretion" relating to the Trust's grant-giving authority, and how the Trust exercised discretion with respect distributions made pursuant to other purposes of the Trust (e.g., operational expenses and the LRF's educational work in support of human rights).  *See Hooker*, 579 A.2d at 614-15.  That Plaintiffs allege that these decisions involved breaches of fiduciary duty is irrelevant.  Plaintiffs cannot re-cast these everyday spending decisions as "an extraordinary measure threatening the existence of the trust," or as a "fundamental change" to the manner in which the Trust provides humanitarian relief.  *Id.* at 615, 617.  This case is a far cry from those where courts have found special interest standing.

In *Hooker*, four female elderly unmarried residents challenged the closing sale and relocation of the free home for elderly indigent windows in Georgetown (Edes House) established by a charitable corporation.  *Id.* at 609-10.  The District of Columbia Court of Appeals concluded that those individuals had special interest standing to challenge the trustees' decision to merge with another entity, transfer the location of where aged and indigent Georgetown widows could reside (from Edes House in Georgetown to Washington Home, a mile from Georgetown), and

---

[10] Plaintiffs also allege that "but for the threat of litigation, and the fact of this litigation, there was a strong possibility" that the humanitarian purpose would have been terminated.  *Id.* ¶ 158.  But, as discussed *supra*, it was not terminated.  And Plaintiffs have offered no support – and Defendants know of none – for the apparent view that an allegedly threatened yet averted threat to a trust's existence can support special interest standing.

[11] As Professor Song explains in his Declaration, every individual applicant to apply for humanitarian relief from the Trust since 2017 has received a grant.  Song Decl. ¶ 12.

transfer the functions of day-to-day maintenance, operation of living units, and selection of residents to Washington Home, a residential care facility for the chronically or terminally ill that was not part of the Trust. *Hooker,* 579 A.2d at 610, 616. The court concluded that the trustees in *Hooker* proposed actions that would endanger the "continued availability of [the] benefit" secured by the trust—a location in Georgetown where aged and indigent widows could reside, with maintenance and operating expenses covered by the trust, and with residents selected by the trust. *Id.* at 617. And it explained that the merger was a "basic change in the nature of the institution" that put the parties "at a crossroads they are unlikely to face again," making "the prospect of recurrent, vexatious litigation" unlikely, and conferring special interest standing. *Id.*

Similarly, in *Alco Gravure*, the trustees of a foundation established to aid employees of the founder's corporations and their families decided, for tax reasons, to dissolve the foundation and transfer its assets to a kindred but tax-exempt foundation. *Alco Gravure*, 64 N.Y.2d at 466. The New York Court of Appeals explained that "the present action concerns not the ongoing administration of a charitable corporation, but the dissolution of that corporation and the complete elimination of the individual plaintiffs' status as preferred beneficiaries." *Id.* This was precisely the sort of action that "could only be tried once." *Id.*

In stark contrast, Plaintiffs allege in the TAC that the Trust continues to exist, possesses millions of dollars in assets, and has continued to provide humanitarian aid through at least 2022. TAC ¶¶ 112, 141. Plaintiffs' attempt to allege a "threat" to the humanitarian purpose fails in light of these concessions. What remains is simply an alleged "injury [that] flows from an ordinary exercise of discretion by the trustees in the course of administering the trust"—i.e., decisions on amounts granted to potential beneficiaries, including Plaintiffs, *see, e.g.*, TAC ¶¶ 9-11, 14, 117,

126—which "justifies denial of standing to [those] potential beneficiaries." *Hooker*, 579 A.2d at 617.

Accordingly, because Plaintiffs lack standing to enforce the Trust, this Court lacks jurisdiction and should dismiss the TAC.

## CONCLUSION

For these reasons, the Court should dismiss the Third Amended Complaint with prejudice.

Dated:  May 3, 2024                          Respectfully submitted,

MCGUIREWOODS LLP

/s/ *John J. Woolard*
Brian E. Pumphrey (admitted *pro hac vice*)
Garrett H. Hooe (admitted *pro hac vice*)
John J. Woolard (D.C. Bar No. 1614841)
800 East Canal Street
Richmond, VA 23219
Telephone: (804) 775-7745
Facsimile: (804) 698-4355
bpumphrey@mcguirewoods.com
ghooe@mcguirewoods.com
jwoolard@mcguirewoods.com

*Counsel for Defendants Oath Holdings, Inc.,*
*Michael Callahan, and Ronald Bell*

CHARNOFF SIMPSON PLLC

/s/ *Mikhael D. Charnoff*
Mikhael D. Charnoff (D.C. Bar 476583)
111 Church Street NW
Suite 202 A
Vienna, VA 22180
Telephone: 703-291-6650
mike@charnoffsimpson.com

*Counsel for Defendant Estate of Harry Wu*

IMPRESA LEGAL GROUP

*/s/ George E. Kostel*
George E. Kostel (D.C. Bar 1000015)
Jason P. Matechak (D.C. Bar 461194)
3033 Wilson Boulevard, Suite 700
Arlington, VA 22201
Telephone: (703) 842-0660
georgekostel@impresalegal.com
jasonmatechak@impresalegal.com

LAW FIRM OF WILLIAM BLAKELY
William Douglas Blakely (D.C. Bar 326793)
10908 Thimbleberry Ln
Great Falls, VA 22066
Telephone: (703) 430-4398
wblakely@williamblakelylaw.com

*Counsel for Defendants Laogai Research
Foundation and Laogai Human Rights
Organization*

CARR MALONEY P.C.

*/s/ J. Peter Glaws, IV*
J. Peter Glaws, IV (D.C. Bar 1013049)
2000 Pennsylvania Ave., NW, Suite 8001
Washington, D.C.  20006
(202) 310-5500 (Telephone)
(202) 310-5555 (Facsimile)
peter.glaws@carrmaloney.com

*Counsel for Defendant Impresa Legal Group*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 3, 2024, I caused the foregoing to be electronically filed using

the CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ John J. Woolard*