UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HE DEPU, *et al.*,<br><br>          Plaintiffs,<br><br>    v.<br><br>OATH HOLDINGS, INC., *et al.*,<br><br>          Defendants. | No. 1:17-0635-RDM<br><br>Judge Randolph D. Moss |

**PLAINTIFFS' [PROPOSED] SUR-REPLY**

During the briefing on Defendants' motions to dismiss for lack of Article III and special-interest standing, there were two divergent pictures of the trust's current status. On the one hand, during the April 2024 hearing on the Laogai Research Foundation's motion to cancel the *lis pendens*, counsel for the LRF painted a bleak picture, saying that, other than "very limited" "operating capital," the LRF building was the only remaining trust asset, *see* Transcript of April 3, 2024 Hearing ("4/3/24 Tr.") at 30:7-10, which was at risk of being subjected to a government lien because of back taxes. 4/3/24 Tr. at 33:8-11. On the other, in their reply briefing, Defendants submitted a declaration from LRF director Yongyi Song to the effect that the trust's humanitarian purpose was alive and well. *E.g.*, Declaration of Yongyi Song, Dkt. 200-1 ("Reply Song Declaration"), ¶¶ 5, 6, 10, 27 ("The Fund will continue issuing humanitarian aid grants[,]" "still possesses significant assets," "can easily continue providing humanitarian relief for hundreds, if not thousands, of individuals over at least the next ten years[,]" and that the "Fund's humanitarian purpose was never, and has never been, terminated—or 'functionally destroyed'").

Given this murkiness, and given that the Laogai Defendants (the LRF and the Laogai Human Rights Organization) had not produced documents reflecting the trust's finances post

1

2021, Plaintiffs pressed them to do so quickly, including so that the Reply Song Declaration could be tested. Ex.[1] 1 at 1, 3 (emails requesting documents that would show "the current amount remaining in the trust" and documents "relating to the offer on the building").

On August 2, 2024, the LRF (but not the LHRO) finally made a limited production. While that production is badly incomplete—it contained nothing about the purported offer on the building, for example, and no bank statements for the LHRO—it *did* include the LRF's general ledgers for the period October 1, 2021 through July 15, 2024.[2]

Those general ledgers show that the Reply Song Declaration's rosy portrayal of humanitarian spending—as well as counsel's April 2024 representation that "making humanitarian grants . . . is pretty much exclusively what the money has been used for in this case since 2021, aside from legal fees," 4/3/24 Tr. at 32:5-7—were both badly misleading.

And they show that there continues to be a systematic lack of due regard for the trust's humanitarian purpose, in violation of D.C. trust law. *See* D.C. Code § 19–1308.03 ("If a trust has 2 or more beneficiaries, the trustee shall act impartially in investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests.")

For example, between October 1, 2021 and July 15, 2024, the LRF's general ledgers show considerable trust spending benefiting not just the LRF but also its individual directors, Kuide Chen, Yongyi Song, and Ming Xia.[3] This table summarizes a portion of such spending.

---

[1] Citations to "Ex. __" are to exhibits to the concurrently filed Declaration of Times Wang.

[2] This period begins before the October 29, 2021 evidentiary hearing on trust existence, and before the Court ruled that the Yahoo Human Rights Fund monies indeed constitute a charitable trust.

[3] *See* Ex. 2 at 2 (LRF's current website listing its current board). Given this revelation of what appears to be sustained, naked self-dealing of trust assets by the LRF's current directors, Plaintiffs reserve the right to sue them individually for breach of trust.



| Spending Category | Amount |
|---|---|
| ███ REDACTED ███ | ███ |
| ███ | ███ |
| ███ | ███ |
| ███ | ███ |
| ███ | ███ |
| ███ | ███ |
| ███ | ███ |

What's past is prologue. Since 2021, while over $ REDACTED of trust assets have been spent on the LRF's bloated operations, a mere $ REDACTED has been spent on what the LRF calls REDACTED.[10] Taking the LRF at its dubious word, only REDACTED % of trust

---



spending since 2021 has been applied to the humanitarian purpose. This cannot reasonably be argued to constitute "due regard" to that purpose. Counsel's representation that "making humanitarian grants . . . is pretty much exclusively what the money has been used for in this case since 2021, aside from legal fees," was also false and misleading. 4/3/24 Tr. at 32:5-7.

