UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HE DEPU, *et al.*,

              Plaintiffs,

v.

OATH HOLDINGS, INC., *et al.*,

              Defendants.

No. 1:17-0635-RDM

Judge Randolph D. Moss

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
SUR-REPLY IN OPPOSITION TO MOTION TO DISMISS**

**INTRODUCTION**

Plaintiffs' Sur-Reply confirms that the Motion to Dismiss should be granted. While Plaintiffs dispute the exact amount of LRF's humanitarian spending and opine that it is not enough, they concede their lack of charitable trust standing by admitting that the LRF has consistently made humanitarian grants over the last three years. And they do not dispute that the LRF can continue to provide humanitarian grants. Thus, there is *no* extraordinary measure threatening the existence of the trust, and Plaintiffs lack charitable trust standing.[1]

Indeed, the arguments in the Sur-Reply are remarkably untethered to the legal standards for charitable trust standing. This naked attempt to poison the well, by improperly injecting merits issues into a standing challenge, cannot create jurisdiction where none exists. Plaintiffs have not alleged facts sufficient to support charitable trust standing. This Court should dismiss the TAC with prejudice.

**ARGUMENT**

**I.     The Sur-Reply establishes Plaintiffs lack charitable trust standing.**

Plaintiffs argue that LRF's general ledgers support charitable trust standing because they allegedly show that Defendants failed to give "due regard" to the Trust's humanitarian purpose.[2]

---

[1] While Plaintiffs mention Article III standing in their Sur-Reply, they put forth no actual arguments related to Article III standing.

[2] In their Opposition, Plaintiffs declared that courts "do not" have discretion to evaluate a factual challenge to charitable trust standing. Opp. at 7. Yet in their Sur-Reply, Plaintiffs do an about-face. Plaintiffs (incorrectly) assert that the general ledgers, "show that the Reply Song Declaration's rosy portrayal of humanitarian spending . . . [was] badly misleading" and that "there continues to be a systematic lack of due regard for the trust's humanitarian purpose." Sur-Reply at 2; *see also id.* at 5 ("if this level of disregard . . . isn't enough for . . special interest standing, nothing is."). Though Defendants challenged charitable trust standing under Rule 12(b)(6), Plaintiffs' Sur-Reply asks the Court to consider facts outside the pleadings. Since these facts conclusively prove Plaintiffs' lack of charitable trust standing, Defendants do not object to the Court's consideration of them.

Sur-Reply at 2.  Setting aside Plaintiffs' improper attempt to frame a merits question as a standing one, the ledgers only reaffirm what Defendants have made clear from the beginning: Plaintiffs' allegations establish that Defendants continue to grant humanitarian aid and have committed no extraordinary measure threatening the existence of the Trust.

According to Plaintiffs, the general ledgers show that the LRF spent $65,100 on humanitarian grants from October 2021 to the present.  *Id.* at 3.  That is exactly the point Mr. Song made in his first Declaration in support of Defendants' challenge to Plaintiffs' Article III standing.  He testified that from January 2021 (ten months earlier) through the present, the LRF made $89,050 in humanitarian grants, and that from January 2022 through the present, the LRF made $45,050 in humanitarian grants.  Doc. 191 ¶ 51.  In other words, the general ledgers identified by Plaintiffs (which begin in October 2021) do not impeach the evidence in and attached to Mr. Song's Declarations—rather, they *support* his testimony that the LRF continues, to this day, to provide relief to eligible dissidents.  *See also* Reply at 9 ("the Trust [has been] distributing tens of thousands of dollars in aid to dissidents over the last five years").  The general ledgers also thus undercut Plaintiffs' assertion in their Opposition that "there is no more cash left in the Trust." Opp. at 2.

