# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HE DEPU,** *et al* | |
| **Plaintiffs,** | |
| **v.** | **Case No. 1:17-cv-00635-RDM** |
| **OATH HOLDINGS, INC.,** *et al* | |
| **Defendants.** | |

## DEFENDANT MICHAEL CALLAHAN'S
## <u>REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT</u>

## TABLE OF CONTENTS

**Page**

UNDISPUTED FACTS ............................................................................................................. 3

ARGUMENT ............................................................................................................................ 3

I.     Plaintiffs' proffered facts are largely immaterial, unsupported, and improper. ................ 3

II.    The Opposition confirms Mr. Callahan did not cause Plaintiffs' alleged injuries. ........... 6

      A.    A plaintiff must prove that the defendant's actions caused that plaintiff harm in a claim for breach of trust or fiduciary duty. ............................................. 7

      B.    Plaintiffs' legal arguments are wrong, and the few facts they present about Mr. Callahan's actions cannot defeat summary judgment. .................................. 11

            1.    Plaintiffs' cases and secondary sources do not address the question before the Court: whether Plaintiffs must show Callahan caused their claimed injuries ............................................................................. 11

            2.    Neither of the *two* facts asserted about Mr. Callahan's actions are material to his grounds for summary judgment. ...................................... 15

III.   Plaintiffs' claims against Mr. Callahan are time-barred. .................................................. 16

      A.    The statute of repose bars Plaintiffs' claim under D.C. Code § 19.1310.05(c). ................................................................................................. 16

      B.    Plaintiffs' claims are time-barred if the Court applies a statute of limitations. ...................................................................................................... 19

      C.    No tolling doctrines apply to rescue Plaintiffs' untimely claims. ....................... 21

CONCLUSION ...................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Am. Fed'n of Teachers, AFL-CIO v. Bullock*,
   605 F. Supp. 2d 251 (D.D.C. 2009) ...................................................................16

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................................4

*Armenian Assembly of Am., Inc. v. Cafesjian*,
   772 F. Supp. 2d 20 (D.D.C. 2011), *aff'd*, 758 F.3d 265 (D.C. Cir. 2014) ............7, 8

*Baity v. Kalik*,
   51 F. Supp. 3d 414 (S.D.N.Y. 2014) ......................................................................4

*Burnett v. Al Baraka Inv. & Dev. Corp.*,
   274 F. Supp. 2d 86 (D.D.C. 2003) .......................................................................14

*California Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
   582 U.S. 497 (2017) ...........................................................................................17, 18

*Codename Enters., Inc. v. Fremantlemedia N. Am., Inc.*,
   2018 WL 3407709 (S.D.N.Y. Jan. 12, 2018) .........................................................5

*Cohen v. Minneapolis Jewish Fed'n*,
   286 F. Supp. 3d 949 (W.D. Wis. 2017), *aff'd*, 776 F. App'x 912 (7th Cir.
   2019) .....................................................................................................................1, 7

*CTS Corp. v. Waldburger*,
   573 U.S. 1 (2014) ..................................................................................................17

*Fla. Dep't of Ins. v. Chase Bank of Texas Nat'l Ass'n*,
   2001 WL 124951 (N.D. Tex. Feb. 9, 2001), *aff'd,* 274 F.3d 924 (5th Cir.
   2001) .......................................................................................................................10

*Gill v. Islamic Republic of Iran*,
   249 F. Supp. 3d (D.D.C. 2017) .............................................................................14

*Graden v. Conexant Syst. Inc.*,
   496 F.3d 291 (3d Cir. 2007)..................................................................................12

*Gray v. Staley*,
   310 F.R.D. 32 (D.D.C. 2015)................................................................................20

*Haynes v. Williams*,
    392 F.3d 478 (D.C. Cir. 2004) ...........................................................................16

*Honsinger v. UMB Bank, N.A.*,
    2009 WL 10704841 (W.D. Mo. May 19, 2009), *amended*, 2009 WL
    10704888 (W.D. Mo. Aug. 31, 2009) ...................................................................10

*Irish v. Tropical Emerald, LLC*,
    2021 WL 5899048 (E.D.N.Y. Dec. 14, 2021) ....................................................5, 6

*Lee v. Bos*,
    874 F. Supp. 2d 3 (D.D.C. 2012) .........................................................................10

*Martin v. Omni Hotels Mgmt. Corp.*,
    206 F. Supp. 3d 115 (D.D.C. 2016) .....................................................................15

*McFarlane v. Harry's Nurses Registry*,
    2020 WL 1643781 (E.D.N.Y Apr. 2, 2020) ..........................................................4

*U.S. ex rel. Miller v. Bill Harbert Int'l Const.*,
    505 F. Supp. 2d 1 (D.D.C. 2007)....................................................................23, 25

*Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*,
    198 F.3d 823 (11th Cir. 1999), *amended in part*, 211 F.3d 1224 (11th Cir.
    2000) ................................................................................................................20, 21

*Ohl v. CSX Transp., Inc.*,
    625 F. Supp. 3d 1319 (N.D. Ga. 2022), *aff'd*, 2023 WL 4174411 (11th Cir.
    June 26, 2023).....................................................................................................3, 4

*Pearson v. Garrett-Evangelical Theological Seminary, Inc.*,
    790 F. Supp. 2d 759 (N.D. Ill. 2011) ....................................................................7

*Price v. Akaka*,
    928 F.2d 824 (9th Cir. 1990...................................................................................13

*Ret. Sys. v. ANZ Sec., Inc.*,
    582 U.S. 497 (2017)........................................................................................17, 18

*Strother v. Steele*,
    2016 WL 7494287 (D.N.M. May 16, 2018) .......................................................8, 9

## State Cases

*Adrian v. Am. Security & Trust Co.*,
    211 A.2d 771 (D.C. 1965) ....................................................................................25

*State ex rel. Atty. Gen. v. Vela*,
　　2013-Ohio-1049, 987 N.E.2d 722.....................................................................7, 11

*Beckman v. Farmer*,
　　579 A.2d 618 (D.C.1990) ...............................................................................7

*Cabaniss v. Cabaniss*,
　　464 A.2d 87 (D.C. 1983) .........................................................................11, 12

*Diamond v. Davis*,
　　680 A.2d 364 (D.C. 1996) ............................................................................22

*Drake v. McNair*,
　　993 A.2d 607 (D.C. 2010) .................................................................2, 22, 25

*East v. Graphic Arts Indus. Joint Pension Tr.*,
　　718 A.2d 153 (D.C. 1998) .......................................................................22, 23

*Farris v. Compton*,
　　652 A.2d 49 (D.C. 1994) ..............................................................................21

*State of Del. ex rel. Gebelein v. Fla. First Nat'l Bank of Jacksonville*,
　　381 So. 2d 1075 (Fla. Dist. Ct. App. 1979) ....................................................14

*Hendel v. World Plan Exec. Council*,
　　705 A.2d 656 (D.C. 1997) .......................................................................22, 23

*Hicks for & on Behalf of Christian Heritage Found., Inc. v. Garrett*,
　　2020 WL 4360835 (Tex. App. July 29, 2020).................................................13

In *Trust Under Will of Augustus T. Ashton, Deceased Dated Jan. 20, 1950*, 669
　　Pa. 25, 44, 260 A.3d 81, 93 (2021) ...............................................................13

*J.H. Westerman Co. v. Fireman's Fund Ins. Co.*,
　　499 A.2d 116 (D.C. 1985) ............................................................................17

*In re Joan C. Ranallo Tr.*,
　　2023 WL 2637379 (Minn. Ct. App. Mar. 27, 2023)........................................10

*Johnson as Tr. of Luther & Shirley Warner Charitable Tr. v. Butler*,
　　292 N.C. App. 110, 896 S.E.2d 66, *review denied*, 906 S.E.2d 477 (N.C.
　　2024) ...............................................................................................................7

*Jones v. Gov't Emps. Ins. Co.*,
　　621 A.2d 845 (D.C. 1993) ............................................................................25

*Kamerow v. D.C. Rental Hous. Comm'n*,
　　891 A.2d 253 (D.C. 2006) ............................................................................21

*Peoples Drug Stores, Inc. v. D.C.*,
  470 A.2d 751 (D.C. 1983) ........................................................................19

