UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HE DEPU, *et al.*,<br><br>                              Plaintiffs,<br><br>v.<br><br>OATH HOLDINGS, INC., *et al.*,<br><br>                              Defendants. | Case No. 17-0635 (RDM)<br><br>Judge Randolph D. Moss |

**JOINT MOTION TO APPROVE SETTLEMENT AND TERMINATE TRUST**

Plaintiffs He Depu, Li Dawei, Wang Jinbo, Ouyang Yi, Xu Yonghai, and Xu Wanping, Defendants Laogai Research Foundation ("LRF"), Laogai Research Foundation-CA, Laogai Human Rights Organization ("LHRO") (the Laogai entities collectively defined as the "Laogai Defendants"), the Estate of Harry Wu, Oath Holdings, Inc. ("Yahoo"), Michael Callahan, Ronald Bell (Yahoo, Callahan, and Bell collectively defined as the "Yahoo Defendants"), Impresa Legal Group ("Impresa"), and nominal Defendant Yahoo Human Rights Fund (the "Fund") (collectively, the "Parties") jointly move this Court as follows.

First, the Parties request that the Court approve the settlement of the above-captioned litigation. Second, the Parties request that, pursuant to D.C. Code § 19-1304.12, the Court terminate the charitable trust that the Court found was established by the terms of a 2007 settlement agreement (the "Trust").[1] Third, the Parties request that the Court discharge Defendants from any further liability or obligation to the Trust or Trust property. Fourth, the Parties request that the Court approve the Plaintiffs' disposition of certain of the consideration paid by Defendants to Plaintiffs as a restricted fund to Humanitarian China, a California nonprofit corporation that is tax

---

[1] The Yahoo Defendants as part of this settlement do not concede having obligations to the Trust.

1

exempt under 26 U.S.C. § 501(c)(3) and that is devoted to providing humanitarian assistance to Chinese dissidents, so as to continue the Humanitarian Purpose of the Trust.  Finally, the Parties request that the Court dismiss the case after the settlement consideration is received by Plaintiffs' counsel and the Trust is terminated.  In support of the foregoing, the Parties represent as follows.

## FACTUAL AND PROCEDURAL BACKGROUND

1. In 2007, three individuals sued Yahoo in the United States District Court for the Northern District of California, in a case captioned *Xiaoning, et al. v. Yahoo!, Inc. et al.*, No. 07-02151-CW (N.D. Cal., July 30, 2007) (the "2007 Lawsuit").

2. The parties to the 2007 Lawsuit later reached a settlement agreement to resolve the litigation (the "2007 Settlement Agreement").  *See* Exhibit 1.  In relevant part, the 2007 Settlement Agreement stated that Yahoo would make payments totaling a maximum of $17.3 million to the LRF, subject to certain conditions.  *Id.* at 2.  Pursuant to the 2007 Settlement Agreement, the $17.3 million in payments were to be maintained separately from other LRF monies, and were defined as the Fund.  *Id.*

3. Paragraph 2 of the 2007 Settlement Agreement provided that the Fund "may be used for three purposes only: (a) to provide humanitarian and legal assistance primarily to persons in or from the People's Republic of China who have been imprisoned for expressing their views through Yahoo! or another medium;[2] (b) to resolve claims primarily by such persons, or persons threatened with prosecution or imprisonment, against the Yahoo! Entities or any Yahoo! subsidiary or affiliate[3]; and (c) for payment of [LRF] operating expenses and the [LRF's] educational work

---

[2] The Parties refer to this as the "Humanitarian Purpose."
[3] The Parties refer to this as the "Yahoo Claims Purpose."

2

conducted in the United States in support of human rights, to the extent provided below.[4]" *Id.* at 3.

