# EXHIBIT 4

# RESTRICTED GIFT

This restricted gift is made and entered into by and between He Depu, Li Dawei, Wang Jinbo, Ouyang Yi, Xu Yonghai, and Xu Wanping (collectively, the "Donors") and Humanitarian China (the "Recipient").

The Donors are the plaintiffs in an action styled *He Depu et al. v. Oath Holdings, Inc., et al.*, No. 17-cv-635 (D.D.C.) ("Action"), in which the plaintiffs alleged the breach of a charitable trust intended to, among other things, provide humanitarian and legal assistance primarily to persons in the People's Republic of China ("PRC") who have been imprisoned for expressing their views through Yahoo! or another online service or medium ("Humanitarian Purpose"). The parties in the Action have agreed to settle the Action ("Settlement"). The Settlement provides for, among other things, a payment by the defendants in the Action in exchange for the plaintiffs releasing their claims against the defendants. A portion of the payment, expected to exceed $3 million USD ("Humanitarian Settlement Funds"), is intended to further the Humanitarian Purpose.

The Recipient is a California non-profit corporation with tax-exempt status under 26 U.S.C. § 501(c)(3). The Recipient has experience providing humanitarian assistance to imprisoned Chinese dissidents. As such, the Donors have agreed that the Humanitarian Settlement Funds should be transferred to the Recipient, subject to the below terms ("Terms").

1. *Use of Humanitarian Settlement Funds.* The Recipient must use the Humanitarian Settlement Funds for the Humanitarian Purpose, namely to provide humanitarian assistance, in the form of cash or cash-like payments, to persons in or from the PRC, who have been imprisoned in the PRC, in whole or in part for exercising their freedom of speech. Payments to such dissidents' family members qualify, as do other payments reasonably calculated to reach the dissident or their family members. "Imprisoned" here means having spent time in prison pursuant to a criminal judgment of a PRC court and includes persons who have already been released.

2. *Advisory Board.* The Recipient must convene an advisory board ("Advisory Board") for the Humanitarian Settlement Funds consisting of the Donors, Times Wang, the Donors' attorney in the Action, and Yaxue Cao-Ritter, the Donors' interpreter and agent in the Action. The specific rights and powers of the Advisory Board will be negotiated once the Humanitarian Settlement Funds have been secured from the defendants in the Action, but will include, at a minimum: (1) the right to receive regular reports from Humanitarian China on how the Humanitarian Settlement Funds have been spent or invested; and (2) the power to ensure that the Humanitarian Purpose is implemented, including by filing a lawsuit to enforce it if necessary.

3. *Administrative Expenses.* Because of the potential administrative burdens associated with proper management and distribution of the Humanitarian Settlement Funds, the Recipient may set aside, on a one-time basis, up to five percent of the Humanitarian Settlement Funds for administrative expenses associated with the Funds. The balance of the Humanitarian Settlement Funds must be deposited in a separate account or accounts. If the Humanitarian

Settlement Funds are transferred to the Recipient in installments, the Recipient may set aside up to five percent of each installment, on a one-time basis per installment. The Recipient may only elect to set aside five percent for administration expenses once per installment.

      For example, if $2 million in cash is wired to the Recipient, the Recipient may set aside $100,000 for administrative expenses, and must deposit the remaining $1.9 million in a separate account or accounts, and may not further use that $1.9 million, or income generated by it, for anything other than the Humanitarian Purpose. Then, if an additional $1 million is delivered, the Recipient may set aside another $50,000 for administrative expenses, and may not use the remaining $950,000, or income generated by it, for anything other than the Humanitarian Purpose.

      4.    ***Building Sale.*** A portion of the Humanitarian Settlement Funds, $885,000, are supposed to be paid out of the proceeds of the sale of a building in Washington, D.C. Because of a delay in that sale, the parties in the Action are negotiating a solution that may involve giving the Recipient an interest-bearing note in the amount of $885,000, secured by the building. If such a note is executed, the Recipient agrees to cooperate with the Donors and the Donors' attorneys in the Action in all matters relating to the note, including tax and enforcement matters. Further, if such a note is executed, the Recipient's administrative expenses relating to the note may be paid from the proceeds of the note, up to five percent of the face value of the note, *i.e.*, $44,250.

      5.    ***Continuation of Humanitarian Purpose.*** The Donors and the Recipient agree that, should the Recipient determine that it is unable to efficiently and effectively administer the Humanitarian Settlement Funds, the Recipient, the Donors, and the Advisory Board will cooperate to ensure that the Humanitarian Purpose continues to be carried out, including by finding a new administrator for the Humanitarian Settlement Funds.

      6.    ***Governing Law.*** This agreement is governed by the law of the District of Columbia. Any disputes arising out of or related to this agreement will be governed by the law of the District of Columbia.

_____
Fengsuo Zhou (Apr 11, 2025 10:04 PDT)
Fengsuo Zhou
President, Humanitarian China
On behalf of Humanitarian China

_____
Times Wang
Partner, Farra & Wang PLLC
On behalf of the Donors