UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HE DEPU, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>OATH HOLDINGS, INC., *et al.*,<br><br>　　　　　Defendants. | Case No. 17-0635 (RDM)<br><br>Judge Randolph D. Moss |

**DECLARATION OF TIMES WANG**

I, Times Wang, declare as follows:

1.　　I am over the age of 18 and am competent to testify as to all matters herein.

2.　　I make the following statements based on my personal knowledge.

3.　　I am a partner at Farra & Wang PLLC. I have served as lead counsel in the above-captioned matter since its inception.

4.　　I submit this declaration in support of the plaintiffs' motion for an award of attorneys' fees, expense reimbursement, and service awards for the individual plaintiffs.

5.　　Based on my experience litigating this case since its inception and my experience litigating other complex litigation in the areas of antitrust, securities, and human rights, the plaintiffs' requests for attorneys' fees, expense reimbursement, and service awards are reasonable.

6.　　As described in further detail below, this was a hard-fought multi-defendant litigation. The defendants were represented by, among others, major law firms in O'Melveny and (later) McGuireWoods. The case had multiple rounds of motion to dismiss briefing, went through an appeal to the D.C. Circuit, had significant discovery (including from multiple

nonparties), underwent two in-person mediation sessions that were preceded by substantial mediation statements, proceeded completely through fact and expert discovery, had a pending motion for summary judgment as to one defendant, and involved a total of seven testifying experts on forensic accounting, damages, trustee custom and practice, and Chinese law and the Chinese legal system. The corresponding investment of time and expenses was both significant and appropriate, and the requests for attorneys' fees, expenses, and service awards are reasonable in light of the investment.

   A.  **The Origination, Litigation, and Resolution of the Case**

   7.  When a group of Chinese dissidents first managed to contact me in 2016, I began working with them to investigate their allegations concerning the management of the Yahoo Human Rights Fund, assessing what their causes of action might be, and analyzing their likelihood of success. I determined that the Yahoo Human Rights Fund was almost certainly a trust; that one of its purposes, if not its primary purpose, was to provide humanitarian aid to imprisoned Chinese dissidents; and that, based on publicly available information, that purpose had been breached. At the time, I was an attorney at Cohen Milstein Sellers & Toll PLLC.

   8.  The initial complaint was filed in April 2017, which was later amended. After motion to dismiss briefing, the Court (Bates, J.) in 2018 dismissed the litigation in its entirety, denied the plaintiffs' motion to alter or amend the judgment, and denied the plaintiffs' motion to file a Second Amended Complaint.

   9.  After assessing the likelihood of success on appeal, the plaintiffs agreed to pursue an appeal. Around the same time, I decided to leave Cohen Milstein to start my own law firm. The plaintiffs continued the suit with me as their lead counsel, and Cohen Milstein withdrew from the litigation.

10. On appeal, I represented the plaintiffs as a solo practitioner. Over the course of 2019, I briefed and argued the plaintiffs' position to the U.S. Court of Appeals for the District of Columbia Circuit. In February 2020, the D.C. Circuit ruled in the plaintiffs' favor and reversed the dismissal.

11. On remand, Slarskey LLC joined me as co-counsel to help with the litigation. The plaintiffs then amended the complaint to account for the fact that not all of the original plaintiffs and claims had been part of the appeal, and the defendants filed new motions to dismiss, as well as a request to stay discovery pending the resolution of those motions. Over the plaintiffs' objections, the latter request was granted. The defendants' renewed motions to dismiss, however, were eventually largely denied, in March 2021.

12. Concerned about the dissipation of the Yahoo Human Rights Fund's assets, the plaintiffs then filed a motion for a preliminary injunction. Around the same time, the parties agreed to bifurcate the case to first resolve the critical issue of whether there was an enforceable trust over the fund's assets in the first place. The plaintiffs' request for a preliminary injunction was denied, while a bench trial on the existence of a trust was held in October 2021. In May 2022, the Court ruled that the plaintiffs had proven the existence of a trust. The case then proceeded to full merits discovery.

13. The parties also discussed mediation and a potential settlement, and a stay was entered to facilitate that discussion. In May 2023, the parties attended an all-day, in-person mediation presided over by retired U.S. District Judge Walter Kelley (E.D. Va.). The mediation was unsuccessful, and discovery resumed.

