UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HE DEPU, *et al.*,

    Plaintiffs,

v.

OATH HOLDINGS, INC., *et al.*,

    Defendants.

Case No. 17-0635 (RDM)

Judge Randolph D. Moss

## ORDER

This cause came to be heard on the Joint Motion to Approve Settlement and Terminate Trust, filed by all Parties in the above-captioned case ("Joint Motion"). The Joint Motion seeks approval of the Nonjudicial Settlement Agreement ("NJSA") attached as Exhibit 2 to the Joint Motion, as well as an order pursuant to D.C. Code § 19-1304.12 terminating the charitable trust (the "Trust") that the Court held was established by the terms of a 2007 settlement agreement (the "2007 Settlement Agreement").

ON CONSIDERATION WHEREOF, the Court determines as follows.

## BACKGROUND

1. All necessary parties are before the Court, and the Court has jurisdiction over all Parties to this matter, the Trust, and beneficiaries of the Trust pursuant to D.C. Code § 19-1302.02. *See also Queen v. Schmidt*, 2015 WL 5175712, No. 10-2017 (PLF) (D.D.C. Sept. 3, 2015) (exercising jurisdiction over a trust pursuant to D.C. Code § 19-1302.02).

2. The Parties have provided notice to the Attorney General for the District of Columbia, Brian Schwalb, who has the rights of a qualified beneficiary under D.C. Code § 19-

1

1301.10(c). The Attorney General has not objected to either the NJSA or the relief requested in the Joint Motion.

3. The 2007 Settlement Agreement resolved *Xiaoning, et al. v. Yahoo!, Inc. et al.*, No. 07-02151-CW (N.D. Cal., July 30, 2007) (the "2007 Lawsuit"), and established the Yahoo Human Rights Fund ("Fund").

4. In relevant part, the settlement provided that Yahoo ("Yahoo") would make payments totaling a maximum of $17.3 million to the Laogai Research Foundation ("LRF").

5. Paragraph 2 of the 2007 Settlement Agreement provided that the Fund "may be used for three purposes only: (a) to provide humanitarian and legal assistance primarily to persons in or from the People's Republic of China who have been imprisoned for expressing their views through Yahoo! or another medium;[1] (b) to resolve claims primarily by such persons, or persons threatened with prosecution or imprisonment, against the Yahoo! Entities or any Yahoo! subsidiary or affiliate[2]; and (c) for payment of [LRF] operating expenses and the [LRF's] educational work conducted in the United States in support of human rights, to the extent provided below.[3]" 2007 Settlement Agreement at 3.

6. The LRF and Harry Wu (the Executive Director of the LRF at the time), "[i]n their implementation of Paragraph 2(a)," agreed to use their best efforts to maximize the benefits achieved through their use of a portion of the Fund for humanitarian and legal assistance. *Id.*

7. In 2009, "Yahoo, the LRF, and Wu . . . amend[ed] the settlement agreement to create two new organizations: the Yahoo Irrevocable Human Rights Trust ["YIHRT"] and the Laogai Human Rights Organization ["LHRO"]." *Depu v. Oath Holdings*, 715 F. Supp. 3d 1, 18

---

[1] This is referred to as the "Humanitarian Purpose."
[2] This is referred to as the "Yahoo Claims Purpose."
[3] This is referred to as the "Operational Purpose."

2

(D.D.C. 2022). The amendment provided that the LRF would (1) transfer $3.55 million from the Fund to the YIHRT, and (2) transfer "the remaining funds" from the Fund to the LHRO, a "newly established 501(c)(3) organization with the purpose of supporting the activities of the [LRF] in accordance with the terms of the settlement agreement." *Id.* (cleaned up) (internal citations omitted).

8. Defendant Michael Callahan, a former General Counsel of Yahoo, served on the LHRO Board of Directors from April 27, 2010, to July 9, 2012. Callahan has had no involvement with the Trust, the Fund, the LRF or the LHRO since this time.

9. Defendant Ronald Bell, a former General Counsel of Yahoo, served on the LHRO Board of Directors from late 2012 to January 7, 2016.

