UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HE DEPU, *et al.*,

        Plaintiffs,

v.

OATH HOLDINGS, INC., *et al.*,

        Defendants.

Case No. 17-0635 (RDM)

Judge Randolph D. Moss

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SERVICE AWARDS**

Pursuant to the Court's order of April 28, 2025, the plaintiffs submit this supplemental brief in further support of their requests that they be granted service awards out of the $5,425,000 settlement fund. Their requests should be granted because, as set forth in the accompanying declarations, the plaintiffs demonstrated extraordinary initiative and diligence in investigating and litigating the mismanagement of the Yahoo Human Rights Fund. Over nearly a decade, and starting well before this lawsuit was even filed, they devoted several hundred hours each to the effort. Moreover, they did so at great risk and burden to themselves, and mainly for the benefit of others, namely their fellow imprisoned Chinese dissidents. Indeed, they performed a role traditionally reserved for public officials and thus acted as private attorneys general. And they were successful, securing a multimillion-dollar common fund that will provide humanitarian relief to imprisoned Chinese dissidents well into the future. As such, they performed a valuable service deserving of compensation.

Their requests should also be granted because each of the plaintiffs has been imprisoned by the People's Republic of China for their online advocacy of democratic values, and has endured considerable suffering, including economic hardship, as a result. As such, granting their requests would put humanitarian funds in the hands of the kinds of people Yahoo intended to receive such funds in the first place, and would further the trust's humanitarian purpose and the settlor's intent.

As for the Court's power to do so, the Court has such power because this case sounds in equity, and the Court's power to fashion equitable relief is broad and flexible, including in distributing trust property. Additionally, the Court has the common-law power to grant service awards to litigants who secure a common fund for the benefit of others.

## FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs initiated the efforts that led to this lawsuit and settlement after learning of allegations that Harry Wu was mismanaging and abusing the charitable trust known as the Yahoo Human Rights Fund. *E.g.*, Declaration of He Depu ("He[1] Decl.") ¶¶ 5-6; Declaration of Wang Jinbo ("Wang J. Decl.") ¶ 5; Declaration of Ouyang Yi ("Ouyang Decl.") ¶ 5; Declaration of Li Dawei ("Li Decl.") ¶ 5; Declaration of Xu Yonghai ("Xu Y. Decl.") ¶ 5; Declaration of Times Wang ("T. Wang Decl.") ¶ 5.

Specifically, upon learning of the allegations, the plaintiffs launched an intensive effort to investigate those allegations and to seek accountability for the misconduct they uncovered. Their effort included identifying dissidents who were most suited to pursuing the allegations, namely those who'd been imprisoned in part based on evidence from their Yahoo accounts; communicating with several dozen individuals and witnesses, if not more; and delivering two letters to Yahoo's founder, Jerry Yang, to try to resolve the matter without litigation. *E.g.*, He Decl. ¶ 5. These pre-filing efforts alone took several hundred hours. *Id.* When they failed, the plaintiffs found American lawyers to file this lawsuit.

Meanwhile, each of the plaintiffs was a potential beneficiary of the trust because each had been imprisoned by the PRC for online speech. He Decl. ¶ 13; Declaration of Xu Wanping ("Xu W. Decl.") ¶ 8; Wang J. Decl. ¶ 10; Ouyang Decl. ¶ 12; Li Decl. ¶ 10; Xu Y. Decl. ¶¶ 9-10. For example, He Depu spent nearly a decade in prison because of his efforts to advance democratic values in the PRC. He Decl. ¶ 11-13. As another example, Xu Wanping spent more than two decades in prison for similar activism. Xu W. Decl. ¶ 8. As such, each plaintiff fell within the

---

[1] Throughout the litigation, counsel for the plaintiffs has generally endeavored to render the plaintiffs' names in the Chinese custom, where family names precede given ones, because that is how they typically refer to themselves.

purpose of the trust they were trying to enforce, namely providing "humanitarian and legal assistance to Chinese dissidents who are imprisoned for expressing their views through Yahoo or other online media." *Depu v. Oath Holdings, Inc.*, 715 F. Supp. 3d 1, 28 (D.D.C. 2022).