It gets worse, because the $REDACTED figure is inflated. The general ledgers show that:



- REDACTED
- REDACTED
- REDACTED and
- REDACTED [11]

Even if some of this spending can be considered humanitarian assistance within the meaning of the 2007 Settlement Agreement, it is clear that not all of it can. Sculptures are not humanitarian assistance. Nor is paying for "hours worked" for the LRF's operational benefit.

The payments to the ICPC are similarly suspect in that it appears that the ICPC *also* used such monies to pay for services rendered to the ICPC, as opposed to humanitarian assistance. Specifically, as Mr. Wang has already explained, *see* Declaration of Wang Jinbo, Dkt. 197-2, and as now corroborated by documents produced by Messrs. Wang and Xu, all monies they received from the ICPC were *payments for services rendered to the ICPC*. For example, in

---



REDACTED

[11] REDACTED

2024, the ICPC paid Mr. Xu $600 for "[c]ashier" services between March 1, 2023 and February 28, 2024. Ex. 7. Similarly, in 2020, the ICPC paid Mr. Wang $1,000 for "website management" services between January 1, 2019 and May 31, 2019. Ex. 8. Meanwhile, Messrs. Wang and Xu have never received any monies from the ICPC labeled as, or that they considered to be, humanitarian assistance. Thus, it is doubtful how much of the monies sent to the ICPC, if any, should be credited towards the trust's humanitarian purpose.

What is *not* doubtful, however, is that the $[REDACTED] figure is inflated. And subtracting the amounts paid to [REDACTED], and giving the LRF the benefit of the doubt regarding the ICPC, the percentage of humanitarian spending becomes a truly pathetic [REDACTED]%.

If this level of disregard for the *main purpose* of a charitable trust isn't enough for both Article III and special-interest standing, nothing is. And Plaintiffs should not be required to wait until that disregard culminates in the complete destruction of the humanitarian purpose before being allowed to sue.[12] Defendants' Article III and special-interest arguments should thus be rejected. At a minimum, the Court should defer ruling on those arguments until both the LRF and the LHRO produce complete evidence regarding the trust's current status.

---

[12] D.C. law on special interest standing certainly does not so require. *E.g.*, *Fam. Fed'n for World Peace v. Hyun Jin Moon*, 129 A.3d 234, 244 (D.C. 2015) (holding that "the key consideration" for special-interest standing is "whether finding a justiciable interest in a given plaintiff would contravene the considerations underlying the traditional rule," and noting that "[t]he exponential expansion of charitable institutions justifies a reasonable relaxation of any rule limiting enforcement to a busy Attorney General"); *Hooker v. Edes Home*, 579 A.2d 608, 615–6 (D.C. 1990) (noting that "the nature of the challenge" prong of the special interest test is met where the suit "aim[s] to vindicate the interests of the entire class and [is] addressed to trustee action that impairs those interests").

Dated: August 6, 2024                              Respectfully submitted,

**FARRA & WANG PLLC**
*/s/ Times Wang*
Times Wang (D.C. Bar 1025389)
1300 I Street NW, Suite 400E
Washington, DC 20005
Telephone: (202) 505-6227
twang@farrawang.com

**SLARSKEY LLC**
David Slarskey (admitted *pro hac vice*)
Evan Fried (admitted *pro hac vice*)
420 Lexington Ave., Suite 2525
New York, NY 10170
Telephone: (212) 658-0661
dslarskey@slarskey.com
efried@slarskey.com

*Counsel for Plaintiffs*