The purported absence of funds for humanitarian relief is the lynchpin of Plaintiffs' charitable trust standing argument, because Plaintiffs claim such a scenario is an extraordinary measure threatening the existence of the trust.  Opp. at 2, 3.  As Plaintiffs have now introduced evidence that the Trust is "alive and well," *id.* at 7, they have provided additional support for why the Court should dismiss their case for lack of charitable trust standing.[3]

---

[3] Nor has LRF or its counsel ever misled anyone about its financial condition.  LRF consistently continues with its grantmaking.  As LRF has always stated, it is devoting all or most all of its

2

Even if there were an inconsistency between Mr. Song's specific testimony and the information in the general ledgers (there is not), Mr. Song's Declarations are firmly rooted in evidence that Plaintiffs' Sur-Reply does not undermine. For example, Mr. Song supported his testimony with reference to over fifty exhibits, among which were detailed minutes of the LRF's proceedings (*see*, *e.g.*, Doc. 191 ¶¶ 34, 38, 46, 65, 70, 83, 87, 96), information about specific individual recipients of humanitarian grants (*see*, *e.g.*, Doc. 191 ¶¶ 51, 56, 65, 69, 75, 82, 93, 95, 100, 102, 108), and reports from organizations that received and distributed humanitarian grants over the course of the last several years (*see*, *e.g.*, Doc. 191 ¶¶ 60, 97). Plaintiffs have not challenged the veracity of Mr. Song's testimony, or the authenticity of documents supporting his statements. In any event, debating the precise amount of humanitarian grants that the LRF has made over the last three years only underscores that there has been significant remuneration to dissidents, and that there has *not* been an extraordinary measure threatening the existence of the Trust—just as Defendants have argued is evident from the face of the TAC itself. Mem. at 14 (citing TAC ¶ 112).

II.  **Plaintiffs' focus on merits issues in the Sur-Reply is irrelevant to this Court's evaluation of Defendants' standing challenges.**

Most of Plaintiffs' Sur-Reply has nothing to do with the standing challenges before this Court. Instead, Plaintiffs proffer irrelevant opinions about merits issues—just as they did in their Opposition. Plaintiffs contend, for example, that the general ledgers "show that there continues to be a systematic lack of due regard for the trust's humanitarian purpose, in violation of D.C. trust law." Sur-Reply at 2 (citing D.C. Code § 19-1308.03, which concerns impartiality among beneficiaries); *see also id.* at 4 (arguing that humanitarian grants since October 2021 "cannot

---

limited income to making grant payments; it pays no salaries, has an all-volunteer board and pays no speaker fees for the educational events it hosts on Chinese human rights atrocities.

3

reasonably be argued to constitute 'due regard' to [the humanitarian] purpose"). But as Defendants explained in their Reply, the D.C. statute containing the "due regard" language does not mention, or relate to, special interest standing, nor was it cited by *Hooker v. Edes Home*, 579 A.2d 608 (D.C. 1990). Reply at 20 n.9. Simply put, whether the alleged trustee gave "due regard" to the humanitarian purpose has nothing to do with whether Plaintiffs have alleged and can establish charitable trust standing.

Plaintiffs also claim that spending at various points over the last three-plus years benefitted the LRF's directors, apparently questioning whether these expenditures were the sort of "operational expenses" that the LRF was explicitly permitted to incur. *See He Depu v. Yahoo! Inc.*, 950 F.3d 897, 903 (D.C. Cir. 2020).[4] But just as with the question of "due regard," this question has nothing to do with the standing issues currently before this Court.

Plaintiffs' briefs fail to demonstrate Defendants took any extraordinary measure threatening the existence of the Trust. The allegations in the TAC are that the Trust has provided humanitarian relief for over seventeen years. TAC ¶ 112. Plaintiffs also have not rebutted Defendants' analysis of key authorities like *Hooker* and *Alco Gravure, Inc. v. Knapp Found.*, 64 N.Y.2d 458, 465 (1985). And there is no need to defer a ruling so that "complete evidence regarding the trust's current status", Sur-Reply at 5, can be produced because Defendants are not making a Rule 12(b)(1) factual challenge to Plaintiffs' standing.[5]

---

[4] Plaintiffs question the LRF's expenditure of just over $300,000 for operational expenses between October 2021 and the present. But as the D.C. Circuit noted, the Trust allows the LRF to spend up to $1 million *per year* on such expenses. *He Depu v. Yahoo! Inc.*, 950 F.3d 897, 903 (D.C. Cir. 2020) ("The Agreement also bars the Foundation from spending more than $1 million per year of the Fund on its own operating expenses . . .").

[5] Plaintiffs offer no explanation what this "complete evidence" might be. The evidence that *Plaintiffs* put forward in their Sur-Reply is dispositive of their lack of charitable trust standing.