*Peters v. Riggs Nat'l Bank, N.A.*,
  942 A.2d 1163 (D.C. 2008) ......................................................................17

*Rafert v. Meyer*,
  290 Neb. 219, 859 N.W.2d 332 (2015)................................................1, 9, 11

*Randolph v. ING Life Ins. & Annuity Co.*,
  973 A.2d 702 (D.C. 2009) ........................................................................1, 7, 8

*Matter of Trust of Rosati*,
  117 Mich. App. 1 (1989)...........................................................................9

*Wagner v. Sellinger*,
  847 A.2d 1151 (D.C. 2004) ......................................................................23

**Federal Statutes**

Securities Act § 11 ...................................................................................17

Uniform Trust Code § 1005(c) .................................................................2, 18

**State Statutes**

D.C. Code § 12-302 ..................................................................................20

D.C. Code § 12-302(a)(3) .........................................................................20

D.C. Code § 19-1310.02(a)(1) ..................................................................12

D.C. Code § 19.1310.05(c) ............................................................... *passim*

**Rules**

Fed. R. Civ. P. 56(c)(3)..............................................................................3

**Other Authorities**

Restatement (Second) of Trusts § 214 ......................................................12

Procedure—Parties—Costs and Fees, Bogert's The Law of Trusts and Trustees
  §§ 411, 412, 414.....................................................................................14
  § 871.......................................................................................................1, 10

Mr. Callahan seeks summary judgment as to all Plaintiffs in this case on two grounds. First, Plaintiffs have failed to show there is a genuine issue of material fact whether Mr. Callahan caused the injuries they allegedly suffered. Second, all of Plaintiffs' claims are time barred.

In response, Plaintiffs rarely discuss Mr. Callahan himself. Instead, they narrate their merits case as to all Defendants, introducing myriad immaterial "undisputed material facts" about Defendants' alleged breaches of duty, which are not relevant to the narrow issues raised in Mr. Callahan's motion, and many of which are disputed. This Court should disregard these statements and Plaintiffs' attempt to divert it from the straightforward legal questions at hand.

As to causation, Plaintiffs do not dispute that their injuries occurred either before Mr. Callahan joined the board of the Laogai Human Rights Organization ("LHRO"), or after he resigned from it. To avoid summary judgment on their breach of trust, aiding and abetting breach of trust, and conspiracy claims, Plaintiffs instead argue that trust law does not require that they show Mr. Callahan caused their injuries at all, only that he harmed the Fund *res*. But Plaintiffs cite no authority addressing the elements of their claims and instead reference generic trust law principles, cases involving standing, and other authorities irrelevant to the specific issue here.

The law in D.C. (and elsewhere) requires that a plaintiff asserting breach of trust or fiduciary duty prove a trustee caused "injury . . . to the beneficiary," regardless of the trust's nature. *Randolph v. ING Life Ins. & Annuity Co.*, 973 A.2d 702, 709 (D.C. 2009); *see also Cohen v. Minneapolis Jewish Fed'n*, 286 F. Supp. 3d 949, 973 (W.D. Wis. 2017), *aff'd*, 776 F. App'x 912 (7th Cir. 2019); *Rafert v. Meyer*, 290 Neb. 219, 229, 859 N.W.2d 332, 340 (2015); Procedure— Parties—Costs and fees, Bogert's The Law of Trusts and Trustees § 871 ("A beneficiary seeking to obtain relief for a breach of trust must plead and prove facts which show the existence of a fiduciary duty and the failure of the trustee to perform it, and that consequently the court should

grant the requested remedy.  If he seeks damages, a part of his burden will be proof *that the breach caused him a loss*.") (emphasis added).  Because Plaintiffs do not dispute Mr. Callahan did not cause their injuries, Mr. Callahan is entitled to summary judgment.

Plaintiffs' rejoinder to Mr. Callahan's time-bar arguments are also unavailing.  First, although Plaintiffs argue D.C. Code § 19.1310.05(c) is a statute of limitations, rather than a statute of repose, the authorities Plaintiffs cite in support of that argument demonstrate otherwise.  In particular, the comments to Uniform Trust Code Section 1005(c) (on which Section 19.1310.05(c) is based) state that this subsection (c) "is intended to provide some *ultimate repose* for actions against a trustee." (emphasis added).  Because Plaintiffs do not dispute that Mr. Callahan resigned from the LHRO on July 9, 2012, and that they filed their claims nearly five years later, the three-year time-bar in Section 19.1310.05(c) bars their lawsuit against him.

Even if statutes of limitation apply, those three-year periods began running no later than July 9, 2012, making the claims against Mr. Callahan untimely.  Furthermore, no tolling doctrine applies.  After originally arguing that this Court should deny leave to Mr. Callahan to file his motion "because he helped conceal the claims against him," Dkt. 211 at 3, Plaintiffs now pivot to a discovery rule-based theory of tolling that focuses on their purported diligence to learn of the trust's existence.  But the discovery rule does not turn on whether and when a plaintiff learns of the precise cause of action available to them; a suspicion of wrongdoing suffices to start the limitations clock.  *Drake v. McNair*, 993 A.2d 607, 617 (D.C. 2010).  Contrary to claims made in the untimely and improper declarations attached to Plaintiffs' Opposition, Plaintiffs' own documents reveal they had suspicions about wrongdoing with respect to the Fund no later than 2012.  Consequently, the discovery rule does not save Plaintiffs' tardy lawsuit, and Mr. Callahan is entitled to summary judgment on that ground as well.

## UNDISPUTED FACTS

Plaintiffs do not dispute the vast majority of Mr. Callahan's Statement of Undisputed Material Facts. Dkt. 216-2. Importantly, Plaintiffs do not dispute the timing or amounts of humanitarian aid they received. *Id*. at 4–6. Plaintiffs do not dispute, that following his resignation from the LHRO board on July 9, 2012, Mr. Callahan has had nothing to do with the LHRO, the Fund, or Yahoo. *Id*. at 2. Plaintiffs do not dispute that the LHRO had $6.3M available for humanitarian aid when Mr. Callahan resigned. *Id*. at 4. And Plaintiffs concede that Mr. Callahan could not have caused the injuries they allege because each injury occurred either before he joined the LHRO board or after he resigned. *Id*. at 1–2, 4–6; Dkt. 216-1 at 18.

Plaintiffs counter-identify only two specific alleged bad acts to Mr. Callahan. First, they allege he "never voted against providing Wu and the LRF with their requested distributions from the Trust."[1] Dkt. 216-2 at 13 (Pls' Stmt of Fact ¶ 73). Second, they allege that he voted "to remove [Tienchi] Liao from the LHRO board." *Id*. at 14 (Pls' Stmt of Fact ¶ 78).

## ARGUMENT

### I.    Plaintiffs' proffered facts are largely immaterial, unsupported, and improper.

Plaintiffs introduce a litany of alleged "undisputed material facts" that are not relevant to either Mr. Callahan's causation or time-bar arguments and are unsupported by the evidence. *See generally* Dkt. 216-2. These facts seem to be introduced primarily in an attempt to poison the well and litigate issues that were not presented in the instant motion for summary judgment. The Court need not consider when deciding summary judgment "immaterial facts, those stated as an issue or

---

[1] Pursuant to the Court's Standing Civil Order in Civil Cases, "[t]*he parties must furnish precise citations to the portions of the administrative record on which they rely; the Court need not consider materials not specifically identified. See* Fed. R. Civ. P. 56(c)(3)." (emphasis added). The Court should disregard this statement of fact because it has no record citation. *See Ohl v. CSX Transp., Inc*., 625 F. Supp. 3d 1319, 1324 (N.D. Ga. 2022), *aff'd*, 2023 WL 4174411 (11th Cir. June 26, 2023) (a court need not consider facts that "the record citation fails to support").

legal conclusion, those not supported by a citation to evidence, or those that the record citation fails to support." *Ohl*, 625 F. Supp. 3d at 1324; *see also McFarlane v. Harry's Nurses Registry*, 2020 WL 1643781, at *1 n.1 (E.D.N.Y Apr. 2, 2020) ("to the extent a party improperly interjects arguments and/or immaterial facts in response to facts asserted by the opposing party, and does not specifically controvert such facts, the court disregards those statements"); *Baity v. Kalik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (same).