4. The LRF and Harry Wu (the then-Executive Director of the LRF), "[i]n their implementation of Paragraph 2(a)," agreed to use their best efforts to maximize the benefits achieved through their use of a portion of the Fund for humanitarian and legal assistance. *Id.*

5. In 2009, "Yahoo, the LRF, and Wu . . . amend[ed] the settlement agreement to create two new organizations: the Yahoo Irrevocable Human Rights Trust ["YIHRT"] and the [LHRO]." *Depu v. Oath Holdings*, 715 F. Supp. 3d 1, 18 (D.D.C. 2022). The amendment provided that the LRF would (1) transfer $3.55 million from the Fund to the YIHRT, and (2) transfer "the remaining funds" from the Fund to the LHRO, a "newly established 501(c)(3) organization with the purpose of supporting the activities of the [LRF] in accordance with the terms of the settlement agreement." *Id.* (cleaned up) (internal citations omitted).

6. Callahan, former General Counsel of Yahoo, served on the LHRO Board of Directors from April 27, 2010 to July 9, 2012. Callahan has had no involvement with the Trust, the Fund, the LRF or the LHRO since this time.

7. Bell, former General Counsel of Yahoo, served on the LHRO Board of Directors from late 2012 to January 7, 2016.

8. Following Bell's resignation from the LHRO Board of Directors, neither Yahoo nor Bell has had any involvement with the Trust, the Fund, the LRF or the LHRO.

9. Plaintiffs are Chinese dissidents who have been imprisoned for expressing their views related to freedom of speech and democracy within China.

---

[4] The Parties refer to this as the "Operational Purpose."

10. Plaintiffs generally allege that, among other things, the 2007 Settlement Agreement created the Trust. Certain of the Plaintiffs also allege that they were entitled to additional funding from the Trust (having received amounts that were less than what they applied for), and all Plaintiffs allege that, as a result of certain of the Defendants' conduct, they lost the opportunity to obtain meaningful funding from the Trust. Plaintiffs further allege that Defendants committed breaches of trust respecting the Trust's Humanitarian Purpose, and alternative grounds of liability stemming from the same alleged disregard for the Humanitarian Purpose. Defendants dispute these allegations and dispute that they bear any responsibility or liability as a result of such allegations.

11. On May 12, 2022, this Court held that the 2007 Settlement Agreement established a charitable trust under D.C. law. *Depu*, 715 F. Supp. 3d at 31.

12. This Court also held that Yahoo is the Trust's settlor, and that LRF is a trustee of the Trust. *Id.* at 24-25.

13. On March 29, 2024, Plaintiffs filed a Third Amended Complaint. ECF No. 181. The Third Amended Complaint added Impresa, counsel for the LRF and LHRO, as a Defendant.

14. On May 3, 2024, Defendants filed a Joint Motion to Dismiss the Third Amended Complaint. ECF No. 188. Impresa also filed its own Motion to Dismiss the same day. ECF No. 192.

15. On December 13, 2024, Defendant Michael Callahan filed a Motion for Summary Judgment.

16. The Parties completed fact and expert discovery in February 2025.

17. On February 20, 2025, the Parties successfully mediated their dispute before the Honorable Walter E. Kelley, Retired, a former District Judge for the United States District Court for the Eastern District of Virginia (the "Mediation").

18. On February 26, 2025, this Court entered a Consent Order cancelling a *lis pendens* filed against real property owned by the LRF, as trustee of the Trust, in the District of Columbia, located at 1901 18th Street N.W., Washington, D.C. 20009 (the "Property"). The Property is an asset of the Trust.

19. On April 15, 2025, the Parties agreed to a plan for disposing of the Property that includes removing the Property from the Trust.

20. On April 15, 2025, the Parties fully executed a nonjudicial settlement agreement under the laws of the District of Columbia memorializing in long form the terms agreed to at the Mediation (the "NJSA"). *See* Exhibit 2.

21. The Trust does not have a provision related to disposition of Trust assets upon its termination. However, it does state in relevant part that the LRF "represent[s] and warrant[s] that until the Fund has been entirely depleted, [it] will maintain a comparable level of managerial and organizational capacity." Ex. 1 at 6. The LRF presently has such level of managerial and organizational capacity.

22. Following approval of the settlement and termination of the Trust, the LRF intends to wind up operations and dissolve, as it will hold no remaining assets in the Trust or within its organization.