14. The plaintiffs also sought leave to amend the complaint, including to add a new defendant. Leave was granted in April 2024, after which the defendants filed a new round of motions to dismiss.

15. Fact discovery closed in September 2024. By then, the parties had conducted 13 fact depositions; issued 8 non-party subpoenas; exchanged over 11,000 documents, totaling more than 120,000 pages; and answered dozens of interrogatories, including lengthy contention interrogatories.

16. The parties then commenced expert discovery. The plaintiffs produced four expert reports on the topics of: (1) forensic accounting; (2) damages; (3) the number of potential beneficiaries of the trust, which was relevant to special interest standing; and (4) in rebuttal, the relative ease or difficulty of safely transferring money from the United States to Chinese dissidents. The defendants produced three experts reports on the topics of: (1) forensic accounting and damages (the defendants used a single expert for these topics); (2) the number of potential beneficiaries; and (3) the defendants' compliance with their fiduciary duties. The plaintiffs elected not to depose the defendants' experts. The defendants deposed all the plaintiffs' experts.

17. Around the same time, defendant Michael Callahan also filed a motion for summary judgment, which the parties fully briefed.

18. The parties then agreed to conduct a second in-person mediation before Judge Kelley in February 2025. At that mediation, the parties reached an agreement in principle to settle the litigation for, among other things, $5,425,000. This was more than ten times the amount that the plaintiffs' forensic accountant determined had been spent on the humanitarian purpose up to then. It was also more than the low end of the damages range calculated by the

plaintiffs' damages expert ($4.98 million) and more than a third of the high end of that range ($14.7 million), excluding prejudgment interest.

19.     Meanwhile, there were considerable risks. The fact that the plaintiffs are under Chinese government surveillance and cannot freely travel posed practical and legal challenges. The litigation was draining the very assets that the plaintiffs were trying to recover. The main antagonist in the case, Harry Wu, and arguably the most important witness, had died in 2016. The plaintiffs were advancing legal and factual theories that had not been tested before, and risks remained as to many basic questions, including whether the plaintiffs even had standing under charitable trust law to pursue the case at all. And even if the plaintiffs overcame all of this at trial, the defendants would almost certainly have appealed, and it would have been years before any money would've been paid.

### B.     The Request for Attorneys' Fees

20.     At the direction of the plaintiffs, the plaintiffs' attorneys are requesting a fee award in the amount of 30% of the $5,425,000 million settlement fund.

21.     The plaintiffs have repeatedly emphasized to me their belief that I was the only lawyer who could have successfully brought this lawsuit on their behalf, and that, but for my representation of them, there would have been no recovery at all. Indeed, had I not agreed to handle their appeal, it is unlikely they would have found any other lawyer willing and able to do so, in which case the lawsuit would indeed have ended with no recovery. However, because I had taken the time to study the governing trust law principles, and because of my understanding of and concern for Chinese legal issues generally and Chinese human rights issues specifically, I was determined to handle the appeal, and to see the litigation through.

22.     I have reviewed the detailed time records of the two firms submitting the request for fees and expenses, Farra & Wang PLLC and Slarskey LLC.

23. Together, the two firms spent 3,302.71 hours litigating this matter.

24. Using the firms' respective current hourly rates, the dollar value of the time spent by the plaintiffs' attorneys in litigating this matter (the lodestar) is $2,333,361.52.

25. The breakdown of time is reflected in the following chart:

| Timekeeper | Title | Lawyer Since | Rate | Hours | Lodestar |
|---|---|---|---|---|---|
| Times Wang | Partner / Farra & Wang PLLC | 2011 (NYU) | $748 | 2244.75 | $1,679,073.00 |
| Adam Farra | Partner / Farra & Wang PLLC | 2011 (Maryland) | $748 | 512.24 | $383,155.52 |
| Ti-Anna Wang | Counsel / Farra & Wang PLLC | 2017 (McGill) | $400 | 269.12 | $107,648.00 |
| Hind Al Aissi | Associate / Slarskey LLC | 2020 (Columbia - LLM) | $550 | 103.50 | $56,925.00 |
| David Slarskey | Partner / Slarskey LLC | 2005 (Stanford) | $850 | 79.90 | $67,915.00 |
| Samuel Dayan | Summer Associate / Slarskey LLC | 2022 (NYU) | $400 | 55.40 | $22,160.00 |
| Stephen McGuiness | Staff Attorney / Farra & Wang PLLC | 2007 (Harvard) | $165 | 19.5 | $3,217.50 |
| Evan Fried | Partner / Slarskey LLC | 2011 (NYU) | $725 | 18.30 | $13,267.50 |
| | | | | 3302.71 | $2,333,361.52 |