10. Following Bell's resignation from the LHRO Board of Directors, neither Yahoo nor Bell had any involvement with the Trust, the Fund, the LRF, or the LHRO.

11. Plaintiffs are Chinese dissidents who have been imprisoned for expressing their views related to freedom of speech and democracy within China.

12. Plaintiffs generally allege that, among other things, the 2007 Settlement Agreement created the Trust. Certain of the Plaintiffs also allege that they were entitled to additional distributions from the Trust (having received amounts that were less than what they applied for), and all Plaintiffs allege that, as a result of certain of the Defendants' conduct, they lost the opportunity to request and obtain meaningful distributions from the Trust. Plaintiffs further allege that Defendants committed breaches of trust respecting the Trust's Humanitarian Purpose, and alternative grounds of liability stemming from the same alleged disregard for the Humanitarian Purpose. Defendants dispute these allegations and dispute that they bear any responsibility or liability as a result of such allegations.

13. On May 12, 2022, this Court held that the 2007 Settlement Agreement established a charitable trust under D.C. law. *Depu*, 715 F. Supp. 3d at 31.

14. This Court also held that Yahoo is the Trust's settlor, and that LRF is a trustee of the Trust. *Id.* at 24-25.

15. The Yahoo Defendants objected to these rulings, and have continued to do so.

16. On March 29, 2024, Plaintiffs filed a Third Amended Complaint. ECF No. 181. The Third Amended Complaint added Impresa, counsel for the LRF and LHRO, as a Defendant.

17. On May 3, 2024, Defendants filed a Joint Motion to Dismiss the Third Amended Complaint. ECF No. 188. Impresa also filed its own Motion to Dismiss the same day. ECF No. 192.

18. On December 13, 2024, Defendant Michael Callahan filed a Motion for Summary Judgment.

19. The Parties completed fact and expert discovery in February 2025.

20. On February 20, 2025, the Parties successfully mediated their dispute before the Honorable Walter E. Kelley, Retired, a former District Judge for the United States District Court for the Eastern District of Virginia (the "Mediation").

21. On February 26, 2025, the Court entered a Consent Order cancelling a *lis pendens* filed against real property owned by the LRF, as trustee of the Trust, in the District of Columbia, located at 1901 18th Street N.W., Washington, D.C. 20009 (the "Property"). The Property is an asset of the Trust.

22. On April 15, 2025, the Parties fully executed the NJSA under the laws of the District of Columbia memorializing in long form the terms agreed to at the Mediation. *See* Exhibit 2.

23. The Trust does not have a provision related to disposition of Trust assets upon its termination. However, it does state in relevant part that the LRF "represent[s] and warrant[s] that until the Fund has been entirely depleted, [it] will maintain a comparable level of managerial and organizational capacity." Ex. 1 at 6.

24. The Court finds that the LRF presently has such level of managerial and organizational capacity.

25. If the Court approves the settlement and terminates the Trust, the LRF has represented that it will wind up operations and dissolve, as it will hold no remaining assets in the Trust or within its organization.

## MATERIAL TERMS OF SETTLEMENT AND PROPOSED DISPOSITION OF TRUST ASSETS

26. Generally described, the Parties have entered into the NJSA to fully and finally resolve all claims between them that have been brought, or could have been brought, in this Action and as relates to the Fund and the Trust—including termination of the Trust and discharge of Defendants and Defendant Releasees from any past, present, or future responsibility or liability to the Trust. *See* NJSA.

27. Defendants have agreed to pay $5,425,000 to Plaintiffs, inclusive of all fees and costs, and have apportioned that amount among themselves (the "Settlement Funds"). *Id.* at 4.

28. Of this amount, Impresa Legal Group agrees to pay and tender $40,000. The Yahoo Defendants agree to pay and tender $4,500,000. The LRF, LHRO, and Laogai Research Foundation-CA (collectively, the "Laogai Defendants") agree to pay and tender $885,000, which shall come from the proceeds of the sale of the Property; or, if closing on the sale of the Property has not occurred by the Payment Date (defined below), then the Laogai Defendants may satisfy their payment obligation by execution and delivery to Plaintiffs' counsel of a Note. For purposes

of the Parties' agreement, "Note" means a promissory note as follows: by Laogai Research Foundation, a California nonprofit corporation, as maker; payable to Humanitarian China, a California nonprofit corporation, as noteholder; in the principal amount of $885,000; bearing interest at the simple rate of 6.00% per annum, with interest accruing, and no current payments; no prepayment penalty; maturity occurring one year after the Payment Date; due on sale; and secured by a first lien deed of trust on the Property. *Id.* at 3-4.