Indeed, not only was each plaintiff imprisoned for their speech, each has suffered additional consequences, including economic hardship. For example, Xu Yonghai's defense of religious freedom did not just result in incarceration, but also the loss of his career as a physician. Xu Y. Decl. ¶¶ 9-12. As another example, Li Dawei's pro-democracy activism has prevented him from becoming a lawyer, even though he passed the bar exam. Li Decl. ¶ 11. Moreover, these consequences are also felt by family members. For example, Ouyang Yi's son also passed the bar exam, but was also unable to become a lawyer, because of their family's politically disfavored status. Ouyang Decl. ¶ 16. Put simply, each plaintiff faces precarious economic circumstances in large part because of their pro-democracy activism. He Decl. ¶¶ 11-15; Xu W. Decl. ¶ 8; Wang J. Decl. ¶¶ 10; Ouyang Decl. ¶¶ 11-17; Li Decl. ¶¶ 9-11; Xu Y. Decl. ¶¶ 9-12.

Despite that, the plaintiffs did not shrink from the responsibilities of bringing this lawsuit. Each assiduously complied with their legal obligation to give evidence, including, in the cases of Xu Wanping, Ouyang Yi, and Wang Jinbo, by sitting for depositions. He Decl. ¶¶ 7-10; Xu W. Decl. ¶¶ 5-6; Wang J. Decl. ¶¶ 6-8; Ouyang Decl. ¶¶ 6-9; Li Decl. ¶¶ 6-7; Xu Y. Decl. ¶¶ 6-7. They did so at great inconvenience to themselves, including, in the case of Ouyang Yi, by traveling by bus from the remote mountain construction sites where he worked to scan and sign documents. Ouyang Decl. ¶¶ 5, 8. Each also participated in strategy discussions, including by giving careful thought to how to prevent future mismanagement of the fund. He Decl. ¶ 7; Xu W. Decl. ¶ 5; Wang J. Decl. ¶ 6; Ouyang Decl. ¶ 6; Li Decl. ¶ 6; Xu Y. Decl. ¶ 6. Each also helped

with fact investigation. *Id.* They did so year after year in this long-running case, by the end of which each had spent at least several hundred hours on these matters. He Decl. ¶¶ 5-7; Xu W. Decl. ¶ 7; Wang J. Decl. ¶ 9; Ouyang Decl. ¶ 10; Li Decl. ¶ 8; Xu Y. Decl. ¶ 8. They did so at considerable risk to themselves—indeed, He Depu was questioned by PRC security services for several hours in connection with this lawsuit. He Decl. ¶ 10. They did so even after certain of their co-plaintiffs dropped out of the lawsuit. *Id.* ¶ 6; *cf.* Dkt. 1 *with* Dkt. 186 (reflecting that, over the course of the litigation, two plaintiffs, Yang Zili and Yu Ling, dropped out). In sum, they were exemplary plaintiffs. T. Wang Decl. ¶¶ 5-14.

Moreover, their efforts paid off. They have secured a settlement fund that will see (after fees and expenses) at least $3 million set aside for the exclusive purpose of providing humanitarian assistance to imprisoned Chinese dissidents. The plaintiffs respectfully submit that allocating a modest portion of that money to them, both for their efforts in this case, and for humanitarian reasons generally, is both appropriate and within the Court's authority.

## ARGUMENT

### A.   The Court has the authority to grant the requested awards.

This is a case to enforce a charitable trust, so the Court sits in equity. 4 A. Scott, W. Fratcher, & M. Ascher, Trusts § 24.1, p. 1654 (5th ed. 2007) ("Trusts are, and always have been, the bailiwick of the courts of equity."). As such, the Court's powers over the settlement fund are broad and flexible. *Brown v. Plata*, 563 U.S. 493, 538 (2011) ("Once invoked, the scope of a district court's equitable powers is broad, for breadth and flexibility are inherent in equitable remedies.") (cleaned up). This includes the power to distribute trust property, including charitable trust property. *E.g.*, *In re Pro. Air Traffic Controllers Org. (PATCO)*, 26 B.R. 337, 347 (Bankr. D.D.C. 1982), *aff'd,* 724 F.2d 205 (D.C. Cir. 1984) ("Clearly, as a court of equity, the Court can properly direct the disposition of [trust] funds based on the established beneficial

4

interest therein."); D.C. Code § 19–1304.13 ("The court may apply *cy pres* to modify or terminate the trust by directing that the trust property be applied or distributed, in whole or in part, in a manner consistent with the settlor's charitable purposes."); D.C. Code § 19–1304.05(b) ("If the terms of a charitable trust do not indicate or otherwise provide for the selection of a particular charitable purpose or beneficiary, the court may select one or more charitable purposes or beneficiaries. The selection must be consistent with the settlor's intention to the extent it can be ascertained.").