**III.     There is no new information in Plaintiffs' Sur-Reply bearing on the Motion to Dismiss**.

Plaintiffs assert in their Motion for Leave to File a Sur-Reply that "[g]ood cause exists for a sur-reply because Defendants' reply included evidence and argument about the current status of the [Trust that was] not contained in their opening papers," and because the Laogai Research Foundation "produced documents showing that Defendants' moving papers . . . at best raise considerable fact disputes precluding dismissal." Doc. 202 at 1.

To this end, Plaintiffs appear to claim that Mr. Song's Reply Declaration contained facts that were not part of Defendants' initial dismissal papers. That is wrong. In his Reply Declaration, Mr. Song addressed two points. He first reiterated that, per his initial Declaration, it was incorrect for Plaintiffs to claim that "there is no cash left" to support the Fund, and that "[f]or all practical purposes, the Trust is gone." Doc. 200-1 ¶¶ 2-13. The second point addressed Plaintiff Wang Jinbo's contention—raised for the first time in this litigation in Plaintiffs' Opposition[6]—that he did not receive humanitarian assistance from the PEN Center, as Mr. Song demonstrated in his initial declaration. *Id.* ¶¶ 2, 14. As reported by the PEN Center, the LRF provided grants to dozens and dozens of dissidents, one of whom the PEN Center reported to be Plaintiff Jinbo. *Id.* ¶ 21.

## CONCLUSION

The Sur-Reply confirms the undisputable merit of Defendants' Motion to Dismiss. Because Plaintiffs agree that the LRF, through today, continues to make humanitarian grants, Plaintiffs cannot have charitable trust standing. The Court should grant the Motion to Dismiss.

---

[6] According to Exhibit 8 to the Sur-Reply, Plaintiff Jinbo invoiced the PEN Center for his work *in June 2020*—over four years before the Sur-Reply. Plaintiffs do not explain why they produced this document four years later, after briefing on the motion to dismiss was complete.

5

Dated: September 4, 2024

Respectfully submitted,

MCGUIREWOODS LLP

*/s/ John J. Woolard*
Brian E. Pumphrey (admitted *pro hac vice*)
Garrett H. Hooe (admitted *pro hac vice*)
John J. Woolard (D.C. Bar No. 1614841)
800 East Canal Street
Richmond, VA 23219
Telephone: (804) 775-7745
Facsimile: (804) 775-7065
bpumphrey@mcguirewoods.com
ghooe@mcguirewoods.com
jwoolard@mcguirewoods.com

*Counsel for Defendants Oath Holdings, Inc., Michael Callahan, and Ronald Bell*

CHARNOFF SIMPSON PLLC
*/s/ Mikhael D. Charnoff*
Mikhael D. Charnoff (D.C. Bar 476583)
111 Church Street NW
Suite 202 A
Vienna, VA 22180
Telephone: 703-291-6650
mike@charnoffsimpson.com

*Counsel for Defendant Estate of Harry Wu*

IMPRESA LEGAL GROUP
*/s/ George E. Kostel*
George E. Kostel (D.C. Bar 1000015)
Richard K. Kelsey (*pro hac vice*)
3033 Wilson Boulevard, Suite 700
Arlington, VA 22201
Telephone: (703) 842-0660
georgekostel@impresalegal.com
richkelsey@impresalegal.com

LAW FIRM OF WILLIAM BLAKELY
William Douglas Blakely (D.C. Bar 326793)
10908 Thimbleberry Ln
Great Falls, VA 22066
Telephone: (703) 430-4398
wblakely@williamblakelylaw.com

*Counsel for Defendants Laogai Research Foundation and Laogai Human Rights Organization*

CARR MALONEY P.C.
 /s/ J. Peter Glaws, IV
J. Peter Glaws, IV (D.C. Bar 1013049)
2000 Pennsylvania Ave., NW, Suite 8001
Washington, D.C. 20006
(202) 310-5500 (Telephone)
(202) 310-5555 (Facsimile)
peter.glaws@carrmaloney.com

*Counsel for Defendant Impresa Legal Group*

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2024, I caused the foregoing to be electronically filed using the CM/ ECF system, which will send notice of this filing to all counsel of record.

*/s/ John J. Woolard*
John Woolard