For example, Plaintiffs allege that: "Yahoo created the Trust to resolve a legal, political, and public relations scandal," and cite this Court's May 12, 2022 opinion, Dkt. 137, as support. Dkt. 216-2 at 7 (Pls' Stmt of Fact ¶ 38). But the Court did not state "Yahoo created the Trust to resolve a legal, political, and public relations scandal," or characterize Yahoo's motivations in this fashion.[2] Moreover, Yahoo's reasons for creating the Yahoo Human Rights Fund are not material to the issues before the Court on summary judgment because they will not "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

As another example, in Plaintiffs' ¶ 54, Plaintiffs assert that "the LRF's outside auditors issued another letter reiterating those deficiencies, while adding several more, *including that the LRF's spending was likely in breach of the settlement agreement*." Dkt. 216-2 at 9 (Pls' Stmt of Fact ¶ 54) (emphasis added). The underlying exhibit does not support this. The exhibit notes "[t]he funds used to purchase the building were Yahoo! funds and over and above the $1 million per year allowed drawdown," but there is no support for the assertion that the outside auditor made

---

[2] The cited passage provides a background of the events leading to the 2007 settlement agreement. The words "scandal" and "public relations" never appear in the opinion.

a legal conclusion as to LRF spending and the settlement agreement (nor would an auditor be entitled to make a legal conclusion). In fact, it does not mention the settlement agreement at all.[3]

Finally, Plaintiffs also improperly rely on new declarations made long after the close of fact discovery. Plaintiffs have introduced a new declaration from Plaintiff Wang Jinbo, dated January 10, 2025, as Exhibit 29, and a declaration by Yaxue Cao-Ritter, dated January 10, 2025, as Exhibit 33. Fact discovery closed on November 8, 2024. Even assuming *arguendo* that these "[d]eclaration[s] contain[] only facts and lay opinion based upon . . . personal observations and experience[, t]hose facts and lay opinions should have been disclosed before the close of fact discovery." *Irish v. Tropical Emerald, LLC*, 2021 WL 5899048, at *1-*3 (E.D.N.Y. Dec. 14, 2021) (addressing late declaration filed in opposition to summary judgment). Stated differently, "[a] party cannot sandbag its adversary by submitting new facts in a summary judgment declaration, if those facts should have been disclosed during fact discovery." *Id*. "The late production prevents Defendant from inquiring at a deposition or otherwise investigating the evidence." *Codename Enters., Inc. v. Fremantlemedia N. Am., Inc*., 2018 WL 3407709, at *3 (S.D.N.Y. Jan. 12, 2018). Plaintiffs do not even acknowledge—let alone justify—the introduction of new declarations after the close of fact discovery.[4] Because considering these declarations

---

[3] Plaintiffs also cite Exhibit 27 to support their assertion that Mr. "Callahan personally emphasized that 'there must be confidentiality relating to the issues of the Trust, the Supporting Organization [the LHRO] and LRF.'" Exhibit 27 are the LHRO Board Meeting Minutes from February 16, 2016—*four years* after Mr. Callahan resigned from that board. The notes do not list Mr. Callahan as an attendee of that meeting. Exhibit 27 is one of four exhibits (*see also* Exhibits 26, 28, and 34) attached to the Opposition that Plaintiffs do not cite to support any of their "undisputed material facts." All four exhibits are immaterial, and Exhibits 27 and 28 appear to be included solely as an attempt to inflame the Court. Accordingly, the Court should disregard Exhibits 26–28 and 34.

[4] Mr. Callahan, as *early as November 2022*, identified a time-bar as grounds for his summary judgment request, which Plaintiffs opposed in part on tolling grounds. *See* Dkt. 139, 142. Plaintiffs were thus well aware of facts material to this issue, yet now belatedly introduce new evidence from a Plaintiff and Plaintiffs' alleged agent months after the close of fact discovery. This Court should not reward such conduct.

would be "patently improper and unfair," Mr. Callahan asks the Court to disregard these untimely-produced declarations.  *Irish*, 2021 WL 5899048, at *5.

## II.    The Opposition confirms Mr. Callahan did not cause Plaintiffs' alleged injuries.

Plaintiffs do not dispute that Mr. Callahan did not cause their injuries, asserting instead that they do not need to show Mr. Callahan caused them harm at all.  As explained in the opening brief, Plaintiffs have asserted two types of injuries: first, Plaintiffs He, Li, Wang, and Xu W. claim they were injured because they received smaller distributions from the Fund than they should have. Dkt. 215-1 at 9.  Second, all Plaintiffs allege they lost the opportunity to receive meaningful humanitarian aid from the Fund in the future.  *Id.*  These injuries, according to the Third Amended Complaint, stem from Mr. Callahan's alleged breach of trust, or, alternatively, his aiding and abetting breach of trust and conspiratorial conduct.  Dkt. 186 at 4–9 (TAC ¶¶ 9-14).  All three causes of action require Plaintiffs to show Mr. Callahan caused their injuries.  Dkt. 215-1 at 8.

However, Mr. Callahan could not have caused Plaintiffs He, Li, Wang, and Xu W. to be denied funds they were supposedly entitled to, because Mr. Callahan was not a director on the LHRO board when those Plaintiffs received distributions from the LRF.  *Id.* at 9-10.  Nor could Mr. Callahan have caused any Plaintiff to "lose an opportunity" to receive "meaningful" funding – however that might be defined – from the Fund because there was about $6.3 million available for humanitarian relief in 2012, when Mr. Callahan resigned from Yahoo and the LHRO board. *Id.* at 10-11.  Accordingly, Plaintiffs fail to show there is a genuine issue of material fact as to whether Mr. Callahan caused their alleged injuries (he did not).

In their Opposition, Plaintiffs do not dispute that Mr. Callahan did not cause their injuries. Dkt. 216-1 at 22 ("the relevant injury is not personal damages or losses suffered by the plaintiffs"). Instead, after raising myriad immaterial factual matters about the LRF's implementation of the purposes articulated in the Settlement Agreement, Plaintiffs argue they need not show Mr.

Callahan's actions harmed them at all, so long as he harmed the Fund's *res*. *Id.* But, as discussed below, none of the authorities cited by Plaintiffs stand for the remarkable proposition that they need not show their harms were caused by Mr. Callahan to prevail on their claims. Not only do those authorities not address the core issue raised by Mr. Callahan, they are also largely inapposite, as they primarily address standing disputes and non-trust claims. *Id.* at 22-24.

> **A.    A plaintiff must prove that the defendant's actions caused that plaintiff harm in a claim for breach of trust or fiduciary duty.**

The law is clear: "breach of fiduciary duty is not actionable unless injury accrues *to the beneficiary* or the fiduciary profits thereby." *Randolph*, 973 A.2d at 709 (citing *Beckman v. Farmer*, 579 A.2d 618, 651 (D.C.1990)) (emphasis added). This Court has explained that a plaintiff alleging such a cause of action "must show that [a trustee's] breach is the direct and proximate cause of some injury" to the plaintiff. *Armenian Assembly of Am., Inc. v. Cafesjian*, 772 F. Supp. 2d 20, 116 (D.D.C. 2011), *aff'd*, 758 F.3d 265 (D.C. Cir. 2014).

Importantly, even when a charitable trust is at issue, causation is an element of a breach of trust or fiduciary duty claim. *See State ex rel. Atty. Gen. v. Vela*, 2013-Ohio-1049, ¶ 46, 987 N.E.2d 722, 730 (finding that, in a charitable trust case, "[t]o prevail on a breach of fiduciary duty claim, a party must show the existence of a fiduciary relationship, failure to comply with a duty accorded that relationship, and damages proximately caused by that failure" (internal quotation omitted)); *Cohen*, 286 F. Supp. 3d at 973 (finding, in a charitable trust case, that "[t]he elements of a claim for breach of fiduciary duty are: (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that duty; and (3) the breach of duty caused the plaintiff's damage"); *see also Johnson as Tr. of Luther & Shirley Warner Charitable Tr. v. Butler*, 292 N.C. App. 110, 896 S.E.2d 66, *review denied*, 906 S.E.2d 477 (N.C. 2024) (same); *Pearson v. Garrett-Evangelical Theological Seminary, Inc.*, 790 F. Supp. 2d 759, 768–69 (N.D. Ill. 2011) (same).