23. Upon the filing of this Motion and related papers, the Parties will provide notice to the Attorney General for the District of Columbia, Brian Schwalb ("Attorney General"), who has

the rights of a qualified beneficiary under D.C. Code § 19-1301.10(c). This notice will include a copy of this Motion and the related papers.

24. This Court has jurisdiction over the Trust and its beneficiaries pursuant to D.C. Code § 19-1302.02. *See also Queen v. Schmidt*, 2015 WL 5175712, No. 10-2017 (PLF) (D.D.C. Sept. 3, 2015) (exercising jurisdiction over a trust pursuant to D.C. Code § 19-1302.02).

## REQUEST TO APPROVE SETTLEMENT AND TERMINATE TRUST

### I. Material terms of the settlement and disposition of Trust assets.

25. Generally described, the Parties have entered into the NJSA to fully and finally resolve all claims between them that have been brought, or could have been brought, in this Action and as relates to the Fund and the Trust—including termination of the Trust and discharge of those alleged to be trustees from further responsibility or liability to the Trust. *See* Ex. 2.

26. Defendants have agreed to pay $5,425,000 to Plaintiffs, inclusive of all fees and costs, and have apportioned that amount among themselves (the "Settlement Payment"). *Id.*

27. Of this amount, Impresa agrees to pay and tender $40,000. *Id.* at 4. The Yahoo Defendants agree to pay and tender $4,500,000. *Id.* And the Laogai Defendants will contribute $885,000 in value by either selling the Property and paying the aforementioned amount or, if the Property has not sold within ninety (90) days of the last-occurring condition precedent (referenced below in Paragraph 30), making an interest-bearing note in this amount, secured by the Property, and maturing in one year after the settlement payment date ("Note").[5] *Id.* at 3-4.

28. The Parties have also agreed that, to facilitate the termination of the Trust, the Property will be conveyed to the LRF free of any trust obligations in exchange for sale of the

---

[5] Originally, at the Mediation, the Parties agreed that the Laogai Defendants would pay this amount from the proceeds of a contemplated sale of the Property. However, the proposed buyer backed out and the Parties have agreed to the terms herein as a compromise.

6

Property or the making of the Note (if necessary). Net proceeds from the sale of the Property will be distributed as follows: first, to fund the Laogai Defendants' portion of the Payment, as detailed above; second, to pay all other outstanding third-party financial obligations of the Laogai Defendants, including without limitation vendor and professional services balances, which at present are not less than $635,000; third, to pay the costs of winding up the non-profit corporations which comprise the Laogai Defendants; and finally, the balance remaining, if any, will be donated to a non-profit organization whose mission is to protect or promote human rights internationally (subject to approval by the applicable state attorney general(s), to the extent required in connection with the dissolution of a non-profit corporation). *Id.* at 3.

29. Under this proposal, upon the Court's approval of the settlement, the LRF will no longer hold, own, or otherwise possess any Trust assets or property. *Id.* at 3-4.

30. The following are conditions precedent to Defendants' obligation to pay the Settlement Payment: (1) the Attorney General must not ultimately object to the relief requested in this Motion, or the NJSA, before or at a hearing the Court conducts on this Motion; and (2) this Court must grant this Motion entirely or substantially in the form of the attached order (including provisions related to discharge and termination of the Trust). *Id.* at 5-6.

31. The Settlement Payment shall be paid by Defendants to Plaintiffs' counsel within ninety (90) days of the latest occurring condition precedent. *Id.* at 5. The Parties agree that, should any of the conditions precedent not occur, the Parties will meet and confer to discuss potential remedial measures and, if necessary, convene with the Honorable Walter D. Kelley in an attempt to resolve any issues. *Id.* In the event the Parties and Judge Kelley conclude in good faith that this Agreement cannot be modified so as to address the failure of any condition precedent, this Agreement shall be void. *Id.*

32. Upon receipt of the Settlement Payment, Plaintiffs will then divide, subject to Court approval, the Settlement Payment as follows:

    a. An amount, as approved by the Court, to reimburse litigation costs incurred by Plaintiffs' attorneys, which is the subject of a separate motion;

    b. An amount, as approved by the Court, for Plaintiffs' attorneys' fees, which is the subject of a separate motion;

    c. An amount, as approved by the Court, for the individual Plaintiffs as service awards, which is the subject of a separate motion; and

    d. The balance—after disbursement of litigation costs, Plaintiffs' attorneys' fees, and service awards to Plaintiffs—and, if necessary, the Note, will create a restricted fund ("Restricted Fund"), which will be used to provide humanitarian assistance to persons in or from the PRC who have been imprisoned in the PRC for exercising their freedom of speech.