26. In calculating the lodestar value of the attorney time, the rates used were the firms' current rates.

27. The rates are reasonable. First, they reflect rates that the two firms charge their clients who pay by the hour, reflecting current market demand for those rates. Based on my experience, the rates are also in accord with rates charged by litigators of similar experience at law firms based in Washington, D.C. and New York City (where Farra & Wang PLLC and Slarskey LLC are based, respectively).

28. Second, the rates are lower than the current "LSI Laffey Matrix," which courts in this district have used for making awards under various fee-shifting statutes. *See* LSI Laffey Matrix, http://www.laffeymatrix.com/see.html (date accessed: March 31, 2025) (providing that the rate for lawyers with 11-19 years of experience is $948 per hour).

29. The total lodestar does not include (1) time recorded after February 20, 2025, which is when the parties reached an agreement in principle to settle the litigation, or (2) time recorded by Cohen Milstein. With respect to the former category, I have reviewed my firm's

time records and the time spent on this litigation after February 20, 2025—negotiating the particulars of the settlement agreement, revising the draft motions related to settlement approval, drafting and preparing the motion for attorneys' fees, expenses, and service awards—constitutes an additional $73,229.20 in lodestar value (as of April 14). I estimate that there will be another $15,000 in time spent in service of the litigation, attending the hearing on approval of the settlement and finalizing distribution of the settlement funds.

### C. The Request for Expense Reimbursement

30. The plaintiffs also request that the expenses they incurred in litigating this case be reimbursed from the settlement proceeds.

31. In preparing this declaration and the accompanying motion, I reviewed the expenses incurred for this litigation. The expenses are generated from the books and records of my firm (Farra & Wang PLLC), Slarskey LLC, and predecessor counsel Cohen Milstein.

32. I have categorized the expenses using the Uniform Task-Based Management System (UTBMS) codes for expenses developed by the American Bar Association, the Association of Corporate Counsel, and PricewaterhouseCoopers. The expenses were as follows:

| Category | Total |
|---|---|
| Court fees | $ 3,061.54 |
| Delivery services/messengers | $ 2,059.50 |
| Experts | $ 102,560.50 |
| Litigation support vendors | $ 45,028.12 |
| Local travel | $ 148.36 |
| Meals | $ 1,321.45 |
| Online research | $ 11,901.81 |
| Other | $ 263.60 |
| Out-of-town travel | $ 10,472.91 |
| Outside printing | $ 1,596.67 |
| Postage | $ 30.68 |
| Subpoena fees | $ 4,339.02 |
| Telephone | $ 111.71 |
| Trial transcripts | $ 54.90 |
| | $ 182,950.77 |

33.     I believe these expenses were reasonable. The plaintiffs' counsel frequently obtained multiple bids for significant expenses, worked with more junior testifying experts to mitigate expert costs, avoided incurring unnecessary expenses, negotiated with vendors to ensure that expenses were competitively priced, and closely monitored the expenses to avoid unexpected costs.

34.     I believe these expenses were reasonable, necessary, and expended for the benefit of the plaintiffs and the Trust in this litigation.

D.     **The Request for Incentive or Service Awards to the Plaintiffs**

35.     The plaintiffs' participation merits individual awards because their initiative was critical to achieving the result.

36.     They began investigating the underlying misconduct more than ten years ago and have been highly effective plaintiffs since. They were responsive in communications with counsel. They dutifully complied with their discovery obligations, producing documents and working with counsel to answer interrogatories. They were served with notices of deposition and

attended lengthy deposition preparation meetings, and three had their depositions taken. They have collectively spent thousands of hours on this case. Because of the time difference, many of those hours were odd hours. Further, the plaintiffs are in far-flung places and under constant surveillance by a foreign government, and so their continued participation in the litigation was a growing risk the longer the case went on. They deserve significant individual awards for their contributions to this result.

    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:  April 15, 2025          / s / Times Wang
                                                  Times Wang