29. Net proceeds from the sale of the Property will be distributed as follows: first, to fund the Laogai Defendants' portion of the Payment, as detailed above; second, to pay all other outstanding third-party financial obligations of the Laogai Defendants, including without limitation vendor and professional services balances, which at present are not less than $635,000; third, to pay the costs of winding up the non-profit corporations which comprise the Laogai Defendants; and finally, the balance remaining, if any, will be donated to a non-profit organization whose mission is to protect or promote human rights internationally (subject to approval by the applicable state attorney general(s) to the extent required in connection with the dissolution of a non-profit corporation). *Id.* at 3.

30. The Parties have also agreed that, to facilitate the termination of the Trust, the Property will be conveyed to the LRF free of any trust obligations in exchange for sale of the Property or the making of the Note (if necessary, and as further described above). *Id.* at 4.

31. The LRF represents that, upon removal of the Property from the Trust, it will no longer hold, own, or otherwise possess any Trust assets or property.

32. The NJSA states that the following are conditions precedent to Defendants' obligation to pay the Settlement Funds: (1) the Attorney General must not ultimately object to the relief requested in the Joint Motion, or the NJSA, before or at a hearing the Court conducts on the

Joint Motion; and (2) the Court must grant the Joint Motion entirely or substantially in the form of the order attached to the Joint Motion, including in any such order provisions related to discharge and termination of the Trust. *Id.* at 5-6.

33. The NJSA further provides that the Settlement Funds shall be paid by Defendants to Plaintiffs' counsel within ninety (90) days of the latest occurring condition precedent ("Payment Date"). *Id.* at 5.

34. The NJSA states that, upon Plaintiffs' receipt of the Settlement Funds, the following will occur:

   a. Settlement Funds remaining after apportionment to Plaintiffs and/or Plaintiffs' counsel, to include funds paid to or collected by the noteholder as principal and interest under the Note, and the Note itself, ("Remaining Settlement Funds"), will be paid by Plaintiffs and/or Plaintiffs' agent or counsel to Humanitarian China by Plaintiffs and/or their counsel or agents in the form of a restricted fund, and pursuant to this Order ("Restricted Fund");

   b. The Restricted Fund shall provide that, aside from a portion that may be used for administrative expenses, the Remaining Settlement Funds may only be used to provide humanitarian assistance to persons in or from the People's Republic of China who have been imprisoned in whole or in part for exercising their freedom of speech, or to the families of such persons;

   c. Upon payment of the Settlement Funds, the Parties agree that the Trust should be terminated, and that LRF will take all administrative steps necessary to advise relevant entities (including, but not limited to, tax authorities) of such termination and to file any necessary final tax returns; and

    d. Within three (3) business days of payment of the Settlement Funds, Plaintiffs will file a joint status report and request that the Court dismiss this case with prejudice.

35. The NJSA also provides for mutual releases of the Parties. *Id.* at 6-7. In addition, the Parties ask the Court to discharge Defendants and Defendant Releasees[4] from any and all past, present, or future obligation, liability, responsibility, duty, or other commitment to the Trust, or its administration, assets, beneficiaries, supporting organizations, settlor(s), or related entities or individuals, which include, without limitation, Plaintiffs' Released Claims (as defined in the NJSA). *Id.* at 6.

36. Finally, in relevant part, the NJSA states that nothing in that agreement should be construed, or shall be construed, to create a trust or create or impose fiduciary duties on any Party to the NJSA. *Id.* at 3.

## APPROVAL OF NJSA, TERMINATION OF TRUST, AND DISCHARGE OF DEFENDANTS AND DEFENDANT RELEASEES

37. The Parties in the Joint Motion request the following.

38. ***First***, the Parties request that the Court approve the NJSA. *See* D.C. Code § 19-1301.11(e) ("[a]ny interested person may request the court to approve a nonjudicial settlement agreement").