The Court also has the common-law power to grant awards to plaintiffs whose efforts result in the creation of a common fund for the benefit of others. Indeed, courts routinely do so in class actions. *E.g.*, *Little v. Washington Metro. Area Transit Auth.*, 313 F. Supp. 3d 27, 35 (D.D.C. 2018) ("It is common for courts to approve incentive awards in class-action litigations, especially when there is a common fund created to benefit the entire class."); *Cobell v. Salazar*, 679 F.3d 909, 922 & n. 5 (D.C. Cir. 2012) (quoting the district court's observation that "such awards 'are routinely provided to compensate named plaintiffs for the services they provide and the risks they incur during the course of class-action litigation'" and affirming the district court's grants of such awards in amounts ranging from $150,000 to $2 million per plaintiff). This includes making such awards from trust funds. *See generally, id.* (affirming awards in a class action to enforce a trust for the benefit of Native Americans).

Thus, the Court has the power to grant the requested awards.

**B.     The Court should grant the requested awards.**

In analyzing whether a plaintiff should be granted a service award for generating a common fund for the benefit of a class of beneficiaries, courts consider: (1) "the actions the plaintiff has taken to protect the interests of the class"; (2) "the degree to which the class has benefitted from those actions"; (3) "the amount of time and effort the plaintiff expended in

5

pursuing the litigation"; and (4) the risks they incurred during the course of the . . . litigation." *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 8–9 (D.D.C. 2008) (cleaned up).

Each factor weighs heavily in the plaintiffs' favor: (1) on their own initiative, and with few resources, they undertook a difficult investigation into complicated financial wrongdoing a world away; (2) that initiative led to the recovery of millions of dollars for the class that almost certainly would not have existed otherwise; (3) the plaintiffs have each spent several hundred hours, over nearly a decade, to achieve that result; and (4) the plaintiffs faced considerable risks in doing so, including scrutiny from a repressive and hostile government for doing so.

The awards are further justified given that, in enforcing a charitable trust, the plaintiffs were performing a role typically reserved for attorneys general. *Hooker v. Edes Home*, 579 A.2d 608, 612 (D.C. 1990) ("the traditional rule has been that only a public officer, usually the state Attorney General, has standing to bring an action to enforce the terms of [a charitable] trust"); *Cobell v. Jewell*, 29 F. Supp. 3d 18, 25 (D.D.C. 2014), *aff'd in part, vacated in part,* 802 F.3d 12 (D.C. Cir. 2015) (service awards are given to plaintiffs in part "to recognize their willingness to act as a private attorney general").

The awards are also justified because they would all be given to Chinese dissidents who have endured considerable economic hardship and imprisonment for their pro-democracy activism. As such, the awards would further Yahoo's original intention of providing humanitarian relief to imprisoned Chinese dissidents. *E.g.*, D.C. Code § 19–1304.13 (in applying *cy pres*, the court must ensure that "trust property be . . . distributed . . . in a manner consistent with the settlor's charitable purposes."); D.C. Code § 19–1304.05(b) (a court's selection of particular charitable beneficiaries "must be consistent with the settlor's intention to the extent it can be ascertained").

Given the foregoing, the plaintiffs submit that it would be equitable and appropriate to grant the requested awards. Indeed, they respectfully submit that it would be *in*equitable to deny them the requested awards, as that would deprive them of compensation for valuable services they rendered to others at great risk and burden to themselves.

## CONCLUSION

For the foregoing reasons, the plaintiffs' requests for service awards should be granted.

Date: May 12, 2025

Respectfully submitted,

**FARRA & WANG PLLC**

/ s / Times Wang
Times Wang (D.C. Bar 1025389)
1543 Champa St., Ste. 400
Denver, CO 80202
Telephone: (202) 505-6227
twang@farrawang.com

Adam H. Farra (D.C. Bar 1028649)
1300 I Street, N.W., Ste. 400E
Washington, D.C. 20005
Telephone: (202) 505-5990
afarra@farrawang.com

**SLARSKEY LLC**

David Slarskey (admitted pro hac vice)
Evan Fried (admitted pro hac vice)
420 Lexington Ave., Suite 2525
New York, NY 10170
Telephone: (212) 658-0661
dslarskey@slarskey.com
efried@slarskey.com

*Counsel for the plaintiffs*