*Cafesjian* is instructive. That matter involved a non-profit organization, AGM&M, bringing claims against former trustees of the organization, Cafesjian and Waters, for breach of fiduciary duty in connection with those trustees' actions when establishing a museum to educate the public about the Armenian genocide. *Cafesjian*, 772 F. Supp. 2d at 106-07. This Court explained that, to succeed, "AGM&M must show that (1) Cafesjian and Waters owed AGM&M a fiduciary duty; (2) Cafesjian and Waters breached that duty; and (3) the breach was the proximate cause of an injury to AGM&M." *Id.* at 103. It also specifically noted that "even if the Court finds that Waters or Cafesjian breached their duties of care or loyalty by some action or inaction, there is no liability unless the Court finds that the breach was the proximate cause of some injury to the [beneficiary]." *Id.* at 104 (citing *Randolph*, 973 A.2d at 709). This Court determined that Cafesjian and Waters did not cause AGM&M's injuries and thus granted the former trustees summary judgment on the breach of fiduciary duty claims. *Id.* at 116-17; *see also id.* at 120 ("Plaintiffs have not established that any of these alleged damages were proximately caused by any of Defendants' actions.").

Other jurisdictions similarly require a beneficiary to show a defendant caused harm to the beneficiary (and not just the trust *res*) in the breach of trust or fiduciary duty context. In *Strother v. Steele*, 2016 WL 7494287, at *5 (D.N.M. May 16, 2018), plaintiff beneficiary sued trustees for breach of trust stemming from the trustees' alleged failure to inform the beneficiary of events that caused the beneficiary financial harm. Defendant trustees moved for summary judgment, alleging that they did not cause the beneficiary's injuries. *Id.* at *6. The district court agreed, explaining that the beneficiary "has not shown, nor can she show, that the value of the Trust property to which she is entitled was affected by the alleged breach [by the trustee] of a duty to keep her informed."

*Id.* Thus, the beneficiary's inability to "show that *she* suffered damages as a result of the breaches of duty" by the trustee warranted judgment in favor of the trustees. *Id.* (emphasis added).

Conversely, when a plaintiff beneficiary can demonstrate a trustee's breach of fiduciary duty caused her injury, courts will find that the causation requirement has been satisfied. Plaintiff beneficiaries in *Rafert*, for example, alleged that a trustee breached his fiduciary duties by failing to inform beneficiaries that certain insurance policies had lapsed, which caused the beneficiaries to pay over $250,000 in premiums to their insurer after said lapse. 290 Neb. at 229. Defendant trustee argued that "the damages claimed by [the beneficiaries] cannot be traced to [the trustee's] conduct." *Id.* The court, emphasizing that a beneficiary must show causation as to a particular trustee, held that the trustee's breach of his fiduciary duties "was a direct and proximate cause of the damages sustained by [the beneficiaries]." *Id.*

Finally, *Matter of Trust of Rosati*, 117 Mich. App. 1 (1989), supports Mr. Callahan's argument. There, in 1980, a bank became trustee of a testamentary trust benefitting plaintiff beneficiary Rosati. *Id.* at 1-2. The trust assets were largely comprised of two rental properties. *Id.* Between 1980 and 1983, the properties fell into disrepair. *Id.* at 3. Beneficiary Rosati brought suit for breach of trust, alleging that the trustee violated its fiduciary duty to keep the properties in good repair. *Id.* at 5. The specific breach was the trustee's failure "to preserve and maintain the res of the trust," the properties. *Id.* The trustee argued on appeal that its breach was not the proximate cause of the beneficiary's damages. *Id.* at 5-6. The court disagreed, explaining that "[t]here can be no doubt that the bank's failure to expend any funds for maintenance was a substantial factor in the property finally being condemned and losing its value," which "proximately caused the damages *to the beneficiary*." *Id.* at 6 (emphasis added).

Collectively, these authorities make clear that beneficiaries must show a causal connection between the actions of a trustee alleged to have committed a breach of trust and the injuries *those beneficiaries* have purportedly suffered, regardless of the nature of the trust.[5]  Treatises further make clear this is the proper analysis.  As Bogert's notes, "[a] beneficiary seeking to obtain relief for a breach of trust must plead and prove facts which show the existence of a fiduciary duty and the failure of the trustee to perform it, and that consequently the court should grant the requested remedy.  If he seeks damages, a part of his burden will be proof *that the breach caused him a loss*."  *See* Procedure—Parties—Costs and fees, Bogert's The Law of Trusts and Trustees § 871 (emphasis added).  Accordingly, Plaintiffs must show that Mr. Callahan's actions caused them harm.  However, they have admitted he did no such thing.

Instead, Plaintiffs' causation argument is that a plaintiff is not required to prove causation—or need only prove some watered down form of causation—in cases involving charitable trusts.  As noted above, no case has ever said this, and for good reason.  Plaintiffs are correct that a trustee has duties to manage a trust *res* for the benefit of the trust beneficiaries.  Mr. Callahan does not dispute this.  But that uncontroversial fact has nothing to do with what a plaintiff

---

[5] *See also Lee v. Bos*, 874 F. Supp. 2d 3, 7 (D.D.C. 2012) (rejecting breach of fiduciary duty claim when plaintiff could not "show[] that plaintiff sustained any injury as a result of defendant's actions"); *Honsinger v. UMB Bank, N.A.*, 2009 WL 10704841, at *4 (W.D. Mo. May 19, 2009), *amended*, 2009 WL 10704888 (W.D. Mo. Aug. 31, 2009) ("Accordingly, to establish liability for either a breach of trust (Count I) or a breach of fiduciary duty (Count II), Plaintiffs must establish by a preponderance of the evidence: 1) the existence of a fiduciary relationship between the parties, 2) a breach of that fiduciary duty, 3) causation, and 4) harm"); *In re Joan C. Ranallo Tr.*, 2023 WL 2637379, at *7 (Minn. Ct. App. Mar. 27, 2023) ("To prevail on a breach-of-trust claim, a petitioner must prove four elements: duty, breach, causation, and damages.") (same); *Fla. Dep't of Ins. v. Chase Bank of Texas Nat'l Ass'n*, 2001 WL 124951, at *9 (N.D. Tex. Feb. 9, 2001), *aff'd,* 274 F.3d 924 (5th Cir. 2001) ("Because Florida has produced no evidence of causation and damages . . . Chase is entitled to summary judgment on the plaintiff's breach of trust agreement and breach of fiduciary duty claims").

must plead and prove to secure a judgment against a defendant for the cause of action of breach of fiduciary duty.  The elements of that cause of action do not change depending on whether the trust at issue is a private trust or a charitable trust.  *Compare Rafert*, 290 Neb. at 227 (a private trust), *with Vela*, 987 N.E.2d at 730 (a charitable trust).  To plead and prove this cause of action, these Plaintiffs must show that Mr. Callahan owed them a duty, that he breached that duty, and that his actions and/or inactions constituting said breach caused Plaintiffs' harm.  *See Vela*, 987 N.E.2d at 730.  Plaintiffs have identified two harms:  a smaller distribution than they allege they should have received and lost opportunity.  Plaintiffs have now admitted every fact showing that Mr. Callahan was not, in fact, the cause of those harms.  Because Plaintiffs cannot prove this element of the claim, they have no case to be tried against this particular defendant.