33. The Restricted Fund will be delivered to Humanitarian China, subject to terms described in more detail below. *Id.* at 5.

34. The Parties have agreed that, upon delivery of the Settlement Payment to Plaintiffs' counsel, the Trust should be terminated. *Id.* at 6.

35. Within three days of payment of the Settlement Payment, the Parties will execute, and Plaintiffs' counsel will file, a joint status report and motion to dismiss the Action with prejudice. *Id.* at 7.

36. The NJSA provides for mutual releases of the Parties. *Id.* at 6-7. In addition, the Parties have agreed to move this Court to discharge Defendants and Defendant Releasees[6] from any further obligation, liability, responsibility, duty, or other commitment to the Trust, or its

---

[6] "Defendant Releasees" has the definition used in the NJSA. *See* Ex. 2 at 6.

8

administration, assets, beneficiaries, supporting organizations, settlor(s), or related entities or individuals.

37. The NJSA also provides that nothing in that agreement should be construed to, or shall be construed to, create a trust or create or impose fiduciary duties on any Party to the NJSA. *Id.* at 3. For the avoidance of doubt, the Parties agree that nothing related to the Restricted Fund should be construed to, or shall be construed to, create a trust or create or impose fiduciary duties on any Defendant.

**II.  Request to approve the NJSA, terminate the Trust, discharge Defendants and Defendant Releasees, and ultimately dismiss this action with prejudice.**

38. To effectuate the terms of the Parties' agreement, and for good cause shown, and pursuant to D.C. Code § 19-1304.12, the Parties jointly request entry of an Order as follows.

39. *First*, the Parties request that the Court approve the NJSA attached hereto as Exhibit 2. *See* D.C. Code § 19-1301.11(e) ("[a]ny interested person may request the court to approve a nonjudicial settlement agreement").

40. *Second*, the Parties request that the Court terminate the Trust under the terms specified in the NJSA, and as further detailed here, pursuant to D.C. Code § 19-1304.12.

41. *Third*, the Parties request that the Court discharge Defendants and Defendant Releasees from any past, present, or future liability or obligation to the Trust or Trust property.

42. *Fourth*, the Parties request that the Court approve the Plaintiffs' disposition of certain of the consideration paid by Defendants to Plaintiffs as a Restricted Fund to Humanitarian China to continue the Humanitarian Purpose.

43. *Finally*, the Parties request that the Court dismiss the case after the Trust is terminated, and the Settlement Payment is received by Plaintiffs' counsel.

44. Pursuant to D.C. Code § 19-1304.12(a), this Court may terminate a trust if, because of circumstances not anticipated by the settlor, termination will further the purposes of the trust. As the District of Columbia Court of Appeals has explained, this includes instances where "continuation of the trust on its existing terms would be impracticable." *In re D.M.B.*, 979 A.2d 15, 26 (D.C. 2009).

45. Pursuant to D.C. Code § 19-1304.12(c), upon termination of a trust because of unanticipated circumstances pursuant to D.C. Code § 19.1304.12(a), the trustee shall distribute the trust property in a manner consistent with the purposes of the trust.

46. The Trust was created to carry out three purposes: the Humanitarian Purpose, the Yahoo Claims Purpose, and the Operational Purpose.

47. The Yahoo Claims Purpose is no longer practical or needed. Pursuant to the terms of the YIHRT, the trust charged with effectuating the Yahoo Claims Purpose, the YIHRT terminated by its express terms on June 12, 2014, and the remaining property of that trust reverted to the LHRO. *See* Exhibit 3. Yahoo represents here that there is no longer a need for the Yahoo Claims Purpose. Yahoo, as settlor, could not have anticipated in 2007 that the Yahoo Claims Purpose would no longer be necessary.