39. ***Second***, the Parties request that the Court terminate the Trust under the terms specified in the NJSA, and as further detailed in the Joint Motion, pursuant to D.C. Code § 19-1304.12.

---

[4] "Defendant Releasees" has the definition used in the NJSA. *See* Ex. 2 at 6.

8


40. *Third*, the Parties request that the Court discharge Defendants and Defendant Releasees from any and all past, present, or future liability or obligation to the Trust or Trust property.

41. *Fourth*, the Parties request that the Court approve the Plaintiffs' disposition of the Remaining Settlement Funds, as a Restricted Fund, to continue the Humanitarian Purpose.

42. *Finally*, the Parties request that the Court dismiss the case after the Trust is terminated, and Settlement Funds are received by Plaintiffs' counsel.

43. The Court may, under D.C. Code § 19-1304.12(a), terminate a trust if, because of circumstances not anticipated by the settlor, termination will further the purposes of the trust.

44. As the District of Columbia Court of Appeals has explained, this includes instances where "continuation of the trust on its existing terms would be impracticable." *In re D.M.B.*, 979 A.2d 15, 26 (D.C. 2009).

45. Pursuant to D.C. Code § 19-1304.12(c), upon termination of a trust because of unanticipated or impracticable circumstances pursuant to D.C. Code § 19.1304.12(a), the trustee shall distribute the trust property in a manner consistent with the purposes of the trust.

46. As noted above, all necessary parties are before the Court, and the Court has jurisdiction over the Trust and its beneficiaries pursuant to D.C. Code § 19-1302.02.

47. As further noted above, the Attorney General for the District of Columbia has received notice of the Joint Motion and NJSA, and has not objected to either.

48. The Court holds that good cause exists to grant the relief requested in the Joint Motion under D.C. Code § 19-1304.12(a) because circumstances unanticipated by the Settlor of the Trust, Yahoo, make it impractical for LRF, as trustee, to carry out the purposes of the Trust.

9

49. The Trust was created to carry out three purposes: the Humanitarian Purpose, the Yahoo Claims Purpose, and the Operational Purpose.

50. The Court holds that the Yahoo Claims Purpose is no longer practical or needed.

   a. Pursuant to the terms of the YIHRT, the trust charged with effectuating the Yahoo Claims Purpose, the YIHRT terminated by its express terms on June 12, 2014, and the remaining property of that trust reverted to the LHRO. *See* Joint Motion at 10.

   b. Yahoo represents in the Joint Motion that there is no longer a need for the Yahoo Claims Purpose, and the Court agrees.

   c. The Court holds Yahoo, as Settlor, could not have anticipated in 2007 that the Yahoo Claims Purpose would no longer be necessary or practical.

51. The Court also holds that the Operational Purpose is no longer practical or needed.

   a. The LRF represents that it intends to wind up operations upon approval of the NJSA and termination of the Trust.

   b. The LRF also represents it will have no remaining assets, whether Trust assets or assets held by the LRF separate from the Trust, upon disposition of its share of the Settlement Funds and distribution of proceeds from the sale of the Property or, alternatively, provision of the Note to Plaintiffs' counsel.

   c. Accordingly, there is no longer a need for the Operational Purpose.

   d. The Court holds that Yahoo, as Settlor, could not have anticipated in 2007 that the Operational Purpose would no longer be necessary or practical.