**B.    Plaintiffs' legal arguments are wrong, and the few facts they present about Mr. Callahan's actions cannot defeat summary judgment.**

**1.    Plaintiffs' cases and secondary sources do not address the question before the Court: whether Plaintiffs must show Callahan caused their claimed injuries.**

As shown above, Plaintiffs are wrong that "whether Callahan caused [the plaintiffs' personal injuries] is irrelevant to whether he is liable for breach of trust."  Dkt. 216-1 at 24.  Causation is an essential element of breach of trust.  Plaintiffs' reference to a trust being "a fiduciary relationship with respect to property," while correct, misses the point:  the nature of the relationship between trustee and property addresses what trustees are entrusted to care for and informs the trustee's *duties*—it does not mean a beneficiary need not show the breach of duty caused harm to the beneficiary.  Dkt. 216-1 at 22.  Although Plaintiffs cite *Cabaniss v. Cabaniss*, 464 A.2d 87, 91 (D.C. 1983), for this proposition, *Cabaniss* did not involve allegations of a breach of trust.  Instead, it concerned whether a trust had been established.  *Id.*  In ruling that a trust had been established, the court explained that the settlor "designated his daughter Carla as beneficiary,

appointed Stephanie trustee, and identified the endorsed checks as the trust property"—the checks being the property the trustee had a duty to "deal with . . . for the benefit of another." *Id.* at 91-92. There was no question regarding causation, because there was no claim for breach of trust.[6]

Similarly, neither *Graden v. Conexant Syst. Inc.*, 496 F.3d 291, 295-96 (3d Cir. 2007) nor D.C. Code Section 19-1310.02(a)(1) supports Plaintiffs' argument. Dkt. 216-1 at 22-23. On its face, Section 19-1310.02(a)(1) tethers a trustee's breach of trust to "beneficiaries affected" by the breach of trust ("A trustee who commits a breach of trust is liable to the beneficiaries affected"). The alleged breach of trust by Mr. Callahan did not "affect" Plaintiffs as beneficiaries, because he did not deny them funding, nor did he cause them to lose any opportunity to obtain such funding. *See* Dkt. 215-1 at 8 (citing Section § 19-1310.02); *id.* at 8-11. And *Graden*'s statement that, "[w]hen a common-law trustee commits a breach of trust that results in a loss, any beneficiary whose beneficial interests were affected may sue," likewise ties the trustee's breach to the loss suffered by a particular beneficiary as a result of that breach. 496 F.3d at 296. *Graden* even notes, in the sentence following the one quoted by Plaintiffs, that a trustee who causes harm to a beneficiary must "restore[] money to the trust for *the benefit of the plaintiff/beneficiary*." *Id.*

Such a requirement reflects the commonsense principle that, if a trustee's actions cause harm to a particular beneficiary, the remedy is to make that beneficiary whole. Comment b. to Restatement (Second) of Trusts § 214, cited by *Graden*, supports this view, as it makes clear "[a] particular beneficiary cannot maintain a suit for breach of trust which does not involve any violation of a duty to him." If the absence of a breach of duty as between a trustee and a particular beneficiary precludes suit, then so too does the absence of the trustee's actions having "affected"

---

[6] In fact, the court explained that one element of a trust is "a beneficiary, to whom the trustee owes equitable duties to deal with the trust property *for his benefit*," recognizing that a trustee is responsible to the beneficiary, not just trust property. *Cabaniss*, 464 A.2d at 91 (emphasis added).

a particular beneficiary. And nothing Callahan did "affected," (or, said differently, caused harm to) these Plaintiffs.

One of Plaintiffs' cases actually *supports* Mr. Callahan's argument. In *Trust Under Will of Augustus T. Ashton, Deceased Dated Jan. 20, 1950*, 669 Pa. 25, 44, 260 A.3d 81, 93 (2021), the Supreme Court of Pennsylvania evaluated whether a vested income beneficiary of a testamentary trust had standing to sue. It concluded that the beneficiary had such standing. *Id.* In reaching that conclusion, the court addressed the causal connection between the conduct of the trustee and harm alleged to the vested income beneficiary, stating that "any harm to [beneficiary's] interest in the trust res *was caused* by the allegedly improper transactions [of the trustee], and that harm ensued immediately upon the alleged breach of trust." *Id.* (emphasis added). The court therefore held "that Appellant is a beneficiary 'affected' by PNC's alleged conduct"—making clear that the word "affected" (also found in Section § 19-1310.02) requires a beneficiary to prove that a trustee's conduct caused the harm claimed to a beneficiary plaintiff.

The remainder of Plaintiffs' arguments are focused on cases or circumstances evaluating whether a beneficiary has standing to sue a trustee and do not say that those beneficiaries need not prove causation to prevail on a breach of trust or breach of fiduciary duty theory. *See Price v. Akaka*, 928 F.2d 824, 827 (9th Cir. 1990) (stating, in a § 1983 action involving allegations of violation of federal law, that common law of trusts affords standing to plaintiffs who have a "special interest" in a charitable trust).[7] For example, Plaintiffs cite general tenets about standing

---

[7] Plaintiffs assert that they "are effectively stepping into the D.C. Attorney General's shoes via the special-interest [standing] rule," and as such need not show causation to prevail against Mr. Callahan. Dkt. 216-1 at 24. First, Bogert's, which Plaintiffs cite, does not say this. Second, as the Texas Court of Appeals has observed, the special interest rule does not "entitle [a plaintiff] to somehow step into the attorney general's shoes," but instead is an exception allowing a private party to sue trustees of a charitable trust. *Hicks for & on Behalf of Christian Heritage Found., Inc. v. Garrett*, 2020 WL 4360835, at *2-3 (Tex. App. July 29, 2020). Third, Plaintiffs cite no authority

in charitable trust law matters and ask this Court to infer from those tenets that causation is not an element of breach of trust and fiduciary duty claims if a charitable trust is involved. Dkt. 216-1 at 24–25 (citing Bogert §§ 411, 412, 414). Not only do those authorities not stand for that proposition, Plaintiffs' own assertions are that Mr. Callahan's "misconduct deprived Plaintiffs of trust funds they requested and were eligible for but did not receive," and he "robbed Plaintiffs of any future funds they would have obtained . . . as beneficiaries." Dkt. 197 at 9. Plaintiffs have made causation a live issue in a charitable trust case, and they should not be allowed to change horses in midstream.

Mr. Callahan's summary judgment motion assumes (but does not concede, given his pending Motion to Dismiss, Dkt. 215-1 at 9 n.1) Plaintiffs have standing and challenges whether Plaintiffs have adduced evidence to show he caused them injury—causation being a core element of their breach of trust, aiding and abetting, and conspiracy claims, and a key allegation in their case. Plaintiffs do nothing to challenge *that* simple, straightforward position.[8] And no one other than the Plaintiffs have challenged the propriety of his actions; without them, no one has alleged that Mr. Callahan caused them harm.[9] Judgment in Mr. Callahan's favor is thus warranted.

---

standing for the proposition that the Attorney General would not have to prove causation in any theoretical action against Mr. Callahan, and cases indicate to the contrary. *See State of Del. ex rel. Gebelein v. Fla. First Nat'l Bank of Jacksonville*, 381 So. 2d 1075, 1077 (Fla. Dist. Ct. App. 1979) (requiring an attorney general, in a charitable trust case, to show causation as part of his or her breach of trust claims). In any event, Plaintiffs cannot assume the role of a sovereign to avoid deficiencies in their causation evidence as to Mr. Callahan.

[8] The legal defenses presented by Mr. Callahan's Motion are unique to him and do not address Plaintiffs' claims against the remaining defendants.

[9] While the above has focused on elements of breach of trust and fiduciary duty, causation is required for aiding and abetting the same, as well as civil conspiracy. *See Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 104 (D.D.C. 2003) (aiding and abetting); *Gill v. Islamic Republic of Iran*, 249 F. Supp. 3d, 88, 101 (D.D.C. 2017) (conspiracy).

### 2. Neither of the *two* facts asserted about Mr. Callahan's actions are material to his grounds for summary judgment.

Plaintiffs proffer just two facts about Mr. Callahan.  First, they allege that Mr. "Callahan never voted against providing Wu and the LRF with their requested distributions from the Trust." Dkt. 216-2 at 13 (Pls' Stmt of Fact ¶ 73).   Second, they allege that Mr. Callahan voted "to remove [Tienchi] Liao from the LHRO board."  *Id*. at 14 (Pls. Stmt of Fact ¶ 78).  Neither introduces a genuine dispute of material fact for summary judgment.