48. The Operational Purpose is no longer practical or needed. The LRF intends to wind up operations upon approval of the NJSA and termination of the Trust, and will have no remaining assets. Accordingly, there is no longer a need for the Operational Purpose. Yahoo, as settlor, could not have anticipated in 2007 that the Operational Purpose would no longer be necessary.

49. As the LRF is winding up operations and will have no remaining Trust assets after the Court removes the Property from the Trust, and other expenses as described above are paid, there is no longer a trustee to effectuate, nor Trust assets to support, the Humanitarian Purpose.

Yahoo, as settlor, could not have anticipated in 2007 that the LRF would no longer be able to carry out the Humanitarian Purpose.

50. However, the Parties agree that continuing to effectuate the Humanitarian Purpose is still possible, even without the involvement of Defendants, and that Plaintiffs should be permitted to provide the Restricted Fund to Humanitarian China, ensuring that the Humanitarian Purpose will continue to be fulfilled. Ex. 2 at 5; *see also* D.C. § 19-1304.12(c). Plaintiffs and/or Plaintiffs' agent or counsel are solely responsible for ensuring that the Restricted Fund is made to Humanitarian China.

51. The Restricted Fund, a copy of which is attached as Exhibit 4, will further the Humanitarian Purpose by requiring that:

 a. The Restricted Fund must be used to provide humanitarian assistance to persons in or from the People's Republic of China who have been imprisoned in whole or in part for exercising their freedom of speech, or to the families of such persons;

 b. Humanitarian China must create an advisory board ("Advisory Board"), consisting of Plaintiffs, Plaintiffs' counsel, Times Wang, and Plaintiffs' interpreter and agent, Yaxue Cao-Ritter;

 c. Humanitarian China must deliver regular reports to the members of the Advisory Board on how the Restricted Fund is being administered and disbursed; and

 d. The Advisory Board has the right to enforce the terms of the Restricted Fund.

52. Plaintiffs represent that Humanitarian China is an excellent candidate to administer the Humanitarian Purpose. It is a California nonprofit corporation that is tax exempt under 26 U.S.C. § 501(c)(3). It was founded in 2004 by three participants in the 1989 Chinese democracy

movement. Its primary mission is to provide financial assistance to political prisoners and their families in China. Since its founding, it has distributed over $2 million USD to such persons.

53. Plaintiffs further understand that, in so doing, Humanitarian China has relied principally on small-dollar donations from the public, and on a network it built of liberal-minded Chinese dissidents, activists, lawyers, intellectuals, journalists, and religious believers. It has also relied on an all-volunteer staff and board; it has no paid employees or board members. Its operating costs are miniscule (around 1% of its annual spending). As a result of all this, it has earned an excellent reputation in the Chinese human rights community. Plaintiffs know of no better organization to carry out the Humanitarian Purpose. Defendants take no position and do not object to Plaintiffs' disbursement of the Restricted Fund as set forth above.

54. As noted above, termination of the Trust and distribution of the Restricted Fund to Humanitarian China will allow for a more efficient and effective application of the assets to the Humanitarian Purpose and is otherwise necessary because of LRF's intended dissolution. Accordingly, the relief requested here will further the Humanitarian Purpose of the Trust.

55. The LRF, as Trustee, agrees that termination is appropriate in this case and is willing to terminate the Trust if the Court determines that (a) termination will further the purposes of the Trust; (b) all necessary parties consent and are before this Court; and (c) upon entry of an order directing the termination of the Trust, the Settlement Payment (inclusive of Trust assets) should be distributed as detailed herein.