52. As the LRF is winding up operations and will have no remaining Trust assets after removal of the Property from the Trust, there are no longer Trust assets to support the Humanitarian Purpose.

   a. Yahoo, as Settlor, could not have anticipated in 2007 that the LRF would no longer be able to carry out the Humanitarian Purpose.

   b. However, the Parties agree, and the Court holds, that continuing to effectuate the Humanitarian Purpose is still possible through allocation of the Remaining Settlement Funds to an appropriate organization, even without the involvement of Defendants, and that Plaintiffs should distribute the Restricted Fund to Humanitarian China, ensuring that the Humanitarian Purpose will continue to be fulfilled. NJSA at 3; *see also* D.C. § 19-1304.12(c).

   c. Plaintiffs and/or Plaintiffs' agent or counsel are solely responsible for ensuring that the Restricted Fund comprising the Remaining Settlement Funds is distributed to Humanitarian China.

   d. The Restricted Fund provides that the Remaining Settlement Funds, aside from a portion that may be used for administrative expenses, may only be used to provide humanitarian assistance to persons in or from the People's Republic of China who have been imprisoned in whole or in part for exercising their freedom of speech, or to the families of such persons.

   e. Plaintiffs represent that Humanitarian China is an excellent candidate to administer the Humanitarian Purpose. It is a California nonprofit corporation that is tax exempt under 26 U.S.C. § 501(c)(3). It was founded

       in 2004 by three participants in the 1989 Chinese democracy movement. Its primary mission is to provide financial assistance to political prisoners and their families in China. Since its founding, it has distributed over $2 million USD to such persons.

f.    Plaintiffs further understand that, in so doing, Humanitarian China has relied principally on small-dollar donations from the public, and on a network it built of liberal-minded Chinese dissidents, activists, lawyers, intellectuals, journalists, and religious believers. It has also relied on an all-volunteer staff and board; it has no paid employees or board members. Its operating costs are miniscule (around 1% of its annual spending). As a result of all this, it has earned an excellent reputation in the Chinese human rights community. Plaintiffs know of no better organization to carry out the Humanitarian Purpose. Defendants take no position and do not object to Plaintiffs' disbursement of the Restricted Fund as set forth above.

g.    The Court holds that removal of the Property from the Trust, termination of the Trust, and allocation of the Remaining Settlement Funds to Humanitarian China will allow for a more efficient and effective application of the Humanitarian Purpose, consistent with the terms of the Trust.

h.    Accordingly, the relief requested by the Parties will further the Humanitarian Purpose of the Trust.

53.    The LRF, as Trustee, agrees that termination is appropriate in this case and is willing to terminate the Trust if the Court determines that (a) termination will further the purposes of the Trust; (b) all necessary parties consent and are before this Court; and (c) upon entry of an

order directing the termination of the Trust, the Settlement Funds should be distributed as detailed herein.

54. Consistent with the terms of the NJSA, and upon termination of the Trust, the Parties request that the Court order that Defendants and Defendant Releasees are discharged from any and all past, present, or future obligation, liability, responsibility, duty, or other commitment to the Trust or the Fund, or its administration, assets, beneficiaries, supporting organizations, settlor(s), or related entities or individuals, which include, without limitation, Plaintiffs' Released Claims. *Id.* The Court finds it appropriate to do so, as well as award the other relief requested in the Joint Motion.

It is therefore ADJUDGED, ORDERED, and DECREED as follows:

A. The stay as to certain Plaintiffs, October 28, 2024 Minute Order, is lifted;

B. The NJSA is approved;

C. Removal of the Property from the Trust is approved, effective upon entry of this Order;

D. Termination of the Trust is warranted and appropriate pursuant to D.C. Code §§ 19-1304.12(a) and 19-1304.12(c);

E. Termination of the Trust shall be effective upon distribution of the Settlement Funds by Defendants to Plaintiffs' counsel, as detailed in the NJSA;

F. Upon termination of the Trust, Defendants and Defendant Releasees are fully and finally discharged from any and all past, present, or future obligation, liability, responsibility, duty, or other commitment to the Trust, or its administration, assets, beneficiaries, supporting organizations, settlor(s), or related entities or individuals, including, without limitation, Plaintiffs' Released Claims;

    G.    Within three (3) business days of distribution of the Settlement Funds to Plaintiffs and their counsel, Plaintiffs and/or their counsel or agents are directed to distribute the Remaining Settlement Funds to Humanitarian China as a Restricted Fund; and

    H.    Within three (3) business days of payment of the Settlement Funds, the Parties are ordered to file a joint status report and motion to dismiss this case with prejudice.

DONE and ORDERED this the 28th day of April, 2025.

_____
Judge Randolph D. Moss
United States District Court Judge