First, even if the Court considered Plaintiffs' unsubstantiated allegation that Mr. Callahan did not vote against providing the LRF distributions, this allegation does not create a genuine issue of material fact as to causation.  It is undisputed that, when Mr. Callahan resigned from the LHRO board, millions of dollars remained available for humanitarian aid.  *Id*. at 4 (Pls' Resp to SUMF ¶ 20).  It is likewise undisputed that each Plaintiff who asked for money received money.  *Id*. at 5–6 (Pls' Resp to SUMF ¶¶ 22–30).  Thus, Mr. Callahan's votes did not cause—and could not have caused—a loss to these Plaintiffs.

Second, Plaintiffs' allegation that Mr. Callahan voted Tienchi Liao off the LHRO board bears no relationship to their claims against Mr. Callahan and the harm he purportedly caused *them*.  To the extent Plaintiffs allege Ms. Liao's removal caused Plaintiffs to receive less than what they requested or prevented them from receiving funds in the future, this allegation is too speculative to credit.

"At the summary judgment stage, the Court must assess whether there is sufficient non-speculative evidence to support a verdict in favor of the non-movant."  *Martin v. Omni Hotels Mgmt. Corp*., 206 F. Supp. 3d 115, 123 (D.D.C. 2016).  Here, Plaintiffs never explain why this action caused them harm.  Specifically, Plaintiffs have proffered no evidence that had Ms. Liao not been removed by a unanimous vote of the LHRO Board that they would not have suffered the

injuries asserted.  When "[t]he record contains no evidence from which a [finder of fact] could reasonably infer" each "of the links in the logical chain necessary to conclude that" the defendant caused the alleged harm, "the possibility that a jury might speculate in the plaintiff's favor is simply insufficient to defeat summary judgment."  *Id*. at 124–27; *Haynes v. Williams*, 392 F.3d 478, 485 (D.C. Cir. 2004) ("The possibility that a jury might speculate in the plaintiff's favor is insufficient to defeat summary judgment.").  Plaintiffs have not presented sufficient non-speculative evidence that Mr. Callahan took any act that caused their injuries.  *See Haynes*, 392 F.3d at 485 ("evidence that is merely colorable or not significantly probative cannot create a genuine issue of material fact").  Plaintiffs have therefore failed to introduce a genuine issue of material fact, and Mr. Callahan is entitled to judgment as a matter of law.

## III.    Plaintiffs' claims against Mr. Callahan are time-barred.

Summary judgment is warranted on the separate and additional ground that Plaintiffs' claims are time-barred.  Plaintiffs do not dispute that they filed their claims against Mr. Callahan in 2017 almost *five years* after his resignation from the LHRO board but claim they are entitled to tolling.  However, their breach of trust claim (Count One) is subject to the three-year statute of repose imposed by Section 19.1310.05(c), which cannot be tolled.  And Plaintiffs' common-law claims against Mr. Callahan (Counts Three and Five) remain time-barred by the three-year statute of limitations because Plaintiffs had notice of their claims for years before filing, precluding the application of any tolling doctrine.

### A.    The statute of repose bars Plaintiffs' claim under D.C. Code § 19.1310.05(c).

Section 19.1310.05(c) is a statute of repose and requires all claims against a trustee for a breach of trust to be brought within three years of that trustee's resignation.  D.C. Code § 19.1310.05(c).  It is well settled in this District that the discovery rule cannot toll a statute of repose.  *See Am. Fed'n of Teachers, AFL-CIO v. Bullock*, 605 F. Supp. 2d 251, 258 (D.D.C. 2009)

("A statute of repose, however, serves as an absolute barrier to an untimely suit and cannot be equitably tolled under any circumstances."); *Peters v. Riggs Nat'l Bank, N.A.*, 942 A.2d 1163, 1169 (D.C. 2008). D.C. courts have long recognized the difference between a statute of limitations and a statute of repose. *See J.H. Westerman Co. v. Fireman's Fund Ins. Co.*, 499 A.2d 116, 119 (D.C. 1985) ("A statute of repose differs from an ordinary statute of limitations in that the specified time period begins to run not from the date on which a right of action accrues, but from another ascertainable date."). "The statute of repose limit is not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered." *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014). "[S]tatutes of repose begin to run on the date of the last culpable act or omission of the defendant." *California Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 505 (2017).

Relying on *California Public Employees' Retirement System*, Plaintiffs argue that Section 19.1310.05(c) "does not look like a statute of repose." Dkt. 216-1 at 43. This is wrong. In that case, the petitioner (CalPERS) filed suit against the successor to Lehman Brothers, alleging violations of Section 11 of the Securities Act. CalPERS argued that its claim had been tolled during the pendency of a class action (which CalPERS had opted out of) and was timely. The Court determined that the limitation period was a statute of repose and thus could not be tolled: "statutes of repose . . . effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time. For this reason, statutes of repose begin to run on the date of the last culpable act or omission of the defendant." *California Pub. Emps.' Ret. Sys.*, 582 U.S. at 505. Here, Section 19-1310.05(c) indeed looks like a statute of repose. The last culpable act of a trustee could only occur when the trustee acts as a trustee and the time limit in

17

Section 19.1310.05(c) is triggered at the last date a trustee can act as a trustee—i.e., on the date of their death, removal, resignation, or the termination of the trust.

Plaintiffs have not identified a single case or authority interpreting Section 19.1310.05(c) as a statute of limitations. Instead, Plaintiffs rely on out-of-context commentary to Section 1005 of the Uniform Trust Code (upon which Section 19.1310.05 is based). Plaintiffs argue that this commentary conclusively establishes that the National Conference of Commissioners on Uniform State Laws ("NCCUSL") considered the UTC model code section as a statute of limitations. Dkt. 216-1 at 35. But, Plaintiffs overlook that in this same commentary the NCCUSL expressly states that subsection (c) created a period of *repose* for trustees, as the comment to Section 1005(c) makes clear:

> Subsection (c) is intended to provide some *ultimate repose* for actions against a trustee. It applies to cases in which the trustee has failed to report to the beneficiaries or the report did not meet the disclosure requirements of subsection (b). It also applies to beneficiaries *who did not receive notice of the report*, whether personally or through representation. . . .
>
> This section does not specifically provide that the statutes of limitations under this section are tolled for fraud or other misdeeds, the drafters preferring to leave the resolution of this question to other law of the State.

The NCCUSL not only specifically stated that subsection (c) is a statute of repose, but also determined that the period of repose should apply even in cases where a beneficiary had not discovered an injury (by not receiving notice of the trustee's report). Indeed, the NCCUSL drafters' reluctance to include a provision tolling the limitations period for "fraud or other misdeeds" further supports the conclusion that Section 19.1310.05(c) is a statute of repose. *See California Pub. Emps.' Ret. Sys.*, 582 U.S. at 507 ("Tolling is permissible only where there is a particular indication that the legislature did not intend the statute to provide complete repose but instead anticipated the extension of the statutory period under certain circumstances."). As

Plaintiffs note, upon adopting the UTC, other states have modified its provisions.  *See* Dkt. 216-1 at 35.  But the District of Columbia did not include a tolling provision when it adopted the UTC, even though it modified other provisions (including shortening the limitations period from five years to three years).

Accordingly, Plaintiffs; breach of trust claim is time-barred.  By filing on April 11, 2017, Plaintiffs failed to file their breach of trust claim within the three-year limitations period that began with Mr. Callahan's resignation on July 9, 2012.  Plaintiffs do not dispute that Mr. Callahan resigned from the LHRO board on July 9, 2012, and that he has had nothing to do with the LHRO since his resignation.  *See* Dkt. 216-2 at 2 (Pls' Resp. to SUMF ¶¶ 6–10).  Thus, Plaintiffs concede that Mr. Callahan's last act as a purported trustee occurred no later than July 9, 2012.  Dkt. 93 at 27–28 ("Plaintiffs thus acknowledge that Callahan resigned or was removed as trustee as of July 2012.").  Plaintiffs' breach of trust claim is barred by the statute of repose, and Mr. Callahan is entitled to judgment as a matter of law on Count One.[10]

### B.    Plaintiffs' claims are time-barred if the Court applies a statute of limitations.

Even if the Court applies a statute of limitations to any of the three claims against Mr. Callahan, Plaintiffs' claims are still time-barred.[11]  If the Court interprets Section 19.1310.05(c)

---

[10] As to Counts Three and Five, Plaintiffs have clarified that these claims do not allege Mr. Callahan was a trustee.  However, each claim is based on the underlying tort of breach of trust, which is governed by Section 19.1310.05.  Plaintiffs then engage in statutory "gotcha" by arguing that if a statute of repose applies, it has not yet begun to run because the LRF is still a trustee, and no triggering event has occurred.  Under this novel theory, an alleged "aider and abetter" or former member of a conspiracy may be sued years after he stopped aiding and abetting, so long as the trustee remains.  This is a statutory absurdity.  D.C. courts avoid statutory interpretations that produce an absurd result.  *See Peoples Drug Stores, Inc. v. D.C.*, 470 A.2d 751, 754 (D.C. 1983) ("the literal meaning of a statute will not be followed when it produces absurd results").