56. Consistent with the terms of the NJSA, and upon termination of the Trust, the Parties request that this Court order that Defendants and Defendant Releasees are discharged from any past, present, or future obligation, liability, responsibility, duty, or other commitment to the

Trust or the Fund, or its administration, assets, beneficiaries, supporting organizations, settlor(s), or related entities or individuals. *Id.*

WHEREFORE, the Parties respectfully request that this Court:

A. Exercise its jurisdiction to determine whether termination of the Trust is appropriate pursuant to D.C. Code §§ 19-1304.12(a) and 19-1304.12(c) and, if so, approve the terms of the NJSA attached as Exhibit 2, and order the termination of the Trust upon distribution of the Settlement Payment by Defendants to Farra & Wang PLLC;

B. Upon termination of the Trust, fully and finally discharge Defendants and Defendant Releasees from any and all past, present, or future obligation, liability, responsibility, duty, or other commitment to the Trust, or its administration, assets, beneficiaries, supporting organizations, settlor(s), or related entities or individuals, and the claims alleged in the above-captioned case;

C. Direct Plaintiffs' counsel to make the Restricted Fund to Humanitarian China;

D. Upon completion of the foregoing, following notice and motion by the parties, enter an Order dismissing this Action with prejudice.

Dated: April 15, 2025

Respectfully submitted,

FARRA & WANG PLLC
*/s/ Times Wang*
Times Wang (D.C. Bar 1025389)
Adam H. Farra (D.C. Bar 1028649)
1300 I Street NW, Suite 400E
Washington, DC 20005
Telephone: (202) 505-6227
twang@farrawang.com
afarra@farrawang.com

SLARSKEY LLC
David Slarskey (admitted pro hac vice)
Evan Fried (admitted pro hac vice)

420 Lexington Ave., Suite 2525
New York, NY 10170
Telephone: (212) 658-0661
dslarskey@slarskey.com
efried@slarskey.com

*Counsel for Plaintiffs*

MCGUIRE WOODS LLP
/s/ *John J. Woolard*
Brian E. Pumphrey (admitted *pro hac vice*)
Garrett H. Hooe (admitted *pro hac vice*)
John J. Woolard (D.C. Bar No. 1614841)
800 East Canal Street
Richmond, VA 23219
Telephone: (804) 775-7745
Facsimile: (804) 775-1065
bpumphrey@mcguirewoods.com
ghooe@mcguirewoods.com
jwoolard@mcguirewoods.com

*Counsel for Defendants Oath Holdings, Inc., Michael Callahan, and Ronald Bell*

CHARNOFF SIMPSON PLLC
/s/ *Mikhael D. Charnoff*
Mikhael D. Charnoff (D.C. Bar 476583)
111 Church Street NW
Suite 202 A
Vienna, VA 22180
Telephone: 703-291-6650
mike@charnoffsimpson.com

*Counsel for Defendant Estate of Harry Wu*

IMPRESA LEGAL GROUP
/s/ *George E. Kostel*
George E. Kostel (D.C. Bar 1000015)
Richard K. Kelsey (D.C. Bar 90008993)
3033 Wilson Boulevard, Suite 700
Arlington, VA 22201
Telephone: (703) 842-0660
georgekostel@impresalegal.com
jasonmatechak@impresalegal.com

LAW FIRM OF WILLIAM BLAKELY

14

        William Douglas Blakely (D.C. Bar 326793)
        10908 Thimbleberry Ln
        Great Falls, VA 22066
        Telephone: (703) 430-4398
        wblakely@williamblakelylaw.com

        *Counsel for Defendants Laogai Research Foundation and Laogai Human Rights Organization*

        CARR MALONEY P.C.
        */s/ J. Peter Glaws, IV*
        J. Peter Glaws, IV (D.C. Bar 1013049)
        2000 Pennsylvania Ave., NW, Suite 8001
        Washington, D.C.  20006
        (202) 310-5500 (Telephone)
        (202) 310-5555 (Facsimile)
        peter.glaws@carrmaloney.com

        *Counsel for Defendant Impresa Legal Group*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2025, I caused a copy of the foregoing to be filed on CM/ECF which will cause a notification of electronic filing to be sent to all registered counsel of record, as well as the Attorney General for the District of Columbia by email to trustmodifications@dc.gov, pursuant to instructions published by the Attorney General.

*/s/ John J. Woolard*
John J. Woolard