[11] Plaintiffs concede that their claims are time-barred unless a tolling doctrine applies.  Dkt. 216-1 at 21 ("if the discovery rule or lulling doctrine apply to any of these claims . . . then [Mr.] Callahan cannot prevail").

as a statute of limitations, Plaintiffs' Count One is still untimely because Mr. Callahan's resignation from the LHRO board on July 9, 2012, triggered the beginning of the three-year limitations period. Likewise, under the three-year statute of limitations for common law aiding and abetting (Count Three) and civil conspiracy (Count Five), Plaintiffs' claims remain time-barred.[12] *See Gray v. Staley*, 310 F.R.D. 32, 37 (D.D.C. 2015).

The undisputed facts establish that the last possible date Mr. Callahan could have aided and abetted a breach of trust was the date of his resignation—July 9, 2012. Plaintiffs do not dispute that Mr. Callahan resigned from the LHRO board on this date and do not dispute that Mr. Callahan has had nothing to do with the LHRO board since his resignation. *See* Dkt. 216-2 at 2 (Pls' Resp. to SUMF ¶¶ 6–10). Accordingly, under the operation of the three-year statute of limitations, the last date on which Plaintiffs could have timely filed this claim against Mr. Callahan was July 9, 2015.

The undisputed facts similarly establish that Mr. Callahan withdrew from the conspiracy alleged by Plaintiffs when he resigned on July 9, 2012. "The law recognizes that a conspirator may withdraw from the conspiracy." *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 837 (11th Cir. 1999), *amended in part*, 211 F.3d 1224 (11th Cir. 2000). "Resignation from the conspiring business has frequently been held to constitute effective withdrawal." *Id.* at 839.

---

[12] Mr. Callahan does not make a statute of limitations argument as to Xu W.'s claims because his claim allegedly did not accrue until 2016. Nevertheless, the Court should find Mr. Callahan is entitled to judgment as a matter of law and grant him summary judgment because Mr. Callahan's alleged conduct did not cause Xu W.'s alleged injuries and because Xu W.'s breach of trust claim is barred by the statute of repose, which cannot be tolled. Plaintiffs argue that D.C. Code § 12-302 tolls the limitations period for Xu W.'s claims. Dkt. 216-1 at 39. However, § 12-302 only applies to toll the limitations period "when a person entitled to maintain an action is, at the time the right of action accrues . . . [is] imprisoned." D.C. Code § 12-302(a)(3). By his own admission, Xu W.'s alleged right of action accrued after he was released from prison because he did not apply for humanitarian aid until 2016—two years after his 2014 release from prison. TAC ¶ 14. Accordingly, § 12-302(a)(3) does not entitle Xu W. to tolling.

Because it is undisputed that Mr. Callahan resigned from the LHRO board on July 9, 2012, and had nothing further to do with the LHRO board or the Fund, *see* Dkt. 216-2 at 2 (Pls' Resp. to SUMF ¶¶ 6–10), the statute of limitations began to run on that date. *Morton's Market, Inc.*, 198 F.3d at 837 ("The statute of limitations begins to run upon the conspirator's withdrawal from the conspiracy."). Therefore, Plaintiffs had three years from this date to file a conspiracy claim against Mr. Callahan.

The three-year statute of limitations forecloses Plaintiffs' claims for breach of trust, aiding and abetting, and civil conspiracy because Plaintiffs failed to file these claims by July 9, 2015. Plaintiffs' claims against Mr. Callahan are time-barred on their face, and he is entitled to judgment as a matter of law on all counts.

### C.    No tolling doctrines apply to rescue Plaintiffs' untimely claims.

Plaintiffs do not dispute that their claims are facially time-barred. They allege they were injured when they applied for grants between 2008 and 2012 and received less than they applied for. Instead, they assert they are entitled to tolling of the limitations period because they did not learn until 2016 the precise nature of their claims—that they were based on a breach of trust and therefore had no notice of their alleged injuries—until then. Dkt. 216-1 at 35. Even if this was the standard for tolling (it is not), Plaintiffs' own claims and arguments belie this assertion.

The discovery rule only tolls the limitations period in limited circumstances. "The discovery rule was developed to redress situations in which the fact of injury was not readily apparent and indeed might not become apparent for several years after the incident causing injury had occurred." *Farris v. Compton*, 652 A.2d 49, 55 (D.C. 1994). It is a narrow exception from the "rigorous filing requirements" D.C. courts routinely enforce. *Kamerow v. D.C. Rental Hous. Comm'n*, 891 A.2d 253, 258 (D.C. 2006). In D.C., under the operation of the discovery rule,

> a cause of action accrues for purposes of the statute of limitations when the plaintiff has either actual notice of her cause of action or is deemed to be on inquiry notice because if she had met her duty to act reasonably under the circumstances in investigating matters affecting her affairs, such an investigation, if conducted, would have led to actual notice.

*Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996).

Certain Plaintiffs allege they were injured by receiving less funds than they had applied for.[13] Dkt. 186 at 4–9 (TAC ¶¶ 9-11, 14). These Plaintiffs do not dispute that they were aware of receiving less funds upon receipt of a distribution. *See, e.g.,* Dkt. 216-2 at 15 (Pls' Stmt of Fact ¶¶ 84–85). Accordingly, these Plaintiffs were aware of their injury (less funds than applied for) as soon as they received the smaller-than-hoped-for distribution, and their injury began to accrue for limitations purposes at that time. *See Hendel v. World Plan Exec. Council*, 705 A.2d 656, 660 (D.C. 1997) ("Where the fact of an injury can be readily determined, a claim accrues at the time that the plaintiff suffers the alleged injury."). Nevertheless, they argue that until they reviewed the 2007 settlement agreement, they had no notice of their cause of action. This is clearly wrong.

First, D.C. courts have consistently held that a suspicion of wrongdoing suffices to start the clock on the limitations period. "[A] party with immediate suspicions of wrongdoing has an obligation to move promptly and with reasonable diligence to inquire further into the matter." *Drake*, 993 A.2d at 617. "Indeed, a right of action may accrue before the plaintiff becomes aware of all of the relevant facts." *Hendel*, 705 A.2d at 661. "The discovery rule does not apply to circumstances, such as those presented here, where the plaintiff has failed to discover the relevant law even though the existence of an injury is apparent." *East v. Graphic Arts Indus. Joint Pension*

---

[13] Plaintiffs do not dispute, and therefore concede, that the discovery rule "does not apply to toll the limitations period for Plaintiffs' lost opportunity claims." Dkt. 215-1 at 14. Plaintiffs therefore concede that Plaintiffs Ouyang Yi and Xu Yonghai's claims are time-barred. Mr. Callahan is entitled to judgment as a matter of law as to Plaintiffs Ouyang Yi and Xu Yonghai.

*Tr.*, 718 A.2d 153, 157 (D.C. 1998).  As the court in *East* explained, "the focus of the [discovery] rule is on when [the plaintiff] gained the *general knowledge*" that the defendant's conduct was wrongful, "not on when she learned of *precise* legal remedies for the firing."  *Id*.  "The discovery rule does not, however, give the plaintiff *carte blanche* to defer legal action indefinitely if she knows or should know that she may have suffered injury and that the defendant may have caused her harm."  *Hendel*, 705 A.2d at 661.  "In short, knowledge is deemed sufficient if the plaintiff has reason to suspect that the defendant did something wrong."  *Wagner v. Sellinger*, 847 A.2d 1151, 1154 (D.C. 2004).

Plaintiffs suggest that—without knowing that "the Yahoo Human Rights Fund actually was [] a trust"—they did not know they had been injured when receiving smaller-than-hoped-for distributions.  Dkt. 216-1 at 28.  But "the running of the statute of limitations does not begin at the point the plaintiff has sufficient information to prevail at trial, or even when a plaintiff is aware that the conduct at issue is actionable under the law. . . . [but when] the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress."  *U.S. ex rel. Miller v. Bill Harbert Int'l Const.*, 505 F. Supp. 2d 1, 7 (D.D.C. 2007).  Accordingly, while Plaintiffs may not have known the precise cause of action to vindicate their perceived injury, their general knowledge that "receiving less" than they should have was improper "was enough to require [them] to seek legal assistance, and failure to seek such advice does not toll the statute of limitations under the discovery rule."[14]  Dkt. 186 at 4–9 (TAC ¶¶ 9–11, 14); *East*, 718 A.2d at 157.

---

[14] Plaintiffs argue that even if they did know of their injury when they received less money than they applied for, the Court should find that they acted with reasonable diligence (although Plaintiffs misstate the standard as "adequate[] diligen[ce]").  Dkt. 216-1 at 33.  However, Plaintiffs have only demonstrated they took action to investigate their claim beginning in 2015—or seven

Second, assuming *arguendo* that Plaintiffs did not perceive they had been injured upon receiving the distributions, the dates they self-servingly identify as the dawn of their suspicions are plainly refuted by other evidence in the record. Plaintiffs allege that they first had suspicions after hearing salacious rumors about Harry Wu in 2014. Dkt. 216-1 at 30. But, in Plaintiffs' 2015 letter to Jerry Yang, Plaintiff He states that he thought Harry Wu was "a person who is not honest" *in 2011*.[15] Ex. 6 at 12. In addition, Plaintiff Wang testified at his recent deposition that he first discovered *in 2012* the facts that led him to bring the current lawsuit. Ex. 4 at 70–71 (Wang Depo 68:21–69:1) ("Q: And when did you discover those facts [that led to bringing the current lawsuit]? A: Personally, I discovered the facts in 2012.")

By their own admissions, these Plaintiffs suspected wrongdoing and thus were on inquiry notice in 2011 and 2012. Their claims, therefore, began to accrue no later than 2012—with the limitations period expiring in 2015. Plaintiff He cannot explain why he did not begin an investigation in 2011 when he had suspicions of Harry Wu, nor can Plaintiff Wang explain why he did not begin his investigation in 2012 when he "discovered the facts." *Id*. at 70–71 (Wang Depo 68:22–69:1). Indeed, the many pages Plaintiffs dedicate in this brief to detailing their "extraordinary diligence" only show that Plaintiffs could have, but did not, investigate their suspicions years earlier. *See* Dkt. 216-1 at 29–32. Plaintiffs do not explain why they failed to investigate for so long.[16] Because "a plaintiff may not wait passively until evidence of actual

---

years after the first Plaintiff (He Depu) alleged he received less money than he requested in 2008. Plaintiffs do not explain how seven years of inaction could constitute diligence.

[15] Curiously, Plaintiffs do not provide the letter as evidence for the Court to consider, preferring instead to rely on an improper (and apparently contradictory) declaration made after the close of fact discovery. Mr. Callahan provides this 2015 letter for the Court's review.

[16] These Plaintiffs cannot attribute their failure to act to their imprisonment. Plaintiff He "was released in 2011." Dkt. 186 at 5 (TAC ¶ 9). Plaintiff Wang "was released in 2005." *Id*. at 6 (TAC

injury surfaces" to bring his or her claims, the discovery rule cannot save Plaintiffs here.  *U.S. ex rel. Miller*, 505 F. Supp. 2d at 8.

Finally, by failing to rebut Mr. Callahan's position that lulling does not apply, Plaintiffs concede that the lulling doctrine does not toll the limitations period.  They do not dispute, and therefore concede, Mr. Callahan's argument that a confidentiality provision in a settlement agreement cannot constitute lulling.  At most, Plaintiffs assert in a footnote that "[l]ulling and the discovery rule are '[c]losely related' doctrines."  Dkt. 216-1 at 28 n.13.  While lulling and the discovery rule may be closely related, they are distinct doctrines with distinct requirements. Lulling requires an "affirmative act of concealment" by the defendant.  *Drake*, 993 A.2d at 619. And D.C. courts require "that in order to show a 'lulling,' concrete evidence must be presented that clearly establishes that such activity occurred."  *Jones v. Gov't Emps. Ins. Co.*, 621 A.2d 845, 847 (D.C. 1993)(citation omitted).   Plaintiffs have presented *no* evidence that Mr. Callahan engaged in affirmative acts of concealment "to prevent discovery of the right of action."  *Adrian v. Am. Security & Trust Co.*, 211 A.2d 771, 772 (D.C. 1965).

 Because Plaintiffs have conceded that Mr. Callahan did not lull them and because the discovery rule does not toll the limitations period once Plaintiffs were on inquiry notice, no tolling doctrine applies to rescue Plaintiffs' untimely claims from the three-year limitations period.  Mr. Callahan is entitled to judgment as a matter of law on Plaintiffs' untimely claims, and the Court should grant him summary judgment on Counts One, Three, and Five.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant summary judgment to Mr. Callahan on Counts One, Three, and Five.

---

¶ 11).  Plaintiff Li "was released in 2012."  *Id*. (TAC ¶ 10).  Plaintiff Yi "was released in 2004." *Id*. at 9 (TAC ¶ 12).  Plaintiff Xu Yonghai "was released in 2006."  *Id*. at 8 (TAC ¶ 13).

Dated:  January 24, 2025

Respectfully submitted,

MCGUIREWOODS LLP

*/s/ John J. Woolard*
Brian E. Pumphrey (admitted *pro hac vice*)
Garrett H. Hooe (admitted *pro hac vice*)
John J. Woolard (D.C. Bar No. 1614841)
800 East Canal Street
Richmond, VA 23219
Telephone: (804) 775-7745
Facsimile: (804) 775-7065
bpumphrey@mcguirewoods.com
ghooe@mcguirewoods.com
jwoolard@mcguirewoods.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2025, I caused a copy of the foregoing to be served

via email to the following:

**FARRA & WANG PLLC**
Times Wang (D.C. Bar 1025389)
Adam Farra, Esq.
1300 I Street NW, Ste 400E
Washington, DC 20005
(202) 505-6227
twang@farrawang.com
afarra@farrawang.com

**SLARSKEY LLC**
David Slarskey, Esq.
Evan Fried, Esq.
420 Lexington Ave., Suite 2525
New York, NY 10170
Telephone: (212) 658-0661
dslarskey@slarskey.com
efried@slarskey.com
*Counsel for Plaintiffs*

**CHARNOFF SIMPSON PLLC**
Mikhael D. Charnoff (D.C. Bar 476583)
111 Church Street, N.W.
Suite 202 A
Vienna, VA 22180
Telephone: 703-291-6650
mike@charnoffsimpson.com
*Counsel for Defendant Estate of Harry Wu*

**IMPRESA LEGAL GROUP**
George E. Kostel (D.C. Bar 1000015)
Rich Kelsey, Esq.
3033 Wilson Boulevard, Suite 700
Arlington, VA 22201
Telephone: (703) 842-0660
georgekostel@impresalegal.com
richkelsey@impresalegal.com

**LAW FIRM OF WILLIAM BLAKELY**
William Douglas Blakely (D.C. Bar 326793)
10908 Thimbleberry Ln
Great Falls, VA 22066
Telephone: (703) 430-4398
wblakely@williamblakelylaw.com

*Counsel for Defendants Laogai Research
Foundation and
Laogai Human Rights Organization*

**CARR MALONEY P.C.**
J. Peter Glaws, IV (D.C. Bar 1013049)
2000 Pennsylvania Ave., NW, Suite 8001
Washington, D.C.  20006
(202) 310-5500 (Telephone)
(202) 310-5555 (Facsimile)
peter.glaws@carrmaloney.com

*Counsel for Defendant Impresa Legal Group*

*/s/ John J. Woolard*
John J. Woolard

27